NOT YET SCHEDULED FOR ORAL ARGUMENT

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 24-5172**

---

MONTE ROSE, JR., *et al.*,
*Plaintiffs-Appellees*,

v.

ROBERT F. KENNEDY, JR., Secretary of Health and Human Services,
*et al.*,
*Defendants-Appellees*,
and
INDIANA FAMILY AND SOCIAL SERVICES ADMINISTRATION,
*Intervenor-Appellant*.

---

**ADDENDUM TO INTERVENOR-APPELLANTS'
OPENING BRIEF**

---

|  |  |
|---|---|
|  | THEODORE E. ROKITA<br>Attorney General of Indiana |
|  | JAMES A. BARTA<br>Solicitor General |
|  | JENNA M. LORENCE<br>Deputy Solicitor General |
| CAROLINE M. BROWN<br><br>Brown & Peisch PLLC<br>1225 19th St. NW, Suite 700<br>Washington, D.C. 20036<br>(202) 499-4258<br>cbrown@brownandpeisch.com | Office of the Attorney General<br>IGC South, Fifth Floor<br>302 West Washington Street<br>Indianapolis, Indiana 46204<br>(317) 232-0709<br>James.Barta@atg.in.gov |

*Counsel for Intervenor-Appellant*

# TABLE OF CONTENTS

42 U.S.C. § 1315 ............................................................... Add. 001

42 U.S.C. § 1396-1 ........................................................... Add. 009

42 U.S.C. § 1396a ............................................................. Add. 010

42 U.S.C. § 1396o ............................................................. Add. 131

42 U.S.C. § 1396u-7 .......................................................... Add. 141

42 C.F.R. § 431.53 ............................................................ Add. 153

42 C.F.R. § 447.52 ............................................................ Add. 154

Ind. Code § 12-8-1.5-7.5 .................................................. Add. 156

Ind. Code § 12-15-44.5-3 ................................................. Add. 158

Ind. Code § 12-15-44.5-4 ................................................. Add. 161

Ind. Code § 12-15-44.5-10 ............................................... Add. 164

Indiana Medicaid State Plan (Excerpts) ........................... Add. 166

   Alternative Benefit Plan (HIP Basic) ............................. Add. 166

      *Alternative Benefit Plan Populations* ....................... Add. 166

      *Selection of Benchmark Benefit Package* ................. Add. 168

      *Alternative Benefit Plan Cost-Sharing* ..................... Add. 170

      *Benefits Description* ................................................. Add. 171

      *Benefits Assurances* ................................................ Add. 216

i

*Service Delivery Systems*.............................................. Add. 218

Alternative Benefit Plan (HIP Plus).................................. Add. 220

*Alternative Benefit Plan Populations*......................... Add. 220

*Selection of Benchmark Benefit Package* ................... Add. 222

*Alternative Benefit Plan Cost-Sharing* ...................... Add. 224

*Benefits Description*.................................................... Add. 225

*Benefits Assurances*.................................................... Add. 271

*Service Delivery Systems*.............................................. Add. 273

Medicaid Premiums and Cost Sharing.............................. Add. 276

*Cost Sharing Requirements* ........................................ Add. 276

ii

United States Code Annotated
  Title 42. The Public Health and Welfare
    Chapter 7. Social Security (Refs & Annos)
      Subchapter XI. General Provisions, Peer Review, and Administrative Simplification
      (Refs & Annos)
        Part A. General Provisions (Refs & Annos)

42 U.S.C.A. § 1315

§ 1315. Demonstration projects

Currentness

**(a) Waiver of State plan requirements; costs regarded as State plan expenditures; availability of appropriations**

In the case of any experimental, pilot, or demonstration project which, in the judgment of the Secretary, is likely to assist in promoting the objectives of subchapter I, X, XIV, XVI, or XIX, or part A or D of subchapter IV, in a State or States--

**(1)** the Secretary may waive compliance with any of the requirements of section 302, 602, 654, 1202, 1352, 1382, or 1396a of this title, as the case may be, to the extent and for the period he finds necessary to enable such State or States to carry out such project, and

**(2)(A)** costs of such project which would not otherwise be included as expenditures under section 303, 655, 1203, 1353, 1383, or 1396b of this title, as the case may be, and which are not included as part of the costs of projects under section 1310 of this title, shall, to the extent and for the period prescribed by the Secretary, be regarded as expenditures under the State plan or plans approved under such subchapter, or for administration of such State plan or plans, as may be appropriate, and

**(B)** costs of such project which would not otherwise be a permissible use of funds under part A of subchapter IV and which are not included as part of the costs of projects under section 1310 of this title, shall to the extent and for the period prescribed by the Secretary, be regarded as a permissible use of funds under such part.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    1

Add.001

USCA Case #24-5172    Document #2101807    Filed: 02/20/2025    Page 5 of 282

In addition, not to exceed $4,000,000 of the aggregate amount appropriated for payments to States under such subchapters for any fiscal year beginning after June 30, 1967, shall be available, under such terms and conditions as the Secretary may establish, for payments to States to cover so much of the cost of such projects as is not covered by payments under such subchapters and is not included as part of the cost of projects for purposes of section 1310 of this title.

**(b) Child support enforcement programs**

**(1)** In the case of any experimental, pilot, or demonstration project undertaken under subsection (a) to assist in promoting the objectives of part D of subchapter IV, the project--

    **(A)** must be designed to improve the financial well-being of children or otherwise improve the operation of the child support program;

    **(B)** may not permit modifications in the child support program which would have the effect of disadvantaging children in need of support; and

    **(C)** must not result in increased cost to the Federal Government under part A of such subchapter.

**(2)** An Indian tribe or tribal organization operating a program under section 655(f) of this title shall be considered a State for purposes of authority to conduct an experimental, pilot, or demonstration project under subsection (a) to assist in promoting the objectives of part D of subchapter IV and receiving payments under the second sentence of that subsection. The Secretary may waive compliance with any requirements of section 655(f) of this title or regulations promulgated under that section to the extent and for the period the Secretary finds necessary for an Indian tribe or tribal organization to carry out such project. Costs of the project which would not otherwise be included as expenditures of a program operating under section 655(f) of this title and which are not included as part of the costs of projects under section 1310 of this title, shall, to the extent and for the period prescribed by the Secretary, be regarded as expenditures under a tribal plan or plans approved under such section, or for the administration of such tribal plan or plans, as may be appropriate. An Indian tribe or tribal organization applying for or receiving start-up program development funding pursuant to section 309.16 of title 45, Code of Federal Regulations, shall not be considered to be an Indian tribe or tribal organization operating a program under section 655(f) of this title for purposes of this paragraph.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.002

USCA Case #24-5172    Document #2101807    Filed: 02/20/2025    Page 6 of 282

**(c) Demonstration projects to test alternative definitions of unemployment**

**(1)(A)** The Secretary shall enter into agreements with up to 8 States submitting applications under this subsection for the purpose of conducting demonstration projects in such States to test and evaluate the use, with respect to individuals who received aid under part A of subchapter IV in the preceding month (on the basis of the unemployment of the parent who is the principal earner), of a number greater than 100 for the number of hours per month that such individuals may work and still be considered to be unemployed for purposes of section 607 of this title. If any State submits an application under this subsection for the purpose of conducting a demonstration project to test and evaluate the total elimination of the 100-hour rule, the Secretary shall approve at least one such application.

**(B)** If any State with an agreement under this subsection so requests, the demonstration project conducted pursuant to such agreement may test and evaluate the complete elimination of the 100-hour rule and of any other durational standard that might be applied in defining unemployment for purposes of determining eligibility under section 607 of this title.

**(2)** Notwithstanding section 602(a)(1) of this title, a demonstration project conducted under this subsection may be conducted in one or more political subdivisions of the State.

**(3)** An agreement under this subsection shall be entered into between the Secretary and the State agency designated under section 602(a)(3) of this title. Such agreement shall provide for the payment of aid under the applicable State plan under part A of subchapter IV as though section 607 of this title had been modified to reflect the definition of unemployment used in the demonstration project but shall also provide that such project shall otherwise be carried out in accordance with all of the requirements and conditions of section 607 of this title (and, except as provided in paragraph (2), any related requirements and conditions under part A of subchapter IV).

**(4)** A demonstration project under this subsection may be commenced any time after September 30, 1990, and shall be conducted for such period of time as the agreement with the Secretary may provide; except that, in no event may a demonstration project under this section be conducted after September 30, 1995.

**(5)(A)** Any State with an agreement under this subsection shall evaluate the comparative cost and employment effects of the use of the definition of unemployment in its demonstration project under

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    **Add.003**    3

this section by use of experimental and control groups comprised of a random sample of individuals receiving aid under section 607 of this title and shall furnish the Secretary with such information as the Secretary determines to be necessary to evaluate the results of the project conducted by the State.

**(B)** The Secretary shall report the results of the demonstration projects conducted under this subsection to the Congress not later than 6 months after all such projects are completed.

**(d) Regulations relating to applications for or renewals of demonstration projects**

**(1)** An application or renewal of any experimental, pilot, or demonstration project undertaken under subsection (a) to promote the objectives of subchapter XIX or XXI in a State that would result in an impact on eligibility, enrollment, benefits, cost-sharing, or financing with respect to a State program under subchapter XIX or XXI (in this subsection referred to as a "demonstration project") shall be considered by the Secretary in accordance with the regulations required to be promulgated under paragraph (2).

**(2)** Not later than 180 days after March 23, 2010, the Secretary shall promulgate regulations relating to applications for, and renewals of, a demonstration project that provide for--

  **(A)** a process for public notice and comment at the State level, including public hearings, sufficient to ensure a meaningful level of public input;

  **(B)** requirements relating to--

    **(i)** the goals of the program to be implemented or renewed under the demonstration project;

    **(ii)** the expected State and Federal costs and coverage projections of the demonstration project; and

    **(iii)** the specific plans of the State to ensure that the demonstration project will be in compliance with subchapter XIX or XXI;

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.004

**(C)** a process for providing public notice and comment after the application is received by the Secretary, that is sufficient to ensure a meaningful level of public input;

**(D)** a process for the submission to the Secretary of periodic reports by the State concerning the implementation of the demonstration project; and

**(E)** a process for the periodic evaluation by the Secretary of the demonstration project.

**(3)** The Secretary shall annually report to Congress concerning actions taken by the Secretary with respect to applications for demonstration projects under this section.

**(e) Extensions of State-wide comprehensive demonstration projects for which waivers granted**

**(1)** The provisions of this subsection shall apply to the extension of any State-wide comprehensive demonstration project (in this subsection referred to as "waiver project") for which a waiver of compliance with requirements of subchapter XIX is granted under subsection (a).

**(2)** During the 6-month period ending 1 year before the date the waiver under subsection (a) with respect to a waiver project would otherwise expire, the chief executive officer of the State which is operating the project may submit to the Secretary a written request for an extension, of up to 3 years (5 years, in the case of a waiver described in section 1396n(h)(2) of this title), of the project.

**(3)** If the Secretary fails to respond to the request within 6 months after the date it is submitted, the request is deemed to have been granted.

**(4)** If such a request is granted, the deadline for submittal of a final report under the waiver project is deemed to have been extended until the date that is 1 year after the date the waiver project would otherwise have expired.

**(5)** The Secretary shall release an evaluation of each such project not later than 1 year after the date of receipt of the final report.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.
**Add.005**

**(6)** Subject to paragraphs (4) and (7), the extension of a waiver project under this subsection shall be on the same terms and conditions (including applicable terms and conditions relating to quality and access of services, budget neutrality, data and reporting requirements, and special population protections) that applied to the project before its extension under this subsection.

**(7)** If an original condition of approval of a waiver project was that Federal expenditures under the project not exceed the Federal expenditures that would otherwise have been made, the Secretary shall take such steps as may be necessary to ensure that, in the extension of the project under this subsection, such condition continues to be met. In applying the previous sentence, the Secretary shall take into account the Secretary's best estimate of rates of change in expenditures at the time of the extension.

**(f) Application for extension of waiver project; submission; approval**

An application by the chief executive officer of a State for an extension of a waiver project the State is operating under an extension under subsection (e) (in this subsection referred to as the "waiver project") shall be submitted and approved or disapproved in accordance with the following:

**(1)** The application for an extension of the waiver project shall be submitted to the Secretary at least 120 days prior to the expiration of the current period of the waiver project.

**(2)** Not later than 45 days after the date such application is received by the Secretary, the Secretary shall notify the State if the Secretary intends to review the terms and conditions of the waiver project. A failure to provide such notification shall be deemed to be an approval of the application.

**(3)** Not later than 45 days after the date a notification is made in accordance with paragraph (2), the Secretary shall inform the State of proposed changes in the terms and conditions of the waiver project. A failure to provide such information shall be deemed to be an approval of the application.

**(4)** During the 30-day period that begins on the date information described in paragraph (3) is provided to a State, the Secretary shall negotiate revised terms and conditions of the waiver project with the State.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    6
**Add.006**

**(5)(A)** Not later than 120 days after the date an application for an extension of the waiver project is submitted to the Secretary (or such later date agreed to by the chief executive officer of the State), the Secretary shall--

    **(i)** approve the application subject to such modifications in the terms and conditions--

        **(I)** as have been agreed to by the Secretary and the State; or

        **(II)** in the absence of such agreement, as are determined by the Secretary to be reasonable, consistent with the overall objectives of the waiver project, and not in violation of applicable law; or

    **(ii)** disapprove the application.

**(B)** A failure by the Secretary to approve or disapprove an application submitted under this subsection in accordance with the requirements of subparagraph (A) shall be deemed to be an approval of the application subject to such modifications in the terms and conditions as have been agreed to (if any) by the Secretary and the State.

**(6)** An approval of an application for an extension of a waiver project under this subsection shall be for a period not to exceed 3 years (5 years, in the case of a waiver described in section 1396n(h)(2) of this title).

**(7)** An extension of a waiver project under this subsection shall be subject to the final reporting and evaluation requirements of paragraphs (4) and (5) of subsection (e) (taking into account the extension under this subsection with respect to any timing requirements imposed under those paragraphs).

## CREDIT(S)

(Aug. 14, 1935, c. 531, Title XI, § 1115, as added Pub.L. 87-543, Title I, § 122, July 25, 1962, 76 Stat. 192; amended Pub.L. 89-97, Title I, § 121(c)(3), July 30, 1965, 79 Stat. 352; Pub.L. 90-36, § 2, June 29, 1967, 81 Stat. 94; Pub.L. 90-248, Title II, §§ 241(c)(4), 247, Jan. 2, 1968, 81 Stat. 917, 918; Pub.L. 93-233, § 18(z-2)(1)(B), Dec. 31, 1973, 87 Stat. 973; Pub.L. 93-647, § 3(c), Jan.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    7

Add.007

4, 1975, 88 Stat. 2349; Pub.L. 95-216, Title IV, § 404, Dec. 20, 1977, 91 Stat. 1562; Pub.L. 97-35, Title XXIII, § 2353(g), Aug. 13, 1981, 95 Stat. 872; Pub.L. 98-369, Div. B, Title VI, § 2663(e)(5), July 18, 1984, 98 Stat. 1168; Pub.L. 98-378, § 10, Aug. 16, 1984, 98 Stat. 1317; Pub.L. 99-272, Title XIV, § 14001(b)(2), Apr. 7, 1986, 100 Stat. 328; Pub.L. 100-485, Title V, § 503, Oct. 13, 1988, 102 Stat. 2402; Pub.L. 104-193, Title I, § 108(g)(2), Aug. 22, 1996, 110 Stat. 2168; Pub.L. 105-33, Title IV, § 4757(a), Aug. 5, 1997, 111 Stat. 527; Pub.L. 106-554, § 1(a)(6) [Title VII, § 703(a)], Dec. 21, 2000, 114 Stat. 2763, 2763A-574; Pub.L. 111-148, Title II, § 2601(b)(2), Title X, § 10201(i), Mar. 23, 2010, 124 Stat. 315, 922; Pub.L. 113-183, Title III, § 302(b), Sept. 29, 2014, 128 Stat. 1945.)


42 U.S.C.A. § 1315, 42 USCA § 1315
Current through P.L. 118-257. Some statute sections may be more current, see credits for details.

**End of Document**                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.                    8

**Add.008**

🚩 KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

United States Code Annotated
  Title 42. The Public Health and Welfare
    Chapter 7. Social Security (Refs & Annos)
      Subchapter XIX. Grants to States for Medical Assistance Programs (Refs & Annos)

42 U.S.C.A. § 1396-1

§ 1396-1. Appropriations

Currentness

For the purpose of enabling each State, as far as practicable under the conditions in such State, to furnish (1) medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals, whose income and resources are insufficient to meet the costs of necessary medical services, and (2) rehabilitation and other services to help such families and individuals attain or retain capability for independence or self-care, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this subchapter. The sums made available under this section shall be used for making payments to States which have submitted, and had approved by the Secretary, State plans for medical assistance.

**CREDIT(S)**

(Aug. 14, 1935, c. 531, Title XIX, § 1901, as added Pub.L. 89-97, Title I, § 121(a), July 30, 1965, 79 Stat. 343; amended Pub.L. 93-233, § 13(a)(1), Dec. 31, 1973, 87 Stat. 960; Pub.L. 98-369, Div. B, Title VI, § 2663(j)(3)(C), July 18, 1984, 98 Stat. 1171.)

Notes of Decisions (24)

42 U.S.C.A. § 1396-1, 42 USCA § 1396-1
Current through P.L. 118-257. Some statute sections may be more current, see credits for details.

**End of Document**                          © 2025 Thomson Reuters. No claim to original U.S. Government Works.

     © 2025 Thomson Reuters. No claim to original U.S. Government Works.     **Add.009**

United States Code Annotated
   Title 42. The Public Health and Welfare
      Chapter 7. Social Security (Refs & Annos)
         Subchapter XIX. Grants to States for Medical Assistance Programs (Refs & Annos)

42 U.S.C.A. § 1396a

§ 1396a. State plans for medical assistance

Currentness

**(a)Contents**

A State plan for medical assistance must--

**(1)** provide that it shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them;

**(2)** provide for financial participation by the State equal to not less than 40 per centum of the non-Federal share of the expenditures under the plan with respect to which payments under section 1396b of this title are authorized by this subchapter; and, effective July 1, 1969, provide for financial participation by the State equal to all of such non-Federal share or provide for distribution of funds from Federal or State sources, for carrying out the State plan, on an equalization or other basis which will assure that the lack of adequate funds from local sources will not result in lowering the amount, duration, scope, or quality of care and services available under the plan;

**(3)** provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness;

**(4)** provide (A) such methods of administration (including methods relating to the establishment and maintenance of personnel standards on a merit basis, except that the Secretary shall exercise no authority with respect to the selection, tenure of office, and compensation of any individual employed in accordance with such methods, including provision for utilization

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    1

Add.010

of professional medical personnel in the administration and, where administered locally, supervision of administration of the plan, and, subject to section 1396b(i) of this title, including a specification that the single State agency described in paragraph (5) will ensure necessary transportation for beneficiaries under the State plan to and from providers and a description of the methods that such agency will use to ensure such transportation) as are found by the Secretary to be necessary for the proper and efficient operation of the plan, (B) for the training and effective use of paid subprofessional staff, with particular emphasis on the full-time or part-time employment of recipients and other persons of low income, as community service aides, in the administration of the plan and for the use of nonpaid or partially paid volunteers in a social service volunteer program in providing services to applicants and recipients and in assisting any advisory committees established by the State agency, (C) that each State or local officer, employee, or independent contractor who is responsible for the expenditure of substantial amounts of funds under the State plan, each individual who formerly was such an officer, employee, or contractor, and each partner of such an officer, employee, or contractor shall be prohibited from committing any act, in relation to any activity under the plan, the commission of which, in connection with any activity concerning the United States Government, by an officer or employee of the United States Government, an individual who was such an officer or employee, or a partner of such an officer or employee is prohibited by section 207 or 208 of Title 18, and (D) that each State or local officer, employee, or independent contractor who is responsible for selecting, awarding, or otherwise obtaining items and services under the State plan shall be subject to safeguards against conflicts of interest that are at least as stringent as the safeguards that apply under chapter 21 of Title 41 to persons described in section 2102(a)(3) of Title 41;

**(5)** either provide for the establishment or designation of a single State agency to administer or to supervise the administration of the plan; or provide for the establishment or designation of a single State agency to administer or to supervise the administration of the plan, except that the determination of eligibility for medical assistance under the plan shall be made by the State or local agency administering the State plan approved under subchapter I or XVI (insofar as it relates to the aged) if the State is eligible to participate in the State plan program established under subchapter XVI, or by the agency or agencies administering the supplemental security income program established under subchapter XVI or the State plan approved under part A of subchapter IV if the State is not eligible to participate in the State plan program established under subchapter XVI;

**(6)** provide that the State agency will make such reports, in such form and containing such information, as the Secretary may from time to time require, and comply with such provisions as the Secretary may from time to time find necessary to assure the correctness and verification of such reports;

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.011

**(7)** provide--

**(A)** safeguards which restrict the use or disclosure of information concerning applicants and recipients to purposes directly connected with--

**(i)** the administration of the plan; and

**(ii)** the exchange of information necessary to certify or verify the certification of eligibility of children for free or reduced price breakfasts under the Child Nutrition Act of 1966 and free or reduced price lunches under the Richard B. Russell National School Lunch Act, in accordance with section 9(b) of that Act, using data standards and formats established by the State agency; and

**(B)** that, notwithstanding the Express Lane option under subsection (e)(13), the State may enter into an agreement with the State agency administering the school lunch program established under the Richard B. Russell National School Lunch Act under which the State shall establish procedures to ensure that--

**(i)** a child receiving medical assistance under the State plan under this subchapter whose family income does not exceed 133 percent of the poverty line (as defined in section 9902(2) of this title, including any revision required by such section), as determined without regard to any expense, block, or other income disregard, applicable to a family of the size involved, may be certified as eligible for free lunches under the Richard B. Russell National School Lunch Act and free breakfasts under the Child Nutrition Act of 1966 without further application; and

**(ii)** the State agencies responsible for administering the State plan under this subchapter, and for carrying out the school lunch program established under the Richard B. Russell National School Lunch Act (42 U.S.C. 1751 et seq.) or the school breakfast program established by section 4 of the Child Nutrition Act of 1966 (42 U.S.C. 1773), cooperate in carrying out paragraphs (3)(F) and (15) of section 9(b) of that Act;

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.012

**(8)** provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals;

**(9)** provide--

**(A)** that the State health agency, or other appropriate State medical agency (whichever is utilized by the Secretary for the purpose specified in the first sentence of section 1395aa(a) of this title), shall be responsible for establishing and maintaining health standards for private or public institutions in which recipients of medical assistance under the plan may receive care or services,

**(B)** for the establishment or designation of a State authority or authorities which shall be responsible for establishing and maintaining standards, other than those relating to health, for such institutions,

**(C)** that any laboratory services paid for under such plan must be provided by a laboratory which meets the applicable requirements of section 1395x(e)(9) of this title or paragraphs (16) and (17) [1] of section 1395x(s) of this title, or, in the case of a laboratory which is in a rural health clinic, of section 1395x(aa)(2)(G) of this title, and

**(D)** that the State maintain a consumer-oriented website providing useful information to consumers regarding all skilled nursing facilities and all nursing facilities in the State, including for each facility, Form 2567 State inspection reports (or a successor form), complaint investigation reports, the facility's plan of correction, and such other information that the State or the Secretary considers useful in assisting the public to assess the quality of long term care options and the quality of care provided by individual facilities;

**(10)** provide--

**(A)** for making medical assistance available, including at least the care and services listed in paragraphs (1) through (5), (13)(B), (17), (21), (28), (29), and (30) of section 1396d(a) of this title, to--

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.013

**(i)** all individuals--

**(I)** who are receiving aid or assistance under any plan of the State approved under subchapter I, X, XIV, or XVI, or part A or part E of subchapter IV (including individuals eligible under this subchapter by reason of section 602(a)(37) [2], 606(h) [2], or 673(b) of this title, or considered by the State to be receiving such aid as authorized under section 682(e)(6) [2] of this title),

**(II)(aa)** with respect to whom supplemental security income benefits are being paid under subchapter XVI (or were being paid as of the date of the enactment of section 211(a) of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (P.L. 104-193) and would continue to be paid but for the enactment of that section), (bb) who are qualified severely impaired individuals (as defined in section 1396d(q) of this title), or (cc) who are under 21 years of age and with respect to whom supplemental security income benefits would be paid under subchapter XVI if subparagraphs (A) and (B) of section 1382(c)(7) of this title were applied without regard to the phrase "the first day of the month following",

**(III)** who are qualified pregnant women or children as defined in section 1396d(n) of this title,

**(IV)** who are described in subparagraph (A) or (B) of subsection (l)(1) and whose family income does not exceed the minimum income level the State is required to establish under subsection (l)(2)(A) for such a family; [3]

**(V)** who are qualified family members as defined in section 1396d(m)(1) of this title,

**(VI)** who are described in subparagraph (C) of subsection (l)(1) and whose family income does not exceed the income level the State is required to establish under subsection (l)(2)(B) for such a family,

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.014
5

USCA Case #24-5172     Document #2101807     Filed: 02/20/2025     Page 18 of 282

**(VII)** who are described in subparagraph (D) of subsection (l)(1) and whose family income does not exceed the income level the State is required to establish under subsection (l)(2)(C) for such a family; [3]

**(VIII)** beginning January 1, 2014, who are under 65 years of age, not pregnant, not entitled to, or enrolled for, benefits under part A of subchapter XVIII, or enrolled for benefits under part B of subchapter XVIII, and are not described in a previous subclause of this clause, and whose income (as determined under subsection (e)(14)) does not exceed 133 percent of the poverty line (as defined in section 1397jj(c)(5) of this title) applicable to a family of the size involved, subject to subsection (k); [3] or

**(IX)** who--

    **(aa)** are under 26 years of age;

    **(bb)** are not described in and are not enrolled under any of subclauses (I) through (VII) of this clause or are described in any of such subclauses but have income that exceeds the level of income applicable under the State plan for eligibility to enroll for medical assistance under such subclause;

    **(cc)** were in foster care under the responsibility of a State on the date of attaining 18 years of age or such higher age as the State has elected under section 675(8)(B)(iii) of this title; and

    **(dd)** were enrolled in a State plan under this subchapter or under a waiver of such a plan while in such foster care; [4]

**(ii)** at the option of the State, to [5] any group or groups of individuals described in section 1396d(a) of this title (or, in the case of individuals described in section 1396d(a)(i) of this title, to [5] any reasonable categories of such individuals) who are not individuals described in clause (i) of this subparagraph but--

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Add.015

**(I)** who meet the income and resources requirements of the appropriate State plan described in clause (i) or the supplemental security income program (as the case may be),

**(II)** who would meet the income and resources requirements of the appropriate State plan described in clause (i) if their work-related child care costs were paid from their earnings rather than by a State agency as a service expenditure,

**(III)** who would be eligible to receive aid under the appropriate State plan described in clause (i) if coverage under such plan was as broad as allowed under Federal law,

**(IV)** with respect to whom there is being paid, or who are eligible, or would be eligible if they were not in a medical institution, to have paid with respect to them, aid or assistance under the appropriate State plan described in clause (i), supplemental security income benefits under subchapter XVI, or a State supplementary payment; [3]

**(V)** who are in a medical institution for a period of not less than 30 consecutive days (with eligibility by reason of this subclause beginning on the first day of such period), who meet the resource requirements of the appropriate State plan described in clause (i) or the supplemental security income program, and whose income does not exceed a separate income standard established by the State which is consistent with the limit established under section 1396b(f)(4)(C) of this title,

**(VI)** who would be eligible under the State plan under this subchapter if they were in a medical institution, with respect to whom there has been a determination that but for the provision of home or community-based services described in subsection (c), (d), or (e) of section 1396n of this title they would require the level of care provided in a hospital, nursing facility or intermediate care facility for the mentally retarded the cost of which could be reimbursed under the State plan, and who will receive home or community-based services pursuant to a waiver granted by the Secretary under subsection (c), (d), or (e) of section 1396n of this title,

**(VII)** who would be eligible under the State plan under this subchapter if they were in a medical institution, who are terminally ill, and who will receive hospice care pursuant to a voluntary election described in section 1396d(o) of this title; [3]

Add.016

**(VIII)** who is a child described in section 1396d(a)(i) of this title--

**(aa)** for whom there is in effect an adoption assistance agreement (other than an agreement under part E of subchapter IV) between the State and an adoptive parent or parents,

**(bb)** who the State agency responsible for adoption assistance has determined cannot be placed with adoptive parents without medical assistance because such child has special needs for medical or rehabilitative care, and

**(cc)** who was eligible for medical assistance under the State plan prior to the adoption assistance agreement being entered into, or who would have been eligible for medical assistance at such time if the eligibility standards and methodologies of the State's foster care program under part E of subchapter IV were applied rather than the eligibility standards and methodologies of the State's aid to families with dependent children program under part A of subchapter IV;[3]

**(IX)** who are described in subsection (l)(1) and are not described in clause (i)(IV), clause (i)(VI), or clause (i)(VII);[3]

**(X)** who are described in subsection (m)(1);[3]

**(XI)** who receive only an optional State supplementary payment based on need and paid on a regular basis, equal to the difference between the individual's countable income and the income standard used to determine eligibility for such supplementary payment (with countable income being the income remaining after deductions as established by the State pursuant to standards that may be more restrictive than the standards for supplementary security income benefits under subchapter XVI), which are available to all individuals in the State (but which may be based on different income standards by political subdivision according to cost of living differences), and which are paid by a State that does not have an agreement with the Commissioner of Social Security under section 1382e or 1383c of this title;[3]

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.  8
Add.017

USCA Case #24-5172     Document #2101807        Filed: 02/20/2025      Page 21 of 282

**(XII)** who are described in subsection (z)(1) (relating to certain TB-infected individuals); [3]

**(XIII)** who are in families whose income is less than 250 percent of the income official poverty line (as defined by the Office of Management and Budget, and revised annually in accordance with section 9902(2) of this title) applicable to a family of the size involved, and who but for earnings in excess of the limit established under section 1396d(q)(2)(B) of this title, would be considered to be receiving supplemental security income (subject, notwithstanding section 1396*o* of this title, to payment of premiums or other cost-sharing charges (set on a sliding scale based on income) that the State may determine); [3]

**(XIV)** who are optional targeted low-income children described in section 1396d(u)(2)(B) of this title; [3]

**(XV)** who, but for earnings in excess of the limit established under section 1396d(q)(2)(B) of this title, would be considered to be receiving supplemental security income, who is at least 16, but less than 65, years of age, and whose assets, resources, and earned or unearned income (or both) do not exceed such limitations (if any) as the State may establish; [3]

**(XVI)** who are employed individuals with a medically improved disability described in section 1396d(v)(1) of this title and whose assets, resources, and earned or unearned income (or both) do not exceed such limitations (if any) as the State may establish, but only if the State provides medical assistance to individuals described in subclause (XV); [3]

**(XVII)** who are independent foster care adolescents (as defined in section 1396d(w)(1) of this title), or who are within any reasonable categories of such adolescents specified by the State; [3]

**(XVIII)** who are described in subsection (aa) (relating to certain breast or cervical cancer patients); [3]

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.      Add.018      9

USCA Case #24-5172     Document #2101807     Filed: 02/20/2025     Page 22 of 282

**(XIX)** who are disabled children described in subsection (cc)(1); [3]

**(XX)** beginning January 1, 2014, who are under 65 years of age and are not described in or enrolled under a previous subclause of this clause, and whose income (as determined under subsection (e)(14)) exceeds 133 percent of the poverty line (as defined in section 1397jj(c)(5) of this title) applicable to a family of the size involved but does not exceed the highest income eligibility level established under the State plan or under a waiver of the plan, subject to subsection (hh); [3]

**(XXI)** who are described in subsection (ii) (relating to individuals who meet certain income standards); [3]

**(XXII)** who are eligible for home and community-based services under needs-based criteria established under paragraph (1)(A) of section 1396n(i) of this title, or who are eligible for home and community-based services under paragraph (6) of such section, and who will receive home and community-based services pursuant to a State plan amendment under such subsection; [3] or

**(XXIII)** during any portion of the emergency period defined in paragraph (1)(B) of section 1320b-5(g) of this title beginning on or after March 18, 2020, who are uninsured individuals (as defined in subsection (ss));

**(B)** that the medical assistance made available to any individual described in subparagraph (A)--

**(i)** shall not be less in amount, duration, or scope than the medical assistance made available to any other such individual, and

**(ii)** shall not be less in amount, duration, or scope than the medical assistance made available to individuals not described in subparagraph (A);

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.019

**(C)** that if medical assistance is included for any group of individuals described in section 1396d(a) of this title who are not described in subparagraph (A) or (E), then--

**(i)** the plan must include a description of (I) the criteria for determining eligibility of individuals in the group for such medical assistance, (II) the amount, duration, and scope of medical assistance made available to individuals in the group, and (III) the single standard to be employed in determining income and resource eligibility for all such groups, and the methodology to be employed in determining such eligibility, which shall be no more restrictive than the methodology which would be employed under the supplemental security income program in the case of groups consisting of aged, blind, or disabled individuals in a State in which such program is in effect, and which shall be no more restrictive than the methodology which would be employed under the appropriate State plan (described in subparagraph (A)(i)) to which such group is most closely categorically related in the case of other groups;

**(ii)** the plan must make available medical assistance--

**(I)** to individuals under the age of 18 who (but for income and resources) would be eligible for medical assistance as an individual described in subparagraph (A)(i), and

**(II)** to pregnant women, during the course of their pregnancy, who (but for income and resources) would be eligible for medical assistance as an individual described in subparagraph (A);

**(iii)** such medical assistance must include (I) with respect to children under 18 and individuals entitled to institutional services, ambulatory services, and (II) with respect to pregnant women, prenatal care and delivery services; and

**(iv)** if such medical assistance includes services in institutions for mental diseases or in an intermediate care facility for the mentally retarded (or both) for any such group, it also must include for all groups covered at least the care and services listed in paragraphs (1) through (5), (13)(B), and (17) of section 1396d(a) of this title or the care and services listed in any 7 of the paragraphs numbered (1) through (24) of such section;

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.      Add.020                                                   11

USCA Case #24-5172     Document #2101807     Filed: 02/20/2025     Page 24 of 282

**(D)** for the inclusion of home health services for any individual who, under the State plan, is entitled to nursing facility services;

**(E)(i)** for making medical assistance available for medicare cost-sharing (as defined in section 1396d(p)(3) of this title) for qualified medicare beneficiaries described in section 1396d(p)(1) of this title;

**(ii)** for making medical assistance available for payment of medicare cost-sharing described in section 1396d(p)(3)(A)(i) of this title for qualified disabled and working individuals described in section 1396d(s) of this title;

**(iii)** for making medical assistance available for medicare cost sharing described in section 1396d(p)(3)(A)(ii) of this title subject to section 1396d(p)(4) of this title, for individuals who would be qualified medicare beneficiaries described in section 1396d(p)(1) of this title (including such individuals enrolled under section 1395*o*(b) of this title) but for the fact that their income exceeds the income level established by the State under section 1396d(p)(2) of this title but is less than 110 percent in 1993 and 1994, and 120 percent in 1995 and years thereafter of the official poverty line (referred to in such section) for a family of the size involved; and

**(iv)** subject to sections 1396u-3 and 1396d(p)(4) of this title, for making medical assistance available for medicare cost-sharing described in section 1396d(p)(3)(A)(ii) of this title for individuals who would be qualified medicare beneficiaries described in section 1396d(p)(1) of this title (including such individuals enrolled under section 1395*o*(b) of this title) but for the fact that their income exceeds the income level established by the State under section 1396d(p)(2) of this title and is at least 120 percent, but less than 135 percent, of the official poverty line (referred to in such section) for a family of the size involved and who are not otherwise eligible for medical assistance under the State plan;

**(F)** at the option of a State, for making medical assistance available for COBRA premiums (as defined in subsection (u)(2)) for qualified COBRA continuation beneficiaries described in subsection (u)(1); and

**(G)** that, in applying eligibility criteria of the supplemental security income program under subchapter XVI for purposes of determining eligibility for medical assistance under the State

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.021

plan of an individual who is not receiving supplemental security income, the State will disregard the provisions of subsections (c) and (e) of section 1382b of this title;

except that (I) the making available of the services described in paragraph (4), (14), or (16) of section 1396d(a) of this title to individuals meeting the age requirements prescribed therein shall not, by reason of this paragraph (10), require the making available of any such services, or the making available of such services of the same amount, duration, and scope, to individuals of any other ages, (II) the making available of supplementary medical insurance benefits under part B of subchapter XVIII to individuals eligible therefor (either pursuant to an agreement entered into under section 1395v of this title or by reason of the payment of premiums under such subchapter by the State agency on behalf of such individuals), or provision for meeting part or all of the cost of deductibles, cost sharing, or similar charges under part B of subchapter XVIII for individuals eligible for benefits under such part, shall not, by reason of this paragraph (10), require the making available of any such benefits, or the making available of services of the same amount, duration, and scope, to any other individuals, (III) the making available of medical assistance equal in amount, duration, and scope to the medical assistance made available to individuals described in clause (A) to any classification of individuals approved by the Secretary with respect to whom there is being paid, or who are eligible, or would be eligible if they were not in a medical institution, to have paid with respect to them, a State supplementary payment shall not, by reason of this paragraph (10), require the making available of any such assistance, or the making available of such assistance of the same amount, duration, and scope, to any other individuals not described in clause (A), (IV) the imposition of a deductible, cost sharing, or similar charge for any item or service furnished to an individual not eligible for the exemption under section 1396o(a)(2) or (b)(2) of this title shall not require the imposition of a deductible, cost sharing, or similar charge for the same item or service furnished to an individual who is eligible for such exemption, (V) the making available to pregnant women covered under the plan of services relating to pregnancy (including prenatal, delivery, and postpartum services) or to any other condition which may complicate pregnancy shall not, by reason of this paragraph (10), require the making available of such services, or the making available of such services of the same amount, duration, and scope, to any other individuals, provided such services are made available (in the same amount, duration, and scope) to all pregnant women covered under the State plan, (VI) with respect to the making available of medical assistance for hospice care to terminally ill individuals who have made a voluntary election described in section 1396d(o) of this title to receive hospice care instead of medical assistance for certain other services, such assistance may not be made available in an amount, duration, or scope less than that provided under subchapter XVIII, and the making available of such assistance shall not, by reason of this paragraph (10), require the making available of medical assistance for hospice care to other individuals or the making available of medical assistance for services waived by such terminally ill individuals, (VII) the medical assistance made available to

an individual described in subsection (l)(1)(A) who is eligible for medical assistance only because of subparagraph (A)(i)(IV) or (A)(ii)(IX) shall be limited to medical assistance for services related to pregnancy (including prenatal, delivery, postpartum, and family planning services), medical assistance for services related to other conditions which may complicate pregnancy, and medical assistance for vaccines described in section 1396d(a)(4)(E) of this title and the administration of such vaccines during the period described in such section, (VIII) the medical assistance made available to a qualified medicare beneficiary described in section 1396d(p)(1) of this title who is only entitled to medical assistance because the individual is such a beneficiary shall be limited to medical assistance for medicare cost-sharing (described in section 1396d(p)(3) of this title), subject to the provisions of subsection (n) and section 1396*o*(b) of this title, (IX) the making available of respiratory care services in accordance with subsection (e)(9) shall not, by reason of this paragraph (10), require the making available of such services, or the making available of such services of the same amount, duration, and scope, to any individuals not included under subsection (e)(9)(A), provided such services are made available (in the same amount, duration, and scope) to all individuals described in such subsection, (X) if the plan provides for any fixed durational limit on medical assistance for inpatient hospital services (whether or not such a limit varies by medical condition or diagnosis), the plan must establish exceptions to such a limit for medically necessary inpatient hospital services furnished with respect to individuals under one year of age in a hospital defined under the State plan, pursuant to section 1396r-4(a)(1)(A) of this title, as a disproportionate share hospital and subparagraph (B) (relating to comparability) shall not be construed as requiring such an exception for other individuals, services, or hospitals, (XI) the making available of medical assistance to cover the costs of premiums, deductibles, coinsurance, and other cost-sharing obligations for certain individuals for private health coverage as described in section 1396e of this title shall not, by reason of paragraph (10), require the making available of any such benefits or the making available of services of the same amount, duration, and scope of such private coverage to any other individuals, (XII) the medical assistance made available to an individual described in subsection (u)(1) who is eligible for medical assistance only because of subparagraph (F) shall be limited to medical assistance for COBRA continuation premiums (as defined in subsection (u)(2)), (XIII) the medical assistance made available to an individual described in subsection (z)(1) who is eligible for medical assistance only because of subparagraph (A)(ii)(XII) shall be limited to medical assistance for TB-related services (described in subsection (z)(2)) and medical assistance for vaccines described in section 1396d(a)(4)(E) of this title and the administration of such vaccines during the period described in such section, (XIV) the medical assistance made available to an individual described in subsection (aa) who is eligible for medical assistance only because of subparagraph (A)(10)(ii)(XVIII) shall be limited to medical assistance provided during the period in which such an individual requires treatment for breast or cervical cancer [6] (XV) the medical assistance made available to an individual described in subparagraph (A)(i)(VIII) shall be limited to medical assistance described in

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.    14

Add.023

subsection (k)(1) and medical assistance for vaccines described in section 1396d(a)(4)(E) of this title and the administration of such vaccines during the period described in such section, (XVI) the medical assistance made available to an individual described in subsection (ii) shall be limited to family planning services and supplies described in section 1396d(a)(4)(C) of this title including medical diagnosis and treatment services that are provided pursuant to a family planning service in a family planning setting and medical assistance for vaccines described in section 1396d(a)(4)(E) of this title and the administration of such vaccines during the period described in such section, (XVII) if an individual is described in subclause (IX) of subparagraph (A)(i) and is also described in subclause (VIII) of that subparagraph, the medical assistance shall be made available to the individual through subclause (IX) instead of through subclause (VIII), and (XVIII) the medical assistance made available to an uninsured individual (as defined in subsection (ss)) who is eligible for medical assistance only because of subparagraph (A)(ii)(XXIII) shall be limited to medical assistance for any in vitro diagnostic product described in section 1396d(a)(3)(B) of this title that is administered during any portion of the emergency period described in such section beginning on or after March 18, 2020 (and the administration of such product), any service described in section 1396o(a)(2)(G) of this title that is furnished during any such portion, any vaccine described in section 1396d(a)(4)(E) of this title (and the administration of such vaccine) that is furnished during any such portion, and testing and treatments for COVID-19, including specialized equipment and therapies (including preventive therapies), and, in the case of an individual who is diagnosed with or presumed to have COVID-19, during the period such individual has (or is presumed to have) COVID-19, the treatment of a condition that may seriously complicate the treatment of COVID-19, if otherwise covered under the State plan (or waiver of such plan), and (XIX) medical assistance shall be made available during the period described in section 1396d(a)(4)(E) of this title for vaccines described in such section and the administration of such vaccines, for any individual who is eligible for and receiving medical assistance under the State plan or under a waiver of such plan (other than an individual who is eligible for medical assistance consisting only of payment of premiums pursuant to subparagraph (E) or (F) or section 1396u-3 of this title), notwithstanding any provision of this subchapter or waiver under section 1315 of this title impacting such individual's eligibility for medical assistance under such plan or waiver to coverage for a limited type of benefits and services that would not otherwise include coverage of a COVID-19 vaccine and its administration;

**(11)** (A) provide for entering into cooperative arrangements with the State agencies responsible for administering or supervising the administration of health services and vocational rehabilitation services in the State looking toward maximum utilization of such services in the provision of medical assistance under the plan, (B) provide, to the extent prescribed by the Secretary, for entering into agreements, with any agency, institution, or organization receiving payments under (or through an allotment under) subchapter V, (i) providing for utilizing such agency, institution, or organization in furnishing care and services which are available under

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.     Add.024

USCA Case #24-5172     Document #2101807     Filed: 02/20/2025     Page 28 of 282

such subchapter or allotment and which are included in the State plan approved under this section [6] (ii) making such provision as may be appropriate for reimbursing such agency, institution, or organization for the cost of any such care and services furnished any individual for which payment would otherwise be made to the State with respect to the individual under section 1396b of this title, and (iii) providing for coordination of information and education on pediatric vaccinations and delivery of immunization services, and (C) provide for coordination of the operations under this subchapter, including the provision of information and education on pediatric vaccinations and the delivery of immunization services, with the State's operations under the special supplemental nutrition program for women, infants, and children under section 17 of the Child Nutrition Act of 1966;

**(12)** provide that, in determining whether an individual is blind, there shall be an examination by a physician skilled in the diseases of the eye or by an optometrist, whichever the individual may select;

**(13)** provide--

**(A)** for a public process for determination of rates of payment under the plan for hospital services, nursing facility services, and services of intermediate care facilities for the mentally retarded under which--

**(i)** proposed rates, the methodologies underlying the establishment of such rates, and justifications for the proposed rates are published,

**(ii)** providers, beneficiaries and their representatives, and other concerned State residents are given a reasonable opportunity for review and comment on the proposed rates, methodologies, and justifications,

**(iii)** final rates, the methodologies underlying the establishment of such rates, and justifications for such final rates are published, and

**(iv)** in the case of hospitals, such rates take into account (in a manner consistent with section 1396r-4 of this title) the situation of hospitals which serve a disproportionate number of low-income patients with special needs;

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.025

**(B)** for payment for hospice care in amounts no lower than the amounts, using the same methodology, used under part A of subchapter XVIII and for payment of amounts under section 1396d(o)(3) of this title; except that in the case of hospice care which is furnished to an individual who is a resident of a nursing facility or intermediate care facility for the mentally retarded, and who would be eligible under the plan for nursing facility services or services in an intermediate care facility for the mentally retarded if he had not elected to receive hospice care, there shall be paid an additional amount, to take into account the room and board furnished by the facility, equal to at least 95 percent of the rate that would have been paid by the State under the plan for facility services in that facility for that individual; and

**(C)** payment for primary care services (as defined in subsection (jj)) furnished in 2013 and 2014 by a physician with a primary specialty designation of family medicine, general internal medicine, or pediatric medicine at a rate not less than 100 percent of the payment rate that applies to such services and physician under part B of subchapter XVIII (or, if greater, the payment rate that would be applicable under such part if the conversion factor under section 1395w-4(d) of this title for the year involved were the conversion factor under such section for 2009);

**(14)** provide that enrollment fees, premiums, or similar charges, and deductions, cost sharing, or similar charges, may be imposed only as provided in section 1396*o* of this title;

**(15)** provide for payment for services described in clause (B) or (C) of section 1396d(a)(2) of this title under the plan in accordance with subsection (bb);

**(16)** provide for inclusion, to the extent required by regulations prescribed by the Secretary, of provisions (conforming to such regulations) with respect to the furnishing of medical assistance under the plan to individuals who are residents of the State but are absent therefrom;

**(17)** except as provided in subsections (e)(14), (e)(15), (l)(3), (m)(3), and (m)(4), include reasonable standards (which shall be comparable for all groups and may, in accordance with standards prescribed by the Secretary, differ with respect to income levels, but only in the case of applicants or recipients of assistance under the plan who are not receiving aid or assistance under any plan of the State approved under subchapter I, X, XIV, or XVI, or part A of subchapter IV, and with respect to whom supplemental security income benefits are not being paid under subchapter XVI, based on the variations between shelter costs in urban areas and in rural areas) for determining eligibility for and the extent of medical assistance under the plan which (A)

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.    Add.026    17

are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are, as determined in accordance with standards prescribed by the Secretary, available to the applicant or recipient and (in the case of any applicant or recipient who would, except for income and resources, be eligible for aid or assistance in the form of money payments under any plan of the State approved under subchapter I, X, XIV, or XVI, or part A of subchapter IV, or to have paid with respect to him supplemental security income benefits under subchapter XVI) as would not be disregarded (or set aside for future needs) in determining his eligibility for such aid, assistance, or benefits, (C) provide for reasonable evaluation of any such income or resources, and (D) do not take into account the financial responsibility of any individual for any applicant or recipient of assistance under the plan unless such applicant or recipient is such individual's spouse or such individual's child who is under age 21 or (with respect to States eligible to participate in the State program established under subchapter XVI), is blind or permanently and totally disabled, or is blind or disabled as defined in section 1382c of this title (with respect to States which are not eligible to participate in such program); and provide for flexibility in the application of such standards with respect to income by taking into account, except to the extent prescribed by the Secretary, the costs (whether in the form of insurance premiums, payments made to the State under section 1396b(f)(2)(B) of this title, or otherwise and regardless of whether such costs are reimbursed under another public program of the State or political subdivision thereof) incurred for medical care or for any other type of remedial care recognized under State law;

**(18)** comply with the provisions of section 1396p of this title with respect to liens, adjustments and recoveries of medical assistance correctly paid,,[7] transfers of assets, and treatment of certain trusts;

**(19)** provide such safeguards as may be necessary to assure that eligibility for care and services under the plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interests of the recipients;

**(20)** if the State plan includes medical assistance in behalf of individuals 65 years of age or older who are patients in institutions for mental diseases--

**(A)** provide for having in effect such agreements or other arrangements with State authorities concerned with mental diseases, and, where appropriate, with such institutions, as may be necessary for carrying out the State plan, including arrangements for joint planning and for development of alternate methods of care, arrangements providing assurance of immediate readmittance to institutions where needed for individuals under alternate plans of care, and

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.027

USCA Case #24-5172     Document #2101807     Filed: 02/20/2025     Page 31 of 282

arrangements providing for access to patients and facilities, for furnishing information, and for making reports;

**(B)** provide for an individual plan for each such patient to assure that the institutional care provided to him is in his best interests, including, to that end, assurances that there will be initial and periodic review of his medical and other needs, that he will be given appropriate medical treatment within the institution, and that there will be a periodic determination of his need for continued treatment in the institution; and

**(C)** provide for the development of alternate plans of care, making maximum utilization of available resources, for recipients 65 years of age or older who would otherwise need care in such institutions, including appropriate medical treatment and other aid or assistance; for services referred to in section 303(a)(4)(A)(i) and (ii) or section 1383(a)(4)(A)(i) and (ii) of this title which are appropriate for such recipients and for such patients; and for methods of administration necessary to assure that the responsibilities of the State agency under the State plan with respect to such recipients and such patients will be effectively carried out;

**(21)** if the State plan includes medical assistance in behalf of individuals 65 years of age or older who are patients in public institutions for mental diseases, show that the State is making satisfactory progress toward developing and implementing a comprehensive mental health program, including provision for utilization of community mental health centers, nursing facilities, and other alternatives to care in public institutions for mental diseases;

**(22)** include descriptions of (A) the kinds and numbers of professional medical personnel and supporting staff that will be used in the administration of the plan and of the responsibilities they will have, (B) the standards, for private or public institutions in which recipients of medical assistance under the plan may receive care or services, that will be utilized by the State authority or authorities responsible for establishing and maintaining such standards, (C) the cooperative arrangements with State health agencies and State vocational rehabilitation agencies entered into with a view to maximum utilization of and coordination of the provision of medical assistance with the services administered or supervised by such agencies, and (D) other standards and methods that the State will use to assure that medical or remedial care and services provided to recipients of medical assistance are of high quality;

**(23)** provide that (A) any individual eligible for medical assistance (including drugs) may obtain such assistance from any institution, agency, community pharmacy, or person, qualified

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.  19
Add.028

to perform the service or services required (including an organization which provides such services, or arranges for their availability, on a prepayment basis), who undertakes to provide him such services, and (B) an enrollment of an individual eligible for medical assistance in a primary care case-management system (described in section 1396n(b)(1) of this title), a medicaid managed care organization, or a similar entity shall not restrict the choice of the qualified person from whom the individual may receive services under section 1396d(a)(4)(C) of this title, except as provided in subsection (g), in section 1396n of this title, and in section 1396u-2(a) of this title, except that this paragraph shall not apply in the case of Puerto Rico, the Virgin Islands, and Guam, and except that nothing in this paragraph shall be construed as requiring a State to provide medical assistance for such services furnished by a person or entity convicted of a felony under Federal or State law for an offense which the State agency determines is inconsistent with the best interests of beneficiaries under the State plan or by a provider or supplier to which a moratorium under subsection (kk)(4) is applied during the period of such moratorium;

**(24)** effective July 1, 1969, provide for consultative services by health agencies and other appropriate agencies of the State to hospitals, nursing facilities, home health agencies, clinics, laboratories, and such other institutions as the Secretary may specify in order to assist them (A) to qualify for payments under this chapter, (B) to establish and maintain such fiscal records as may be necessary for the proper and efficient administration of this chapter, and (C) to provide information needed to determine payments due under this chapter on account of care and services furnished to individuals;

**(25)** provide--

    **(A)** that the State or local agency administering such plan will take all reasonable measures to ascertain the legal liability of third parties (including health insurers, self-insured plans, group health plans (as defined in section 607(1) of the Employee Retirement Income Security Act of 1974), service benefit plans, managed care organizations, pharmacy benefit managers, or other parties that are, by statute, contract, or agreement, legally responsible for payment of a claim for a health care item or service) to pay for care and services available under the plan, including--

        **(i)** the collection of sufficient information (as specified by the Secretary in regulations) to enable the State to pursue claims against such third parties, with such information being collected at the time of any determination or redetermination of eligibility for medical assistance, and

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.    20

Add.029

**(ii)** the submission to the Secretary of a plan (subject to approval by the Secretary) for pursuing claims against such third parties, which plan shall be integrated with, and be monitored as a part of the Secretary's review of, the State's mechanized claims processing and information retrieval systems required under section 1396b(r) of this title;

**(B)** that in any case where such a legal liability is found to exist after medical assistance has been made available on behalf of the individual and where the amount of reimbursement the State can reasonably expect to recover exceeds the costs of such recovery, the State or local agency will seek reimbursement for such assistance to the extent of such legal liability;

**(C)** that in the case of an individual who is entitled to medical assistance under the State plan with respect to a service for which a third party is liable for payment, the person furnishing the service may not seek to collect from the individual (or any financially responsible relative or representative of that individual) payment of an amount for that service (i) if the total of the amount of the liabilities of third parties for that service is at least equal to the amount payable for that service under the plan (disregarding section 1396*o* of this title), or (ii) in an amount which exceeds the lesser of (I) the amount which may be collected under section 1396*o* of this title, or (II) the amount by which the amount payable for that service under the plan (disregarding section 1396*o* of this title) exceeds the total of the amount of the liabilities of third parties for that service;

**(D)** that a person who furnishes services and is participating under the plan may not refuse to furnish services to an individual (who is entitled to have payment made under the plan for the services the person furnishes) because of a third party's potential liability for payment for the service;

**(E)** that in the case of preventive pediatric care (including early and periodic screening and diagnosis services under section 1396d(a)(4)(B) of this title) covered under the State plan, the State shall--

**(i)** make payment for such service in accordance with the usual payment schedule under such plan for such services without regard to the liability of a third party for payment for such services, except that the State may, if the State determines doing so is cost-effective and will not adversely affect access to care, only make such payment if a third party so

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.030                                      21

liable has not made payment within 90 days after the date the provider of such services has initially submitted a claim to such third party for payment for such services; and

**(ii)** seek reimbursement from such third party in accordance with subparagraph (B);

**(F)** that in the case of any services covered under such plan which are provided to an individual on whose behalf child support enforcement is being carried out by the State agency under part D of subchapter IV of this chapter, the State shall--

**(i)** make payment for such service in accordance with the usual payment schedule under such plan for such services without regard to any third-party liability for payment for such services, if such third-party liability is derived (through insurance or otherwise) from the parent whose obligation to pay support is being enforced by such agency, if payment has not been made by such third party within 100 days after the date the provider of such services has initially submitted a claim to such third party for payment for such services, except that the State may make such payment within 30 days after such date if the State determines doing so is cost-effective and necessary to ensure access to care.;[7] and

**(ii)** seek reimbursement from such third party in accordance with subparagraph (B);

**(G)** that the State prohibits any health insurer (including a group health plan, as defined in section 607(1) of the Employee Retirement Income Security Act of 1974, a self-insured plan, a service benefit plan, a managed care organization, a pharmacy benefit manager, or other party that is, by statute, contract, or agreement, legally responsible for payment of a claim for a health care item or service), in enrolling an individual or in making any payments for benefits to the individual or on the individual's behalf, from taking into account that the individual is eligible for or is provided medical assistance under a plan under this subchapter for such State, or any other State;

**(H)** that to the extent that payment has been made under the State plan for medical assistance in any case where a third party has a legal liability to make payment for such assistance, the State has in effect laws under which, to the extent that payment has been made under the State plan for medical assistance for health care items or services furnished to an individual, the State is considered to have acquired the rights of such individual to payment by any other party for such health care items or services; and

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.031

**(I)** that the State shall provide assurances satisfactory to the Secretary that the State has in effect laws requiring health insurers, including self-insured plans, group health plans (as defined in section 607(1) of the Employee Retirement Income Security Act of 1974), service benefit plans, managed care organizations, pharmacy benefit managers, or other parties that are, by statute, contract, or agreement, legally responsible for payment of a claim for a health care item or service, as a condition of doing business in the State, to--

**(i)** provide, with respect to individuals who are eligible (and, at State option, individuals who apply or whose eligibility for medical assistance is being evaluated in accordance with subsection (e)(13)(D)) for, or are provided, medical assistance under a State plan (or under a waiver of the plan) under this subchapter and child health assistance under subchapter XXI, upon the request of the State, information to determine during what period the individual or their spouses or their dependents may be (or may have been) covered by a health insurer and the nature of the coverage that is or was provided by the health insurer (including the name, address, and identifying number of the plan) in a manner prescribed by the Secretary;

**(ii)(I)** accept the State's right of recovery and the assignment to the State of any right of an individual or other entity to payment from the party for an item or service for which payment has been made under the State plan (or under a waiver of such plan); and

**(II)** in the case of a responsible third party (other than the original medicare fee-for-service program under parts A and B of subchapter XVIII, a Medicare Advantage plan offered by a Medicare Advantage organization under part C of subchapter XVIII, a reasonable cost reimbursement plan under section 1395mm of this title, a health care prepayment plan under section 1395*l* of this title, or a prescription drug plan offered by a PDP sponsor under part D of subchapter XVIII) that requires prior authorization for an item or service furnished to an individual eligible to receive medical assistance under this subchapter, accept authorization provided by the State that the item or service is covered under the State plan (or waiver of such plan) for such individual, as if such authorization were the prior authorization made by the third party for such item or service;

**(iii)** not later than 60 days after receiving any inquiry by the State regarding a claim for payment for any health care item or service that is submitted not later than 3 years after the date of the provision of such health care item or service, respond to such inquiry; and

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    23

Add.032

**(iv)** agree not to deny a claim submitted by the State solely on the basis of the date of submission of the claim, the type or format of the claim form, a failure to present proper documentation at the point-of-sale that is the basis of the claim, or in the case of a responsible third party (other than the original medicare fee-for-service program under parts A and B of subchapter XVIII, a Medicare Advantage plan offered by a Medicare Advantage organization under part C of subchapter XVIII, a reasonable cost reimbursement plan under section 1395mm of this title, a health care prepayment plan under section 1395*l* of this title, or a prescription drug plan offered by a PDP sponsor under part D of such subchapter) a failure to obtain a prior authorization for the item or service for which the claim is being submitted, if--

**(I)** the claim is submitted by the State within the 3-year period beginning on the date on which the item or service was furnished; and

**(II)** any action by the State to enforce its rights with respect to such claim is commenced within 6 years of the State's submission of such claim;

**(26)** if the State plan includes medical assistance for inpatient mental hospital services, provide, with respect to each patient receiving such services, for a regular program of medical review (including medical evaluation) of his need for such services, and for a written plan of care;

**(27)** provide for agreements with every person or institution providing services under the State plan under which such person or institution agrees (A) to keep such records as are necessary fully to disclose the extent of the services provided to individuals receiving assistance under the State plan, and (B) to furnish the State agency or the Secretary with such information, regarding any payments claimed by such person or institution for providing services under the State plan, as the State agency or the Secretary may from time to time request;

**(28)** provide--

**(A)** that any nursing facility receiving payments under such plan must satisfy all the requirements of subsections (b) through (d) of section 1396r of this title as they apply to such facilities;

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.033
24

**(B)** for including in "nursing facility services" at least the items and services specified (or deemed to be specified) by the Secretary under section 1396r(f)(7) of this title and making available upon request a description of the items and services so included;

**(C)** for procedures to make available to the public the data and methodology used in establishing payment rates for nursing facilities under this subchapter; and

**(D)** for compliance (by the date specified in the respective sections) with the requirements of--

**(i)** section 1396r(e) of this title;

**(ii)** section 1396r(g) of this title (relating to responsibility for survey and certification of nursing facilities); and

**(iii)** sections 1396r(h)(2)(B) and 1396r(h)(2)(D) of this title (relating to establishment and application of remedies);

**(29)** include a State program which meets the requirements set forth in section 1396g of this title, for the licensing of administrators of nursing homes;

**(30)(A)** provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan (including but not limited to utilization review plans as provided for in section 1396b(i)(4) of this title) as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area; and

**(B)** provide, under the program described in subparagraph (A), that--

**(i)** each admission to a hospital, intermediate care facility for the mentally retarded, or hospital for mental diseases is reviewed or screened in accordance with criteria established by medical and other professional personnel who are not themselves directly responsible for the care of

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    25

Add.034

USCA Case #24-5172    Document #2101807    Filed: 02/20/2025    Page 38 of 282

the patient involved, and who do not have a significant financial interest in any such institution and are not, except in the case of a hospital, employed by the institution providing the care involved, and

**(ii)** the information developed from such review or screening, along with the data obtained from prior reviews of the necessity for admission and continued stay of patients by such professional personnel, shall be used as the basis for establishing the size and composition of the sample of admissions to be subject to review and evaluation by such personnel, and any such sample may be of any size up to 100 percent of all admissions and must be of sufficient size to serve the purpose of (I) identifying the patterns of care being provided and the changes occurring over time in such patterns so that the need for modification may be ascertained, and (II) subjecting admissions to early or more extensive review where information indicates that such consideration is warranted to a hospital, intermediate care facility for the mentally retarded, or hospital for mental diseases;

**(31)** with respect to services in an intermediate care facility for the mentally retarded (where the State plan includes medical assistance for such services) provide, with respect to each patient receiving such services, for a written plan of care, prior to admission to or authorization of benefits in such facility, in accordance with regulations of the Secretary, and for a regular program of independent professional review (including medical evaluation) which shall periodically review his need for such services;

**(32)** provide that no payment under the plan for any care or service provided to an individual shall be made to anyone other than such individual or the person or institution providing such care or service, under an assignment or power of attorney or otherwise; except that--

**(A)** in the case of any care or service provided by a physician, dentist, or other individual practitioner, such payment may be made (i) to the employer of such physician, dentist, or other practitioner if such physician, dentist, or practitioner is required as a condition of his employment to turn over his fee for such care or service to his employer, or (ii) (where the care or service was provided in a hospital, clinic, or other facility) to the facility in which the care or service was provided if there is a contractual arrangement between such physician, dentist, or practitioner and such facility under which such facility submits the bill for such care or service;

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Add.035

**(B)** nothing in this paragraph shall be construed (i) to prevent the making of such a payment in accordance with an assignment from the person or institution providing the care or service involved if such assignment is made to a governmental agency or entity or is established by or pursuant to the order of a court of competent jurisdiction, or (ii) to preclude an agent of such person or institution from receiving any such payment if (but only if) such agent does so pursuant to an agency agreement under which the compensation to be paid to the agent for his services for or in connection with the billing or collection of payments due such person or institution under the plan is unrelated (directly or indirectly) to the amount of such payments or the billings therefor, and is not dependent upon the actual collection of any such payment;

**(C)** in the case of services furnished (during a period that does not exceed 14 continuous days in the case of an informal reciprocal arrangement or 90 continuous days (or such longer period as the Secretary may provide) in the case of an arrangement involving per diem or other fee-for-time compensation) by, or incident to the services of, one physician to the patients of another physician who submits the claim for such services, payment shall be made to the physician submitting the claim (as if the services were furnished by, or incident to, the physician's services), but only if the claim identifies (in a manner specified by the Secretary) the physician who furnished the services; and

**(D)** in the case of payment for a childhood vaccine administered before October 1, 1994, to individuals entitled to medical assistance under the State plan, the State plan may make payment directly to the manufacturer of the vaccine under a voluntary replacement program agreed to by the State pursuant to which the manufacturer (i) supplies doses of the vaccine to providers administering the vaccine, (ii) periodically replaces the supply of the vaccine, and (iii) charges the State the manufacturer's price to the Centers for Disease Control and Prevention for the vaccine so administered (which price includes a reasonable amount to cover shipping and the handling of returns);

**(33)** provide--

**(A)** that the State health agency, or other appropriate State medical agency, shall be responsible for establishing a plan, consistent with regulations prescribed by the Secretary, for the review by appropriate professional health personnel of the appropriateness and quality of care and services furnished to recipients of medical assistance under the plan in order to provide guidance with respect thereto in the administration of the plan to the State agency

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.036

established or designated pursuant to paragraph (5) and, where applicable, to the State agency described in the second sentence of this subsection; and

**(B)** that, except as provided in section 1396r(g) of this title, the State or local agency utilized by the Secretary for the purpose specified in the first sentence of section 1395aa(a) of this title, or, if such agency is not the State agency which is responsible for licensing health institutions, the State agency responsible for such licensing, will perform for the State agency administering or supervising the administration of the plan approved under this subchapter the function of determining whether institutions and agencies meet the requirements for participation in the program under such plan, except that, if the Secretary has cause to question the adequacy of such determinations, the Secretary is authorized to validate State determinations and, on that basis, make independent and binding determinations concerning the extent to which individual institutions and agencies meet the requirements for participation;

**(34)** provide that in the case of any individual who has been determined to be eligible for medical assistance under the plan, such assistance will be made available to him for care and services included under the plan and furnished in or after the third month before the month in which he made application (or application was made on his behalf in the case of a deceased individual) for such assistance if such individual was (or upon application would have been) eligible for such assistance at the time such care and services were furnished;

**(35)** provide that any disclosing entity (as defined in section 1320a-3(a)(2) of this title) receiving payments under such plan complies with the requirements of section 1320a-3 of this title;

**(36)** provide that within 90 days following the completion of each survey of any health care facility, laboratory, agency, clinic, or organization, by the appropriate State agency described in paragraph (9), such agency shall (in accordance with regulations of the Secretary) make public in readily available form and place the pertinent findings of each such survey relating to the compliance of each such health care facility, laboratory, clinic, agency, or organization with (A) the statutory conditions of participation imposed under this subchapter, and (B) the major additional conditions which the Secretary finds necessary in the interest of health and safety of individuals who are furnished care or services by any such facility, laboratory, clinic, agency, or organization;

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.037

**(37)** provide for claims payment procedures which (A) ensure that 90 per centum of claims for payment (for which no further written information or substantiation is required in order to make payment) made for services covered under the plan and furnished by health care practitioners through individual or group practices or through shared health facilities are paid within 30 days of the date of receipt of such claims and that 99 per centum of such claims are paid within 90 days of the date of receipt of such claims, and (B) provide for procedures of prepayment and postpayment claims review, including review of appropriate data with respect to the recipient and provider of a service and the nature of the service for which payment is claimed, to ensure the proper and efficient payment of claims and management of the program;

**(38)** require that an entity (other than an individual practitioner or a group of practitioners) that furnishes, or arranges for the furnishing of, items or services under the plan, shall supply (within such period as may be specified in regulations by the Secretary or by the single State agency which administers or supervises the administration of the plan) upon request specifically addressed to such entity by the Secretary or such State agency, the information described in section 1320a-7(b)(9) of this title;

**(39)** provide that the State agency shall exclude any specified individual or entity from participation in the program under the State plan for the period specified by the Secretary, when required by him to do so pursuant to section 1320a-7 of this title or section 1320a-7a of this title, terminate the participation of any individual or entity in such program if (subject to such exceptions as are permitted with respect to exclusion under sections 1320a-7(c)(3)(B) and 1320a-7(d)(3)(B) of this title) participation of such individual or entity is terminated under subchapter XVIII, any other State plan under this subchapter (or waiver of the plan), or any State child health plan under subchapter XXI (or waiver of the plan) and such termination is included by the Secretary in any database or similar system developed pursuant to section 6401(b)(2) of the Patient Protection and Affordable Care Act, and provide that no payment may be made under the plan with respect to any item or service furnished by such individual or entity during such period;

**(40)** require each health services facility or organization which receives payments under the plan and of a type for which a uniform reporting system has been established under section 1320a(a) of this title to make reports to the Secretary of information described in such section in accordance with the uniform reporting system (established under such section) for that type of facility or organization;

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.     Add.038

**(41)** provide, in accordance with subsection (kk)(8) (as applicable), that whenever a provider of services or any other person is terminated, suspended, or otherwise sanctioned or prohibited from participating under the State plan, the State agency shall promptly notify the Secretary and, in the case of a physician and notwithstanding paragraph (7), the State medical licensing board of such action;

**(42)** provide that--

   **(A)** the records of any entity participating in the plan and providing services reimbursable on a cost-related basis will be audited as the Secretary determines to be necessary to insure that proper payments are made under the plan; and

   **(B)** not later than December 31, 2010, the State shall--

      **(i)** establish a program under which the State contracts (consistent with State law and in the same manner as the Secretary enters into contracts with recovery audit contractors under section 1395ddd(h) of this title, subject to such exceptions or requirements as the Secretary may require for purposes of this subchapter or a particular State) with 1 or more recovery audit contractors for the purpose of identifying underpayments and overpayments and recouping overpayments under the State plan and under any waiver of the State plan with respect to all services for which payment is made to any entity under such plan or waiver; and

      **(ii)** provide assurances satisfactory to the Secretary that--

         **(I)** under such contracts, payment shall be made to such a contractor only from amounts recovered;

         **(II)** from such amounts recovered, payment--

            **(aa)** shall be made on a contingent basis for collecting overpayments; and

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Add.039

**(bb)** may be made in such amounts as the State may specify for identifying underpayments;

**(III)** the State has an adequate process for entities to appeal any adverse determination made by such contractors; and

**(IV)** such program is carried out in accordance with such requirements as the Secretary shall specify, including--

**(aa)** for purposes of section 1396b(a)(7) of this title, that amounts expended by the State to carry out the program shall be considered amounts expended as necessary for the proper and efficient administration of the State plan or a waiver of the plan;

**(bb)** that section 1396b(d) of this title shall apply to amounts recovered under the program; and

**(cc)** that the State and any such contractors under contract with the State shall coordinate such recovery audit efforts with other contractors or entities performing audits of entities receiving payments under the State plan or waiver in the State, including efforts with Federal and State law enforcement with respect to the Department of Justice, including the Federal Bureau of Investigations, [8] the Inspector General of the Department of Health and Human Services, and the State medicaid fraud control unit; and

**(43)** provide for--

**(A)** informing all persons in the State who are under the age of 21 and who have been determined to be eligible for medical assistance including services described in section 1396d(a)(4)(B) of this title, of the availability of early and periodic screening, diagnostic, and treatment services as described in section 1396d(r) of this title and the need for age-appropriate immunizations against vaccine-preventable diseases,

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.040

**(B)** providing or arranging for the provision of such screening services in all cases where they are requested,

**(C)** arranging for (directly or through referral to appropriate agencies, organizations, or individuals) corrective treatment the need for which is disclosed by such child health screening services, and

**(D)** reporting to the Secretary (in a uniform form and manner established by the Secretary, by age group and by basis of eligibility for medical assistance, and by not later than April 1 after the end of each fiscal year, beginning with fiscal year 1990) the following information relating to early and periodic screening, diagnostic, and treatment services provided under the plan during each fiscal year:

   **(i)** the number of children provided child health screening services,

   **(ii)** the number of children referred for corrective treatment (the need for which is disclosed by such child health screening services),

   **(iii)** the number of children receiving dental services, and other information relating to the provision of dental services to such children described in section 1397hh(e) of this title [9], and

   **(iv)** the State's results in attaining the participation goals set for the State under section 1396d(r) of this title;

**(44)** in each case for which payment for inpatient hospital services, services in an intermediate care facility for the mentally retarded, or inpatient mental hospital services is made under the State plan--

**(A)** a physician (or, in the case of skilled nursing facility services or intermediate care facility services, a physician, or a nurse practitioner or clinical nurse specialist who is not an employee of the facility but is working in collaboration with a physician) certifies at the time of admission, or, if later, the time the individual applies for medical assistance under the State

(Page 44 of Total)     WESTLAW     © 2025 Thomson Reuters. No claim to original U.S. Government Works.     32

plan (and a physician, a physician assistant under the supervision of a physician, or, in the case of skilled nursing facility services or intermediate care facility services, a physician, or a nurse practitioner or clinical nurse specialist who is not an employee of the facility but is working in collaboration with a physician, recertifies, where such services are furnished over a period of time, in such cases, at least as often as required under section 1396b(g)(6) of this title (or, in the case of services that are services provided in an intermediate care facility for the mentally retarded, every year), and accompanied by such supporting material, appropriate to the case involved, as may be provided in regulations of the Secretary), that such services are or were required to be given on an inpatient basis because the individual needs or needed such services, and

**(B)** such services were furnished under a plan established and periodically reviewed and evaluated by a physician, or, in the case of skilled nursing facility services or intermediate care facility services, a physician, or a nurse practitioner or clinical nurse specialist who is not an employee of the facility but is working in collaboration with a physician;

**(45)** provide for mandatory assignment of rights of payment for medical support and other medical care owed to recipients, in accordance with section 1396k of this title;

**(46)(A)** provide that information is requested and exchanged for purposes of income and eligibility verification in accordance with a State system which meets the requirements of section 1320b-7 of this title; and

**(B)** provide, with respect to an individual declaring to be a citizen or national of the United States for purposes of establishing eligibility under this subchapter, that the State shall satisfy the requirements of--

**(i)** section 1396b(x) of this title; or

**(ii)** subsection (ee);

**(47)** provide--

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.042

USCA Case #24-5172    Document #2101807    Filed: 02/20/2025    Page 46 of 282

**(A)** at the option of the State, for making ambulatory prenatal care available to pregnant women during a presumptive eligibility period in accordance with section 1396r-1 of this title and provide for making medical assistance for items and services described in subsection (a) of section 1396r-1a of this title available to children during a presumptive eligibility period in accordance with such section and provide for making medical assistance available to individuals described in subsection (a) of section 1396r-1b of this title during a presumptive eligibility period in accordance with such section and provide for making medical assistance available to individuals described in subsection (a) of section 1396r-1c of this title during a presumptive eligibility period in accordance with such section; and

**(B)** that any hospital that is a participating provider under the State plan may elect to be a qualified entity for purposes of determining, on the basis of preliminary information, whether any individual is eligible for medical assistance under the State plan or under a waiver of the plan for purposes of providing the individual with medical assistance during a presumptive eligibility period, in the same manner, and subject to the same requirements, as apply to the State options with respect to populations described in section 1396r-1, 1396r-1a, 1396r-1b, or 1396r-1c of this title (but without regard to whether the State has elected to provide for a presumptive eligibility period under any such sections), subject to such guidance as the Secretary shall establish;

**(48)** provide a method of making cards evidencing eligibility for medical assistance available to an eligible individual who does not reside in a permanent dwelling or does not have a fixed home or mailing address;

**(49)** provide that the State will provide information and access to certain information respecting sanctions taken against health care practitioners and providers by State licensing authorities in accordance with section 1396r-2 of this title;

**(50)** provide, in accordance with subsection (q), for a monthly personal needs allowance for certain institutionalized individuals and couples;

**(51)** meet the requirements of section 1396r-5 of this title (relating to protection of community spouses);

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Add.043

**(52)** meet the requirements of section 1396r-6 of this title (relating to extension of eligibility for medical assistance);

**(53)** provide--

**(A)** for notifying in a timely manner all individuals in the State who are determined to be eligible for medical assistance and who are pregnant women, breastfeeding or postpartum women (as defined in section 17 of the Child Nutrition Act of 1966), or children below the age of 5, of the availability of benefits furnished by the special supplemental nutrition program under such section, and

**(B)** for referring any such individual to the State agency responsible for administering such program;

**(54)** in the case of a State plan that provides medical assistance for covered outpatient drugs (as defined in section 1396r-8(k) of this title), comply with the applicable requirements of section 1396r-8 of this title;

**(55)** provide for receipt and initial processing of applications of individuals for medical assistance under subsection (a)(10)(A)(i)(IV), (a)(10)(A)(i)(VI), (a)(10)(A)(i)(VII), (a)(10)(A)(ii)(IX), or (a)(10)(A)(ii)(XXIII)--

**(A)** at locations which are other than those used for the receipt and processing of applications for aid under part A of subchapter IV and which include facilities defined as disproportionate share hospitals under section 1396r-4(a)(1)(A) of this title and Federally-qualified health centers described in section 1396d(1)(2)(B) [10] of this title, and

**(B)** using applications which are other than those used for applications for aid under such part;

**(56)** provide, in accordance with subsection (s), for adjusted payments for certain inpatient hospital services;

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    35

Add.044

**(57)** provide that each hospital, nursing facility, provider of home health care or personal care services, hospice program, or medicaid managed care organization (as defined in section 1396b(m)(1)(A) of this title) receiving funds under the plan shall comply with the requirements of subsection (w);

**(58)** provide that the State, acting through a State agency, association, or other private nonprofit entity, develop a written description of the law of the State (whether statutory or as recognized by the courts of the State) concerning advance directives that would be distributed by providers or organizations under the requirements of subsection (w);

**(59)** maintain a list (updated not less often than monthly, and containing each physician's unique identifier provided under the system established under subsection (x)) of all physicians who are certified to participate under the State plan;

**(60)** provide that the State agency shall provide assurances satisfactory to the Secretary that the State has in effect the laws relating to medical child support required under section 1396g-1 of this title;

**(61)** provide that the State must demonstrate that it operates a medicaid fraud and abuse control unit described in section 1396b(q) of this title that effectively carries out the functions and requirements described in such section, as determined in accordance with standards established by the Secretary, unless the State demonstrates to the satisfaction of the Secretary that the effective operation of such a unit in the State would not be cost-effective because minimal fraud exists in connection with the provision of covered services to eligible individuals under the State plan, and that beneficiaries under the plan will be protected from abuse and neglect in connection with the provision of medical assistance under the plan without the existence of such a unit;

**(62)** provide for a program for the distribution of pediatric vaccines to program-registered providers for the immunization of vaccine-eligible children in accordance with section 1396s of this title;

**(63)** provide for administration and determinations of eligibility with respect to individuals who are (or seek to be) eligible for medical assistance based on the application of section 1396u-1 of this title;

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.    Add.045    36

USCA Case #24-5172    Document #2101807    Filed: 02/20/2025    Page 49 of 282

**(64)** provide, not later than 1 year after August 5, 1997, a mechanism to receive reports from beneficiaries and others and compile data concerning alleged instances of waste, fraud, and abuse relating to the operation of this subchapter;

**(65)** provide that the State shall issue provider numbers for all suppliers of medical assistance consisting of durable medical equipment, as defined in section 1395x(n) of this title, and the State shall not issue or renew such a supplier number for any such supplier unless--

**(A)(i)** full and complete information as to the identity of each person with an ownership or control interest (as defined in section 1320a-3(a)(3) of this title) in the supplier or in any subcontractor (as defined by the Secretary in regulations) in which the supplier directly or indirectly has a 5 percent or more ownership interest; and

**(ii)** to the extent determined to be feasible under regulations of the Secretary, the name of any disclosing entity (as defined in section 1320a-3(a)(2) of this title) with respect to which a person with such an ownership or control interest in the supplier is a person with such an ownership or control interest in the disclosing entity; and

**(B)** a surety bond in a form specified by the Secretary under section 1395m(a)(16)(B) of this title and in an amount that is not less than $50,000 or such comparable surety bond as the Secretary may permit under the second sentence of such section;

**(66)** provide for making eligibility determinations under section 1396u-5(a) of this title;

**(67)** provide, with respect to services covered under the State plan (but not under subchapter XVIII) that are furnished to a PACE program eligible individual enrolled with a PACE provider by a provider participating under the State plan that does not have a contract or other agreement with the PACE provider that establishes payment amounts for such services, that such participating provider may not require the PACE provider to pay the participating provider an amount greater than the amount that would otherwise be payable for the service to the participating provider under the State plan for the State where the PACE provider is located (in accordance with regulations issued by the Secretary);

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.    37

Add.046

**(68)** provide that any entity that receives or makes annual payments under the State plan of at least $5,000,000, as a condition of receiving such payments, shall--

**(A)** establish written policies for all employees of the entity (including management), and of any contractor or agent of the entity, that provide detailed information about the False Claims Act established under sections 3729 through 3733 of Title 31, administrative remedies for false claims and statements established under chapter 38 of Title 31, any State laws pertaining to civil or criminal penalties for false claims and statements, and whistleblower protections under such laws, with respect to the role of such laws in preventing and detecting fraud, waste, and abuse in Federal health care programs (as defined in section 1320a-7b(f) of this title);

**(B)** include as part of such written policies, detailed provisions regarding the entity's policies and procedures for detecting and preventing fraud, waste, and abuse; and

**(C)** include in any employee handbook for the entity, a specific discussion of the laws described in subparagraph (A), the rights of employees to be protected as whistleblowers, and the entity's policies and procedures for detecting and preventing fraud, waste, and abuse;

**(69)** provide that the State must comply with any requirements determined by the Secretary to be necessary for carrying out the Medicaid Integrity Program established under section 1396u-6 of this title;

**(70)** at the option of the State and notwithstanding paragraphs (1), (10)(B), and (23), provide for the establishment of a non-emergency medical transportation brokerage program in order to more cost-effectively provide transportation for individuals eligible for medical assistance under the State plan who need access to medical care or services and have no other means of transportation which--

**(A)** may include a wheelchair van, taxi, stretcher car, bus passes and tickets, secured transportation, and such other transportation as the Secretary determines appropriate; and

**(B)** may be conducted under contract with a broker who--

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**(i)** is selected through a competitive bidding process based on the State's evaluation of the broker's experience, performance, references, resources, qualifications, and costs;

**(ii)** has oversight procedures to monitor beneficiary access and complaints and ensure that transport personnel are licensed, qualified, competent, and courteous;

**(iii)** is subject to regular auditing and oversight by the State in order to ensure the quality of the transportation services provided and the adequacy of beneficiary access to medical care and services; and

**(iv)** complies with such requirements related to prohibitions on referrals and conflict of interest as the Secretary shall establish (based on the prohibitions on physician referrals under section 1395nn of this title and such other prohibitions and requirements as the Secretary determines to be appropriate);

**(71)** provide that the State will implement an asset verification program as required under section 1396w of this title;

**(72)** provide that the State will not prevent a Federally-qualified health center from entering into contractual relationships with private practice dental providers in the provision of Federally-qualified health center services;

**(73)** in the case of any State in which 1 or more Indian Health Programs or Urban Indian Organizations furnishes health care services, provide for a process under which the State seeks advice on a regular, ongoing basis from designees of such Indian Health Programs and Urban Indian Organizations on matters relating to the application of this subchapter that are likely to have a direct effect on such Indian Health Programs and Urban Indian Organizations and that--

**(A)** shall include solicitation of advice prior to submission of any plan amendments, waiver requests, and proposals for demonstration projects likely to have a direct effect on Indians, Indian Health Programs, or Urban Indian Organizations; and

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    39

Add.048

**(B)** may include appointment of an advisory committee and of a designee of such Indian Health Programs and Urban Indian Organizations to the medical care advisory committee advising the State on its State plan under this subchapter;

**(74)** provide for maintenance of effort under the State plan or under any waiver of the plan in accordance with subsection (gg);

**(75)** provide that, beginning January 2015, and annually thereafter, the State shall submit a report to the Secretary that contains--

**(A)** the total number of enrolled and newly enrolled individuals in the State plan or under a waiver of the plan for the fiscal year ending on September 30 of the preceding calendar year, disaggregated by population, including children, parents, nonpregnant childless adults, disabled individuals, elderly individuals, and such other categories or sub-categories of individuals eligible for medical assistance under the State plan or under a waiver of the plan as the Secretary may require;

**(B)** a description, which may be specified by population, of the outreach and enrollment processes used by the State during such fiscal year; and

**(C)** any other data reporting determined necessary by the Secretary to monitor enrollment and retention of individuals eligible for medical assistance under the State plan or under a waiver of the plan;

**(76)** provide that any data collected under the State plan meets the requirements of section 3101 of the Public Health Service Act;

**(77)** provide that the State shall comply with provider and supplier screening, oversight, and reporting requirements in accordance with subsection (kk);

**(78)** provide that, not later than January 1, 2017, in the case of a State that pursuant to its State plan or waiver of the plan for medical assistance pays for medical assistance on a fee-for-service basis, the State shall require each provider furnishing items and services to, or ordering,

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.    40

prescribing, referring, or certifying eligibility for, services for individuals eligible to receive medical assistance under such plan to enroll with the State agency and provide to the State agency the provider's identifying information, including the name, specialty, date of birth, Social Security number, national provider identifier (if applicable), Federal taxpayer identification number, and the State license or certification number of the provider (if applicable);

**(79)** provide that any agent, clearinghouse, or other alternate payee (as defined by the Secretary) that submits claims on behalf of a health care provider must register with the State and the Secretary in a form and manner specified by the Secretary;

**(80)** provide that the State shall not provide any payments for items or services provided under the State plan or under a waiver to any financial institution or entity located outside of the United States;

**(81)** provide for implementation of the payment models specified by the Secretary under section 1315a(c) of this title for implementation on a nationwide basis unless the State demonstrates to the satisfaction of the Secretary that implementation would not be administratively feasible or appropriate to the health care delivery system of the State;

**(82)** provide that the State agency responsible for administering the State plan under this subchapter provides assurances to the Secretary that the State agency is in compliance with subparagraphs (A), (B), and (C) of section 1320a-7n(b)(2) of this title;

**(83)** provide that, not later than January 1, 2017, in the case of a State plan (or waiver of the plan) that provides medical assistance on a fee-for-service basis or through a primary care case-management system described in section 1396n(b)(1) of this title (other than a primary care case management entity (as defined by the Secretary)), the State shall publish (and update on at least an annual basis) on the public website of the State agency administering the State plan, a directory of the physicians described in subsection (mm) and, at State option, other providers described in such subsection that--

  **(A)** includes--

    **(i)** with respect to each such physician or provider--

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

(I) the name of the physician or provider;

(II) the specialty of the physician or provider;

(III) the address at which the physician or provider provides services; and

(IV) the telephone number of the physician or provider; and

(ii) with respect to any such physician or provider participating in such a primary care case-management system, information regarding--

(I) whether the physician or provider is accepting as new patients individuals who receive medical assistance under this subchapter; and

(II) the physician's or provider's cultural and linguistic capabilities, including the languages spoken by the physician or provider or by the skilled medical interpreter providing interpretation services at the physician's or provider's office; and

(B) may include, at State option, with respect to each such physician or provider--

(i) the Internet website of such physician or provider; or

(ii) whether the physician or provider is accepting as new patients individuals who receive medical assistance under this subchapter;

(84) provide that--

(A) the State shall not terminate eligibility for medical assistance under the State plan (or waiver of such plan) for an individual who is an eligible juvenile (as defined in subsection (nn)(2)) because the juvenile is an inmate of a public institution (as defined in subsection (nn)

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.051

(3)), but, subject to subparagraph (D), may suspend coverage during the period the juvenile is such an inmate;

**(B)** in the case of an individual who is an eligible juvenile described in paragraph (2)(A) of subsection (nn), the State shall, prior to the individual's release from such a public institution, conduct a redetermination of eligibility for such individual with respect to such medical assistance (without requiring a new application from the individual) and, if the State determines pursuant to such redetermination that the individual continues to meet the eligibility requirements for such medical assistance, the State shall restore coverage for such medical assistance to such an individual upon the individual's release from such public institution;

**(C)** in the case of an individual who is an eligible juvenile described in paragraph (2)(B) of subsection (nn), the State shall process any application for medical assistance submitted by, or on behalf of, such individual such that the State makes a determination of eligibility for such individual with respect to such medical assistance upon release of such individual from such public institution; and

**(D)** in the case of an individual who is an eligible juvenile described in subsection (nn)(2) and is within 30 days of the date on which such eligible juvenile is scheduled to be released from a public institution following adjudication, the State shall have in place a plan, and in accordance with such plan, provide for--

**(i)** in the 30 days prior to the release of such eligible juvenile from such public institution (or not later than one week, or as soon as practicable, after release from the public institution), and in coordination with such institution, any screening or diagnostic service which meets reasonable standards of medical and dental practice, as determined by the State, or as indicated as medically necessary, in accordance with paragraphs (1)(A) and (5) of section 1396d(r) of this title, including a behavioral health screening or diagnostic service; and

**(ii)** in the 30 days prior to the release of such eligible juvenile from such public institution, and for at least 30 days following the release of such eligible juvenile from such institution, targeted case management services, including referrals for such eligible juvenile to the appropriate care and services available in the geographic region of the home or residence of such eligible juvenile (where feasible) under the State plan (or waiver of such plan);

© 2025 Thomson Reuters. No claim to original U.S. Government Works. Add.052    43

**(85)** provide that the State is in compliance with the drug review and utilization requirements under subsection (oo)(1);

**(86)** provide, at the option of the State, for making medical assistance available on an inpatient or outpatient basis at a residential pediatric recovery center (as defined in subsection (pp)) to infants with neonatal abstinence syndrome; and

**(87)** provide for a mechanism, which may include attestation, that ensures that, with respect to any provider (including a transportation network company) or individual driver of nonemergency transportation to medically necessary services receiving payments under such plan (but excluding any public transit authority), at a minimum--

> **(A)** each such provider and individual driver is not excluded from participation in any Federal health care program (as defined in section 1320a-7b(f) of this title) and is not listed on the exclusion list of the Inspector General of the Department of Health and Human Services;

> **(B)** each such individual driver has a valid driver's license;

> **(C)** each such provider has in place a process to address any violation of a State drug law; and

> **(D)** each such provider has in place a process to disclose to the State Medicaid program the driving history, including any traffic violations, of each such individual driver employed by such provider, including any traffic violations.

Notwithstanding paragraph (5), if on January 1, 1965, and on the date on which a State submits its plan for approval under this subchapter, the State agency which administered or supervised the administration of the plan of such State approved under subchapter X (or subchapter XVI, insofar as it relates to the blind) was different from the State agency which administered or supervised the administration of the State plan approved under subchapter I (or subchapter XVI, insofar as it relates to the aged), the State agency which administered or supervised the administration of such plan approved under subchapter X (or subchapter XVI, insofar as it relates to the blind) may be designated to administer or supervise the administration of the portion of the State plan for medical assistance which relates to blind individuals and a different State agency may be established or designated to administer or supervise the administration of the rest of the State plan for medical assistance; and in such case the part of the plan which each such agency administers,

(Page 56 of Total)    WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    44

or the administration of which each such agency supervises, shall be regarded as a separate plan for purposes of this subchapter (except for purposes of paragraph (10)). The provisions of paragraphs (9)(A), (31), and (33) and of section 1396b(i)(4) of this title shall not apply to a religious nonmedical health care institution (as defined in section 1395x(ss)(1) of this title).

For purposes of paragraph (10) any individual who, for the month of August 1972, was eligible for or receiving aid or assistance under a State plan approved under subchapter I, X, XIV, or XVI, or part A of subchapter IV and who for such month was entitled to monthly insurance benefits under subchapter II shall for purposes of this subchapter only be deemed to be eligible for financial aid or assistance for any month thereafter if such individual would have been eligible for financial aid or assistance for such month had the increase in monthly insurance benefits under subchapter II resulting from enactment of Public Law 92-336 not been applicable to such individual.

The requirement of clause (A) of paragraph (37) with respect to a State plan may be waived by the Secretary if he finds that the State has exercised good faith in trying to meet such requirement. For purposes of this subchapter, any child who meets the requirements of paragraph (1) or (2) of section 673(b) of this title shall be deemed to be a dependent child as defined in section 606 of this title and shall be deemed to be a recipient of aid to families with dependent children under part A of subchapter IV in the State where such child resides. Notwithstanding paragraph (10)(B) or any other provision of this subsection, a State plan shall provide medical assistance with respect to an alien who is not lawfully admitted for permanent residence or otherwise permanently residing in the United States under color of law only in accordance with section 1396b(v) of this title.

**(b)Approval by Secretary**

The Secretary shall approve any plan which fulfills the conditions specified in subsection (a), except that he shall not approve any plan which imposes, as a condition of eligibility for medical assistance under the plan--

**(1)** an age requirement of more than 65 years; or

**(2)** any residence requirement which excludes any individual who resides in the State, regardless of whether or not the residence is maintained permanently or at a fixed address; or

**(3)** any citizenship requirement which excludes any citizen of the United States.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.054

USCA Case #24-5172    Document #2101807    Filed: 02/20/2025    Page 58 of 282

**(c)Lower payment levels or applying for benefits as condition of applying for, or receiving, medical assistance**

Notwithstanding subsection (b), the Secretary shall not approve any State plan for medical assistance if the State requires individuals described in subsection (l)(1) to apply for assistance under the State program funded under part A of subchapter IV as a condition of applying for or receiving medical assistance under this subchapter.

**(d)Performance of medical or utilization review functions**

If a State contracts with an entity which meets the requirements of section 1320c-1 of this title, as determined by the Secretary, or a utilization and quality control peer review organization [11] having a contract with the Secretary under part B of subchapter XI for the performance of medical or utilization review functions required under this subchapter of a State plan with respect to specific services or providers (or services or providers in a geographic area of the State), such requirements shall be deemed to be met for those services or providers (or services or providers in that area) by delegation to such an entity or organization under the contract of the State's authority to conduct such review activities if the contract provides for the performance of activities not inconsistent with part B of subchapter XI and provides for such assurances of satisfactory performance by such an entity or organization as the Secretary may prescribe.

**(e)Continuation and extension of eligibility of certain individuals; Express Lane option for children**

**(1)** Beginning April 1, 1990, for provisions relating to the extension of eligibility for medical assistance for certain families who have received aid pursuant to a State plan approved under part A of subchapter IV and have earned income, see section 1396r-6 of this title.

**(2)(A)** In the case of an individual who is enrolled with a medicaid managed care organization (as defined in section 1396b(m)(1)(A) of this title), with a primary care case manager (as defined in section 1396d(t) of this title), or with an eligible organization with a contract under section 1395mm of this title and who would (but for this paragraph) lose eligibility for benefits under this subchapter before the end of the minimum enrollment period (defined in subparagraph (B)), the State plan may provide, notwithstanding any other provision of this subchapter, that the individual shall be deemed to continue to be eligible for such benefits until the end of such minimum period, but, except for benefits furnished under section 1396d(a)(4)(C) of this title, only with respect to

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.055

such benefits provided to the individual as an enrollee of such organization or entity or by or through the case manager.

**(B)** For purposes of subparagraph (A), the term "minimum enrollment period" means, with respect to an individual's enrollment with an organization or entity under a State plan, a period, established by the State, of not more than six months beginning on the date the individual's enrollment with the organization or entity becomes effective.

**(3)** At the option of the State, any individual who--

**(A)** is 18 years of age or younger and qualifies as a disabled individual under section 1382c(a) of this title;

**(B)** with respect to whom there has been a determination by the State that--

**(i)** the individual requires a level of care provided in a hospital, nursing facility, or intermediate care facility for the mentally retarded,

**(ii)** it is appropriate to provide such care for the individual outside such an institution, and

**(iii)** the estimated amount which would be expended for medical assistance for the individual for such care outside an institution is not greater than the estimated amount which would otherwise be expended for medical assistance for the individual within an appropriate institution; and

**(C)** if the individual were in a medical institution, would be eligible for medical assistance under the State plan under this subchapter,

shall be deemed, for purposes of this subchapter only, to be an individual with respect to whom a supplemental security income payment, or State supplemental payment, respectively, is being paid under subchapter XVI.

Add.056

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**(4)** A child born to a woman eligible for and receiving medical assistance under a State plan on the date of the child's birth shall be deemed to have applied for medical assistance and to have been found eligible for such assistance under such plan on the date of such birth and to remain eligible for such assistance for a period of one year. During the period in which a child is deemed under the preceding sentence to be eligible for medical assistance, the medical assistance eligibility identification number of the mother shall also serve as the identification number of the child, and all claims shall be submitted and paid under such number (unless the State issues a separate identification number for the child before such period expires). Notwithstanding the preceding sentence, in the case of a child who is born in the United States to an alien mother for whom medical assistance for the delivery of the child is made available pursuant to section 1396b(v) of this title, the State immediately shall issue a separate identification number for the child upon notification by the facility at which such delivery occurred of the child's birth.

**(5)** A woman who, while pregnant, is eligible for, has applied for, and has received medical assistance under the State plan, shall continue to be eligible under the plan, as though she were pregnant, for all pregnancy-related and postpartum medical assistance under the plan, through the end of the month in which the 60-day period (beginning on the last day of her pregnancy) ends.

**(6)** In the case of a pregnant woman described in subsection (a)(10) who, because of a change in income of the family of which she is a member, would not otherwise continue to be described in such subsection, the woman shall be deemed to continue to be an individual described in subsection (a)(10)(A)(i)(IV) and subsection (l)(1)(A) without regard to such change of income through the end of the month in which the 60-day period (beginning on the last day of her pregnancy) ends. The preceding sentence shall not apply in the case of a woman who has been provided ambulatory prenatal care pursuant to section 1396r-1 of this title during a presumptive eligibility period and is then, in accordance with such section, determined to be ineligible for medical assistance under the State plan.

**(7)** In the case of an infant or child described in subparagraph (B), (C), or (D) of subsection (l)(1) or paragraph (2) of section 1396d(n) of this title--

**(A)** who is receiving inpatient services for which medical assistance is provided on the date the infant or child attains the maximum age with respect to which coverage is provided under the State plan for such individuals, and

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.057

USCA Case #24-5172     Document #2101807     Filed: 02/20/2025     Page 61 of 282

**(B)** who, but for attaining such age, would remain eligible for medical assistance under such subsection,

the infant or child shall continue to be treated as an individual described in such respective provision until the end of the stay for which the inpatient services are furnished.

**(8)** If an individual is determined to be a qualified medicare beneficiary (as defined in section 1396d(p)(1) of this title), such determination shall apply to services furnished after the end of the month in which the determination first occurs. For purposes of payment to a State under section 1396b(a) of this title, such determination shall be considered to be valid for an individual for a period of 12 months, except that a State may provide for such determinations more frequently, but not more frequently than once every 6 months for an individual.

**(9)(A)** At the option of the State, the plan may include as medical assistance respiratory care services for any individual who--

**(i)** is medically dependent on a ventilator for life support at least six hours per day;

**(ii)** has been so dependent for at least 30 consecutive days (or the maximum number of days authorized under the State plan, whichever is less) as an inpatient;

**(iii)** but for the availability of respiratory care services, would require respiratory care as an inpatient in a hospital, nursing facility, or intermediate care facility for the mentally retarded and would be eligible to have payment made for such inpatient care under the State plan;

**(iv)** has adequate social support services to be cared for at home; and

**(v)** wishes to be cared for at home.

**(B)** The requirements of subparagraph (A)(ii) may be satisfied by a continuous stay in one or more hospitals, nursing facilities, or intermediate care facilities for the mentally retarded.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.058

**(C)** For purposes of this paragraph, respiratory care services means services provided on a part-time basis in the home of the individual by a respiratory therapist or other health care professional trained in respiratory therapy (as determined by the State), payment for which is not otherwise included within other items and services furnished to such individual as medical assistance under the plan.

**(10)(A)** The fact that an individual, child, or pregnant woman may be denied aid under part A of subchapter IV pursuant to section 602(a)(43) [2] of this title shall not be construed as denying (or permitting a State to deny) medical assistance under this subchapter to such individual, child, or woman who is eligible for assistance under this subchapter on a basis other than the receipt of aid under such part.

**(B)** If an individual, child, or pregnant woman is receiving aid under part A of subchapter IV and such aid is terminated pursuant to section 602(a)(43) [2] of this title, the State may not discontinue medical assistance under this subchapter for the individual, child, or woman until the State has determined that the individual, child, or woman is not eligible for assistance under this subchapter on a basis other than the receipt of aid under such part.

**(11)(A)** In the case of an individual who is enrolled with a group health plan under section 1396e of this title and who would (but for this paragraph) lose eligibility for benefits under this subchapter before the end of the minimum enrollment period (defined in subparagraph (B)), the State plan may provide, notwithstanding any other provision of this subchapter, that the individual shall be deemed to continue to be eligible for such benefits until the end of such minimum period, but only with respect to such benefits provided to the individual as an enrollee of such plan.

**(B)** For purposes of subparagraph (A), the term "minimum enrollment period" means, with respect to an individual's enrollment with a group health plan, a period established by the State, of not more than 6 months beginning on the date the individual's enrollment under the plan becomes effective.

### (12)1 year of continuous eligibility for children

The State plan (or waiver of such State plan) shall provide that an individual who is under the age of 19 and who is determined to be eligible for benefits under a State plan (or waiver of such plan) approved under this subchapter under subsection (a)(10)(A) shall remain eligible for such benefits until the earlier of--

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Add.059

USCA Case #24-5172      Document #2101807      Filed: 02/20/2025      Page 63 of 282

**(A)** the end of the 12-month period beginning on the date of such determination;

**(B)** the time that such individual attains the age of 19; or

**(C)** the date that such individual ceases to be a resident of such State.

**(13) Express Lane option**

**(A) In general**

**(i) Option to use a finding from an Express Lane agency**

At the option of the State, the State plan may provide that in determining eligibility under this subchapter for a child (as defined in subparagraph (G)), the State may rely on a finding made within a reasonable period (as determined by the State) from an Express Lane agency (as defined in subparagraph (F)) when it determines whether a child satisfies one or more components of eligibility for medical assistance under this subchapter. The State may rely on a finding from an Express Lane agency notwithstanding subsection (a)(46)(B) and section 1320b-7(d) of this title or any differences in budget unit, disregard, deeming or other methodology, if the following requirements are met:

**(I) Prohibition on determining children ineligible for coverage**

If a finding from an Express Lane agency would result in a determination that a child does not satisfy an eligibility requirement for medical assistance under this subchapter and for child health assistance under subchapter XXI, the State shall determine eligibility for assistance using its regular procedures.

**(II) Notice requirement**

For any child who is found eligible for medical assistance under the State plan under this subchapter or child health assistance under subchapter XXI and who is subject to premiums based on an Express Lane agency's finding of such child's income level, the

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.      51

**Add.060**

State shall provide notice that the child may qualify for lower premium payments if evaluated by the State using its regular policies and of the procedures for requesting such an evaluation.

### (III)Compliance with screen and enroll requirement

The State shall satisfy the requirements under subparagraphs (A) and (B) of section 1397bb(b)(3) of this title (relating to screen and enroll) before enrolling a child in child health assistance under subchapter XXI. At its option, the State may fulfill such requirements in accordance with either option provided under subparagraph (C) of this paragraph.

### (IV)Verification of citizenship or nationality status

The State shall satisfy the requirements of subsection (a)(46)(B) or section 1397ee(c)(9) of this title, as applicable for verifications of citizenship or nationality status.

### (V)Coding

The State meets the requirements of subparagraph (E).

### (ii)Option to apply to renewals and redeterminations

The State may apply the provisions of this paragraph when conducting initial determinations of eligibility, redeterminations of eligibility, or both, as described in the State plan.

### (B)Rules of construction

Nothing in this paragraph shall be construed--

**(i)** to limit or prohibit a State from taking any actions otherwise permitted under this subchapter or subchapter XXI in determining eligibility for or enrolling children into medical assistance under this subchapter or child health assistance under subchapter XXI; or

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.    52

Add.061

**(ii)** to modify the limitations in subsection (a)(5) concerning the agencies that may make a determination of eligibility for medical assistance under this subchapter.

### (C) Options for satisfying the screen and enroll requirement

#### (i) In general

With respect to a child whose eligibility for medical assistance under this subchapter or for child health assistance under subchapter XXI has been evaluated by a State agency using an income finding from an Express Lane agency, a State may carry out its duties under subparagraphs (A) and (B) of section 1397bb(b)(3) of this title (relating to screen and enroll) in accordance with either clause (ii) or clause (iii).

#### (ii) Establishing a screening threshold

##### (I) In general

Under this clause, the State establishes a screening threshold set as a percentage of the Federal poverty level that exceeds the highest income threshold applicable under this subchapter to the child by a minimum of 30 percentage points or, at State option, a higher number of percentage points that reflects the value (as determined by the State and described in the State plan) of any differences between income methodologies used by the program administered by the Express Lane agency and the methodologies used by the State in determining eligibility for medical assistance under this subchapter.

##### (II) Children with income not above threshold

If the income of a child does not exceed the screening threshold, the child is deemed to satisfy the income eligibility criteria for medical assistance under this subchapter regardless of whether such child would otherwise satisfy such criteria.

##### (III) Children with income above threshold

If the income of a child exceeds the screening threshold, the child shall be considered to have an income above the Medicaid applicable income level described in section

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.      53

Add.062

USCA Case #24-5172    Document #2101807    Filed: 02/20/2025    Page 66 of 282

1397jj(b)(4) of this title and to satisfy the requirement under section 1397jj(b)(1)(C) of this title (relating to the requirement that CHIP matching funds be used only for children not eligible for Medicaid). If such a child is enrolled in child health assistance under subchapter XXI, the State shall provide the parent, guardian, or custodial relative with the following:

**(aa)** Notice that the child may be eligible to receive medical assistance under the State plan under this subchapter if evaluated for such assistance under the State's regular procedures and notice of the process through which a parent, guardian, or custodial relative can request that the State evaluate the child's eligibility for medical assistance under this subchapter using such regular procedures.

**(bb)** A description of differences between the medical assistance provided under this subchapter and child health assistance under subchapter XXI, including differences in cost-sharing requirements and covered benefits.

### (iii)Temporary enrollment in CHIP pending screen and enroll

#### (I)In general

Under this clause, a State enrolls a child in child health assistance under subchapter XXI for a temporary period if the child appears eligible for such assistance based on an income finding by an Express Lane agency.

#### (II)Determination of eligibility

During such temporary enrollment period, the State shall determine the child's eligibility for child health assistance under subchapter XXI or for medical assistance under this subchapter in accordance with this clause.

#### (III)Prompt follow up

In making such a determination, the State shall take prompt action to determine whether the child should be enrolled in medical assistance under this subchapter or child health assistance under subchapter XXI pursuant to subparagraphs (A) and (B) of section 1397bb(b)(3) of this title (relating to screen and enroll).

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.063

**(IV)Requirement for simplified determination**

In making such a determination, the State shall use procedures that, to the maximum feasible extent, reduce the burden imposed on the individual of such determination. Such procedures may not require the child's parent, guardian, or custodial relative to provide or verify information that already has been provided to the State agency by an Express Lane agency or another source of information unless the State agency has reason to believe the information is erroneous.

**(V)Availability of CHIP matching funds during temporary enrollment period**

Medical assistance for items and services that are provided to a child enrolled in subchapter XXI during a temporary enrollment period under this clause shall be treated as child health assistance under such subchapter.

**(D)Option for automatic enrollment**

**(i)In general**

The State may initiate and determine eligibility for medical assistance under the State Medicaid plan or for child health assistance under the State CHIP plan without a program application from, or on behalf of, the child based on data obtained from sources other than the child (or the child's family), but a child can only be automatically enrolled in the State Medicaid plan or the State CHIP plan if the child or the family affirmatively consents to being enrolled through affirmation in writing, by telephone, orally, through electronic signature, or through any other means specified by the Secretary or by signature on an Express Lane agency application, if the requirement of clause (ii) is met.

**(ii)Information requirement**

The requirement of this clause is that the State informs the parent, guardian, or custodial relative of the child of the services that will be covered, appropriate methods for using such services, premium or other cost sharing charges (if any) that apply, medical support obligations (under section 1396k(a) of this title) created by enrollment (if applicable), and

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.064

the actions the parent, guardian, or relative must take to maintain enrollment and renew coverage.

**(E)Coding; application to enrollment error rates**

**(i)In general**

For purposes of subparagraph (A)(iv), [12] the requirement of this subparagraph for a State is that the State agrees to--

**(I)** assign such codes as the Secretary shall require to the children who are enrolled in the State Medicaid plan or the State CHIP plan through reliance on a finding made by an Express Lane agency for the duration of the State's election under this paragraph;

**(II)** annually provide the Secretary with a statistically valid sample (that is approved by Secretary) of the children enrolled in such plans through reliance on such a finding by conducting a full Medicaid eligibility review of the children identified for such sample for purposes of determining an eligibility error rate (as described in clause (iv)) with respect to the enrollment of such children (and shall not include such children in any data or samples used for purposes of complying with a Medicaid Eligibility Quality Control (MEQC) review or a payment error rate measurement (PERM) requirement);

**(III)** submit the error rate determined under subclause (II) to the Secretary;

**(IV)** if such error rate exceeds 3 percent for either of the first 2 fiscal years in which the State elects to apply this paragraph, demonstrate to the satisfaction of the Secretary the specific corrective actions implemented by the State to improve upon such error rate; and

**(V)** if such error rate exceeds 3 percent for any fiscal year in which the State elects to apply this paragraph, a reduction in the amount otherwise payable to the State under section 1396b(a) of this title for quarters for that fiscal year, equal to the total amount of erroneous excess payments determined for the fiscal year only with respect to the children included in the sample for the fiscal year that are in excess of a 3 percent error rate with respect to such children.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.065
56

USCA Case #24-5172      Document #2101807      Filed: 02/20/2025      Page 69 of 282

**(ii)No punitive action based on error rate**

The Secretary shall not apply the error rate derived from the sample under clause (i) to the entire population of children enrolled in the State Medicaid plan or the State CHIP plan through reliance on a finding made by an Express Lane agency, or to the population of children enrolled in such plans on the basis of the State's regular procedures for determining eligibility, or penalize the State on the basis of such error rate in any manner other than the reduction of payments provided for under clause (i)(V).

**(iii)Rule of construction**

Nothing in this paragraph shall be construed as relieving a State that elects to apply this paragraph from being subject to a penalty under section 1396b(u) of this title, for payments made under the State Medicaid plan with respect to ineligible individuals and families that are determined to exceed the error rate permitted under that section (as determined without regard to the error rate determined under clause (i)(II)).

**(iv)Error rate defined**

In this subparagraph, the term "error rate" means the rate of erroneous excess payments for medical assistance (as defined in section 1396b(u)(1)(D) of this title) for the period involved, except that such payments shall be limited to individuals for which eligibility determinations are made under this paragraph and except that in applying this paragraph under subchapter XXI, there shall be substituted for references to provisions of this subchapter corresponding provisions within subchapter XXI.

**(F)Express Lane agency**

**(i)In general**

In this paragraph, the term "Express Lane agency" means a public agency that--

**(I)** is determined by the State Medicaid agency or the State CHIP agency (as applicable) to be capable of making the determinations of one or more eligibility requirements described in subparagraph (A)(i);

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.      57

Add.066

**(II)** is identified in the State Medicaid plan or the State CHIP plan; and

**(III)** notifies the child's family--

**(aa)** of the information which shall be disclosed in accordance with this paragraph;

**(bb)** that the information disclosed will be used solely for purposes of determining eligibility for medical assistance under the State Medicaid plan or for child health assistance under the State CHIP plan; and

**(cc)** that the family may elect to not have the information disclosed for such purposes; and

**(IV)** enters into, or is subject to, an interagency agreement to limit the disclosure and use of the information disclosed.

**(ii)Inclusion of specific public agencies and Indian tribes and tribal organizations**

Such term includes the following:

**(I)** A public agency that determines eligibility for assistance under any of the following:

**(aa)** The temporary assistance for needy families program funded under part A of subchapter IV.

**(bb)** A State program funded under part D of subchapter IV.

**(cc)** The State Medicaid plan.

**(dd)** The State CHIP plan.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.    **Add.067**    58

**(ee)** The Food and Nutrition Act of 2008 (7 U.S.C. 2011 et seq.).

**(ff)** The Head Start Act.

**(gg)** The Richard B. Russell National School Lunch Act (42 U.S.C. 1751 et seq.).

**(hh)** The Child Nutrition Act of 1966 (42 U.S.C. 1771 et seq.).

**(ii)** The Child Care and Development Block Grant Act of 1990.

**(jj)** The Stewart B. McKinney Homeless Assistance Act (42 U.S.C. 11301 et seq.).

**(kk)** The United States Housing Act of 1937 (42 U.S.C. 1437 et seq.).

**(*ll*)** The Native American Housing Assistance and Self-Determination Act of 1996 (25 U.S.C. 4101 et seq.).

**(II)** A State-specified governmental agency that has fiscal liability or legal responsibility for the accuracy of the eligibility determination findings relied on by the State.

**(III)** A public agency that is subject to an interagency agreement limiting the disclosure and use of the information disclosed for purposes of determining eligibility under the State Medicaid plan or the State CHIP plan.

**(IV)** The Indian Health Service, an Indian Tribe, Tribal Organization, or Urban Indian Organization (as defined in section 1320b-9(c) of this title).

**(iii)Exclusions**

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.068

Such term does not include an agency that determines eligibility for a program established under the Social Services Block Grant established under subchapter XX or a private, for-profit organization.

**(iv)Rules of construction**

Nothing in this paragraph shall be construed as--

**(I)** exempting a State Medicaid agency from complying with the requirements of subsection (a)(4) relating to merit-based personnel standards for employees of the State Medicaid agency and safeguards against conflicts of interest); [13] or

**(II)** authorizing a State Medicaid agency that elects to use Express Lane agencies under this subparagraph to use the Express Lane option to avoid complying with such requirements for purposes of making eligibility determinations under the State Medicaid plan.

**(v)Additional definitions**

In this paragraph:

**(I)State**

The term "State" means 1 of the 50 States or the District of Columbia.

**(II)State CHIP agency**

The term "State CHIP agency" means the State agency responsible for administering the State CHIP plan.

**(III)State CHIP plan**

The term "State CHIP plan" means the State child health plan established under subchapter XXI and includes any waiver of such plan.

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.069

USCA Case #24-5172    Document #2101807    Filed: 02/20/2025    Page 73 of 282

**(IV)State Medicaid agency**

The term "State Medicaid agency" means the State agency responsible for administering the State Medicaid plan.

**(V)State Medicaid plan**

The term "State Medicaid plan" means the State plan established under subchapter XIX and includes any waiver of such plan.

**(G)Child defined**

For purposes of this paragraph, the term "child" means an individual under 19 years of age, or, at the option of a State, such higher age, not to exceed 21 years of age, as the State may elect.

**(H)State option to rely on State income tax data or return**

At the option of the State, a finding from an Express Lane agency may include gross income or adjusted gross income shown by State income tax records or returns.

**(I)Application**

This paragraph shall not apply with respect to eligibility determinations made after September 30, 2029.

**(14)Income determined using modified adjusted gross income**

**(A)In general**

Notwithstanding subsection (r) or any other provision of this subchapter, except as provided in subparagraph (D), for purposes of determining income eligibility for medical assistance under the State plan or under any waiver of such plan and for any other purpose applicable under the plan or waiver for which a determination of income is required, including with respect to the imposition of premiums and cost-sharing, a State shall use the modified adjusted gross income of an individual and, in the case of an individual in a family greater than 1, the household

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    61

Add.070

income of such family. A State shall establish income eligibility thresholds for populations to be eligible for medical assistance under the State plan or a waiver of the plan using modified adjusted gross income and household income that are not less than the effective income eligibility levels that applied under the State plan or waiver on March 23, 2010. For purposes of complying with the maintenance of effort requirements under subsection (gg) during the transition to modified adjusted gross income and household income, a State shall, working with the Secretary, establish an equivalent income test that ensures individuals eligible for medical assistance under the State plan or under a waiver of the plan on March 23, 2010, do not lose coverage under the State plan or under a waiver of the plan. The Secretary may waive such provisions of this subchapter and subchapter XXI as are necessary to ensure that States establish income and eligibility determination systems that protect beneficiaries.

**(B)No income or expense disregards**

Subject to subparagraph (I), no type of expense, block, or other income disregard shall be applied by a State to determine income eligibility for medical assistance under the State plan or under any waiver of such plan or for any other purpose applicable under the plan or waiver for which a determination of income is required.

**(C)No assets test**

A State shall not apply any assets or resources test for purposes of determining eligibility for medical assistance under the State plan or under a waiver of the plan.

**(D)Exceptions**

**(i)Individuals eligible because of other aid or assistance, elderly individuals, medically needy individuals, and individuals eligible for medicare cost-sharing**

Subparagraphs (A), (B), and (C) shall not apply to the determination of eligibility under the State plan or under a waiver for medical assistance for the following:

**(I)** Individuals who are eligible for medical assistance under the State plan or under a waiver of the plan on a basis that does not require a determination of income by the State agency administering the State plan or waiver, including as a result of eligibility for, or receipt of, other Federal or State aid or assistance, individuals who are eligible

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

USCA Case #24-5172    Document #2101807    Filed: 02/20/2025    Page 75 of 282

on the basis of receiving (or being treated as if receiving) supplemental security income benefits under subchapter XVI, and individuals who are eligible as a result of being or being deemed to be a child in foster care under the responsibility of the State.

**(II)** Individuals who have attained age 65.

**(III)** Individuals who qualify for medical assistance under the State plan or under any waiver of such plan on the basis of being blind or disabled (or being treated as being blind or disabled) without regard to whether the individual is eligible for supplemental security income benefits under subchapter XVI on the basis of being blind or disabled and including an individual who is eligible for medical assistance on the basis of paragraph (3).

**(IV)** Individuals described in subsection (a)(10)(C).

**(V)** Individuals described in any clause of subsection (a)(10)(E).

**(ii)Express Lane agency findings**

In the case of a State that elects the Express Lane option under paragraph (13), notwithstanding subparagraphs (A), (B), and (C), the State may rely on a finding made by an Express Lane agency in accordance with that paragraph relating to the income of an individual for purposes of determining the individual's eligibility for medical assistance under the State plan or under a waiver of the plan.

**(iii)Medicare prescription drug subsidies determinations**

Subparagraphs (A), (B), and (C) shall not apply to any determinations of eligibility for premium and cost-sharing subsidies under and in accordance with section 1395w-114 of this title made by the State pursuant to section 1396u-5(a)(2) of this title.

**(iv)Long-term care**

Subparagraphs (A), (B), and (C) shall not apply to any determinations of eligibility of individuals for purposes of medical assistance for nursing facility services, a level of care

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

in any institution equivalent to that of nursing facility services, home or community-based services furnished under a waiver or State plan amendment under section 1396n of this title or a waiver under section 1315 of this title, and services described in section 1396p(c)(1)(C)(ii) of this title.

### (v)Grandfather of current enrollees until date of next regular redetermination

An individual who, on January 1, 2014, is enrolled in the State plan or under a waiver of the plan and who would be determined ineligible for medical assistance solely because of the application of the modified adjusted gross income or household income standard described in subparagraph (A), shall remain eligible for medical assistance under the State plan or waiver (and subject to the same premiums and cost-sharing as applied to the individual on that date) through March 31, 2014, or the date on which the individual's next regularly scheduled redetermination of eligibility is to occur, whichever is later.

### (E)Transition planning and oversight

Each State shall submit to the Secretary for the Secretary's approval the income eligibility thresholds proposed to be established using modified adjusted gross income and household income, the methodologies and procedures to be used to determine income eligibility using modified adjusted gross income and household income and, if applicable, a State plan amendment establishing an optional eligibility category under subsection (a)(10)(A)(ii)(XX). To the extent practicable, the State shall use the same methodologies and procedures for purposes of making such determinations as the State used on March 23, 2010. The Secretary shall ensure that the income eligibility thresholds proposed to be established using modified adjusted gross income and household income, including under the eligibility category established under subsection (a)(10)(A)(ii)(XX), and the methodologies and procedures proposed to be used to determine income eligibility, will not result in children who would have been eligible for medical assistance under the State plan or under a waiver of the plan on March 23, 2010, no longer being eligible for such assistance.

### (F)Limitation on secretarial authority

The Secretary shall not waive compliance with the requirements of this paragraph except to the extent necessary to permit a State to coordinate eligibility requirements for dual eligible individuals (as defined in section 1396n(h)(2)(B) of this title) under the State plan or under a waiver of the plan and under subchapter XVIII and individuals who require the level of

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    64
Add.073

care provided in a hospital, a nursing facility, or an intermediate care facility for the mentally retarded.

**(G)Definitions of modified adjusted gross income and household income**

In this paragraph, the terms "modified adjusted gross income" and "household income" have the meanings given such terms in section 36B(d)(2) of the Internal Revenue Code of 1986.

**(H)Continued application of Medicaid rules regarding point-in-time income and sources of income**

The requirement under this paragraph for States to use modified adjusted gross income and household income to determine income eligibility for medical assistance under the State plan or under any waiver of such plan and for any other purpose applicable under the plan or waiver for which a determination of income is required shall not be construed as affecting or limiting the application of--

**(i)** the requirement under this subchapter and under the State plan or a waiver of the plan to determine an individual's income as of the point in time at which an application for medical assistance under the State plan or a waiver of the plan is processed; or

**(ii)** any rules established under this subchapter or under the State plan or a waiver of the plan regarding sources of countable income.

**(I)Treatment of portion of modified adjusted gross income**

For purposes of determining the income eligibility of an individual for medical assistance whose eligibility is determined based on the application of modified adjusted gross income under subparagraph (A), the State shall--

**(i)** determine the dollar equivalent of the difference between the upper income limit on eligibility for such an individual (expressed as a percentage of the poverty line) and such upper income limit increased by 5 percentage points; and

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
**Add.074**

USCA Case #24-5172      Document #2101807      Filed: 02/20/2025      Page 78 of 282

**(ii)** notwithstanding the requirement in subparagraph (A) with respect to use of modified adjusted gross income, utilize as the applicable income of such individual, in determining such income eligibility, an amount equal to the modified adjusted gross income applicable to such individual reduced by such dollar equivalent amount.

**(J)Exclusion of parent mentor compensation from income determination**

Any nominal amount received by an individual as compensation, including a stipend, for participation as a parent mentor (as defined in paragraph (5) of section 1397mm(f) of this title) in an activity or program funded through a grant under such section shall be disregarded for purposes of determining the income eligibility of such individual for medical assistance under the State plan or any waiver of such plan.

**(K)Treatment of certain lottery winnings and income received as a lump sum**

**(i)In general**

In the case of an individual who is the recipient of qualified lottery winnings (pursuant to lotteries occurring on or after January 1, 2018) or qualified lump sum income (received on or after such date) and whose eligibility for medical assistance is determined based on the application of modified adjusted gross income under subparagraph (A), a State shall, in determining such eligibility, include such winnings or income (as applicable) as income received--

**(I)** in the month in which such winnings or income (as applicable) is received if the amount of such winnings or income is less than $80,000;

**(II)** over a period of 2 months if the amount of such winnings or income (as applicable) is greater than or equal to $80,000 but less than $90,000;

**(III)** over a period of 3 months if the amount of such winnings or income (as applicable) is greater than or equal to $90,000 but less than $100,000; and

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.      66

Add.075

USCA Case #24-5172      Document #2101807      Filed: 02/20/2025      Page 79 of 282

**(IV)** over a period of 3 months plus 1 additional month for each increment of $10,000 of such winnings or income (as applicable) received, not to exceed a period of 120 months (for winnings or income of $1,260,000 or more), if the amount of such winnings or income is greater than or equal to $100,000.

**(ii)Counting in equal installments**

For purposes of subclauses (II), (III), and (IV) of clause (i), winnings or income to which such subclause applies shall be counted in equal monthly installments over the period of months specified under such subclause.

**(iii)Hardship exemption**

An individual whose income, by application of clause (i), exceeds the applicable eligibility threshold established by the State, shall continue to be eligible for medical assistance to the extent that the State determines, under procedures established by the State (in accordance with standards specified by the Secretary), that the denial of eligibility of the individual would cause an undue medical or financial hardship as determined on the basis of criteria established by the Secretary.

**(iv)Notifications and assistance required in case of loss of eligibility**

A State shall, with respect to an individual who loses eligibility for medical assistance under the State plan (or a waiver of such plan) by reason of clause (i)--

**(I)** before the date on which the individual loses such eligibility, inform the individual--

**(aa)** of the individual's opportunity to enroll in a qualified health plan offered through an Exchange established under title I of the Patient Protection and Affordable Care Act during the special enrollment period specified in section 9801(f)(3) of the Internal Revenue Code of 1986 (relating to loss of Medicaid or CHIP coverage); and

**(bb)** of the date on which the individual would no longer be considered ineligible by reason of clause (i) to receive medical assistance under the State plan or under any waiver of such plan and be eligible to reapply to receive such medical assistance; and

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.      67

Add.076

**(II)** provide technical assistance to the individual seeking to enroll in such a qualified health plan.

### (v)Qualified lottery winnings defined

In this subparagraph, the term "qualified lottery winnings" means winnings from a sweepstakes, lottery, or pool described in paragraph (3) of section 4402 of the Internal Revenue Code of 1986 or a lottery operated by a multistate or multijurisdictional lottery association, including amounts awarded as a lump sum payment.

### (vi)Qualified lump sum income defined

In this subparagraph, the term "qualified lump sum income" means income that is received as a lump sum from monetary winnings from gambling (as defined by the Secretary and including gambling activities described in section 1955(b)(4) of Title 18).

## (15)Exclusion of compensation for participation in a clinical trial for testing of treatments for a rare disease or condition

The first $2,000 received by an individual (who has attained 19 years of age) as compensation for participation in a clinical trial meeting the requirements of section 1382a(b)(26) of this title shall be disregarded for purposes of determining the income eligibility of such individual for medical assistance under the State plan or any waiver of such plan.

## (16)Extending certain coverage for pregnant and postpartum women

### (A)In general

At the option of the State, the State plan (or waiver of such State plan) may provide, that an individual who, while pregnant, is eligible for and has received medical assistance under the State plan approved under this subchapter (or a waiver of such plan) (including during a period of retroactive eligibility under subsection (a)(34)) shall, in addition to remaining eligible under paragraph (5) for all pregnancy-related and postpartum medical assistance available under the State plan (or waiver) through the last day of the month in which the 60-day period (beginning on the last day of her pregnancy) ends, remain eligible under the State

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.077                                                                                68

plan (or waiver) for medical assistance for the period beginning on the first day occurring after the end of such 60-day period and ending on the last day of the month in which the 12-month period (beginning on the last day of her pregnancy) ends.

**(B)Full benefits during pregnancy and throughout the 12-month postpartum period**

The medical assistance provided for a pregnant or postpartum individual by a State making an election under this paragraph, without regard to the basis on which the individual is eligible for medical assistance under the State plan (or waiver), shall--

**(i)** include all items and services covered under the State plan (or waiver) that are not less in amount, duration, or scope, or are determined by the Secretary to be substantially equivalent, to the medical assistance available for an individual described in subsection (a)(10)(A)(i); and

**(ii)** be provided for the individual while pregnant and during the 12-month period that begins on the last day of the individual's pregnancy and ends on the last day of the month in which such 12-month period ends.

**(C)Coverage under CHIP**

A State making an election under this paragraph that covers under subchapter XXI child health assistance for targeted low-income children who are pregnant or targeted low-income pregnant women, as applicable, shall also make the election under section 1397gg(e)(1)(J) of this title.

**(f)Effective date of State plan as determinative of duty of State to provide medical assistance to aged, blind, or disabled individuals**

Notwithstanding any other provision of this subchapter, except as provided in subsection (e) and section 1382h(b)(3) of this title and section 1396r-5 of this title, except with respect to qualified disabled and working individuals (described in section 1396d(s) of this title), and except with respect to qualified medicare beneficiaries, qualified severely impaired individuals, and individuals described in subsection (m)(1), no State not eligible to participate in the State plan program established under subchapter XVI shall be required to provide medical assistance to any aged, blind, or disabled individual (within the meaning of subchapter XVI) for any month unless

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.078

such State would be (or would have been) required to provide medical assistance to such individual for such month had its plan for medical assistance approved under this subchapter and in effect on January 1, 1972, been in effect in such month, except that for this purpose any such individual shall be deemed eligible for medical assistance under such State plan if (in addition to meeting such other requirements as are or may be imposed under the State plan) the income of any such individual as determined in accordance with section 1396b(f) of this title (after deducting any supplemental security income payment and State supplementary payment made with respect to such individual, and incurred expenses for medical care as recognized under State law regardless of whether such expenses are reimbursed under another public program of the State or political subdivision thereof) is not in excess of the standard for medical assistance established under the State plan as in effect on January 1, 1972. In States which provide medical assistance to individuals pursuant to paragraph (10)(C) of subsection (a) of this section, an individual who is eligible for medical assistance by reason of the requirements of this section concerning the deduction of incurred medical expenses from income shall be considered an individual eligible for medical assistance under paragraph (10)(A) of that subsection if that individual is, or is eligible to be (1) an individual with respect to whom there is payable a State supplementary payment on the basis of which similarly situated individuals are eligible to receive medical assistance equal in amount, duration, and scope to that provided to individuals eligible under paragraph (10)(A), or (2) an eligible individual or eligible spouse, as defined in subchapter XVI, with respect to whom supplemental security income benefits are payable; otherwise that individual shall be considered to be an individual eligible for medical assistance under paragraph (10)(C) of that subsection. In States which do not provide medical assistance to individuals pursuant to paragraph (10)(C) of that subsection, an individual who is eligible for medical assistance by reason of the requirements of this section concerning the deduction of incurred medical expenses from income shall be considered an individual eligible for medical assistance under paragraph (10)(A) of that subsection.

**(g)Reduction of aid or assistance to providers of services attempting to collect from beneficiary in violation of third-party provisions**

In addition to any other sanction available to a State, a State may provide for a reduction of any payment amount otherwise due with respect to a person who furnishes services under the plan in an amount equal to up to three times the amount of any payment sought to be collected by that person in violation of subsection (a)(25)(C).

**(h)Payments for hospitals serving disproportionate number of low-income patients and for home and community care**

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.079

**(1)** Nothing in this subchapter (including subsections (a)(13) and (a)(30) of this section) shall be construed as authorizing the Secretary to limit the amount of payment that may be made under a plan under this subchapter for home and community care, home and community-based services provided under subsection (c), (d), or (i) of section 1396n of this title or under a waiver or demonstration project under section 1315 of this title, self-directed personal assistance services provided pursuant to a written plan of care under section 1396n(j) of this title, and home and community-based attendant services and supports under section 1396n(k) of this title.

**(2)** Nothing in this subchapter, subchapter XVIII, or subchapter XI shall be construed as prohibiting receipt of any care or services specified in paragraph (1) in an acute care hospital that are--

**(A)** identified in an individual's person-centered service plan (or comparable plan of care);

**(B)** provided to meet needs of the individual that are not met through the provision of hospital services;

**(C)** not a substitute for services that the hospital is obligated to provide through its conditions of participation or under Federal or State law, or under another applicable requirement; and

**(D)** designed to ensure smooth transitions between acute care settings and home and community-based settings, and to preserve the individual's functional abilities.

**(i)Termination of certification for participation of and suspension of State payments to intermediate care facilities for the mentally retarded**

**(1)** In addition to any other authority under State law, where a State determines that a [14] intermediate care facility for the mentally retarded which is certified for participation under its plan no longer substantially meets the requirements for such a facility under this subchapter and further determines that the facility's deficiencies--

**(A)** immediately jeopardize the health and safety of its patients, the State shall provide for the termination of the facility's certification for participation under the plan and may provide, or

WESTLAW     © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.080                                                                                           71

USCA Case #24-5172      Document #2101807      Filed: 02/20/2025      Page 84 of 282

**(B)** do not immediately jeopardize the health and safety of its patients, the State may, in lieu of providing for terminating the facility's certification for participation under the plan, establish alternative remedies if the State demonstrates to the Secretary's satisfaction that the alternative remedies are effective in deterring noncompliance and correcting deficiencies, and may provide

that no payment will be made under the State plan with respect to any individual admitted to such facility after a date specified by the State.

**(2)** The State shall not make such a decision with respect to a facility until the facility has had a reasonable opportunity, following the initial determination that it no longer substantially meets the requirements for such a facility under this subchapter, to correct its deficiencies, and, following this period, has been given reasonable notice and opportunity for a hearing.

**(3)** The State's decision to deny payment may be made effective only after such notice to the public and to the facility as may be provided for by the State, and its effectiveness shall terminate (A) when the State finds that the facility is in substantial compliance (or is making good faith efforts to achieve substantial compliance) with the requirements for such a facility under this subchapter, or (B) in the case described in paragraph (1)(B), with the end of the eleventh month following the month such decision is made effective, whichever occurs first. If a facility to which clause (B) of the previous sentence applies still fails to substantially meet the provisions of the respective section on the date specified in such clause, the State shall terminate such facility's certification for participation under the plan effective with the first day of the first month following the month specified in such clause.

## (j)Waiver or modification of subchapter requirements with respect to medical assistance program in American Samoa

Notwithstanding any other requirement of this subchapter, the Secretary may waive or modify any requirement of this subchapter with respect to the medical assistance program in American Samoa and the Northern Mariana Islands, other than a waiver of the Federal medical assistance percentage, the limitation in section 1308(f) of this title,, [7] the requirement that payment may be made for medical assistance only with respect to amounts expended by American Samoa or the Northern Mariana Islands for care and services described in a numbered paragraph of section 1396d(a) of this title, or the requirement under subsection (qq)(1) (relating to data reporting).

## (k)Minimum coverage for individuals with income at or below 133 percent of the poverty line

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**(1)** The medical assistance provided to an individual described in subclause (VIII) of subsection (a)(10)(A)(i) shall consist of benchmark coverage described in section 1396u-7(b)(1) of this title or benchmark equivalent coverage described in section 1396u-7(b)(2) of this title. Such medical assistance shall be provided subject to the requirements of section 1396u-7 of this title, without regard to whether a State otherwise has elected the option to provide medical assistance through coverage under that section, unless an individual described in subclause (VIII) of subsection (a)(10)(A)(i) is also an individual for whom, under subparagraph (B) of section 1396u-7(a)(2) of this title, the State may not require enrollment in benchmark coverage described in subsection (b)(1) of section 1396u-7 of this title or benchmark equivalent coverage described in subsection (b)(2) of that section.

**(2)** Beginning with the first day of any fiscal year quarter that begins on or after April 1, 2010, and before January 1, 2014, a State may elect through a State plan amendment to provide medical assistance to individuals who would be described in subclause (VIII) of subsection (a)(10)(A)(i) if that subclause were effective before January 1, 2014. A State may elect to phase-in the extension of eligibility for medical assistance to such individuals based on income, so long as the State does not extend such eligibility to individuals described in such subclause with higher income before making individuals described in such subclause with lower income eligible for medical assistance.

**(3)** If an individual described in subclause (VIII) of subsection (a)(10)(A)(i) is the parent of a child who is under 19 years of age (or such higher age as the State may have elected) who is eligible for medical assistance under the State plan or under a waiver of such plan (under that subclause or under a State plan amendment under paragraph (2), [15] the individual may not be enrolled under the State plan unless the individual's child is enrolled under the State plan or under a waiver of the plan or is enrolled in other health insurance coverage. For purposes of the preceding sentence, the term "parent" includes an individual treated as a caretaker relative for purposes of carrying out section 1396u-1 of this title.

**(l)Description of group**

**(1)** Individuals described in this paragraph are--

   **(A)** women during pregnancy (and during the 60-day period beginning on the last day of the pregnancy),

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.082

**(B)** infants under one year of age,

**(C)** children who have attained one year of age but have not attained 6 years of age, and

**(D)** children born after September 30, 1983 (or, at the option of a State, after any earlier date), who have attained 6 years of age but have not attained 19 years of age,

who are not described in any of subclauses (I) through (III) of subsection (a)(10)(A)(i) and whose family income does not exceed the income level established by the State under paragraph (2) for a family size equal to the size of the family, including the woman, infant, or child.

**(2)(A)(i)** For purposes of paragraph (1) with respect to individuals described in subparagraph (A) or (B) of that paragraph, the State shall establish an income level which is a percentage (not less than the percentage provided under clause (ii) and not more than 185 percent) of the income official poverty line (as defined by the Office of Management and Budget, and revised annually in accordance with section 9902(2) of this title) applicable to a family of the size involved.

**(ii)** The percentage provided under this clause, with respect to eligibility for medical assistance on or after--

**(I)** July 1, 1989, is 75 percent, or, if greater, the percentage provided under clause (iii), and

**(II)** April 1, 1990, 133 percent, or, if greater, the percentage provided under clause (iv).

**(iii)** In the case of a State which, as of July 1, 1988, has elected to provide, and provides, medical assistance to individuals described in this subsection or has enacted legislation authorizing, or appropriating funds, to provide such assistance to such individuals before July 1, 1989, the percentage provided under clause (ii)(I) shall not be less than--

**(I)** the percentage specified by the State in an amendment to its State plan (whether approved or not) as of July 1, 1988, or

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
**Add.083**

USCA Case #24-5172      Document #2101807      Filed: 02/20/2025      Page 87 of 282

**(II)** if no such percentage is specified as of July 1, 1988, the percentage established under the State's authorizing legislation or provided for under the State's appropriations;

but in no case shall this clause require the percentage provided under clause (ii)(I) to exceed 100 percent.

**(iv)** In the case of a State which, as of December 19, 1989, has established under clause (i), or has enacted legislation authorizing, or appropriating funds, to provide for, a percentage (of the income official poverty line) that is greater than 133 percent, the percentage provided under clause (ii) for medical assistance on or after April 1, 1990, shall be not less than--

**(I)** the percentage specified by the State in an amendment to its State plan (whether approved or not) as of December 19, 1989, or

**(II)** if no such percentage is specified as of December 19, 1989, the percentage established under the State's authorizing legislation or provided for under the State's appropriations.

**(B)** For purposes of paragraph (1) with respect to individuals described in subparagraph (C) of such paragraph, the State shall establish an income level which is equal to 133 percent of the income official poverty line described in subparagraph (A) applicable to a family of the size involved.

**(C)** For purposes of paragraph (1) with respect to individuals described in subparagraph (D) of that paragraph, the State shall establish an income level which is equal to 100 percent (or, beginning January 1, 2014, 133 percent) of the income official poverty line described in subparagraph (A) applicable to a family of the size involved.

**(3)** Notwithstanding subsection (a)(17), for individuals who are eligible for medical assistance because of subsection (a)(10)(A)(i)(IV), (a)(10)(A)(i)(VI), (a)(10)(A)(i)(VII), or (a)(10)(A)(ii)(IX)--

**(A)** application of a resource standard shall be at the option of the State;

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Add.084

USCA Case #24-5172     Document #2101807     Filed: 02/20/2025     Page 88 of 282

**(B)** any resource standard or methodology that is applied with respect to an individual described in subparagraph (A) of paragraph (1) may not be more restrictive than the resource standard or methodology that is applied under subchapter XVI;

**(C)** any resource standard or methodology that is applied with respect to an individual described in subparagraph (B), (C), or (D) of paragraph (1) may not be more restrictive than the corresponding methodology that is applied under the State plan under part A of subchapter IV;

**(D)** the income standard to be applied is the appropriate income standard established under paragraph (2); and

**(E)** family income shall be determined in accordance with the methodology employed under the State plan under part A or E of subchapter IV (except to the extent such methodology is inconsistent with clause (D) of subsection (a)(17)), and costs incurred for medical care or for any other type of remedial care shall not be taken into account.

Any different treatment provided under this paragraph for such individuals shall not, because of subsection (a)(17), require or permit such treatment for other individuals.

**(4)(A)** In the case of any State which is providing medical assistance to its residents under a waiver granted under section 1315 of this title, the Secretary shall require the State to provide medical assistance for pregnant women and infants under age 1 described in subsection (a)(10)(A)(i)(IV) and for children described in subsection (a)(10)(A)(i)(VI) or subsection (a)(10)(A)(i)(VII) in the same manner as the State would be required to provide such assistance for such individuals if the State had in effect a plan approved under this subchapter.

**(B)** In the case of a State which is not one of the 50 States or the District of Columbia, the State need not meet the requirement of subsection (a)(10)(A)(i)(IV), (a)(10)(A)(i)(VI), or (a)(10)(A)(i)(VII) and, for purposes of paragraph (2)(A), the State may substitute for the percentage provided under clause (ii) of such paragraph any percentage.

**(m)Description of individuals**

**(1)** Individuals described in this paragraph are individuals--

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.     Add.085     76

**(A)** who are 65 years of age or older or are disabled individuals (as determined under section 1382c(a)(3) of this title),

**(B)** whose income (as determined under section 1382a of this title for purposes of the supplemental security income program, except as provided in paragraph (2)(C)) does not exceed an income level established by the State consistent with paragraph (2)(A), and

**(C)** whose resources (as determined under section 1382b of this title for purposes of the supplemental security income program) do not exceed (except as provided in paragraph (2)(B)) the maximum amount of resources that an individual may have and obtain benefits under that program.

**(2)(A)** The income level established under paragraph (1)(B) may not exceed a percentage (not more than 100 percent) of the official poverty line (as defined by the Office of Management and Budget, and revised annually in accordance with section 9902(2) of this title) applicable to a family of the size involved.

**(B)** In the case of a State that provides medical assistance to individuals not described in subsection (a)(10)(A) and at the State's option, the State may use under paragraph (1)(C) such resource level (which is higher than the level described in that paragraph) as may be applicable with respect to individuals described in paragraph (1)(A) who are not described in subsection (a)(10)(A).

**(C)** The provisions of section 1396d(p)(2)(D) of this title shall apply to determinations of income under this subsection in the same manner as they apply to determinations of income under section 1396d(p) of this title.

**(3)** Notwithstanding subsection (a)(17), for individuals described in paragraph (1) who are covered under the State plan by virtue of subsection (a)(10)(A)(ii)(X)--

**(A)** the income standard to be applied is the income standard described in paragraph (1)(B), and

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    77

Add.086

**(B)** except as provided in section 1382a(b)(4)(B)(ii) of this title, costs incurred for medical care or for any other type of remedial care shall not be taken into account in determining income.

Any different treatment provided under this paragraph for such individuals shall not, because of subsection (a)(17), require or permit such treatment for other individuals.

**(4)** Notwithstanding subsection (a)(17), for qualified medicare beneficiaries described in section 1396d(p)(1) of this title--

**(A)** the income standard to be applied is the income standard described in section 1396d(p)(1)(B) of this title, and

**(B)** except as provided in section 1382a(b)(4)(B)(ii) of this title, costs incurred for medical care or for any other type of remedial care shall not be taken into account in determining income.

Any different treatment provided under this paragraph for such individuals shall not, because of subsection (a)(17), require or permit such treatment for other individuals.

**(n)Payment amounts**

**(1)** In the case of medical assistance furnished under this subchapter for medicare cost-sharing respecting the furnishing of a service or item to a qualified medicare beneficiary, the State plan may provide payment in an amount with respect to the service or item that results in the sum of such payment amount and any amount of payment made under subchapter XVIII with respect to the service or item exceeding the amount that is otherwise payable under the State plan for the item or service for eligible individuals who are not qualified medicare beneficiaries.

**(2)** In carrying out paragraph (1), a State is not required to provide any payment for any expenses incurred relating to payment for deductibles, coinsurance, or copayments for medicare cost-sharing to the extent that payment under subchapter XVIII for the service would exceed the payment amount that otherwise would be made under the State plan under this subchapter for such service if provided to an eligible recipient other than a medicare beneficiary.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.087                                                                                      78

**(3)** In the case in which a State's payment for medicare cost-sharing for a qualified medicare beneficiary with respect to an item or service is reduced or eliminated through the application of paragraph (2)--

**(A)** for purposes of applying any limitation under subchapter XVIII on the amount that the beneficiary may be billed or charged for the service, the amount of payment made under subchapter XVIII plus the amount of payment (if any) under the State plan shall be considered to be payment in full for the service;

**(B)** the beneficiary shall not have any legal liability to make payment to a provider or to an organization described in section 1396b(m)(1)(A) of this title for the service; and

**(C)** any lawful sanction that may be imposed upon a provider or such an organization for excess charges under this subchapter or subchapter XVIII shall apply to the imposition of any charge imposed upon the individual in such case.

This paragraph shall not be construed as preventing payment of any medicare cost-sharing by a medicare supplemental policy or an employer retiree health plan on behalf of an individual.

**(o)Certain benefits disregarded for purposes of determining post-eligibility contributions**

Notwithstanding any provision of subsection (a) to the contrary, a State plan under this subchapter shall provide that any supplemental security income benefits paid by reason of subparagraph (E) or (G) of section 1382(e)(1) of this title to an individual who--

**(1)** is eligible for medical assistance under the plan, and

**(2)** is in a hospital, skilled nursing facility, or intermediate care facility at the time such benefits are paid,

will be disregarded for purposes of determining the amount of any post-eligibility contribution by the individual to the cost of the care and services provided by the hospital, skilled nursing facility, or intermediate care facility.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    79

Add.088

**(p) Exclusion power of State; exclusion as prerequisite for medical assistance payments; "exclude" defined**

**(1)** In addition to any other authority, a State may exclude any individual or entity for purposes of participating under the State plan under this subchapter for any reason for which the Secretary could exclude the individual or entity from participation in a program under subchapter XVIII under section 1320a-7, 1320a-7a, or 1395cc(b)(2) of this title.

**(2)** In order for a State to receive payments for medical assistance under section 1396b(a) of this title, with respect to payments the State makes to a medicaid managed care organization (as defined in section 1396b(m) of this title) or to an entity furnishing services under a waiver approved under section 1396n(b)(1) of this title, the State must provide that it will exclude from participation, as such an organization or entity, any organization or entity that--

**(A)** could be excluded under section 1320a-7(b)(8) of this title (relating to owners and managing employees who have been convicted of certain crimes or received other sanctions),

**(B)** has, directly or indirectly, a substantial contractual relationship (as defined by the Secretary) with an individual or entity that is described in section 1320a-7(b)(8)(B) of this title, or

**(C)** employs or contracts with any individual or entity that is excluded from participation under this subchapter under section 1320a-7 or 1320a-7a of this title for the provision of health care, utilization review, medical social work, or administrative services or employs or contracts with any entity for the provision (directly or indirectly) through such an excluded individual or entity of such services.

**(3)** As used in this subsection, the term "exclude" includes the refusal to enter into or renew a participation agreement or the termination of such an agreement.

**(q)Minimum monthly personal needs allowance deduction; "institutionalized individual or couple" defined**

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.      Add.089      80

**(1)(A)** In order to meet the requirement of subsection (a)(50), the State plan must provide that, in the case of an institutionalized individual or couple described in subparagraph (B), in determining the amount of the individual's or couple's income to be applied monthly to payment for the cost of care in an institution, there shall be deducted from the monthly income (in addition to other allowances otherwise provided under the State plan) a monthly personal needs allowance--

**(i)** which is reasonable in amount for clothing and other personal needs of the individual (or couple) while in an institution, and

**(ii)** which is not less (and may be greater) than the minimum monthly personal needs allowance described in paragraph (2).

**(B)** In this subsection, the term "institutionalized individual or couple" means an individual or married couple--

**(i)** who is an inpatient (or who are inpatients) in a medical institution or nursing facility for which payments are made under this subchapter throughout a month, and

**(ii)** who is or are determined to be eligible for medical assistance under the State plan.

**(2)** The minimum monthly personal needs allowance described in this paragraph [16] is $30 for an institutionalized individual and $60 for an institutionalized couple (if both are aged, blind, or disabled, and their incomes are considered available to each other in determining eligibility).

**(r)Disregarding payments for certain medical expenses by institutionalized individuals**

**(1)(A)** For purposes of sections 1396a(a)(17) and 1396r-5(d)(1)(D) of this title and for purposes of a waiver under section 1396n of this title, with respect to the post-eligibility treatment of income of individuals who are institutionalized or receiving home or community-based services under such a waiver, the treatment described in subparagraph (B) shall apply, there shall be disregarded reparation payments made by the Federal Republic of Germany, and there shall be taken into account amounts for incurred expenses for medical or remedial care that are not subject to payment by a third party, including--

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    81

Add.090

**(i)** medicare and other health insurance premiums, deductibles, or coinsurance, and

**(ii)** necessary medical or remedial care recognized under State law but not covered under the State plan under this subchapter, subject to reasonable limits the State may establish on the amount of these expenses.

**(B)(i)** In the case of a veteran who does not have a spouse or a child, if the veteran--

**(I)** receives, after the veteran has been determined to be eligible for medical assistance under the State plan under this subchapter, a veteran's pension in excess of $90 per month, and

**(II)** resides in a State veterans home with respect to which the Secretary of Veterans Affairs makes per diem payments for nursing home care pursuant to section 1741(a) of Title 38,

any such pension payment, including any payment made due to the need for aid and attendance, or for unreimbursed medical expenses, that is in excess of $90 per month shall be counted as income only for the purpose of applying such excess payment to the State veterans home's cost of providing nursing home care to the veteran.

**(ii)** The provisions of clause (i) shall apply with respect to a surviving spouse of a veteran who does not have a child in the same manner as they apply to a veteran described in such clause.

**(2)(A)** The methodology to be employed in determining income and resource eligibility for individuals under subsection (a)(10)(A)(i)(III), (a)(10)(A)(i)(IV), (a)(10)(A)(i)(VI), (a)(10)(A)(i)(VII), (a)(10)(A)(ii), (a)(10)(C)(i)(III), or (f) or under section 1396d(p) of this title may be less restrictive, and shall be no more restrictive, than the methodology--

**(i)** in the case of groups consisting of aged, blind, or disabled individuals, under the supplemental security income program under subchapter XVI, or

**(ii)** in the case of other groups, under the State plan most closely categorically related.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.091

**(B)** For purposes of this subsection and subsection (a)(10), methodology is considered to be "no more restrictive" if, using the methodology, additional individuals may be eligible for medical assistance and no individuals who are otherwise eligible are made ineligible for such assistance.

**(s)Adjustment in payment for hospital services furnished to low-income children under age of 6 years**

In order to meet the requirements of subsection (a)(55) [17], the State plan must provide that payments to hospitals under the plan for inpatient hospital services furnished to infants who have not attained the age of 1 year, and to children who have not attained the age of 6 years and who receive such services in a disproportionate share hospital described in section 1396r-4(b)(1) of this title, shall--

**(1)** if made on a prospective basis (whether per diem, per case, or otherwise) provide for an outlier adjustment in payment amounts for medically necessary inpatient hospital services involving exceptionally high costs or exceptionally long lengths of stay,

**(2)** not be limited by the imposition of day limits with respect to the delivery of such services to such individuals, and

**(3)** not be limited by the imposition of dollar limits (other than such limits resulting from prospective payments as adjusted pursuant to paragraph (1)) with respect to the delivery of such services to any such individual who has not attained their first birthday (or in the case of such an individual who is an inpatient on his first birthday until such individual is discharged).

**(t)Limitation on payments to States for expenditures attributable to taxes**

Nothing in this subchapter (including sections 1396b(a) and 1396d(a) of this title) shall be construed as authorizing the Secretary to deny or limit payments to a State for expenditures, for medical assistance for items or services, attributable to taxes of general applicability imposed with respect to the provision of such items or services.

**(u)Qualified COBRA continuation beneficiaries**

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    83

Add.092

**(1)** Individuals described in this paragraph are individuals--

**(A)** who are entitled to elect COBRA continuation coverage (as defined in paragraph (3)),

**(B)** whose income (as determined under section 1382a of this title for purposes of the supplemental security income program) does not exceed 100 percent of the official poverty line (as defined by the Office of Management and Budget, and revised annually in accordance with section 9902(2) of this title) applicable to a family of the size involved,

**(C)** whose resources (as determined under section 1382b of this title for purposes of the supplemental security income program) do not exceed twice the maximum amount of resources that an individual may have and obtain benefits under that program, and

**(D)** with respect to whose enrollment for COBRA continuation coverage the State has determined that the savings in expenditures under this subchapter resulting from such enrollment is likely to exceed the amount of payments for COBRA premiums made.

**(2)** For purposes of subsection (a)(10)(F) and this subsection, the term "COBRA premiums" means the applicable premium imposed with respect to COBRA continuation coverage.

**(3)** In this subsection, the term "COBRA continuation coverage" means coverage under a group health plan provided by an employer with 75 or more employees provided pursuant to title XXII of the Public Health Service Act, section 4980B of the Internal Revenue Code of 1986, or title VI of the Employee Retirement Income Security Act of 1974.

**(4)** Notwithstanding subsection (a)(17), for individuals described in paragraph (1) who are covered under the State plan by virtue of subsection (a)(10)(A)(ii)(XI)--

**(A)** the income standard to be applied is the income standard described in paragraph (1)(B), and

**(B)** except as provided in section 1382a(b)(4)(B)(ii) of this title, costs incurred for medical care or for any other type of remedial care shall not be taken into account in determining income.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.093

Any different treatment provided under this paragraph for such individuals shall not, because of subsection (a)(10)(B) or (a)(17), require or permit such treatment for other individuals.

**(v)State agency disability and blindness determinations for medical assistance eligibility**

A State plan may provide for the making of determinations of disability or blindness for the purpose of determining eligibility for medical assistance under the State plan by the single State agency or its designee, and make medical assistance available to individuals whom it finds to be blind or disabled and who are determined otherwise eligible for such assistance during the period of time prior to which a final determination of disability or blindness is made by the Social Security Administration with respect to such an individual. In making such determinations, the State must apply the definitions of disability and blindness found in section 1382c(a) of this title.

**(w)Maintenance of written policies and procedures respecting advance directives**

**(1)** For purposes of subsection (a)(57) and sections 1396b(m)(1)(A) and 1396r(c)(2)(E) of this title, the requirement of this subsection is that a provider or organization (as the case may be) maintain written policies and procedures with respect to all adult individuals receiving medical care by or through the provider or organization--

  **(A)** to provide written information to each such individual concerning--

    **(i)** an individual's rights under State law (whether statutory or as recognized by the courts of the State) to make decisions concerning such medical care, including the right to accept or refuse medical or surgical treatment and the right to formulate advance directives (as defined in paragraph (3)), and

    **(ii)** the provider's or organization's written policies respecting the implementation of such rights;

  **(B)** to document in the individual's medical record whether or not the individual has executed an advance directive;

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.094

**(C)** not to condition the provision of care or otherwise discriminate against an individual based on whether or not the individual has executed an advance directive;

**(D)** to ensure compliance with requirements of State law (whether statutory or as recognized by the courts of the State) respecting advance directives; and

**(E)** to provide (individually or with others) for education for staff and the community on issues concerning advance directives.

Subparagraph (C) shall not be construed as requiring the provision of care which conflicts with an advance directive.

**(2)** The written information described in paragraph (1)(A) shall be provided to an adult individual--

**(A)** in the case of a hospital, at the time of the individual's admission as an inpatient,

**(B)** in the case of a nursing facility, at the time of the individual's admission as a resident,

**(C)** in the case of a provider of home health care or personal care services, in advance of the individual coming under the care of the provider,

**(D)** in the case of a hospice program, at the time of initial receipt of hospice care by the individual from the program, and

**(E)** in the case of a medicaid managed care organization, at the time of enrollment of the individual with the organization.

**(3)** Nothing in this section shall be construed to prohibit the application of a State law which allows for an objection on the basis of conscience for any health care provider or any agent of such provider which as a matter of conscience cannot implement an advance directive.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
**Add.095**

**(4)** In this subsection, the term "advance directive" means a written instruction, such as a living will or durable power of attorney for health care, recognized under State law (whether statutory or as recognized by the courts of the State) and relating to the provision of such care when the individual is incapacitated.

**(5)** For construction relating to this subsection, see section 14406 of this title (relating to clarification respecting assisted suicide, euthanasia, and mercy killing).

**(x)Physician identifier system; establishment**

The Secretary shall establish a system, for implementation by not later than July 1, 1991, which provides for a unique identifier for each physician who furnishes services for which payment may be made under a State plan approved under this subchapter.

**(y)Intermediate sanctions for psychiatric hospitals**

**(1)** In addition to any other authority under State law, where a State determines that a psychiatric hospital which is certified for participation under its plan no longer meets the requirements for a psychiatric hospital (referred to in section 1396d(h) of this title) and further finds that the hospital's deficiencies--

**(A)** immediately jeopardize the health and safety of its patients, the State shall terminate the hospital's participation under the State plan; or

**(B)** do not immediately jeopardize the health and safety of its patients, the State may terminate the hospital's participation under the State plan, or provide that no payment will be made under the State plan with respect to any individual admitted to such hospital after the effective date of the finding, or both.

**(2)** Except as provided in paragraph (3), if a psychiatric hospital described in paragraph (1)(B) has not complied with the requirements for a psychiatric hospital under this subchapter--

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.096

**(A)** within 3 months after the date the hospital is found to be out of compliance with such requirements, the State shall provide that no payment will be made under the State plan with respect to any individual admitted to such hospital after the end of such 3-month period, or

**(B)** within 6 months after the date the hospital is found to be out of compliance with such requirements, no Federal financial participation shall be provided under section 1396b(a) of this title with respect to further services provided in the hospital until the State finds that the hospital is in compliance with the requirements of this subchapter.

**(3)** The Secretary may continue payments, over a period of not longer than 6 months from the date the hospital is found to be out of compliance with such requirements, if--

**(A)** the State finds that it is more appropriate to take alternative action to assure compliance of the hospital with the requirements than to terminate the certification of the hospital,

**(B)** the State has submitted a plan and timetable for corrective action to the Secretary for approval and the Secretary approves the plan of corrective action, and

**(C)** the State agrees to repay to the Federal Government payments received under this paragraph if the corrective action is not taken in accordance with the approved plan and timetable.

**(z)Optional coverage of TB-related services**

**(1)** Individuals described in this paragraph are individuals not described in subsection (a)(10)(A)(i)--

**(A)** who are infected with tuberculosis;

**(B)** whose income (as determined under the State plan under this subchapter with respect to disabled individuals) does not exceed the maximum amount of income a disabled individual described in subsection (a)(10)(A)(i) may have and obtain medical assistance under the plan; and

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.097

**(C)** whose resources (as determined under the State plan under this subchapter with respect to disabled individuals) do not exceed the maximum amount of resources a disabled individual described in subsection (a)(10)(A)(i) may have and obtain medical assistance under the plan.

**(2)** For purposes of subsection (a)(10), the term "TB-related services" means each of the following services relating to treatment of infection with tuberculosis:

**(A)** Prescribed drugs.

**(B)** Physicians' services and services described in section 1396d(a)(2) of this title.

**(C)** Laboratory and X-ray services (including services to confirm the presence of infection).

**(D)** Clinic services and Federally-qualified health center services.

**(E)** Case management services (as defined in section 1396n(g)(2) of this title).

**(F)** Services (other than room and board) designed to encourage completion of regimens of prescribed drugs by outpatients, including services to observe directly the intake of prescribed drugs.

**(aa)Certain breast or cervical cancer patients**

Individuals described in this subsection are individuals who--

**(1)** are not described in subsection (a)(10)(A)(i);

**(2)** have not attained age 65;

**(3)** have been screened for breast and cervical cancer under the Centers for Disease Control and Prevention breast and cervical cancer early detection program established under title XV of

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.098
89

the Public Health Service Act (42 U.S.C. 300k et seq.) in accordance with the requirements of section 1504 of that Act (42 U.S.C. 300n) and need treatment for breast or cervical cancer; and

**(4)** are not otherwise covered under creditable coverage, as defined in section 2701(c) of the Public Health Service Act (42 U.S.C. 300gg(c)), but applied without regard to paragraph (1)(F) of such section.

**(bb)Payment for services provided by Federally-qualified health centers and rural health clinics**

**(1)In general**

Beginning with fiscal year 2001 with respect to services furnished on or after January 1, 2001, and each succeeding fiscal year, the State plan shall provide for payment for services described in section 1396d(a)(2)(C) of this title furnished by a Federally-qualified health center and services described in section 1396d(a)(2)(B) of this title furnished by a rural health clinic in accordance with the provisions of this subsection.

**(2)Fiscal year 2001**

Subject to paragraph (4), for services furnished on and after January 1, 2001, during fiscal year 2001, the State plan shall provide for payment for such services in an amount (calculated on a per visit basis) that is equal to 100 percent of the average of the costs of the center or clinic of furnishing such services during fiscal years 1999 and 2000 which are reasonable and related to the cost of furnishing such services, or based on such other tests of reasonableness as the Secretary prescribes in regulations under section 1395*l*(a)(3) of this title, or, in the case of services to which such regulations do not apply, the same methodology used under section 1395*l*(a)(3) of this title, adjusted to take into account any increase or decrease in the scope of such services furnished by the center or clinic during fiscal year 2001.

**(3)Fiscal year 2002 and succeeding fiscal years**

Subject to paragraph (4), for services furnished during fiscal year 2002 or a succeeding fiscal year, the State plan shall provide for payment for such services in an amount (calculated on a per visit basis) that is equal to the amount calculated for such services under this subsection for the preceding fiscal year--

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.099

**(A)** increased by the percentage increase in the MEI (as defined in section 1395u(i)(3) of this title) applicable to primary care services (as defined in section 1395u(i)(4) of this title) for that fiscal year; and

**(B)** adjusted to take into account any increase or decrease in the scope of such services furnished by the center or clinic during that fiscal year.

**(4)Establishment of initial year payment amount for new centers or clinics**

In any case in which an entity first qualifies as a Federally-qualified health center or rural health clinic after fiscal year 2000, the State plan shall provide for payment for services described in section 1396d(a)(2)(C) of this title furnished by the center or services described in section 1396d(a)(2)(B) of this title furnished by the clinic in the first fiscal year in which the center or clinic so qualifies in an amount (calculated on a per visit basis) that is equal to 100 percent of the costs of furnishing such services during such fiscal year based on the rates established under this subsection for the fiscal year for other such centers or clinics located in the same or adjacent area with a similar case load or, in the absence of such a center or clinic, in accordance with the regulations and methodology referred to in paragraph (2) or based on such other tests of reasonableness as the Secretary may specify. For each fiscal year following the fiscal year in which the entity first qualifies as a Federally-qualified health center or rural health clinic, the State plan shall provide for the payment amount to be calculated in accordance with paragraph (3).

**(5)Administration in the case of managed care**

**(A)In general**

In the case of services furnished by a Federally-qualified health center or rural health clinic pursuant to a contract between the center or clinic and a managed care entity (as defined in section 1396u-2(a)(1)(B) of this title), the State plan shall provide for payment to the center or clinic by the State of a supplemental payment equal to the amount (if any) by which the amount determined under paragraphs (2), (3), and (4) of this subsection exceeds the amount of the payments provided under the contract.

**(B)Payment schedule**

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.100
91

The supplemental payment required under subparagraph (A) shall be made pursuant to a payment schedule agreed to by the State and the Federally-qualified health center or rural health clinic, but in no case less frequently than every 4 months.

**(6)Alternative payment methodologies**

Notwithstanding any other provision of this section, the State plan may provide for payment in any fiscal year to a Federally-qualified health center for services described in section 1396d(a)(2)(C) of this title or to a rural health clinic for services described in section 1396d(a)(2)(B) of this title in an amount which is determined under an alternative payment methodology that--

**(A)** is agreed to by the State and the center or clinic; and

**(B)** results in payment to the center or clinic of an amount which is at least equal to the amount otherwise required to be paid to the center or clinic under this section.

**(cc)Disabled children eligible to receive medical assistance at option of State**

**(1)** Individuals described in this paragraph are individuals--

**(A)** who are children who have not attained 19 years of age and are born--

**(i)** on or after January 1, 2001 (or, at the option of a State, on or after an earlier date), in the case of the second, third, and fourth quarters of fiscal year 2007;

**(ii)** on or after October 1, 1995 (or, at the option of a State, on or after an earlier date), in the case of each quarter of fiscal year 2008; and

**(iii)** after October 1, 1989, in the case of each quarter of fiscal year 2009 and each quarter of any fiscal year thereafter;

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
**Add. 101**

**(B)** who would be considered disabled under section 1382c(a)(3)(C) of this title (as determined under subchapter XVI for children but without regard to any income or asset eligibility requirements that apply under such subchapter with respect to children); and

**(C)** whose family income does not exceed such income level as the State establishes and does not exceed--

**(i)** 300 percent of the poverty line (as defined in section 1397jj(c)(5) of this title) applicable to a family of the size involved; or

**(ii)** such higher percent of such poverty line as a State may establish, except that--

**(I)** any medical assistance provided to an individual whose family income exceeds 300 percent of such poverty line may only be provided with State funds; and

**(II)** no Federal financial participation shall be provided under section 1396b(a) of this title for any medical assistance provided to such an individual.

**(2)(A)** If an employer of a parent of an individual described in paragraph (1) offers family coverage under a group health plan (as defined in section 2791(a) of the Public Health Service Act), the State shall--

**(i)** notwithstanding section 1396e of this title, require such parent to apply for, enroll in, and pay premiums for such coverage as a condition of such parent's child being or remaining eligible for medical assistance under subsection (a)(10)(A)(ii)(XIX) if the parent is determined eligible for such coverage and the employer contributes at least 50 percent of the total cost of annual premiums for such coverage; and

**(ii)** if such coverage is obtained--

**(I)** subject to paragraph (2) of section 1396*o*(h) [18] of this title, reduce the premium imposed by the State under that section in an amount that reasonably reflects the premium

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.102

contribution made by the parent for private coverage on behalf of a child with a disability; and

**(II)** treat such coverage as a third party liability under subsection (a)(25).

**(B)** In the case of a parent to which subparagraph (A) applies, a State, notwithstanding section 1396e of this title but subject to paragraph (1)(C)(ii), may provide for payment of any portion of the annual premium for such family coverage that the parent is required to pay. Any payments made by the State under this subparagraph shall be considered, for purposes of section 1396b(a) of this title, to be payments for medical assistance.

**(dd)Electronic transmission of information**

If the State agency determining eligibility for medical assistance under this subchapter or child health assistance under subchapter XXI verifies an element of eligibility based on information from an Express Lane Agency [19] (as defined in subsection (e)(13)(F)), or from another public agency, then the applicant's signature under penalty of perjury shall not be required as to such element. Any signature requirement for an application for medical assistance may be satisfied through an electronic signature, as defined in section 1710(1) of the Government Paperwork Elimination Act (44 U.S.C. 3504 note). The requirements of subparagraphs (A) and (B) of section 1320b-7(d)(2) of this title may be met through evidence in digital or electronic form.

**(ee)Alternate State process for verification of citizenship or nationality declaration**

**(1)** For purposes of subsection (a)(46)(B)(ii), the requirements of this subsection with respect to an individual declaring to be a citizen or national of the United States for purposes of establishing eligibility under this subchapter, are, in lieu of requiring the individual to present satisfactory documentary evidence of citizenship or nationality under section 1396b(x) of this title (if the individual is not described in paragraph (2) of that section), as follows:

**(A)** The State submits the name and social security number of the individual to the Commissioner of Social Security as part of the program established under paragraph (2).

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    94

**Add.103**

USCA Case #24-5172     Document #2101807         Filed: 02/20/2025     Page 107 of 282

**(B)** If the State receives notice from the Commissioner of Social Security that the name or social security number, or the declaration of citizenship or nationality, of the individual is inconsistent with information in the records maintained by the Commissioner--

**(i)** the State makes a reasonable effort to identify and address the causes of such inconsistency, including through typographical or other clerical errors, by contacting the individual to confirm the accuracy of the name or social security number submitted or declaration of citizenship or nationality and by taking such additional actions as the Secretary, through regulation or other guidance, or the State may identify, and continues to provide the individual with medical assistance while making such effort; and

**(ii)** in the case such inconsistency is not resolved under clause (i), the State--

**(I)** notifies the individual of such fact;

**(II)** provides the individual with a period of 90 days from the date on which the notice required under subclause (I) is received by the individual to either present satisfactory documentary evidence of citizenship or nationality (as defined in section 1396b(x)(3) of this title) or resolve the inconsistency with the Commissioner of Social Security (and continues to provide the individual with medical assistance during such 90-day period); and

**(III)** disenrolls the individual from the State plan under this subchapter within 30 days after the end of such 90-day period if no such documentary evidence is presented or if such inconsistency is not resolved.

**(2)(A)** Each State electing to satisfy the requirements of this subsection for purposes of section 1396a(a)(46)(B) of this title shall establish a program under which the State submits at least monthly to the Commissioner of Social Security for comparison of the name and social security number, of each individual newly enrolled in the State plan under this subchapter that month who is not described in section 1396b(x)(2) of this title and who declares to be a United States citizen or national, with information in records maintained by the Commissioner.

**(B)** In establishing the State program under this paragraph, the State may enter into an agreement with the Commissioner of Social Security--

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**(i)** to provide, through an on-line system or otherwise, for the electronic submission of, and response to, the information submitted under subparagraph (A) for an individual enrolled in the State plan under this subchapter who declares to be [20] citizen or national on at least a monthly basis; or

**(ii)** to provide for a determination of the consistency of the information submitted with the information maintained in the records of the Commissioner through such other method as agreed to by the State and the Commissioner and approved by the Secretary, provided that such method is no more burdensome for individuals to comply with than any burdens that may apply under a method described in clause (i).

**(C)** The program established under this paragraph shall provide that, in the case of any individual who is required to submit a social security number to the State under subparagraph (A) and who is unable to provide the State with such number, shall be provided with at least the reasonable opportunity to present satisfactory documentary evidence of citizenship or nationality (as defined in section 1396b(x)(3) of this title) as is provided under clauses (i) and (ii) of section 1320b-7(d)(4) (A) of this title to an individual for the submittal to the State of evidence indicating a satisfactory immigration status.

**(3)(A)** The State agency implementing the plan approved under this subchapter shall, at such times and in such form as the Secretary may specify, provide information on the percentage each month that the inconsistent submissions bears to the total submissions made for comparison for such month. For purposes of this subparagraph, a name, social security number, or declaration of citizenship or nationality of an individual shall be treated as inconsistent and included in the determination of such percentage only if--

**(i)** the information submitted by the individual is not consistent with information in records maintained by the Commissioner of Social Security;

**(ii)** the inconsistency is not resolved by the State;

**(iii)** the individual was provided with a reasonable period of time to resolve the inconsistency with the Commissioner of Social Security or provide satisfactory documentation of citizenship status and did not successfully resolve such inconsistency; and

**(iv)** payment has been made for an item or service furnished to the individual under this subchapter.

**(B)** If, for any fiscal year, the average monthly percentage determined under subparagraph (A) is greater than 3 percent--

**(i)** the State shall develop and adopt a corrective plan to review its procedures for verifying the identities of individuals seeking to enroll in the State plan under this subchapter and to identify and implement changes in such procedures to improve their accuracy; and

**(ii)** pay to the Secretary an amount equal to the amount which bears the same ratio to the total payments under the State plan for the fiscal year for providing medical assistance to individuals who provided inconsistent information as the number of individuals with inconsistent information in excess of 3 percent of such total submitted bears to the total number of individuals with inconsistent information.

**(C)** The Secretary may waive, in certain limited cases, all or part of the payment under subparagraph (B)(ii) if the State is unable to reach the allowable error rate despite a good faith effort by such State.

**(D)** Subparagraphs (A) and (B) shall not apply to a State for a fiscal year if there is an agreement described in paragraph (2)(B) in effect as of the close of the fiscal year that provides for the submission on a real-time basis of the information described in such paragraph.

**(4)** Nothing in this subsection shall affect the rights of any individual under this subchapter to appeal any disenrollment from a State plan.

**(ff)Disregard of certain property in determination of eligibility of Indians**

Notwithstanding any other requirement of this subchapter or any other provision of Federal or State law, a State shall disregard the following property from resources for purposes of determining the eligibility of an individual who is an Indian for medical assistance under this subchapter:

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.
**Add.106**

**(1)** Property, including real property and improvements, that is held in trust, subject to Federal restrictions, or otherwise under the supervision of the Secretary of the Interior, located on a reservation, including any federally recognized Indian Tribe's reservation, pueblo, or colony, including former reservations in Oklahoma, Alaska Native regions established by the Alaska Native Claims Settlement Act, and Indian allotments on or near a reservation as designated and approved by the Bureau of Indian Affairs of the Department of the Interior.

**(2)** For any federally recognized Tribe not described in paragraph (1), property located within the most recent boundaries of a prior Federal reservation.

**(3)** Ownership interests in rents, leases, royalties, or usage rights related to natural resources (including extraction of natural resources or harvesting of timber, other plants and plant products, animals, fish, and shellfish) resulting from the exercise of federally protected rights.

**(4)** Ownership interests in or usage rights to items not covered by paragraphs (1) through (3) that have unique religious, spiritual, traditional, or cultural significance or rights that support subsistence or a traditional lifestyle according to applicable tribal law or custom.

**(gg)Maintenance of effort**

**(1)General requirement to maintain eligibility standards until State exchange is fully operational**

Subject to the succeeding paragraphs of this subsection, during the period that begins on March 23, 2010, and ends on the date on which the Secretary determines that an Exchange established by the State under section 18031 of this title is fully operational, as a condition for receiving any Federal payments under section 1396b(a) of this title for calendar quarters occurring during such period, a State shall not have in effect eligibility standards, methodologies, or procedures under the State plan under this subchapter or under any waiver of such plan that is in effect during that period, that are more restrictive than the eligibility standards, methodologies, or procedures, respectively, under the plan or waiver that are in effect on March 23, 2010.

**(2)Continuation of eligibility standards for children through September 30, 2029**

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.107

The requirement under paragraph (1) shall continue to apply to a State through September 30, 2029, (but during the period that begins on October 1, 2019, and ends on September 30, 2029, only with respect to children in families whose income does not exceed 300 percent of the poverty line (as defined in section 1397jj(c)(5) of this title) applicable to a family of the size involved) with respect to the eligibility standards, methodologies, and procedures under the State plan under this subchapter or under any waiver of such plan that are applicable to determining the eligibility for medical assistance of any child who is under 19 years of age (or such higher age as the State may have elected).

**(3)Nonapplication**

During the period that begins on January 1, 2011, and ends on December 31, 2013, the requirement under paragraph (1) shall not apply to a State with respect to nonpregnant, nondisabled adults who are eligible for medical assistance under the State plan or under a waiver of the plan at the option of the State and whose income exceeds 133 percent of the poverty line (as defined in section 1397jj(c)(5) of this title) applicable to a family of the size involved if, on or after December 31, 2010, the State certifies to the Secretary that, with respect to the State fiscal year during which the certification is made, the State has a budget deficit, or with respect to the succeeding State fiscal year, the State is projected to have a budget deficit. Upon submission of such a certification to the Secretary, the requirement under paragraph (1) shall not apply to the State with respect to any remaining portion of the period described in the preceding sentence.

**(4)Determination of compliance**

**(A)States shall apply modified adjusted gross income**

A State's determination of income in accordance with subsection (e)(14) shall not be considered to be eligibility standards, methodologies, or procedures that are more restrictive than the standards, methodologies, or procedures in effect under the State plan or under a waiver of the plan on March 23, 2010, for purposes of determining compliance with the requirements of paragraph (1), (2), or (3).

**(B)States may expand eligibility or move waivered populations into coverage under the State plan**

With respect to any period applicable under paragraph (1), (2), or (3), a State that applies eligibility standards, methodologies, or procedures under the State plan under this subchapter

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

or under any waiver of the plan that are less restrictive than the eligibility standards, methodologies, or procedures, applied under the State plan or under a waiver of the plan on March 23, 2010, or that makes individuals who, on March 23, 2010, are eligible for medical assistance under a waiver of the State plan, after March 23, 2010, eligible for medical assistance through a State plan amendment with an income eligibility level that is not less than the income eligibility level that applied under the waiver, or as a result of the application of subclause (VIII) of subsection (a)(10)(A)(i), shall not be considered to have in effect eligibility standards, methodologies, or procedures that are more restrictive than the standards, methodologies, or procedures in effect under the State plan or under a waiver of the plan on March 23, 2010, for purposes of determining compliance with the requirements of paragraph (1), (2), or (3).

**(hh)State option for coverage for individuals with income that exceeds 133 percent of the poverty line**

**(1)** A State may elect to phase-in the extension of eligibility for medical assistance to individuals described in subclause (XX) of subsection (a)(10)(A)(ii) based on the categorical group (including nonpregnant childless adults) or income, so long as the State does not extend such eligibility to individuals described in such subclause with higher income before making individuals described in such subclause with lower income eligible for medical assistance.

**(2)** If an individual described in subclause (XX) of subsection (a)(10)(A)(ii) is the parent of a child who is under 19 years of age (or such higher age as the State may have elected) who is eligible for medical assistance under the State plan or under a waiver of such plan, the individual may not be enrolled under the State plan unless the individual's child is enrolled under the State plan or under a waiver of the plan or is enrolled in other health insurance coverage. For purposes of the preceding sentence, the term "parent" includes an individual treated as a caretaker relative for purposes of carrying out section 1396u-1 of this title.

**(ii)State eligibility option for family planning services**

**(1)** Individuals described in this subsection are individuals--

**(A)** whose income does not exceed an income eligibility level established by the State that does not exceed the highest income eligibility level established under the State plan under this subchapter (or under its State child health plan under subchapter XXI) for pregnant women; and

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.     100
Add.109

**(B)** who are not pregnant.

**(2)** At the option of a State, individuals described in this subsection may include individuals who, had individuals applied on or before January 1, 2007, would have been made eligible pursuant to the standards and processes imposed by that State for benefits described in clause (XVI) of the matter following subparagraph (G) of section [21] subsection (a)(10) pursuant to a waiver granted under section 1315 of this title.

**(3)** At the option of a State, for purposes of subsection (a)(17)(B), in determining eligibility for services under this subsection, the State may consider only the income of the applicant or recipient.

**(jj)Primary care services defined**

For purposes of subsection (a)(13)(C), the term "primary care services" means--

**(1)** evaluation and management services that are procedure codes (for services covered under subchapter XVIII) for services in the category designated Evaluation and Management in the Healthcare Common Procedure Coding System (established by the Secretary under section 1395w-4(c)(5) of this title as of December 31, 2009, and as subsequently modified); and

**(2)** services related to immunization administration for vaccines and toxoids for which CPT codes 90465, 90466, 90467, 90468, 90471, 90472, 90473, or 90474 (as subsequently modified) apply under such System.

**(kk)Provider and supplier screening, oversight, and reporting requirements**

For purposes of subsection (a)(77), the requirements of this subsection are the following:

**(1)Screening**

The State complies with the process for screening providers and suppliers under this subchapter, as established by the Secretary under section 1395cc(j)(2) of this title.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    101

Add.110

**(2)Provisional period of enhanced oversight for new providers and suppliers**

The State complies with procedures to provide for a provisional period of enhanced oversight for new providers and suppliers under this subchapter, as established by the Secretary under section 1395cc(j)(3) of this title.

**(3)Disclosure requirements**

The State requires providers and suppliers under the State plan or under a waiver of the plan to comply with the disclosure requirements established by the Secretary under section 1395cc(j)(5) of this title.

**(4)Temporary moratorium on enrollment of new providers or suppliers**

**(A)Temporary moratorium imposed by the Secretary**

**(i)In general**

Subject to clause (ii), the State complies with any temporary moratorium on the enrollment of new providers or suppliers imposed by the Secretary under section 1395cc(j)(7) of this title.

**(ii)Exceptions**

**(I)Compliance with moratorium**

A State shall not be required to comply with a temporary moratorium described in clause (i) if the State determines that the imposition of such temporary moratorium would adversely impact beneficiaries' access to medical assistance.

**(II)FFP available**

Notwithstanding section 1396b(i)(2)(E) of this title, payment may be made to a State under this subchapter with respect to amounts expended for items and services described

WESTLAW      © 2025 Thomson Reuters. No claim to original U.S. Government Works.      102

Add.111

in such section if the Secretary, in consultation with the State agency administering the State plan under this subchapter (or a waiver of the plan), determines that denying payment to the State pursuant to such section would adversely impact beneficiaries' access to medical assistance.

**(iii)Limitation on charges to beneficiaries**

With respect to any amount expended for items or services furnished during calendar quarters beginning on or after October 1, 2017, the State prohibits, during the period of a temporary moratorium described in clause (i), a provider meeting the requirements specified in subparagraph (C)(iii) of section 1395cc(j)(7) of this title from charging an individual or other person eligible to receive medical assistance under the State plan under this subchapter (or a waiver of the plan) for an item or service described in section 1396b(i)(2)(E) of this title furnished to such an individual.

**(B)Moratorium on enrollment of providers and suppliers**

At the option of the State, the State imposes, for purposes of entering into participation agreements with providers or suppliers under the State plan or under a waiver of the plan, periods of enrollment moratoria, or numerical caps or other limits, for providers or suppliers identified by the Secretary as being at high-risk for fraud, waste, or abuse as necessary to combat fraud, waste, or abuse, but only if the State determines that the imposition of any such period, cap, or other limits would not adversely impact beneficiaries' access to medical assistance.

**(5)Compliance programs**

The State requires providers and suppliers under the State plan or under a waiver of the plan to establish, in accordance with the requirements of section 1395cc(j)(7) of this title, a compliance program that contains the core elements established under subparagraph (B) of that section 1395cc(j)(7) of this title for providers or suppliers within a particular industry or category.

**(6)Reporting of adverse provider actions**

The State complies with the national system for reporting criminal and civil convictions, sanctions, negative licensure actions, and other adverse provider actions to the Secretary,

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    103

Add.112

through the Administrator of the Centers for Medicare & Medicaid Services, in accordance with regulations of the Secretary.

**(7)Enrollment and NPI of ordering or referring providers**

The State requires--

**(A)** all ordering or referring physicians or other professionals to be enrolled under the State plan or under a waiver of the plan as a participating provider; and

**(B)** the national provider identifier of any ordering or referring physician or other professional to be specified on any claim for payment that is based on an order or referral of the physician or other professional.

**(8)Provider terminations**

**(A)In general**

Beginning on July 1, 2018, in the case of a notification under subsection (a)(41) with respect to a termination for a reason specified in section 455.101 of title 42, Code of Federal Regulations (as in effect on November 1, 2015) or for any other reason specified by the Secretary, of the participation of a provider of services or any other person under the State plan (or under a waiver of the plan), the State, not later than 30 days after the effective date of such termination, submits to the Secretary with respect to any such provider or person, as appropriate--

**(i)** the name of such provider or person;

**(ii)** the provider type of such provider or person;

**(iii)** the specialty of such provider's or person's practice;

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.    104
Add.113

**(iv)** the date of birth, Social Security number, national provider identifier (if applicable), Federal taxpayer identification number, and the State license or certification number of such provider or person (if applicable);

**(v)** the reason for the termination;

**(vi)** a copy of the notice of termination sent to the provider or person;

**(vii)** the date on which such termination is effective, as specified in the notice; and

**(viii)** any other information required by the Secretary.

### (B) Effective date defined

For purposes of this paragraph, the term "effective date" means, with respect to a termination described in subparagraph (A), the later of--

**(i)** the date on which such termination is effective, as specified in the notice of such termination; or

**(ii)** the date on which all appeal rights applicable to such termination have been exhausted or the timeline for any such appeal has expired.

### (9) Other State oversight

Nothing in this subsection shall be interpreted to preclude or limit the ability of a State to engage in provider and supplier screening or enhanced provider and supplier oversight activities beyond those required by the Secretary.

### (ll) Termination notification database

In the case of a provider of services or any other person whose participation under this subchapter or subchapter XXI is terminated (as described in subsection (kk)(8)), the Secretary shall, not later

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
**Add.114**
105

than 30 days after the date on which the Secretary is notified of such termination under subsection (a)(41) (as applicable), review such termination and, if the Secretary determines appropriate, include such termination in any database or similar system developed pursuant to section 6401(b)(2) of the Patient Protection and Affordable Care Act (42 U.S.C. 1395cc note; Public Law 111-148).

**(mm)Directory physician or provider described**

A physician or provider described in this subsection is--

**(1)** in the case of a physician or provider of a provider type for which the State agency, as a condition on receiving payment for items and services furnished by the physician or provider to individuals eligible to receive medical assistance under the State plan, requires the enrollment of the physician or provider with the State agency, a physician or a provider that--

**(A)** is enrolled with the agency as of the date on which the directory is published or updated (as applicable) under subsection (a)(83); and

**(B)** received payment under the State plan in the 12-month period preceding such date; and

**(2)** in the case of a physician or provider of a provider type for which the State agency does not require such enrollment, a physician or provider that received payment under the State plan (or a waiver of the plan) in the 12-month period preceding the date on which the directory is published or updated (as applicable) under subsection (a)(83).

**(nn)Juvenile; eligible juvenile; public institution**

For purposes of subsection (a)(84) and this subsection:

**(1)Juvenile**

The term "juvenile" means an individual who is--

**(A)** under 21 years of age; or

**(B)** described in subsection (a)(10)(A)(i)(IX).

**(2)Eligible juvenile**

The term "eligible juvenile" means a juvenile who is an inmate of a public institution and who--

**(A)** was determined eligible for medical assistance under the State plan (or waiver of such plan) immediately before becoming an inmate of such a public institution; or

**(B)** is determined eligible for such medical assistance while an inmate of a public institution.

**(3)Inmate of a public institution**

The term "inmate of a public institution" has the meaning given such term for purposes of applying the subdivision (A) following the last numbered paragraph of section 1396d(a) of this title, taking into account the exception in such subdivision for a patient of a medical institution.

**(oo)Drug review and utilization requirements**

**(1)In general**

For purposes of subsection (a)(85), the drug review and utilization requirements under this subsection are, subject to paragraph (3) and beginning October 1, 2019, the following:

**(A)Claims review limitations**

**(i)In general**

The State has in place--

**(I)** safety edits (as specified by the State) for subsequent fills for opioids and a claims review automated process (as designed and implemented by the State) that indicates

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    107

Add.116

when an individual enrolled under the State plan (or under a waiver of the State plan) is prescribed a subsequent fill of opioids in excess of any limitation that may be identified by the State;

**(II)** safety edits (as specified by the State) on the maximum daily morphine equivalent that can be prescribed to an individual enrolled under the State plan (or under a waiver of the State plan) for treatment of chronic pain and a claims review automated process (as designed and implemented by the State) that indicates when an individual enrolled under the plan (or waiver) is prescribed the morphine equivalent for such treatment in excess of any limitation that may be identified by the State; and

**(III)** a claims review automated process (as designed and implemented by the State) that monitors when an individual enrolled under the State plan (or under a waiver of the State plan) is concurrently prescribed opioids and--

**(aa)** benzodiazepines; or

**(bb)** antipsychotics.

### (ii)Managed care entities

The State requires each managed care entity (as defined in section 1396u-2(a)(1)(B) of this title) with respect to which the State has a contract under section 1396b(m) of this title or under section 1396d(t)(3) of this title to have in place, subject to paragraph (3), with respect to individuals who are eligible for medical assistance under the State plan (or under a waiver of the State plan) and who are enrolled with the entity, the limitations described in subclauses (I) and (II) of clause (i) and a claims review automated process described in subclause (III) of such clause.

### (iii)Rules of construction

Nothing in this subparagraph may be construed as prohibiting a State or managed care entity from designing and implementing a claims review automated process under this subparagraph that provides for prospective or retrospective reviews of claims. Nothing in this subparagraph shall be understood as prohibiting the exercise of clinical judgment from a provider enrolled as a participating provider in a State plan (or waiver of the State

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.117    108

USCA Case #24-5172      Document #2101807      Filed: 02/20/2025      Page 121 of 282

plan) or contracting with a managed care entity regarding the best items and services for an individual enrolled under such State plan (or waiver).

**(B)Program to monitor antipsychotic medications by children**

The State has in place a program (as designed and implemented by the State) to monitor and manage the appropriate use of antipsychotic medications by children enrolled under the State plan (or under a waiver of the State plan) and submits annually to the Secretary such information as the Secretary may require on activities carried out under such program for individuals not more than the age of 18 years generally and children in foster care specifically.

**(C)Fraud and abuse identification**

The State has in place a process (as designed and implemented by the State) that identifies potential fraud or abuse of controlled substances by individuals enrolled under the State plan (or under a waiver of the State plan), health care providers prescribing drugs to individuals so enrolled, and pharmacies dispensing drugs to individuals so enrolled.

**(D)Reports**

The State shall include in the annual report submitted to the Secretary under section 1396r-8(g)(3)(D) of this title information on the limitations, requirement, program, and processes applied by the State under subparagraphs (A) through (C) in accordance with such manner and time as specified by the Secretary.

**(E)Clarification**

Nothing shall prevent a State from satisfying the requirement--

**(i)** described in subparagraph (A) by having safety edits or a claims review automated process described in such subparagraph that was in place before October 1, 2019;

**(ii)** described in subparagraph (B) by having a program described in such subparagraph that was in place before such date; or

WESTLAW      © 2025 Thomson Reuters. No claim to original U.S. Government Works.      109
Add.118

**(iii)** described in subparagraph (C) by having a process described in such subparagraph that was in place before such date.

**(2)Annual report by Secretary**

For each fiscal year beginning with fiscal year 2020, the Secretary shall submit to Congress a report on the most recent information submitted by States under paragraph (1)(D).

**(3)Exceptions**

**(A)Certain individuals exempted**

The drug review and utilization requirements under this subsection shall not apply with respect to an individual who--

**(i)** is receiving--

**(I)** hospice or palliative care; or

**(II)** treatment for cancer;

**(ii)** is a resident of a long-term care facility, of a facility described in section 1396d(d) of this title, or of another facility for which frequently abused drugs are dispensed for residents through a contract with a single pharmacy; or

**(iii)** the State elects to treat as exempted from such requirements.

**(B)Exception relating to ensuring access**

In order to ensure reasonable access to health care, the Secretary shall waive the drug review and utilization requirements under this subsection, with respect to a State, in the case of natural disasters and similar situations, and in the case of the provision of emergency services (as defined for purposes of section 1395w-104(c)(5)(D)(ii)(II) of this title).

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.      110

Add.119

**(pp)Residential pediatric recovery center defined**

**(1)In general**

For purposes of subsection (a)(86), the term "residential pediatric recovery center" means a center or facility that furnishes items and services for which medical assistance is available under the State plan to infants with the diagnosis of neonatal abstinence syndrome without any other significant medical risk factors.

**(2)Counseling and services**

A residential pediatric recovery center may offer counseling and other services to mothers (and other appropriate family members and caretakers) of infants receiving treatment at such centers if such services are otherwise covered under the State plan under this subchapter or under a waiver of such plan. Such other services may include the following:

**(A)** Counseling or referrals for services.

**(B)** Activities to encourage caregiver-infant bonding.

**(C)** Training on caring for such infants.

**(qq)Application of certain data reporting and program integrity requirements to Northern Mariana Islands, American Samoa, and Guam**

**(1)In general**

Not later than October 1, 2021, the Northern Mariana Islands, American Samoa, and Guam shall--

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    111

Add.120

**(A)** demonstrate progress in implementing methods, satisfactory to the Secretary, for the collection and reporting of reliable data to the Transformed Medicaid Statistical Information System (T-MSIS) (or a successor system); and

**(B)** demonstrate progress in establishing a State medicaid fraud control unit described in section 1396b(q) of this title.

**(2)Determination of progress**

For purposes of paragraph (1), the Secretary shall deem that a territory described in such paragraph has demonstrated satisfactory progress in implementing methods for the collection and reporting of reliable data or establishing a State medicaid fraud control unit if the territory has made a good faith effort to implement such methods or establish such a unit, given the circumstances of the territory.

**(rr)Program integrity requirements for Puerto Rico**

**(1)System for tracking Federal Medicaid funding provided to Puerto Rico**

**(A)In general**

Puerto Rico shall establish and maintain a system, which may include the use of a quarterly Form CMS-64, for tracking any amounts paid by the Federal Government to Puerto Rico with respect to the State plan of Puerto Rico (or a waiver of such plan). Under such system, Puerto Rico shall ensure that information is available, with respect to each quarter in a fiscal year (beginning with the first quarter beginning on or after the date that is 1 year after December 20, 2019), on the following:

**(i)** In the case of a quarter other than the first quarter of such fiscal year--

**(I)** the total amount expended by Puerto Rico during any previous quarter of such fiscal year under the State plan of Puerto Rico (or a waiver of such plan); and

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
**Add.121**

**(II)** a description of how such amount was so expended.

**(ii)** The total amount that Puerto Rico expects to expend during the quarter under the State plan of Puerto Rico (or a waiver of such plan), and a description of how Puerto Rico expects to expend such amount.

**(B)Report to CMS**

For each quarter with respect to which Puerto Rico is required under subparagraph (A) to ensure that information described in such subparagraph is available, Puerto Rico shall submit to the Administrator of the Centers for Medicare & Medicaid Services a report on such information for such quarter, which may include the submission of a quarterly Form CMS-37.

**(2)Submission of documentation on contracts upon request**

Puerto Rico shall, upon request, submit to the Administrator of the Centers for Medicare & Medicaid Services all documentation requested with respect to contracts awarded under the State plan of Puerto Rico (or a waiver of such plan).

**(3)Reporting on Medicaid and CHIP Scorecard measures**

Beginning 12 months after December 20, 2019, Puerto Rico shall begin to report to the Administrator of the Centers for Medicare & Medicaid Services on selected measures included in the Medicaid and CHIP Scorecard developed by the Centers for Medicare & Medicaid Services.

**(ss)Uninsured individual defined**

For purposes of this section, the term "uninsured individual" means, notwithstanding any other provision of this subchapter, any individual who is--

**(1)** not described in subsection (a)(10)(A)(i) (excluding subclause (VIII) of such subsection if the individual is a resident of a State which does not furnish medical assistance to individuals described in such subclause); and

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    113

Add.122

USCA Case #24-5172    Document #2101807    Filed: 02/20/2025    Page 126 of 282

**(2)** not enrolled in a Federal health care program (as defined in section 1320a-7b(f) of this title), a group health plan, group or individual health insurance coverage offered by a health insurance issuer (as such terms are defined in section 300gg-91 of this title), or a health plan offered under chapter 89 of Title 5, except that individuals who are eligible for medical assistance under subsection (a)(10)(A)(ii)(XII), subsection (a)(10)(A)(ii)(XVIII), subsection (a)(10)(A)(ii)(XXI), or subsection (a)(10)(C) (but only to the extent such an individual is considered to not have minimum essential coverage under section 5000A(f)(1) of the Internal Revenue Code of 1986), or who are described in subsection (l)(1)(A) and are eligible for medical assistance only because of subsection (a)(10)(A)(i)(IV) or (a)(10)(A)(ii)(IX) and whose eligibility for such assistance is limited by the State under clause (VII) in the matter following subsection (a)(10)(G), shall not be treated as enrolled in a Federal health care program for purposes of this paragraph.

**(tt)Requirements relating to transition from Families First Coronavirus Response Act FMAP increase requirements; enforcement and corrective action**

**(1)Reporting requirements**

For each month occurring during the period that begins on April 1, 2023, and ends on June 30, 2024, each State shall submit to the Secretary, on a timely basis, a report, that the Secretary shall make publicly available, on the activities of the State relating to eligibility redeterminations conducted during such period, and which include, with respect to the month for which the report is submitted, the following information:

**(A)** The number of eligibility renewals initiated, beneficiaries renewed on a total and ex parte basis, and individuals whose coverage for medical assistance, child health assistance, or pregnancy-related assistance was terminated.

**(B)** The number of individuals whose coverage for medical assistance, child health assistance, or pregnancy-related assistance was so terminated for procedural reasons.

**(C)** Where applicable, the number of individuals who were enrolled in a State child health plan or waiver in the form described in paragraph (1) of section 1397aa(a) of this title.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    114
Add. 123

**(D)** Unless the Administrator of the Centers for Medicare & Medicaid Services reports such information on behalf of the State:

**(i)** In a State with a Federal or State American Health Benefit Exchange established under title I of the Patient Protection and Affordable Care Act in which the systems used to determine eligibility for assistance under this subchapter or subchapter XXI are not integrated with the systems used to determine eligibility for coverage under a qualified health plan with advance payment under section 1412(a) of the Patient Protection and Affordable Care Act of any premium tax credit allowed under section 36B of the Internal Revenue Code of 1986--

**(I)** the number of individuals whose accounts were received via secure electronic transfer by the Federal or State American Health Benefit Exchange, or a basic health program established under section 1331 of the Patient Protection and Affordable Care Act;

**(II)** the number of individuals identified in subclause (I) who were determined eligible for a qualified health plan, as defined in section 1301(a)(1) of the Patient Protection and Affordable Care Act, or (if applicable) the basic health program established under section 1331 of such Act; and

**(III)** the number of individuals identified in subclause (II) who made a qualified health plan selection or were enrolled in a basic health program plan (if applicable).

**(ii)** In a State with a State American Health Benefit Exchange established under title I of the Patient Protection and Affordable Care Act in which the systems used to determine eligibility for assistance under this subchapter or subchapter XXI are integrated with the systems used to determine eligibility for coverage under a qualified health plan with advance payment under section 1412(a) of the Patient Protection and Affordable Care Act of any premium tax credit allowed under section 36B of the Internal Revenue Code of 1986--

**(I)** the number of individuals who were determined eligible for a qualified health plan, as defined in section 1301(a)(1) of the Patient Protection and Affordable Care Act, or (if applicable) the basic health program established under section 1331 of such Act; and

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**(II)** the number of individuals identified in subclause (I) who made a qualified health plan selection or were enrolled in a basic health program plan (if applicable).

**(E)** The total call center volume, average wait times, and average abandonment rate (as determined by the Secretary) for each call center of the State agency responsible for administering the State plan under this subchapter (or a waiver of such plan) during such month.

**(F)** Such other information related to eligibility redeterminations and renewals during the period described in paragraph (1), as identified by the Secretary.

**(2)Enforcement and corrective action**

**(A)In general**

For each fiscal quarter that occurs during the period that begins on July 1, 2023, and ends on June 30, 2024, if a State does not satisfy the requirements of paragraph (1), the Federal medical assistance percentage determined for the State for the quarter under section 1396d(b) of this title shall be reduced by the number of percentage points (not to exceed 1 percentage point) equal to the product of 0.25 percentage points and the number of fiscal quarters during such period for which the State has failed to satisfy such requirements.

**(B)Corrective action plan; additional authority**

**(i)In general**

The Secretary may assess a State's compliance with all Federal requirements applicable to eligibility redeterminations and the reporting requirements described in paragraph (1), and, if the Secretary determines that a State did not comply with any such requirements during the period that begins on April 1, 2023, and ends on June 30, 2024, the Secretary may require the State to submit and implement a corrective action plan in accordance with clause (ii).

**(ii)Corrective action plan**

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.    116

Add.125

A State that receives a written notice from the Secretary that the Secretary has determined that the State is not in compliance with a requirement described in clause (i) shall--

**(I)** not later than 14 days after receiving such notice, submit a corrective action plan to the Secretary;

**(II)** not later than 21 days after the date on which such corrective action plan is submitted to the Secretary, receive approval for the plan from the Secretary; and

**(III)** begin implementation of such corrective action plan not later than 14 days after such approval.

**(iii)Effect of failure to submit or implement a corrective action plan**

If a State fails to submit or implement an approved corrective action plan in accordance with clause (ii), the Secretary may, in addition to any reduction applied under subparagraph (A) to the Federal medical assistance percentage determined for the State and any other remedy available to the Secretary for the purpose of carrying out this subchapter, require the State to suspend making all or some terminations of eligibility for medical assistance from the State plan under this subchapter (including any waiver of such plan) that are for procedural reasons until the State takes appropriate corrective action, as determined by the Secretary, and may impose a civil money penalty of not more than $100,000 for each day a State is not in compliance.

## CREDIT(S)

(Aug. 14, 1935, c. 531, Title XIX, § 1902, as added Pub.L. 89-97, Title I, § 121(a), July 30, 1965, 79 Stat. 344; amended Pub.L. 90-248, Title II, §§ 210(a)(6), 223(a), 224(a), (c)(1), 227(a), 228(a), 229(a), 231, 234(a), 235(a), 236(a), 237, 238, 241(f)(1) to (4), Title III, § 302(b), Jan. 2, 1968, 81 Stat. 896, 901 to 906, 908, 911, 917, 929; Pub.L. 91-56, § 2(c), (d), Aug. 9, 1969, 83 Stat. 99; Pub.L. 92-223, § 4(b), Dec. 28, 1971, 85 Stat. 809; Pub.L. 92-603, Title II, §§ 208(a), 209(a), (b)(1), 221(c)(5), 231, 232(a), 236(b), 237(a)(2), 239(a), (b), 240, 246(a), 249(a), 255(a), 268(a), 274(a), 278(a)(18) to (20), (b)(14), 298, 299A, 299D(b), Oct. 30, 1972, 86 Stat. 1381, 1389, 1410, 1415 to 1418, 1424, 1426, 1446, 1450, 1452 to 1454, 1460, 1462; Pub.L. 93-233, §§ 13(a)(2) to (10), 18(o) to (q), (x)(1) to (4), Dec. 31, 1973, 87 Stat. 960 to 962, 971, 972; Pub.L. 93-368, § 9(a), Aug. 7, 1974, 88 Stat. 422; Pub.L. 94-48, §§ 1, 2, July 1, 1975, 89 Stat. 247;

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    117

Add.126

Pub.L. 94-182, Title I, § 111(a), Dec. 31, 1975, 89 Stat. 1054; Pub.L. 94-552, § 1, Oct. 18, 1976, 90 Stat. 2540; Pub.L. 95-142, §§ 2(a)(3), (b)(1), 3(c)(1), 7(b), (c), 9, 19(b)(2), 20(b), Oct. 25, 1977, 91 Stat. 1176, 1178, 1193, 1195, 1204, 1207; Pub.L. 95-210, § 2(c), Dec. 13, 1977, 91 Stat. 1488; Pub.L. 95-559, § 14(a)(1), Nov. 1, 1978, 92 Stat. 2140; Pub.L. 96-272, Title III, § 308(c), June 17, 1980, 94 Stat. 531; Pub.L. 96-499, Title IX, §§ 902(b), 903(b), 905(a), 912(b), 913(c), (d), 914(b)(1), 916(b)(1), 918(b)(1), 962(a), 965(b), Dec. 5, 1980, 94 Stat. 2613, 2615, 2618 to 2621, 2624, 2626, 2650, 2652; Pub.L. 96-611, § 5(b), Dec. 28, 1980, 94 Stat. 3568; Pub.L. 97-35, Title XXI, §§ 2105(c), 2113(m), 2171(a), (b), 2172(a), 2173(a), (b)(1), 2174(a), 2175(a), (d)(1), 2178(b), 2181(a)(2), 2182, 2193(c)(9), Aug. 13, 1981, 95 Stat. 792, 795, 807 to 809, 811, 814 to 816, 828; Pub.L. 97-248, Title I, §§ 131(a), (c) [formerly (b)], 132(a), (c), 134(a), 136(d), 137(a) (3), (b)(7) to (10), (e), 146(a), Sept. 3, 1982, 96 Stat. 367, 369, 370, 373, 375 to 378, 381, 394; Pub.L. 97-448, Title III, § 309(a)(8), Jan. 12, 1983, 96 Stat. 2408; Pub.L. 98-369, Div. B, Title III, §§ 2303(g)(1), 2314(b), 2335(e), 2361(a), 2362(a), 2363(a)(1), 2367(a), 2368(a), (b), 2373(b) (1) to (10), Title VI, § 2651(c), July 18, 1984, 98 Stat. 1066, 1079, 1091, 1104, 1105, 1108, 1109, 1111, 1149; Pub.L. 98-378, § 20(c), Aug. 16, 1984, 98 Stat. 1322; Pub.L. 98-617, § 3(a)(7), (b) (10), Nov. 8, 1984, 98 Stat. 3295, 3296; Pub.L. 99-272, Title IX, §§ 9501(b), (c), 9503(a), 9505(b), (c)(1), (d), 9506(a), 9509(a), 9510(a), 9517(b), 9529(a)(1), (b)(1), Title XII, § 12305(b)(3), Apr. 7, 1986, 100 Stat. 201, 202, 205, 208 to 212, 216, 220, 293; Pub.L. 99-509, Title IX, §§ 9320(h)(3), 9401(a) to (e)(1), 9402(a), (b), 9403(a), (c), (e) to (g)(1), (4)(A), 9404(a), 9405, 9406(b), 9407(a), 9408(a), (b), (c)(2), (3), 9431(a), (b)(1), 9433(a), 9435(b)(1), Oct. 21, 1986, 100 Stat. 2016, 2050 to 2058, 2060, 2061, 2066, 2068, 2069; Pub.L. 99-514, Title XVIII, § 1895(c)(1), (3)(B), (C), (7), Oct. 22, 1986, 100 Stat. 2935, 2936; Pub.L. 99-570, Title XI, § 11005(b), Oct. 27, 1986, 100 Stat. 3207-169; Pub.L. 99-643, §§ 3(b), 7(b), Nov. 10, 1986, 100 Stat. 3575, 3579; Pub.L. 100-93, §§ 5(a), 7, 8(f), Aug. 18, 1987, 101 Stat. 689, 691, 694; Pub.L. 100-203, Title IV, §§ 4072(d), 4101(a)(1), (2), (b)(1) to (2)(B), (c)(2), (e)(1) to (5), 4102(b)(1), 4104, 4113(a)(2), (b)(1), (2), (c) (1), (2), (d)(2), 4116, 4118(c)(1), (h)(1), (2), (m)(1)(B), (p)(1) to (4), (6) to (8), 4211(b)(1), (h)(1) to (5), 4212(d)(2), (3), (e)(1), 4213(b)(1), 4218(a), Title IX, §§ 9115(b), 9119(d)(1), Dec. 22, 1987, 101 Stat. 1330-117, 1330-140 to 1330-143, 1330-146, 1330-147, 1330-151, 1330-152, 1330-154 to 1330-157, 1330-159, 1330-203, 1330-205, 1330-213, 1330-219, 1330-220, 1330-305; Pub.L. 100-360, Title II, § 204(d)(3), Title III, §§ 301(a)(1), (e)(2), 302(a), (b)(1), (c)(1), (2), (d) to (e)(3), 303(d), (e), Title IV, § 411(k)(5), (7)(B) to (D), (10)(G)(ii), (iv), (17)(B), (l)(3)(E), (H), (J), (6)(C), (D), (8)(C), (n)(2), (4) [formerly (3)], July 1, 1988, 102 Stat. 729, 748 to 753, 762, 763, 791, 792, 794, 796, 800, 803, 804, 805, 807; Pub.L. 100-485, Title II, § 202(c)(4), Title III, § 303(a)(2), (b) (1), (d), Title IV, § 401(d)(1), Title VI, § 608(d)(14)(I), (15)(A), (B), (16)(C), (27)(F) to (H), (28), Oct. 13, 1988, 102 Stat. 2378, 2391, 2392, 2396, 2416, 2418, 2423; Pub.L. 100-647, Title VIII, § 8434(b)(1), (2), Nov. 10, 1988, 102 Stat. 3805; Pub.L. 101-234, Title II, § 201(a)(1), Dec. 13, 1989, 103 Stat. 1981; Pub.L. 101-239, Title VI, §§ 6115(c), 6401(a), 6402(a), (c)(2), 6403(b), (d)(1), 6404(c), 6405(b), 6406(a), 6408(c)(1), (d)(1), (4)(C), 6411(a)(1), (d)(3)(B), (e)(2), Dec. 19, 1989, 103 Stat. 2219, 2258 to 2261, 2263 to 2266, 2268 to 2271; Pub.L. 101-508, Title IV, §§ 4401(a) (2), 4402(a)(1), (c), (d)(1), 4501(b), (e)(2), 4601(a)(1), 4602(a), 4603(a), 4604(a), (b), 4701(b)

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.                118

Add.127

(1), 4704(a), (e)(1), 4708(a), 4711(c)(1), (d), 4713(a), 4715(a), 4723(b), 4724(a), 4732(b)(1), 4751(a), 4752(a)(1)(A), (c)(1), 4754(a), 4755(a)(2), (c)(1), 4801(e)(1)(A), (11)(A), Nov. 5, 1990, 104 Stat. 1388-143, 1388-161, 1388-163 to 1388-173, 1388-186, 1388-187, 1388-190, 1388-192, 1388-194, 1388-195, 1388-204, 1388-206, 1388-208 to 1388-210, 1388-215, 1388-217; Pub.L. 102-234, §§ 2(b)(1), 3(a), Dec. 12, 1991, 105 Stat. 1799; Pub.L. 103-66, Title XIII, §§ 13581(b) (2), 13601(b), 13602(c), 13603(a) to (c), 13611(d)(1), 13622(a)(1), (b), (c), 13623(a), 13625(a), 13631(a), (e)(1), (f)(1), Aug. 10, 1993, 107 Stat. 611, 613, 619, 620, 626, 632, 633, 636, 643, 644; Pub.L. 103-296, Title I, § 108(d)(1), Aug. 15, 1994, 108 Stat. 1486; Pub.L. 103-448, Title II, § 204(w)(2)(E), Nov. 2, 1994, 108 Stat. 4746; Pub.L. 104-193, Title I, §§ 108(k), 114(b) to (d) (1), Title IX, § 913, Aug. 22, 1996, 110 Stat. 2169, 2180, 2354; Pub.L. 104-226, § 1(b)(2), Oct. 2, 1996, 110 Stat. 3033; Pub.L. 104-248, § 1(a)(1), Oct. 9, 1996, 110 Stat. 3148; Pub.L. 105-12, § 9(b)(2), Apr. 30, 1997, 111 Stat. 26; Pub.L. 105-33, Title IV, §§ 4106(c), 4454(b)(1), 4701(b) (2)(A)(i) to (iv), (d)(1), 4702(b)(2), 4709, 4711(a), 4712(a), (b)(1), (c)(1), 4714(a)(1), 4715(a), 4724(c)(1), (d), (f), (g)(1), 4731(a), (b), 4732(a), 4733, 4741(a), 4751(a), (b), 4752(a), 4753(b), 4911(b), 4912(b)(1), 4913(a), Aug. 5, 1997, 111 Stat. 368, 431, 493, 495, 506 to 510, 516, 517, 519, 520, 522 to 525, 571, 573; Pub.L. 106-113, Div. B, § 1000(a)(6) [Title VI, §§ 603(a)(1), 604(a)(1), (2)(A), (b)(1), 608(a) to (d), (y)(2), (aa)(1)], Nov. 29, 1999, 113 Stat. 1536, 1501A-394 to 1501A-398; Pub.L. 106-169, Title I, § 121(a)(1), (c)(4), Title II, § 205(c), 206(b), Dec. 14, 1999, 113 Stat. 1829, 1830, 1834, 1837; Pub.L. 106-170, Title II, § 201(a)(1), (2)(A), Dec. 17, 1999, 113 Stat. 1891, 1892; Pub.L. 106-354, § 2(a)(1) to (3), (b)(2)(A), Oct. 24, 2000, 114 Stat. 1381 to 1383; Pub.L. 106-554, § 1(a)(6) [Title VII, §§ 702(a) to (c)(1), 707(b)], Dec. 21, 2000, 114 Stat. 2763, 2763A-572 to 2763A-574, 2763A-577; Pub.L. 107-121, § 2(a), (b)(1), (2), Jan. 15, 2002, 115 Stat. 2384; Pub.L. 108-40, § 7(b), June 30, 2003, 117 Stat. 837; Pub.L. 108-89, Title IV, § 401(a), Oct. 1, 2003, 117 Stat. 1134; Pub.L. 108-173, Title I, § 103(a)(1), (f)(1), Title II, § 236(b)(1), Dec. 8, 2003, 117 Stat. 2154, 2160, 2211; Pub.L. 108-265, Title I, § 105(b), June 30, 2004, 118 Stat. 744; Pub.L. 108-448, § 1(a), Dec. 8, 2004, 118 Stat. 3467; Pub.L. 109-91, Title I, § 101(a), Oct. 20, 2005, 119 Stat. 2091; Pub.L. 109-171, Title VI, §§ 6032(a), 6034(b), 6035(a), (b), 6062(a), 6065(a), 6083(a), Feb. 8, 2006, 120 Stat. 73, 76, 78, 79, 96, 101, 120; Pub.L. 109-432, Div. B, Title IV, § 405(c)(2)(A)(iv), Dec. 20, 2006, 120 Stat. 3000; Pub.L. 110-90, § 3(a), Sept. 29, 2007, 121 Stat. 984; Pub.L. 110-173, Title II, § 203(a), Dec. 29, 2007, 121 Stat. 2513; Pub.L. 110-252, Title VII, § 7001(d)(2), June 30, 2008, 122 Stat. 2394; Pub.L. 110-275, Title I, § 111(a), July 15, 2008, 122 Stat. 2503; Pub.L. 111-3, Title I, § 113(b)(1), Title II, §§ 203(a)(1), (c), (d)(3), 211(a)(1)(A), (b)(3)(B), Title V, § 501(d)(1), (e)(1), Feb. 4, 2009, 123 Stat. 34, 40, 47, 49, 54, 87; Pub.L. 111-5, Div. B, Title V, §§ 5004(a)(1), 5005(a), 5006(b)(1), (e)(2)(A), Feb. 17, 2009, 123 Stat. 503, 505, 506, 510; Pub.L. 111-148, Title II, §§ 2001(a)(1), (2)(A), (4)(A), (5)(A), (B), (b), (d)(1), (e)(1), 2002(a), (b), 2004(a), 2202(a), 2301(b), 2303(a)(1) to (3), (b)(2)(A), 2402(d)(1), 2901(c), Title III, § 3021(b), Title IV, § 4302(b)(1)(A), Title VI, §§ 6103(d)(2), 6401(b)(1), (3), 6411(a)(1), 6501 to 6503, 6505, Title VIII, § 8002(a)(2), (b), Title X, § 10201(a)(1), (2), (b), Mar. 23, 2010, 124 Stat. 271, 274, 275, 277 to 279, 283, 291, 292, 293, 296, 303, 333, 394, 395, 581, 710, 751, 753, 774, 776, 777, 846, 917, 918; Pub.L. 111-152, Title I, §§ 1004(b)(1), (e), 1202(a)

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Add.128

(1), Mar. 30, 2010, 124 Stat. 1034, 1036, 1052; Pub.L. 111-255, § 3(c), (e), Oct. 5, 2010, 124 Stat. 2641; Pub.L. 111-296, Title I, § 103(c)(1), Dec. 13, 2010, 124 Stat. 3191; Pub.L. 111-309, Title I, §§ 110(a), 111, Title II, § 205(a), (b), (f)(1), Dec. 15, 2010, 124 Stat. 3288 to 3291; Pub.L. 112-78, Title III, §§ 310(a), 311, Dec. 23, 2011, 125 Stat. 1286; Pub.L. 112-96, Title III, §§ 3101(a), 3102, Feb. 22, 2012, 126 Stat. 191; Pub.L. 112-240, Title VI, §§ 621(a), 622, 623, 642(b)(2), Jan. 2, 2013, 126 Stat. 2352, 2358; Pub.L. 113-67, Div. A, Title II, § 202(a), (b)(1), Div. B, Title II, §§ 1201(a), 1202, Dec. 26, 2013, 127 Stat. 1177, 1198, 1199; Pub.L. 113-93, Title II, §§ 201(a), 202, 203, Apr. 1, 2014, 128 Stat. 1045, 1046; Pub.L. 114-10, Title II, §§ 211(a), 212(b), Title III, § 302, Apr. 16, 2015, 129 Stat. 151, 152, 158; Pub.L. 114-63, § 2, Oct. 7, 2015, 129 Stat. 549; Pub.L. 114-198, Title VII, § 706(b)(1), July 22, 2016, 130 Stat. 754; Pub.L. 114-255, Div. A, Title V, §§ 5005(a)(1), (3), (6), (b)(1), (c)(2), 5006(a), (b), Div. C, Title XVII, § 17004(b)(1)(B), (C), (2)(B), Dec. 13, 2016, 130 Stat. 1191 to 1196, 1332, 1333; Pub.L. 115-120, Div. C, §§ 3002(e), (f)(2), 3004(c), Jan. 22, 2018, 132 Stat. 34, 35, 37; Pub.L. 115-123, Div. E, Title I, § 50101(e), (f)(2), Title XII, §§ 53102(a)(1), (b)(1), (d)(2), 53103(a), Feb. 9, 2018, 132 Stat. 174, 175, 298 to 300; Pub.L. 115-271, Title I, §§ 1001(a), 1002(a)(1), 1004(a)(1), (2), 1006(b)(1), 1007(a), (b), Oct. 24, 2018, 132 Stat. 3900, 3902, 3909, 3914, 3915; Pub.L. 116-16, § 7(a), Apr. 18, 2019, 133 Stat. 864; Pub.L. 116-94, Div. N, Title I, § 202(e)(1), (2), (f)(4), Dec. 20, 2019, 133 Stat. 3108, 3110; Pub.L. 116-127, Div. F, § 6004(a)(3)(A) to (C), Mar. 18, 2020, 134 Stat. 205; Pub.L. 116-136, Div. A, Title III, §§ 3715, 3716, Mar. 27, 2020, 134 Stat. 424; Pub.L. 116-260, Div. CC, Title II, §§ 209(a)(1), (b)(4)(A), 210(b), Title IV, § 402(f)(2), Dec. 27, 2020, 134 Stat. 2986, 2988, 2991, 3001; Pub.L. 117-2, Title IX, §§ 9811(a)(2), 9812(a), Mar. 11, 2021, 135 Stat. 208, 212; Pub.L. 117-103, Div. P, Title II, § 202(a), Mar. 15, 2022, 136 Stat. 803; Pub.L. 117-169, Title I, § 11405(a) (1), Aug. 16, 2022, 136 Stat. 1900; Pub.L. 117-328, Div. FF, Title V, §§ 5111(d), 5112(a), 5121(a), 5131(b), Dec. 29, 2022, 136 Stat. 5939, 5940, 5941, 5951; Pub.L. 118-42, Div. G, Title I, § 205(a) (1)(A), (c)(1), (2), Mar. 9, 2024, 138 Stat. 405, 406.)

---

## Footnotes

1     See Codifications note set out under this section.

2     Sections 602 and 606 of this title were repealed and new sections 602 and 606 enacted by Pub.L. 104-193, Title I, § 103(a)(1), Aug. 22, 1996, 110 Stat. 2112, and as enacted, section 602 no longer contains subsec. (a)(37) or (a)(43), and section 606 no longer contains subsec. (h). Section 682 of this title was repealed by Pub.L. 104-193, Title I, § 108(e), Aug. 22, 1996, 110 Stat. 2167.

3     So in original. The semicolon probably should be a comma.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

4    So in original. Probably should be followed by "and".

5    So in original. The word "to" probably should not appear.

6    So in original. Probably should be followed by a comma.

7    So in original.

8    So in original. Probably should be "Investigation,".

9    Probably means the subsec. (e) of section 1397hh relating to information on dental care for children.

10    So in original. Probably should be section "1396d(l)(2)(B)".

11    So in original. Probably should be "a quality improvement organization".

12    So in original. Probably should be "subparagraph (A)(i)(V),".

13    So in original. The closing parenthesis probably should not appear.

14    So in original. Probably should be "an".

15    So in original. Another closing parenthesis probably should precede the comma.

16    So in original. The words "this paragraph" probably should be "this subsection".

17    So in original. Probably should be subsection "(a)(56)".

18    So in original. Probably should be "section 1396*o*(i)".

19    So in original. Probably should be "agency".

20    So in original. Probably should be followed by "a".

21    So in original. The word "section" probably should not appear.

42 U.S.C.A. § 1396a, 42 USCA § 1396a
Current through P.L. 118-257. Some statute sections may be more current, see credits for details.

---

**End of Document**                                     © 2025 Thomson Reuters. No claim to original U.S. Government Works.

United States Code Annotated
    Title 42. The Public Health and Welfare
        Chapter 7. Social Security (Refs & Annos)
            Subchapter XIX. Grants to States for Medical Assistance Programs (Refs & Annos)

42 U.S.C.A. § 1396*o*

§ 1396*o*. Use of enrollment fees, premiums, deductions, cost sharing, and similar charges

Currentness

**(a)Imposition of certain charges under plan in case of individuals described in section 1396a(a)(10)(A) or (E)**

Subject to subsections (g), (i), and (j), the State plan shall provide that in the case of individuals described in subparagraph (A) or (E)(i) of section 1396a(a)(10) of this title who are eligible under the plan--

**(1)** no enrollment fee, premium, or similar charge will be imposed under the plan (except for a premium imposed under subsection (c));

**(2)** no deduction, cost sharing or similar charge will be imposed under the plan with respect to--

**(A)** services furnished to individuals under 18 years of age (and, at the option of the State, individuals under 21, 20, or 19 years of age, or any reasonable category of individuals 18 years of age or over),

**(B)** services furnished to pregnant women, if such services relate to the pregnancy or to any other medical condition which may complicate the pregnancy, and counseling and pharmacotherapy for cessation of tobacco use by pregnant women (as defined in section 1396d(bb) of this title) and covered outpatient drugs (as defined in subsection (k)(2) of section 1396r-8 of this title and including nonprescription drugs described in subsection (d)(2) of such section) that are prescribed for purposes of promoting, and when used to promote, tobacco cessation by pregnant women in accordance with the Guideline referred to in section

Add.131

1396d(bb)(2)(A) of this title (or, at the option of the State, any services furnished to pregnant women),

**(C)** services furnished to any individual who is an inpatient in a hospital, nursing facility, intermediate care facility for the mentally retarded, or other medical institution, if such individual is required, as a condition of receiving services in such institution under the State plan, to spend for costs of medical care all but a minimal amount of his income required for personal needs,

**(D)** emergency services (as defined by the Secretary), family planning services and supplies described in section 1396d(a)(4)(C) of this title,

**(E)** services furnished to an individual who is receiving hospice care (as defined in section 1396d(o) of this title),

**(F)** any in vitro diagnostic product described in section 1396d(a)(3)(B) of this title that is administered during any portion of the emergency period described in such section beginning on or after March 18, 2020 (and the administration of such product),

**(G)** COVID-19 testing-related services for which payment may be made under the State plan,

**(H)** during the period beginning on March 11, 2021, and ending on the last day of the first calendar quarter that begins one year after the last day of the emergency period described in section 1320b-5(g)(1)(B) of this title, a COVID-19 vaccine and the administration of such vaccine (for any individual eligible for medical assistance for such vaccine (and administration)),

**(I)** during the period beginning on March 11, 2021, and ending on the last day of the first calendar quarter that begins one year after the last day of the emergency period described in section 1320b-5(g)(1)(B) of this title, testing and treatments for COVID-19, including specialized equipment and therapies (including preventive therapies), and, in the case of an individual who is diagnosed with or presumed to have COVID-19, during the period during which such individual has (or is presumed to have) COVID-19, the treatment of a condition that may seriously complicate the treatment of COVID-19, if otherwise covered under the State plan (or waiver of such plan), or

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**(J)** vaccines described in section 1396d(a)(13)(B) of this title and the administration of such vaccines; and

**(3)** any deduction, cost sharing, or similar charge imposed under the plan with respect to other such individuals or other care and services will be nominal in amount (as determined by the Secretary in regulations which shall, if the definition of "nominal" under the regulations in effect on July 1, 1982 is changed, take into account the level of cash assistance provided in such State and such other criteria as the Secretary determines to be appropriate); except that a deduction, cost-sharing, or similar charge of up to twice the nominal amount established for outpatient services may be imposed by a State under a waiver granted by the Secretary for services received at a hospital emergency room if the services are not emergency services (referred to in paragraph (2)(D)) and the State has established to the satisfaction of the Secretary that individuals eligible for services under the plan have actually available and accessible to them alternative sources of nonemergency, outpatient services.

**(b)Imposition of certain charges under plan in case of individuals other than those described in section 1396a(a)(10)(A) or (E)**

The State plan shall provide that in the case of individuals other than those described in subparagraph (A) or (E) of section 1396a(a)(10) of this title who are eligible under the plan--

**(1)** there may be imposed an enrollment fee, premium, or similar charge, which (as determined in accordance with standards prescribed by the Secretary) is related to the individual's income,

**(2)** no deduction, cost sharing, or similar charge will be imposed under the plan with respect to--

**(A)** services furnished to individuals under 18 years of age (and, at the option of the State, individuals under 21, 20, or 19 years of age, or any reasonable category of individuals 18 years of age or over),

**(B)** services furnished to pregnant women, if such services relate to the pregnancy or to any other medical condition which may complicate the pregnancy, and counseling and pharmacotherapy for cessation of tobacco use by pregnant women (as defined in section 1396d(bb) of this title) and covered outpatient drugs (as defined in subsection (k)(2) of section

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.     3

Add.133

1396r-8 of this title and including nonprescription drugs described in subsection (d)(2) of such section) that are prescribed for purposes of promoting, and when used to promote, tobacco cessation by pregnant women in accordance with the Guideline referred to in section 1396d(bb)(2)(A) of this title (or, at the option of the State, any services furnished to pregnant women),

**(C)** services furnished to any individual who is an inpatient in a hospital, nursing facility, intermediate care facility for the mentally retarded, or other medical institution, if such individual is required, as a condition of receiving services in such institution under the State plan, to spend for costs of medical care all but a minimal amount of his income required for personal needs,

**(D)** emergency services (as defined by the Secretary), family planning services and supplies described in section 1396d(a)(4)(C) of this title,

**(E)** services furnished to an individual who is receiving hospice care (as defined in section 1396d(o) of this title),

**(F)** any in vitro diagnostic product described in section 1396d(a)(3)(B) of this title that is administered during any portion of the emergency period described in such section beginning on or after March 18, 2020 (and the administration of such product),

**(G)** COVID-19 testing-related services for which payment may be made under the State plan,

**(H)** during the period beginning on March 11, 2021, and ending on the last day of the first calendar quarter that begins one year after the last day of the emergency period described in section 1320b-5(g)(1)(B) of this title, a COVID-19 vaccine and the administration of such vaccine (for any individual eligible for medical assistance for such vaccine (and administration)),

**(I)** during the period beginning on March 11, 2021, and ending on the last day of the first calendar quarter that begins one year after the last day of the emergency period described in section 1320b-5(g)(1)(B) of this title, testing and treatments for COVID-19, including specialized equipment and therapies (including preventive therapies), and, in the case of an individual who is diagnosed with or presumed to have COVID-19, during the period during

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.    4

which such individual has (or is presumed to have) COVID-19, the treatment of a condition that may seriously complicate the treatment of COVID-19, if otherwise covered under the State plan (or waiver of such plan), or

**(J)** vaccines described in section 1396d(a)(13)(B) of this title and the administration of such vaccines; and

**(3)** any deduction, cost sharing, or similar charge imposed under the plan with respect to other such individuals or other care and services will be nominal in amount (as determined by the Secretary in regulations which shall, if the definition of "nominal" under the regulations in effect on July 1, 1982 is changed, take into account the level of cash assistance provided in such State and such other criteria as the Secretary determines to be appropriate); except that a deduction, cost-sharing, or similar charge of up to twice the nominal amount established for outpatient services may be imposed by a State under a waiver granted by the Secretary for services received at a hospital emergency room if the services are not emergency services (referred to in paragraph (2)(D)) and the State has established to the satisfaction of the Secretary that individuals eligible for services under the plan have actually available and accessible to them alternative sources of nonemergency, outpatient services.

**(c)Imposition of monthly premium; persons affected; amount; prepayment; failure to pay; use of funds from other programs**

**(1)** The State plan of a State may at the option of the State provide for imposing a monthly premium (in an amount that does not exceed the limit established under paragraph (2)) with respect to an individual described in subparagraph (A) or (B) of section 1396a(l)(1) of this title who is receiving medical assistance on the basis of section 1396a(a)(10)(A)(ii)(IX) of this title and whose family income (as determined in accordance with the methodology specified in section 1396a(l)(3) of this title) equals or exceeds 150 percent of the income official poverty line (as defined by the Office of Management and Budget, and revised annually in accordance with section 9902(2) of this title) applicable to a family of the size involved.

**(2)** In no case may the amount of any premium imposed under paragraph (1) exceed 10 percent of the amount by which the family income (less expenses for the care of a dependent child) of an individual exceeds 150 percent of the line described in paragraph (1).

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Add.135

**(3)** A State shall not require prepayment of a premium imposed pursuant to paragraph (1) and shall not terminate eligibility of an individual for medical assistance under this subchapter on the basis of failure to pay any such premium until such failure continues for a period of not less than 60 days. The State may waive payment of any such premium in any case where the State determines that requiring such payment would create an undue hardship.

**(4)** A State may permit State or local funds available under other programs to be used for payment of a premium imposed under paragraph (1). Payment of a premium with such funds shall not be counted as income to the individual with respect to whom such payment is made.

**(d)Premiums for qualified disabled and working individuals described in section 1396d(s)**

With respect to a qualified disabled and working individual described in section 1396d(s) of this title whose income (as determined under paragraph (3) of that section) exceeds 150 percent of the official poverty line referred to in that paragraph, the State plan of a State may provide for the charging of a premium (expressed as a percentage of the medicare cost-sharing described in section 1396d(p)(3)(A)(i) of this title provided with respect to the individual) according to a sliding scale under which such percentage increases from 0 percent to 100 percent, in reasonable increments (as determined by the Secretary), as the individual's income increases from 150 percent of such poverty line to 200 percent of such poverty line.

**(e)Prohibition of denial of services on basis of individual's inability to pay certain charges**

The State plan shall require that no provider participating under the State plan may deny care or services to an individual eligible for such care or services under the plan on account of such individual's inability to pay a deduction, cost sharing, or similar charge. The requirements of this subsection shall not extinguish the liability of the individual to whom the care or services were furnished for payment of the deduction, cost sharing, or similar charge.

**(f)Charges imposed under waiver authority of Secretary**

No deduction, cost sharing, or similar charge may be imposed under any waiver authority of the Secretary, except as provided in subsections (a)(3) and (b)(3) and section 1396o-1 of this title, unless such waiver is for a demonstration project which the Secretary finds after public notice and opportunity for comment--

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.136      6

**(1)** will test a unique and previously untested use of copayments,

**(2)** is limited to a period of not more than two years,

**(3)** will provide benefits to recipients of medical assistance which can reasonably be expected to be equivalent to the risks to the recipients,

**(4)** is based on a reasonable hypothesis which the demonstration is designed to test in a methodologically sound manner, including the use of control groups of similar recipients of medical assistance in the area, and

**(5)** is voluntary, or makes provision for assumption of liability for preventable damage to the health of recipients of medical assistance resulting from involuntary participation.

**(g)Individuals provided medical assistance under section 1396a(a)(10)(A)(ii)(XV) or (XVI)**

With respect to individuals provided medical assistance only under subclause (XV) or (XVI) of section 1396a(a)(10)(A)(ii) of this title--

**(1)** a State may (in a uniform manner for individuals described in either such subclause)--

   **(A)** require such individuals to pay premiums or other cost-sharing charges set on a sliding scale based on income that the State may determine; and

   **(B)** require payment of 100 percent of such premiums for such year in the case of such an individual who has income for a year that exceeds 250 percent of the income official poverty line (referred to in subsection (c)(1)) applicable to a family of the size involved, except that in the case of such an individual who has income for a year that does not exceed 450 percent of such poverty line, such requirement may only apply to the extent such premiums do not exceed 7.5 percent of such income; and

**(2)** such State shall require payment of 100 percent of such premiums for a year by such an individual whose adjusted gross income (as defined in section 62 of the Internal Revenue Code

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.137

of 1986) for such year exceeds $75,000, except that a State may choose to subsidize such premiums by using State funds which may not be federally matched under this subchapter.

In the case of any calendar year beginning after 2000, the dollar amount specified in paragraph (2) shall be increased in accordance with the provisions of section 415(i)(2)(A)(ii) of this title.

**(h)Indexing nominal cost sharing**

In applying this section and subsections (c) and (e) of section 1396o-1 of this title, with respect to cost sharing that is "nominal" in amount, the Secretary shall increase such "nominal" amounts for each year (beginning with 2006) by the annual percentage increase in the medical care component of the consumer price index for all urban consumers (U.S. city average) as rounded up in an appropriate manner.

**(i)State option to impose income-related premiums for families of disabled children**

**(1)** With respect to disabled children provided medical assistance under section 1396a(a)(10)(A)(ii)(XIX) of this title, subject to paragraph (2), a State may (in a uniform manner for such children) require the families of such children to pay monthly premiums set on a sliding scale based on family income.

**(2)** A premium requirement imposed under paragraph (1) may only apply to the extent that--

**(A)** in the case of a disabled child described in that paragraph whose family income--

**(i)** does not exceed 200 percent of the poverty line, the aggregate amount of such premium and any premium that the parent is required to pay for family coverage under section 1396a(cc)(2)(A)(i) of this title and other cost-sharing charges do not exceed 5 percent of the family's income; and

**(ii)** exceeds 200, but does not exceed 300, percent of the poverty line, the aggregate amount of such premium and any premium that the parent is required to pay for family coverage under section 1396a(cc)(2)(A)(i) of this title and other cost-sharing charges do not exceed 7.5 percent of the family's income; and

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

Add.138    8

**(B)** the requirement is imposed consistent with section 1396a(cc)(2)(A)(ii)(I) of this title.

**(3)** A State shall not require prepayment of a premium imposed pursuant to paragraph (1) and shall not terminate eligibility of a child under section 1396a(a)(10)(A)(ii)(XIX) of this title for medical assistance under this subchapter on the basis of failure to pay any such premium until such failure continues for a period of at least 60 days from the date on which the premium became past due. The State may waive payment of any such premium in any case where the State determines that requiring such payment would create an undue hardship.

**(j)No premiums or cost sharing for Indians furnished items or services directly by Indian health programs or through referral under contract health services**

**(1)No cost sharing for items or services furnished to Indians through Indian health programs**

**(A)In general**

No enrollment fee, premium, or similar charge, and no deduction, copayment, cost sharing, or similar charge shall be imposed against an Indian who is furnished an item or service directly by the Indian Health Service, an Indian Tribe, Tribal Organization, or Urban Indian Organization or through referral under contract health services for which payment may be made under this subchapter.

**(B)No reduction in amount of payment to Indian health providers**

Payment due under this subchapter to the Indian Health Service, an Indian Tribe, Tribal Organization, or Urban Indian Organization, or a health care provider through referral under contract health services for the furnishing of an item or service to an Indian who is eligible for assistance under such subchapter, may not be reduced by the amount of any enrollment fee, premium, or similar charge, or any deduction, copayment, cost sharing, or similar charge that would be due from the Indian but for the operation of subparagraph (A).

**(2)Rule of construction**

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.139

Nothing in this subsection shall be construed as restricting the application of any other limitations on the imposition of premiums or cost sharing that may apply to an individual receiving medical assistance under this subchapter who is an Indian.


## CREDIT(S)

(Aug. 14, 1935, c. 531, Title XIX, § 1916, as added Pub.L. 97-248, Title I, § 131(b), Sept. 3, 1982, 96 Stat. 367; amended Pub.L. 97-448, Title III, § 309(b)(18) to (20), Jan. 12, 1983, 96 Stat. 2409, 2410; Pub.L. 99-272, Title IX, § 9505(c)(2), Apr. 7, 1986, 100 Stat. 209; Pub.L. 99-509, Title IX, § 9403(g)(4)(B), Oct. 21, 1986, 100 Stat. 2056; Pub.L. 100-203, Title IV, §§ 4101(d)(1), 4211(h)(11), Dec. 22, 1987, 101 Stat. 1330-142, 1330-207; Pub.L. 100-360, Title IV, § 411(k)(2), July 1, 1988, 102 Stat. 791; Pub.L. 101-239, Title VI, § 6408(d)(3), Dec. 19, 1989, 103 Stat. 2269; Pub.L. 105-33, Title IV, § 4708(b), Aug. 5, 1997, 111 Stat. 506; Pub.L. 106-170, Title II, § 201(a)(3), Dec. 17, 1999, 113 Stat. 1893; Pub.L. 109-171, Title VI, §§ 6041(b), 6062(b), Feb. 8, 2006, 120 Stat. 84, 98; Pub.L. 111-5, Div. B, Title V, § 5006(a)(1), Feb. 17, 2009, 123 Stat. 505; Pub.L. 111-148, Title IV, § 4107(c)(1), Mar. 23, 2010, 124 Stat. 561; Pub.L. 116-127, Div. F, § 6004(a)(2)(A), Mar. 18, 2020, 134 Stat. 204; Pub.L. 117-2, Title IX, § 9811(a)(3)(A), Mar. 11, 2021, 135 Stat. 209; Pub.L. 117-169, Title I, § 11405(a)(2)(A), Aug. 16, 2022, 136 Stat. 1900.)


42 U.S.C.A. § 1396*o*, 42 USCA § 1396o
Current through P.L. 118-257. Some statute sections may be more current, see credits for details.

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    **Add.140**    10

USCA Case #24-5172      Document #2101807      Filed: 02/20/2025      Page 144 of 282

United States Code Annotated
  Title 42. The Public Health and Welfare
    Chapter 7. Social Security (Refs & Annos)
      Subchapter XIX. Grants to States for Medical Assistance Programs (Refs & Annos)

42 U.S.C.A. § 1396u-7

§ 1396u-7. State flexibility in benefit packages

Currentness

## (a) State option of providing benchmark benefits

### (1) Authority

#### (A) In general

Notwithstanding section 1396a(a)(1) of this title (relating to statewideness), section 1396a(a)(10)(B) of this title (relating to comparability) and any other provision of this subchapter which would be directly contrary to the authority under this section and subject to subparagraphs (E) and (F), a State, at its option as a State plan amendment, may provide for medical assistance under this subchapter to individuals within one or more groups of individuals specified by the State through coverage that--

**(i)** provides benchmark coverage described in subsection (b)(1) or benchmark equivalent coverage described in subsection (b)(2); and

**(ii)** for any individual described in section 1396d(a)(4)(B) of this title who is eligible under the State plan in accordance with paragraphs (10) and (17) of section 1396a(a) of this title, consists of the items and services described in section 1396d(a)(4)(B) of this title (relating to early and periodic screening, diagnostic, and treatment services defined in section 1396d(r) of this title) and provided in accordance with the requirements of section 1396a(a)(43) of this title.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.      1
**Add.141**

**(B) Limitation**

The State may only exercise the option under subparagraph (A) for an individual eligible under subclause (VIII) of section 1396a(a)(10)(A)(i) of this title or under an eligibility category that had been established under the State plan on or before February 8, 2006.

**(C) Option of additional benefits**

In the case of coverage described in subparagraph (A), a State, at its option, may provide such additional benefits as the State may specify.

**(D) Treatment as medical assistance**

Payment of premiums for such coverage under this subsection shall be treated as payment of other insurance premiums described in the third sentence of section 1396d(a) of this title.

**(E) Rule of construction**

Nothing in this paragraph shall be construed as--

**(i)** requiring a State to offer all or any of the items and services required by subparagraph (A)(ii) through an issuer of benchmark coverage described in subsection (b)(1) or benchmark equivalent coverage described in subsection (b)(2);

**(ii)** preventing a State from offering all or any of the items and services required by subparagraph (A)(ii) through an issuer of benchmark coverage described in subsection (b)(1) or benchmark equivalent coverage described in subsection (b)(2); or

**(iii)** affecting a child's entitlement to care and services described in subsections (a)(4)(B) and (r) of section 1396d of this title and provided in accordance with section 1396a(a)(43) of this title whether provided through benchmark coverage, benchmark equivalent coverage, or otherwise.

**(F) Necessary transportation**

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.                2

Add. 142

Notwithstanding the preceding provisions of this paragraph, a State may not provide medical assistance through the enrollment of an individual with benchmark coverage or benchmark equivalent coverage described in subparagraph (A)(i) unless, subject to section 1396b(i)(9) of this title and in accordance with section 1396a(a)(4) of this title, the benchmark benefit package or benchmark equivalent coverage (or the State)--

**(i)** ensures necessary transportation for individuals enrolled under such package or coverage to and from providers; and

**(ii)** provides a description of the methods that will be used to ensure such transportation.

## (2) Application

### (A) In general

Except as provided in subparagraph (B), a State may require that a full-benefit eligible individual (as defined in subparagraph (C)) within a group obtain benefits under this subchapter through enrollment in coverage described in paragraph (1)(A). A State may apply the previous sentence to individuals within 1 or more groups of such individuals.

### (B) Limitation on application

A State may not require under subparagraph (A) an individual to obtain benefits through enrollment described in paragraph (1)(A) if the individual is within one of the following categories of individuals:

#### (i) Mandatory pregnant women

The individual is a pregnant woman who is required to be covered under the State plan under section 1396a(a)(10)(A)(i) of this title.

#### (ii) Blind or disabled individuals

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Add. 143**

USCA Case #24-5172    Document #2101807    Filed: 02/20/2025    Page 147 of 282

The individual qualifies for medical assistance under the State plan on the basis of being blind or disabled (or being treated as being blind or disabled) without regard to whether the individual is eligible for supplemental security income benefits under subchapter XVI on the basis of being blind or disabled and including an individual who is eligible for medical assistance on the basis of section 1396a(e)(3) of this title.

### (iii) Dual eligibles

The individual is entitled to benefits under any part of subchapter XVIII.

### (iv) Terminally ill hospice patients

The individual is terminally ill and is receiving benefits for hospice care under this subchapter.

### (v) Eligible on basis of institutionalization

The individual is an inpatient in a hospital, nursing facility, intermediate care facility for the mentally retarded, or other medical institution, and is required, as a condition of receiving services in such institution under the State plan, to spend for costs of medical care all but a minimal amount of the individual's income required for personal needs.

### (vi) Medically frail and special medical needs individuals

The individual is medically frail or otherwise an individual with special medical needs (as identified in accordance with regulations of the Secretary).

### (vii) Beneficiaries qualifying for long-term care services

The individual qualifies based on medical condition for medical assistance for long-term care services described in section 1396p(c)(1)(C) of this title.

### (viii) Children in foster care receiving child welfare services and children receiving foster care or adoption assistance

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.    4

Add. 144

The individual is an individual with respect to whom child welfare services are made available under part B of subchapter IV on the basis of being a child in foster care or with respect to whom adoption or foster care assistance is made available under part E of such subchapter, without regard to age, or the individual qualifies for medical assistance on the basis of section 1396a(a)(10)(A)(i)(IX) of this title.

### (ix) TANF and section 1396u-1 parents

The individual qualifies for medical assistance on the basis of eligibility to receive assistance under a State plan funded under part A of subchapter IV (as in effect on or after the welfare reform effective date defined in section 1396u-1(i) of this title).

### (x) Women in the breast or cervical cancer program

The individual is a woman who is receiving medical assistance by virtue of the application of sections 1396a(a)(10)(A)(ii)(XVIII) and 1396a(aa) of this title.

### (xi) Limited services beneficiaries

The individual--

**(I)** qualifies for medical assistance on the basis of section 1396a(a)(10)(A)(ii)(XII) of this title; or

**(II)** is not a qualified alien (as defined in section 1641 of Title 8) and receives care and services necessary for the treatment of an emergency medical condition in accordance with section 1396b(v) of this title.

### (C) Full-benefit eligible individuals

### (i) In general

For purposes of this paragraph, subject to clause (ii), the term "full-benefit eligible individual" means for a State for a month an individual who is determined eligible by the State for medical assistance for all services defined in section 1396d(a) of this title

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.    5

**Add. 145**

USCA Case #24-5172    Document #2101807    Filed: 02/20/2025    Page 149 of 282

which are covered under the State plan under this subchapter for such month under section 1396a(a)(10)(A) of this title or under any other category of eligibility for medical assistance for all such services under this subchapter, as determined by the Secretary.

### (ii) Exclusion of medically needy and spend-down populations

Such term shall not include an individual determined to be eligible by the State for medical assistance under section 1396a(a)(10)(C) of this title or by reason of section 1396a(f) of this title or otherwise eligible based on a reduction of income based on costs incurred for medical or other remedial care.

## (b) Benchmark benefit packages

### (1) In general

For purposes of subsection (a)(1), subject to paragraphs (5) and (6), each of the following coverages shall be considered to be benchmark coverage:

#### (A) FEHBP-equivalent health insurance coverage

The standard Blue Cross/Blue Shield preferred provider option service benefit plan, described in and offered under section 8903(1) of Title 5.

#### (B) State employee coverage

A health benefits coverage plan that is offered and generally available to State employees in the State involved.

#### (C) Coverage offered through HMO

The health insurance coverage plan that--

##### (i) is offered by a health maintenance organization (as defined in section 300gg-91(b)(3) of this title), and

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.    6

Add.146

**(ii)** has the largest insured commercial, non-medicaid enrollment of covered lives of such coverage plans offered by such a health maintenance organization in the State involved.

**(D) Secretary-approved coverage**

Any other health benefits coverage that the Secretary determines, upon application by a State, provides appropriate coverage for the population proposed to be provided such coverage.

**(2) Benchmark-equivalent coverage**

For purposes of subsection (a)(1), subject to paragraphs (5) and (6)[1] coverage that meets the following requirement shall be considered to be benchmark-equivalent coverage:

**(A) Inclusion of basic services**

The coverage includes benefits for items and services within each of the following categories of basic services:

**(i)** Inpatient and outpatient hospital services.

**(ii)** Physicians' surgical and medical services.

**(iii)** Laboratory and x-ray services.

**(iv)** Coverage of prescription drugs.

**(v)** Mental health services.

**(vi)** Well-baby and well-child care, including age-appropriate immunizations.

**(vii)** Other appropriate preventive services, as designated by the Secretary.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Add.147**

**(B) Aggregate actuarial value equivalent to benchmark package**

The coverage has an aggregate actuarial value that is at least actuarially equivalent to one of the benchmark benefit packages described in paragraph (1).

**(C) Substantial actuarial value for additional services included in benchmark package**

With respect to each of the following categories of additional services for which coverage is provided under the benchmark benefit package used under subparagraph (B), the coverage has an actuarial value that is equal to at least 75 percent of the actuarial value of the coverage of that category of services in such package:

**(i)** Vision services.

**(ii)** Hearing services.

**(3) Determination of actuarial value**

The actuarial value of coverage of benchmark benefit packages shall be set forth in an actuarial opinion in an actuarial report that has been prepared--

**(A)** by an individual who is a member of the American Academy of Actuaries;

**(B)** using generally accepted actuarial principles and methodologies;

**(C)** using a standardized set of utilization and price factors;

**(D)** using a standardized population that is representative of the population involved;

**(E)** applying the same principles and factors in comparing the value of different coverage (or categories of services);

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.  Add.148      8

USCA Case #24-5172     Document #2101807     Filed: 02/20/2025     Page 152 of 282

**(F)** without taking into account any differences in coverage based on the method of delivery or means of cost control or utilization used; and

**(G)** taking into account the ability of a State to reduce benefits by taking into account the increase in actuarial value of benefits coverage offered under this subchapter that results from the limitations on cost sharing under such coverage.

The actuary preparing the opinion shall select and specify in the memorandum the standardized set and population to be used under subparagraphs (C) and (D).

### (4) Coverage of rural health clinic and FQHC services

Notwithstanding the previous provisions of this section, a State may not provide for medical assistance through enrollment of an individual with benchmark coverage or benchmark equivalent coverage under this section unless--

**(A)** the individual has access, through such coverage or otherwise, to services described in subparagraphs (B) and (C) of section 1396d(a)(2) of this title; and

**(B)** payment for such services is made in accordance with the requirements of section 1396a(bb) of this title.

### (5) Minimum standards

Effective January 1, 2014, any benchmark benefit package under paragraph (1) or benchmark equivalent coverage under paragraph (2) must provide at least essential health benefits as described in section 18022(b) of this title, and beginning January 1, 2022, coverage of routine patient costs for items and services furnished in connection with participation in a qualifying clinical trial (as defined in section 1396d(gg) of this title).

### (6) Mental health services parity

**(A) In general**

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.     9

In the case of any benchmark benefit package under paragraph (1) or benchmark equivalent coverage under paragraph (2) that is offered by an entity that is not a medicaid managed care organization and that provides both medical and surgical benefits and mental health or substance use disorder benefits, the entity shall ensure that the financial requirements and treatment limitations applicable to such mental health or substance use disorder benefits comply with the requirements of section 300gg-26(a) of this title in the same manner as such requirements apply to a group health plan. In applying the previous sentence with respect to requirements under paragraph (8) of section 300gg-26(a) of this title, a benchmark benefit package or benchmark equivalent coverage described in such sentence shall be treated as in compliance with such requirements if the State plan under this subchapter or the benchmark benefit package or benefit equivalent coverage, as applicable, is in compliance with subpart C of part 440 of title 42, Code of Federal Regulations, or any successor regulation.

**(B) Deemed compliance**

Coverage provided with respect to an individual described in section 1396d(a)(4)(B) of this title and covered under the State plan under section 1396a(a)(10)(A) of this title of the services described in section 1396d(a)(4)(B) of this title (relating to early and periodic screening, diagnostic, and treatment services defined in section 1396d(r) of this title) and provided in accordance with section 1396a(a)(43) of this title, shall be deemed to satisfy the requirements of subparagraph (A).

**(7) Coverage of family planning services and supplies**

Notwithstanding the previous provisions of this section, a State may not provide for medical assistance through enrollment of an individual with benchmark coverage or benchmark-equivalent coverage under this section unless such coverage includes for any individual described in section 1396d(a)(4)(C) of this title, medical assistance for family planning services and supplies in accordance with such section.

**(8) COVID-19 vaccines, testing, and treatment**

Notwithstanding the previous provisions of this section, a State may not provide for medical assistance through enrollment of an individual with benchmark coverage or benchmark-equivalent coverage under this section unless, during the period beginning on March 11, 2021, and ending on the last day of the first calendar quarter that begins one year after the last day of the emergency period described in section 1320b-5(g)(1)(B) of this title, such coverage includes (and does not impose any deduction, cost sharing, or similar charge for)--

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.150

**(A)** COVID-19 vaccines and administration of the vaccines; and

**(B)** testing and treatments for COVID-19, including specialized equipment and therapies (including preventive therapies), and, in the case of such an individual who is diagnosed with or presumed to have COVID-19, during the period such individual has (or is presumed to have) COVID-19, the treatment of a condition that may seriously complicate the treatment of COVID-19, if otherwise covered under the State plan (or waiver of such plan).

**(c) Publication of provisions affected**

With respect to a State plan amendment to provide benchmark benefits in accordance with subsections (a) and (b) that is approved by the Secretary, the Secretary shall publish on the Internet website of the Centers for Medicare & Medicaid Services, a list of the provisions of this subchapter that the Secretary has determined do not apply in order to enable the State to carry out the plan amendment and the reason for each such determination on the date such approval is made, and shall publish such list in the Federal Register and [2] not later than 30 days after such date of approval.

## CREDIT(S)

(Aug. 14, 1935, c. 531, Title XIX, § 1937, as added Pub.L. 109-171, Title VI, § 6044(a), Feb. 8, 2006, 120 Stat. 88; amended Pub.L. 111-3, Title VI, § 611(a) to (c), Feb. 4, 2009, 123 Stat. 100; Pub.L. 111-148, Title II, §§ 2001(a)(5)(E), (c), 2004(c)(2), 2303(c), Mar. 23, 2010, 124 Stat. 275, 276, 283, 296; Pub.L. 116-260, Div. BB, Title II, § 203(a)(4)(B), Div. CC, Title II, §§ 209(a)(2), 210(c), Dec. 27, 2020, 134 Stat. 2917, 2986, 2991; Pub.L. 117-2, Title IX, § 9811(a)(5), Mar. 11, 2021, 135 Stat. 211.)

---

## Footnotes

1      So in original. A comma probably should appear.

2      So in original.

42 U.S.C.A. § 1396u-7, 42 USCA § 1396u-7
Current through P.L. 118-257. Some statute sections may be more current, see credits for details.

WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.151                                                                          11

**End of Document**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Add. 152**

© 2025 Thomson Reuters. No claim to original U.S. Government Works.        12

(1) Establishing the fees it will pay providers for Medicaid services;

(2) Setting reasonable standards relating to the qualifications of providers; or

(3) Subject to paragraph (b)(2) of this section, restricting beneficiaries' free choice of providers in accordance with one or more of the exceptions set forth in §431.54, or under a waiver as provided in §431.55; or

(4) Limiting the providers who are available to furnish targeted case management services defined in §440.169 of this chapter to target groups that consist solely of individuals with developmental disabilities or with chronic mental illness. This limitation may only be permitted so that the providers of case management services for eligible individuals with developmental disabilities or with chronic mental illness are capable of ensuring that those individuals receive needed services.

(d) *Certification requirement*—(1) *Content of certification.* If a State implements a project under one of the exceptions allowed under §431.54 (d), (e) or (f), it must certify to CMS that the statutory safeguards and requirements for an exception under section 1915(a) of the Act are met.

(2) *Timing of certification.* (i) For an exception under §431.54(d), the State may not institute the project until after it has submitted the certification and CMS has made the findings required under the Act, and so notified the State.

(ii) For exceptions under §431.54 (e) or (f), the State must submit the certificate by the end of the quarter in which it implements the project.

[56 FR 8847, Mar. 1, 1991, as amended at 67 FR 41094, June 14, 2002; 72 FR 68091, Dec. 4, 2007]

### § 431.52 Payments for services furnished out of State.

(a) *Statutory basis.* Section 1902(a)(16) of the Act authorizes the Secretary to prescribe State plan requirements for furnishing Medicaid to State residents who are absent from the State.

(b) *Payment for services.* A State plan must provide that the State will pay for services furnished in another State to the same extent that it would pay for services furnished within its boundaries if the services are furnished to a beneficiary who is a resident of the State, and any of the following conditions is met:

(1) Medical services are needed because of a medical emergency;

(2) Medical services are needed and the beneficiary's health would be endangered if he were required to travel to his State of residence;

(3) The State determines, on the basis of medical advice, that the needed medical services, or necessary supplementary resources, are more readily available in the other State;

(4) It is general practice for beneficiaries in a particular locality to use medical resources in another State.

(c) *Cooperation among States.* The plan must provide that the State will establish procedures to facilitate the furnishing of medical services to individuals who are present in the State and are eligible for Medicaid under another State's plan.

### § 431.53 Assurance of transportation.

A State plan must—

(a) Specify that the Medicaid agency will ensure necessary transportation for beneficiaries to and from providers; and

(b) Describe the methods that the agency will use to meet this requirement.

[74 FR 31195, June 30, 2009]

### § 431.54 Exceptions to certain State plan requirements.

(a) *Statutory basis*—(1) Section 1915(a) of the Act provides that a State shall not be deemed to be out of compliance with the requirements of sections 1902(a)(1), (10), or (23) of the Act solely because it has elected any of the exceptions set forth in paragraphs (b) and (d) through (f) of this section.

(2) Section 1915(g) of the Act provides that a State may provide, as medical assistance, targeted case management services under the plan without regard to the requirements of sections 1902(a)(1) and 1902(a)(10)(B) of the Act.

(3) Section 1915(i) of the Act provides that a State may provide, as medical assistance, home and community-based services under an approved State plan amendment that meets certain requirements, without regard to the requirements of sections 1902(a)(10)(B) and

30

*Outpatient services* for purposes of imposing cost sharing means any service or supply not meeting the definition of an inpatient stay.

*Preferred drugs* means drugs that the state has identified on a publicly available schedule as being determined by a pharmacy and therapeutics committee for clinical efficacy as the most cost effective drugs within each therapeutically equivalent or therapeutically similar class of drugs, or all drugs within such a class if the agency does not differentiate between preferred and non-preferred drugs.

*Premium* means any enrollment fee, premium, or other similar charge.

### § 447.52 Cost sharing.

(a) *Applicability.* Except as provided in § 447.56(a) (exemptions), the agency may impose cost sharing for any service under the state plan.

(b) *Maximum Allowable Cost Sharing.* (1) At State option, cost sharing imposed for any service (other than for drugs and non-emergency services furnished in an emergency department, as described in §§ 447.53 and 447.54 respectively) may be established at or below the amounts shown in the following table (except that the maximum allowable cost sharing for individuals with family income at or below 100 percent of the FPL shall be increased each year, beginning October 1, 2015, by the percentage increase in the medical care component of the CPI–U for the period of September to September of the preceding calendar year, rounded to the next higher 5-cent increment):

| Services | Maximum allowable cost sharing | | |
|---|---|---|---|
| | Individuals with family income ≤100% of the FPL | Individuals with family income 101–150% of the FPL | Individuals with family income >150% of the FPL |
| Outpatient Services (*physician visit, physical therapy, etc.*). | $4 | 10% of cost the agency pays ....... | 20% of cost the agency pays. |
| Inpatient Stay ................................ | 75 | 10% of total cost the agency pays for the entire stay. | 20% of total cost the agency pays for the entire stay. |

(2) States with cost sharing for an inpatient stay that exceeds $75, as of July 15, 2013, must submit a plan to CMS that provides for reducing inpatient cost sharing to $75 on or before July 1, 2017.

(3) In states that do not have fee-for-service payment rates, any cost sharing imposed on individuals at any income level may not exceed the maximum amount established, for individuals with income at or below 100 percent of the FPL described in paragraph (b)(1) of this section.

(c) *Maximum cost sharing.* In no case shall the maximum cost sharing established by the agency be equal to or exceed the amount the agency pays for the service.

(d) *Targeted cost sharing.* (1) Except as provided in paragraph (d)(2) of this section, the agency may target cost sharing to specified groups of individuals with family income above 100 percent of the FPL.

(2) For cost sharing imposed for non-preferred drugs under § 447.53 and for non-emergency services provided in a hospital emergency department under § 447.54, the agency may target cost sharing to specified groups of individuals regardless of income.

(e) *Denial of service for nonpayment.* (1) The agency may permit a provider, including a pharmacy or hospital, to require an individual to pay cost sharing as a condition for receiving the item or service if—

(i) The individual has family income above 100 percent of the FPL,

(ii) The individual is not part of an exempted group under § 447.56(a), and

(iii) For cost sharing imposed for non-emergency services furnished in an emergency department, the conditions under § 447.54(d) of this part have been satisfied.

(2) Except as provided under paragraph (e)(1) of this section, the state plan must specify that no provider may deny services to an eligible individual on account of the individual's inability to pay the cost sharing.

468

**Centers for Medicare & Medicaid Services, HHS**                    **§ 447.53**

(3) Nothing in this section shall be construed as prohibiting a provider from choosing to reduce or waive such cost sharing on a case-by-case basis.

(f) *Prohibition against multiple charges.* For any service, the agency may not impose more than one type of cost sharing.

(g) *Income-related charges.* Subject to the maximum allowable charges specified in §§ 447.52(b), 447.53(b) and 447.54(b), the plan may establish different cost sharing charges for individuals at different income levels. If the agency imposes such income-related charges, it must ensure that lower income individuals are charged less than individuals with higher income.

(h) *Services furnished by a managed care organization (MCO).* Contracts with MCOs must provide that any cost-sharing charges the MCO imposes on Medicaid enrollees are in accordance with the cost sharing specified in the state plan and the requirements set forth in §§ 447.50 through 447.57.

(i) *State Plan Specifications.* For each cost sharing charge imposed under this part, the state plan must specify—

(1) The service for which the charge is made;

(2) The group or groups of individuals that may be subject to the charge;

(3) The amount of the charge;

(4) The process used by the state to—

(i) Ensure individuals exempt from cost sharing are not charged,

(ii) Identify for providers whether cost sharing for a specific item or service may be imposed on an individual and whether the provider may require the individual, as a condition for receiving the item or service, to pay the cost sharing charge; and

(5) If the agency imposes cost sharing under § 447.54, the process by which hospital emergency room services are identified as non-emergency service.

**§ 447.53  Cost sharing for drugs.**

(a) The agency may establish differential cost sharing for preferred and non-preferred drugs. The provisions in § 447.56(a) shall apply except as the agency exercises the option under paragraph (d) of this section. All drugs will be considered preferred drugs if so identified or if the agency does not differentiate between preferred and non-preferred drugs.

(b) At state option, cost sharing for drugs may be established at or below the amounts shown in the following table (except that the maximum allowable cost sharing shall be increased each year, beginning October 1, 2015, by the percentage increase in the medical care component of the CPI–U for the period of September to September of the preceding calendar year, rounded to the next higher 5-cent increment. Such increase shall not be applied to any cost sharing that is based on the amount the agency pays for the service):

| Services | Maximum allowable cost sharing | |
| --- | --- | --- |
| | Individuals with family income ≤150% of the FPL | Individuals with family income >150% of the FPL |
| Preferred Drugs ............................................. | $4 | $4. |
| Non-Preferred Drugs ..................................... | 8 | 20% of the cost the agency pays. |

(c) In states that do not have fee-for-service payment rates, cost sharing for prescription drugs imposed on individuals at any income level may not exceed the maximum amount established for individuals with income at or below 150 percent of the FPL in paragraph (b) of this section.

(d) For individuals otherwise exempt from cost sharing under § 447.56(a), the agency may impose cost sharing for non-preferred drugs, not to exceed the maximum amount established in paragraph (b) of this section.

(e) In the case of a drug that is identified by the agency as a non-preferred drug within a therapeutically equivalent or therapeutically similar class of drugs, the agency must have a timely process in place so that cost sharing is limited to the amount imposed for a preferred drug if the individual's prescribing provider determines that a preferred drug for treatment of the

469

**Add.155**

West's Annotated Indiana Code
  Title 12. Human Services
    Article 8. Administering Family and Social Services
      Chapter 1.5. Office of Secretary of Family and Social Services

IC 12-8-1.5-7.5

12-8-1.5-7.5 Medicaid COVID-19 Relief

Currentness

Sec. 7.5. (a) Notwithstanding any other law, the secretary, through the offices, may issue a waiver, in writing, of provisions of this title and rules adopted under IC 4-22-2 concerning provisions of this title if the secretary determines that the waiver is necessary to claim any enhanced federal matching funds available from:

  (1) the federal Families First Coronavirus Response Act;

  (2) the federal American Rescue Plan Act of 2021; or

  (3) any other federal law, regulation, guidance, or policy pertaining to COVID-19 (as defined in IC 16-39-11-1) relief;

for the Medicaid program or programs funded through Medicaid.

(b) Not later than March 1, 2022, and every six (6) months thereafter, the secretary shall prepare and submit a report to the budget committee concerning any waiver issued under subsection (a).

(c) Nothing in this section may be construed to obligate the secretary to issue a waiver under this section.

(d) This section expires on the day after the date that the funds described in subsection (a)(1) through (a)(3) are no longer available to the state.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.
**Add.156**
1

**Credits**

As added by P.L.1-2022, SEC.1, eff. March 3, 2022.


I.C. 12-8-1.5-7.5, IN ST 12-8-1.5-7.5

The statutes and Constitution are current with all legislation of the 2024 Second Regular Session of the 123rd General Assembly effective through July 1, 2024. Some statute sections may be more current, see credits for details.

---

**End of Document**    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

West's Annotated Indiana Code
  Title 12. Human Services
    Article 15. Medicaid (Refs & Annos)
      Chapter 44.5. Healthy Indiana Plan 2.0

IC 12-15-44.5-3

12-15-44.5-3 Healthy Indiana plan; establishment; administration; eligibility

Currentness

Sec. 3. (a) The healthy Indiana plan is established.

(b) The office shall administer the plan.

(c) The following individuals are eligible for the plan:

  (1) The adult group described in 42 CFR 435.119.

  (2) Parents and caretaker relatives eligible under 42 CFR 435.110.

  (3) Low income individuals who are:

      (A) at least nineteen (19) years of age; and

      (B) less than twenty-one (21) years of age; and eligible under 42 CFR 435.222.

  (4) Individuals, for purposes of receiving transitional medical assistance.

An individual must meet the Medicaid residency requirements under IC 12-15-4-4 and this article to be eligible for the plan.

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.
**Add. 158**

USCA Case #24-5172    Document #2101807    Filed: 02/20/2025    Page 162 of 282

(d) The following individuals are not eligible for the plan:

   (1) An individual who participates in the federal Medicare program (42 U.S.C. 1395 et seq.).

   (2) An individual who is otherwise eligible and enrolled for medical assistance.

(e) The department of insurance and the office of the secretary shall provide oversight of the marketing practices of the plan.

(f) The office shall promote the plan and provide information to potential eligible individuals who live in medically underserved rural areas of Indiana.

(g) The office shall, to the extent possible, ensure that enrollment in the plan is distributed throughout Indiana in proportion to the number of individuals throughout Indiana who are eligible for participation in the plan.

(h) The office shall establish standards for consumer protection, including the following:

   (1) Quality of care standards.

   (2) A uniform process for participant grievances and appeals.

   (3) Standardized reporting concerning provider performance, consumer experience, and cost.

(i) A health care provider that provides care to an individual who receives health coverage under the plan shall also participate in the Medicaid program under this article.

(j) The following do not apply to the plan:

   (1) IC 12-15-12.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.
**Add.159**        2

USCA Case #24-5172    Document #2101807    Filed: 02/20/2025    Page 163 of 282

(2) IC 12-15-13.

(3) IC 12-15-14.

(4) IC 12-15-15.

(5) IC 12-15-21.

(6) IC 12-15-26.

(7) IC 12-15-31.1.

(8) IC 12-15-34.

(9) IC 12-15-35.

(10) IC 16-42-22-10.

**Credits**

As added by P.L.213-2015, SEC.136, eff. Feb. 1, 2015. Amended by P.L.30-2016, SEC.27, eff. July 1, 2016; P.L.152-2017, SEC.32, eff. July 1, 2017; P.L.241-2023, SEC.16, eff. July 1, 2023.

I.C. 12-15-44.5-3, IN ST 12-15-44.5-3
The statutes and Constitution are current with all legislation of the 2024 Second Regular Session of the 123rd General Assembly effective through July 1, 2024. Some statute sections may be more current, see credits for details.

**End of Document**
© 2025 Thomson Reuters. No claim to original U.S. Government Works.

USCA Case #24-5172    Document #2101807        Filed: 02/20/2025      Page 164 of 282

West's Annotated Indiana Code
    Title 12. Human Services
        Article 15. Medicaid (Refs & Annos)
            Chapter 44.5. Healthy Indiana Plan 2.0

IC 12-15-44.5-4

12-15-44.5-4 Purpose; termination

Currentness

Sec. 4. (a) The plan:

(1) is not an entitlement program; and

(2) serves as an alternative to health care coverage under Title XIX of the federal Social Security Act (42 U.S.C. 1396 et seq.).

(b) If either of the following occurs, the office shall terminate the plan in accordance with section 6(b) of this chapter:

(1) The:

(A) percentages of federal medical assistance available to the plan for coverage of plan participants described in Section 1902(a)(10)(A)(i)(VIII) of the federal Social Security Act are less than the percentages provided for in Section 2001(a)(3)(B) of the federal Patient Protection and Affordable Care Act; and

(B) hospital assessment committee (IC 16-21-10), after considering the modification and the reduction in available funding, does not alter the formula established under IC 16-21-10-13.3(b)(1) to cover the amount of the reduction in federal medical assistance.

For purposes of this subdivision, "coverage of plan participants" includes payments, contributions, and amounts referred to in IC 16-21-10-13.3(b)(1)(A), IC 16-21-10-13.3(b)(1)

WESTLAW  © 2025 Thomson Reuters. No claim to original U.S. Government Works.            1

Add.161

USCA Case #24-5172    Document #2101807    Filed: 02/20/2025    Page 165 of 282

(C), and IC 16-21-10-13.3(b)(1)(D), including payments, contributions, and amounts incurred during a phase out period of the plan.

(2) The:

(A) methodology of calculating the incremental fee set forth in IC 16-21-10-13.3 is modified in any way that results in a reduction in available funding;

(B) hospital assessment fee committee (IC 16-21-10), after considering the modification and reduction in available funding, does not alter the formula established under IC 16-21-10-13.3(b)(1) to cover the amount of the reduction in fees; and

(C) office does not use alternative financial support to cover the amount of the reduction in fees.

(c) If the plan is terminated under subsection (b), the secretary may implement a plan for coverage of the affected population in a manner consistent with the healthy Indiana plan (IC 12-15-44.2 (before its repeal)) in effect on January 1, 2014:

(1) subject to prior approval of the United States Department of Health and Human Services; and

(2) without funding from the incremental fee set forth in IC 16-21-10-13.3.

(d) The office may not operate the plan in a manner that would obligate the state to financial participation beyond the level of state appropriations or funding otherwise authorized for the plan.

(e) The office of the secretary shall submit annually to the budget committee an actuarial analysis of the plan that reflects a determination that sufficient funding is reasonably estimated to be available to operate the plan.

**Credits**
As added by P.L.213-2015, SEC.136, eff. Feb. 1, 2015. Amended by P.L.30-2016, SEC.29, eff. July 1, 2016.

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

**Add.162**

I.C. 12-15-44.5-4, IN ST 12-15-44.5-4

The statutes and Constitution are current with all legislation of the 2024 Second Regular Session of the 123rd General Assembly effective through July 1, 2024. Some statute sections may be more current, see credits for details.

---

**End of Document** © 2025 Thomson Reuters. No claim to original U.S. Government Works.

 WESTLAW   © 2025 Thomson Reuters. No claim to original U.S. Government Works. **Add. 163**

USCA Case #24-5172     Document #2101807         Filed: 02/20/2025       Page 167 of 282

West's Annotated Indiana Code
  Title 12. Human Services
    Article 15. Medicaid (Refs & Annos)
      Chapter 44.5. Healthy Indiana Plan 2.0

IC 12-15-44.5-10

12-15-44.5-10 Changes to plan; authorization; conditions

Currentness

Sec. 10. (a) The secretary has the authority to provide benefits to individuals eligible under the adult group described in 42 CFR 435.119 only in accordance with this chapter.

(b) The secretary may negotiate and make changes to the plan, except that the secretary may not negotiate or change the plan that would do the following:

  (1) Reduce the following:

    (A) Contribution amounts below the minimum levels set forth in section 4.7 of this chapter.

    (B) Deductible amounts below the minimum amount established in section 4.5(c) of this chapter.

  (2) Remove or reduce the penalties for nonpayment set forth in section 4.7 of this chapter.

  (3) Revise the use of the health care account requirement set forth in section 4.5 of this chapter.

  (4) Include noncommercial benefits or add additional plan benefits in a manner inconsistent with section 3.5 of this chapter.

  (5) Allow services to begin:

WESTLAW © 2025 Thomson Reuters. No claim to original U.S. Government Works.

USCA Case #24-5172    Document #2101807    Filed: 02/20/2025    Page 168 of 282

(A) without the payment established or required by; or

(B) earlier than the time frames otherwise established by;

section 4.7 of this chapter.

(6) Reduce financial penalties for the inappropriate use of the emergency room below the minimum levels set forth in section 5.7 of this chapter.

(7) Permit members to change health plans without cause in a manner inconsistent with section 4.7(g) of this chapter.

(8) Operate the plan in a manner that would obligate the state to financial participation beyond the level of state appropriations or funding otherwise authorized for the plan.

(c) The secretary may make changes to the plan under this chapter if the changes are required by federal law or regulation.

**Credits**

As added by P.L.213-2015, SEC.136, eff. Feb. 1, 2015. Amended by P.L.30-2016, SEC.35, eff. July 1, 2016.

I.C. 12-15-44.5-10, IN ST 12-15-44.5-10

The statutes and Constitution are current with all legislation of the 2024 Second Regular Session of the 123rd General Assembly effective through July 1, 2024. Some statute sections may be more current, see credits for details.

End of Document                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2025 Thomson Reuters. No claim to original U.S. Government Works.
Add.165

 # Alternative Benefit Plan

State Name: Indiana                     Attachment 3.1-L-            OMB Control Number: 0938-1148

Transmittal Number: IN - 15 - 0002                                  OMB Expiration date: 10/31/2014

## Alternative Benefit Plan Populations                                                    ABP1

Identify and define the population that will participate in the Alternative Benefit Plan.

Alternative Benefit Plan Population Name: Healthy Indiana Plan (HIP) Basic

Identify eligibility groups that are included in the Alternative Benefit Plan's population, and which may contain individuals that meet any targeting criteria used to further define the population.

Eligibility Groups Included in the Alternative Benefit Plan Population:

| | Eligibility Group: | Enrollment is mandatory or voluntary? | |
|---|---|---|---|
| **+** | Adult Group | Mandatory | **X** |

Enrollment is available for all individuals in these eligibility group(s).     No

**Targeting Criteria** (select all that apply):

☒ Income Standard.

Income Standard:

⦿ Income standard is used to target households with income at or below the standard.

◯ Income standard is used to target households with income above the standard.

The income standard is as follows:

⦿ A percentage:

◯ A specific amount

◯ Federal Poverty Level.

◯ SSI Federal Benefit Amount.

⦿ Other.

Enter the Other percentage     100

Describe:

The HIP Basic Plan is only available for individuals up to and including 100% federal poverty level (FPL) as based on MAGI income standards who do not pay a contribution to their HIP Plus Personal Wellness and Responsibility (POWER) account.

Women who become pregnant while enrolled are eligible for State Plan Benefits detailed in ABP5.

☐ Disease/Condition/Diagnosis/Disorder.

☐ Other.

**Geographic Area**

**Add.166**

 # Alternative Benefit Plan

| The Alternative Benefit Plan population will include individuals from the entire state/territory. | Yes |
|---|---|

Any other information the state/territory wishes to provide about the population (optional)

Enrollment in the Alternative Benefit Plan (ABP) that is the HIP Basic Plan with Essential Health Benefits (EHBs) will include non-medically frail adults between the ages of 19 and 64 with income at or below 100% of the Federal Poverty Level (FPL). All HIP Basic enrollees will be eligible for the enhanced ABP that is the HIP Plus Plan with EHBs.

Individuals with income at or below 100% FPL are eligible for HIP Plus. If they do not make the POWER account payment then they default to the HIP Basic Plan. Educational information about the differences in benefits and cost-sharing structure between HIP Basic and HIP Plus are provided in all member communications from both the state and the MCEs. This includes but is not limited to eligibility notices, welcome letters, invoices, and member handbooks. Members can also receive information about the difference in the Basic and Plus plans from all call center staff including the state call centers, the enrollment broker, and the MCE call centers. The state also makes educational information available to members online.

## PRA Disclosure Statement

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-1148. The time required to complete this information collection is estimated to average 5 hours per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection. If you have comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: CMS, 7500 Security Boulevard, Attn: PRA Reports Clearance Officer, Mail Stop C4-26-05, Baltimore, Maryland 21244-1850.

V.20140415

 **CMS**          # Alternative Benefit Plan

State Name: Indiana                                    Attachment 3.1-L- [      ]          OMB Control Number: 0938-1148

Transmittal Number:  IN  - 15 - 0024                                                  OMB Expiration date: 10/31/2014

## Selection of Benchmark Benefit Package or Benchmark-Equivalent Benefit Package          ABP3

Select one of the following:

  ○ The state/territory is amending one existing benefit package for the population defined in Section 1.

  ◉ The state/territory is creating a single new benefit package for the population defined in Section 1.

      Name of benefit package:  HIP Basic Plan

### Selection of the Section 1937 Coverage Option

The state/territory selects as its Section 1937 Coverage option the following type of Benchmark Benefit Package or Benchmark-Equivalent Benefit Package under this Alternative Benefit Plan (check one):

  ◉ Benchmark Benefit Package.

  ○ Benchmark-Equivalent Benefit Package.

    The state/territory will provide the following Benchmark Benefit Package (check one that applies):

      ○ The Standard Blue Cross/Blue Shield Preferred Provider Option offered through the Federal Employee Health Benefit Program (FEHBP).

      ○ State employee coverage that is offered and generally available to state employees (State Employee Coverage):

      ○ A commercial HMO with the largest insured commercial, non-Medicaid enrollment in the state/territory (Commercial HMO):

      ◉ Secretary-Approved Coverage.

        ○ The state/territory offers benefits based on the approved state plan.

        ◉ The state/territory offers an array of benefits from the section 1937 coverage option and/or base benchmark plan benefit packages, or the approved state plan, or from a combination of these benefit packages.

      Please briefly identify the benefits, the source of benefits and any limitations:

> Indiana will use benefits from the largest commercial HMO by enrollment that was a plan option for the State's commercial EHB benchmark. The commercial HMO selected as the base benchmark plan for the HIP Basic ABP complies with the regulations set forth for alternative health benefit plans under §440.347 as related to the essential health benefits (EHBs). The state's methodology in selecting the plan design was to ensure the benefits of the ABP that is the State Plan are at least as generous as the HIP Basic and Plus benefits. The HIP Basic Plan provides limited coverage that excludes dental and vision services, except as required under EPSDT. The formulary for the prescription drug benefit must support the coverage and non-coverage requirements for legend drugs by Indiana Medicaid, found in 405 IAC 5-24-3. The HIP Basic ABP offers additional benefits beyond the base benchmark for pregnant women. If a woman becomes pregnant, she will have the option to maintain her current HIP Basic Plan benefits with extended services for pregnant women.

### Selection of Base Benchmark Plan

The state/territory must select a Base Benchmark Plan as the basis for providing Essential Health Benefits in its Benchmark or Benchmark-Equivalent Package.

 # Alternative Benefit Plan

The Base Benchmark Plan is the same as the Section 1937 Coverage option. | No |

Indicate which Benchmark Plan described at 45 CFR 156.100(a) the state/territory will use as its Base Benchmark Plan:

○ Largest plan by enrollment of the three largest small group insurance products in the state's small group market.

○ Any of the largest three state employee health benefit plans by enrollment.

○ Any of the largest three national FEHBP plan options open to Federal employees in all geographies by enrollment.

◉ Largest insured commercial non-Medicaid HMO.

Plan name: | Advantage 1001 |

Other Information Related to Selection of the Section 1937 Coverage Option and the Base Benchmark Plan (optional):

The state assures that all services in the base benchmark have been accounted for throughout the benefit chart in ABP5. The state assures the accuracy of all information in ABP5 depicting amount, duration and scope parameters of services authorized in the current approved Medicaid state plan and covered on the selected base benchmark plan.

## PRA Disclosure Statement

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-1148. The time required to complete this information collection is estimated to average 5 hours per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection. If you have comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: CMS, 7500 Security Boulevard, Attn: PRA Reports Clearance Officer, Mail Stop C4-26-05, Baltimore, Maryland 21244-1850.

V.20140415

TN#: 15-0024                    ABP 3                    Approval Date:10/29/15
Indiana                                                Effective Date: October 1, 2015



# Alternative Benefit Plan

State Name: Indiana

Attachment 3.1-L-

OMB Control Number: 0938-1148

Transmittal Number: IN - 15 - 0002

OMB Expiration date: 10/31/2014

| Alternative Benefit Plan Cost-Sharing | ABP4 |
|---|---|

☐ Any cost sharing described in Attachment 4.18-A applies to the Alternative Benefit Plan.

Attachment 4.18-A may be revised to include cost sharing for ABP services that are not otherwise described in the state plan. Any such cost sharing must comply with Section 1916 of the Social Security Act.

The Alternative Benefit Plan for individuals with income over 100% FPL includes cost-sharing other than that described in Attachment 4.18-A.

Yes

☐ The state/territory has completed and attached to this submission Attachment 4.18-F to indicate the Alternative Benefit Plan's cost-sharing provisions that are different from those otherwise approved in the state plan.

**An attachment is submitted.**

Other Information Related to Cost Sharing Requirements (optional):

A description of the cost sharing requirements for the HIP Basic Plan are contained in Indiana's HIP 1115 Demonstration.

## PRA Disclosure Statement

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-1148. The time required to complete this information collection is estimated to average 5 hours per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection. If you have comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: CMS, 7500 Security Boulevard, Attn: PRA Reports Clearance Officer, Mail Stop C4-26-05, Baltimore, Maryland 21244-1850.

V.20140415

 # Alternative Benefit Plan

State Name: Indiana

Attachment 3.1-L-

OMB Control Number: 0938-1148

Transmittal Number: IN - 22 - 0009

| Benefits Description | ABP5 |
|---|---|

The state/territory proposes a "Benchmark-Equivalent" benefit package.   No

**Benefits Included in Alternative Benefit Plan**

Enter the specific name of the base benchmark plan selected:

Base Benchmark Commercial HMO
Advantage HMO
Basic Plan

Enter the specific name of the section 1937 coverage option selected, if other than Secretary-Approved.  Otherwise, enter "Secretary-Approved."

Secretary-Approved

TN: 22-0009
Supersedes
TN: 15-0024
(Page 174 of Total)

Approval Date: 3/1/2023
**Add.171**

Effective Date: 10/1/2022

Page 1 of 45

 **Alternative Benefit Plan**

---

☑ 1. Essential Health Benefit: Ambulatory patient services        Collapse All ☐

Benefit Provided: | Source: | Remove
Primary Care Physician (PCP) Services Office Visit | Base Benchmark Commercial HMO |

Authorization: | Provider Qualifications:
Other | Medicaid State Plan

Amount Limit: | Duration Limit:
None | None

Scope Limit:
None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Office visit services include supplies for treatment of the illness or injury, medical consultations, procedures performed in the physician's office, second opinion consultations and specialist treatment services provided by a PCP.

For second opinion consultations, the Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

Benefit Provided: | Source: | Remove
Specialty Physician Visits | Base Benchmark Commercial HMO |

Authorization: | Provider Qualifications:
Other | Medicaid State Plan

Amount Limit: | Duration Limit:
None | None

Scope Limit:
None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Referral Physician Office Visit included.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

Benefit Provided: | Source: | Remove
Home Health Services | Secretary-Approved Other |

Authorization: | Provider Qualifications:
Other | Medicaid State Plan

---

TN: 13-006
Supersedes
TN: 15-0024

**Add.172**

Approval Date: 3/1/2023

Effective Date: 10/1/2022

Page 2 of 45



# Alternative Benefit Plan

Amount Limit:

| 100 visits per year |

Duration Limit:

| None |

Scope Limit:

Services covered only if not considered custodial care and are prescribed in writing by a participating physician as medically necessary, in place of inpatient hospital care or convalescent nursing home and services provided under physician's care.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Services include skilled medical services; nursing care given or supervised by RN; nutritional counseling furnished or supervised by RD; home hospice services; home health aides; laboratory services, drugs, and medicines prescribed by a physician in connection with home health care; and medical social services. Home hospice services are considered a separate service.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

| Outpatient Surgery |

Source:

| Base Benchmark Commercial HMO |

[ Remove ]

Authorization:

| Other |

Provider Qualifications:

| Medicaid State Plan |

Amount Limit:

| None |

Duration Limit:

| None |

Scope Limit:

| None |

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Outpatient medical and surgical hospital services are covered when medically necessary. Includes diagnostic invasive procedures that may or may not require anesthesia.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

| Allergy Testing |

Source:

| Base Benchmark Commercial HMO |

[ Remove ]

Authorization:

| None |

Provider Qualifications:

| Medicaid State Plan |

Amount Limit:

| None |

Duration Limit:

| None |

Supersedes
TN: 15-0024    Approval Date: 3/1/2023    Effective Date: 10/1/2022
Page 3 of 45



# Alternative Benefit Plan

Scope Limit:

| None |

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

| Includes allergy procedures-administration of serum |

---

Benefit Provided:

| Chemotherapy-Outpatient |

Source:

| Base Benchmark Commercial HMO |

Remove

Authorization:

| Other |

Provider Qualifications:

| Medicaid State Plan |

Amount Limit:

| None |

Duration Limit:

| None |

Scope Limit:

| None |

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

| Includes outpatient therapeutic injections which are medically necessary and may not be self-administered. For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment. |

---

Benefit Provided:

| IV Infusion Services |

Source:

| Base Benchmark Commercial HMO |

Remove

Authorization:

| Other |

Provider Qualifications:

| Medicaid State Plan |

Amount Limit:

| None |

Duration Limit:

| None |

Scope Limit:

| None |

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

| Includes coverage for outpatient infusion therapy. For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment |

TN: 22-0009
Supersedes
TN: 15-0024


(Page 177 of Total)

**Add 174**

Approval Date: 2/17/2023

Effective Date: 10/1/2022



# Alternative Benefit Plan

Benefit Provided:

Radiation Therapy- Outpatient

Source:

Base Benchmark Commercial HMO

[ Remove ]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Includes coverage for outpatient services.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

Benefit Provided:

Dialysis

Source:

Base Benchmark Commercial HMO

[ Remove ]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Coverage provided for outpatient (including home) dialysis services provided by a participating provider. For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment

---

Benefit Provided:

Outpatient Services

Source:

Base Benchmark Commercial HMO

[ Remove ]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

TN: 22-0009
Supersedes
TN: 15-0024

**Add.175**
Approval Date: 3/1/2023

Effective Date: 10/1/2022

Page 5 of 45

 **Alternative Benefit Plan**

Scope Limit:

| None |

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

| Includes colonoscopy and pacemaker. Benefits provided are PCP, specialty and referral for all physician services in an outpatient facility.<br><br>For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment. |

Benefit Provided: | Source: | [ Remove ]

| Dental- Limited Covered Services- Accident/Injury | | Base Benchmark Commercial HMO |

Authorization: | Provider Qualifications:

| Other | | Medicaid State Plan |

Amount Limit: | Duration Limit:

| Treatment complete within 1 year from initiation | | None |

Scope Limit:

| Coverage not provided for orthodontia, dental procedures, repair of injury caused by an intrinsic force, such as the force of the upper and lower jaw in chewing, repair of artificial teeth, dentures or bridges and other dental services. |

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

| Injury to sound and natural teeth including teeth that have been filled, capped or crowned.<br><br>For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, to report injury to insurer and receive follow-up care within specified timeframe, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment. |

Benefit Provided: | Source: | [ Remove ]

| Urgent Care- Walk-ins | | Base Benchmark Commercial HMO |

Authorization: | Provider Qualifications:

| None | | Medicaid State Plan |

Amount Limit: | Duration Limit:

| None | | None |

Scope Limit:

| None |

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

| Coverage includes after hours care. |

TN: 22-0009<br>Supersedes<br>TN: 15-0024    Approval Date: 3/1/2023    Effective Date: 10/1/2022    Page 6 of 45

 **Alternative Benefit Plan**

| | |
|---|---|

**Benefit Provided:**        **Source:**      [Remove]

Routine Foot Care     Secretary-Approved Other

**Authorization:**       **Provider Qualifications:**

Other      Medicaid State Plan

**Amount Limit:**       **Duration Limit:**

6 visits per year      None

**Scope Limit:**

Coverage not provided for supportive devices of the feet, including but not limited to foot orthotics, corrective shoes, arch supports for the treatment of plantar fasciitis, flat feet, fallen arches, weak feet, chronic foot strain, corns, bunions

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Scope limit continued- and calluses.
Covered when medically necessary for the treatment of diabetes and lower extremity circulatory diseases. For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

**Benefit Provided:**        **Source:**      [Remove]

Voluntary Sterilization for Males     State Plan 1905(a)

**Authorization:**       **Provider Qualifications:**

Other      Medicaid State Plan

**Amount Limit:**       **Duration Limit:**

None      None

**Scope Limit:**

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

**Benefit Provided:**        **Source:**      [Remove]

Clinical Trials for Cancer Treatment     Base Benchmark Commercial HMO

**Authorization:**       **Provider Qualifications:**

Other      Medicaid State Plan

(Page 2809 of Total)
TN: 22-0009
Supersedes
TN: 15-0024

Add.177

Approval Date: 3/1/2023

Effective Date: 10/1/2022

Page 7 of 45

 **Alternative Benefit Plan**

Amount Limit:

None

Duration Limit:

None

Scope Limit:

Items and services that are not routine care costs or unrelated to the care method will not be covered.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

The clinical trial must be approved or funded by one of the following: National Institute of Health; cooperative group of research facilities that have an established peer review program that is approved by a National Institute of Health or center; FDA; United States Department of Veterans Affairs; United States Department of Defense; institutional review board of an institution located in Indiana that has a multiple project assurance contract approved by the National Institute of the Office for Human Research Protections; and research entity that meets eligibility criteria for a support grant from a National Institutes of Health center.

Coverage provided for routine care costs that are incurred in the course of a clinical trial.
For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, review of clinical trial to ensure qualified, review of routine costs related to clinical trial and a justification of services rendered for the medical needs of the member.

Add

TN: 22-0009
Supersedes
TN: 15-0024

Approval Date: 3/1/2023

Effective Date: 10/1/2022

(Page 181 of Total)

**Add.178**

Page 8 of 45



# Alternative Benefit Plan

■ 2. Essential Health Benefit: Emergency services                    Collapse All ☐

Benefit Provided:                                    Source:                          [ Remove ]

| Emergency Department Services | | Base Benchmark Commercial HMO |

Authorization:                                       Provider Qualifications:

| None | | Medicaid State Plan |

Amount Limit:                                        Duration Limit:

| None | | None |

Scope Limit:

| Medical care provided outside of the U.S. is not covered |

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

| Emergency room included. |

---

Benefit Provided:                                    Source:                          [ Remove ]

| Emergency Transportation: Ambulance/Air Ambulance | | Base Benchmark Commercial HMO |

Authorization:                                       Provider Qualifications:

| Other | | Medicaid State Plan |

Amount Limit:                                        Duration Limit:

| None | | None |

Scope Limit:

| None |

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

| Other medically necessary ambulance transport (ambulance, medi-van or similar medical ground, air or water transport to or from the hospital or both ways and transfer from a hospital to a lower level of care) is covered.

For other medically necessary transportation, authorization may be required in which the Managed Care Entities (MCEs) may require other details, such as general member information, to contact PCP for other types of transportation related services and a justification of services rendered for the medical needs of the member. |

[ Add ]

TN: 22-0009
Supersedes
TN: 15-0024
(Page 182 of Total)
Approved: 3/7/2023
Add. 179
Effective Date: 10/1/2022
Page 9 of 45



# Alternative Benefit Plan

☑ 3. Essential Health Benefit: Hospitalization                                    Collapse All ☐

Benefit Provided:

| General Inpatient Hospital Care |

Source:

| Base Benchmark Commercial HMO |

[ Remove ]

Authorization:

| Other |

Provider Qualifications:

| Medicaid State Plan |

Amount Limit:

| None |

Duration Limit:

| None |

Scope Limit:

Benefit does not include personal comfort items, including those services and supplies not directly related to care, such as guest meals, accommodations or personal hygiene products, and room and board when temporary leave permitted.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Services include semi-private room and board (private room provided when medically necessary); intensive care unit/coronary care unit; inpatient cardiac rehabilitation and rehabilitation therapy; general nursing care; use of operating room or delivery suite; surgical and anesthesia services and supplies; ordinary casts; splints and dressings; drugs and oxygen used in hospital; laboratory and x-ray examinations; electrocardiograms; special duty nursing (when requested by a physician and certified as medically necessary); and inpatient specialty pharmaceuticals.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, review of medical necessity, authorization by acting physician, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

| Inpatient Physician Services |

Source:

| Base Benchmark Commercial HMO |

[ Remove ]

Authorization:

| Other |

Provider Qualifications:

| Medicaid State Plan |

Amount Limit:

| None |

Duration Limit:

| None |

Scope Limit:

| None |

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefit includes PCP, specialty and may require a referral for physician services in the hospital.
For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

TN: 22-0009
(Page 185 of Total)
Supersedes
TN: 15-0024                          Approval Date: 3/13/2023          Effective Date: 10/1/2022

Add 180

Page 10 of 45



# Alternative Benefit Plan

Benefit Provided:

Inpatient Surgical Services

Source:

Base Benchmark Commercial HMO

Remove

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

Benefit does not include bariatric surgery, surgical and nonsurgical treatment of TMJ, personal comfort items, including those services and supplies not directly related to care, such as guest meals, accommodations or personal hygiene products,

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Scope Limit continued- and room and board when temporary leave permitted.

Surgical hospital services are covered when medically necessary. Services include semi-private room and board (private room provided when medically necessary); intensive care unit/coronary care unit; general nursing care; use of operating room or delivery suite; surgical and anesthesia services and supplies; ordinary casts; splints and dressings; drugs and oxygen used in hospital; laboratory and x-ray examinations; electrocardiograms; special duty nursing (when requested by a physician and certified as medically necessary); and inpatient specialty pharmaceuticals.

Surgical operations may include replacement of diseased tissue removed while a member.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

Non-cosmetic Reconstructive Surgery

Source:

Base Benchmark Commercial HMO

Remove

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

Services begin within 1 year of the accident

Duration Limit:

None

Scope Limit:

Benefit does not include personal comfort items, including those services and supplies not directly related to care, such as guest meals, accommodations or personal hygiene products, and room and board when temporary leave permitted.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Surgical hospital services are covered when medically necessary and approved by physician. Reconstructive procedures performed to restore or improve impaired physical function or defects resulting from an accident.

**Add.181**

TN: 22-0009
Supersedes
TN: 15-0024

Approval Date: 3/1/2023

Effective Date: 10/1/2022 Page 11 of 45



# Alternative Benefit Plan

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

**Benefit Provided:**
Mastectomy- Reconstructive Surgery

**Source:**
Base Benchmark Commercial HMO

Remove

**Authorization:**
Other

**Provider Qualifications:**
Medicaid State Plan

**Amount Limit:**
None

**Duration Limit:**
None

**Scope Limit:**
Benefit does not include personal comfort items, including those services and supplies not directly related to care, such as guest meals, accommodations or personal hygiene products, and room and board when temporary leave permitted.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Surgical hospital services are covered when medically necessary and approved by physician. Covered services include reconstruction of the breast upon which the mastectomy was performed; surgery and reconstruction of the other breast to produce a symmetrical appearance; and prostheses and physical complications at all stages of mastectomy, including lymphedemas.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

**Benefit Provided:**
Transplants

**Source:**
Base Benchmark Commercial HMO

Remove

**Authorization:**
Other

**Provider Qualifications:**
Medicaid State Plan

**Amount Limit:**
None

**Duration Limit:**
None

**Scope Limit:**
None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Human organ and tissue transplant services for both the recipient and the donor, when the recipient is a member. No coverage is provided for the donor or the recipient when the recipient is not a member. Specialty Care Physician (SCP) provides pre-transplant evaluation. Non-experimental, non-investigational organ and other transplants are covered. Donor's medical expenses covered if the person receiving the transplant is a member, and donor's expenses are not covered by another issuer.

TN: New
Supersedes
TN: 15-0024

**Add.182**

Approval Date: 3/1/2023

Effective Date: 10/1/2022

Page 12 of 45



# Alternative Benefit Plan

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

Congenital Abnormalities

Source:

Base Benchmark Commercial HMO

[ Remove ]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

Benefit does not include personal comfort items, including those services and supplies not directly related to care, such as guest meals, accommodations or personal hygiene products, and room and board when temporary leave permitted.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Surgical hospital services are covered when medically necessary and approved by physician.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

Anesthesia

Source:

Base Benchmark Commercial HMO

[ Remove ]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Coverage includes anesthesia services and supplies.
For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

TN: 22-0009
Supersedes
TN: 15-0024

(Page 186 of Total)

**Add.183**

Approval Date: 3/1/2023

Effective Date: 10/1/2022

Page 13 of 45






# Alternative Benefit Plan

Benefit Provided:

| Hospice Care |

Source:

| Base Benchmark Commercial HMO |

Remove

Authorization:

| Other |

Provider Qualifications:

| Medicaid State Plan |

Amount Limit:

| None |

Duration Limit:

| None |

Scope Limit:

| Room and board services are not covered when temporary leave permitted. |

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

This benefit may be provided in hospitals, skilled nursing facilities, and freestanding hospice centers. Covered services include semi-private room (private room provided when medically necessary). Hospice care provided if terminal illness, in accordance with a treatment plan before admission to the program. Treatment plan must provide statement from physician that life expectancy is 6 months or less. Concurrent care is provided to children (19 & 20 year olds).

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

| Medical Social Services |

Source:

| Base Benchmark Commercial HMO |

Remove

Authorization:

| None |

Provider Qualifications:

| Medicaid State Plan |

Amount Limit:

| None |

Duration Limit:

| None |

Scope Limit:

| None |

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Hospital services to assist member and family in understanding and coping with the emotional and social problems affecting health status.

Benefit Provided:

| Dialysis |

Source:

| Base Benchmark Commercial HMO |

Remove

Authorization:

| Other |

Provider Qualifications:

| Medicaid State Plan |

Amount Limit:

| None |

Duration Limit:

| None |

TN: 19-0002
Supersedes
TN: 15-0024

Approval Date: 3/1/2023

Effective Date: 10/1/2022

Page 14 of 45

**Add.184**



# Alternative Benefit Plan

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Inpatient dialysis services provided by a participating provider.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

| Benefit Provided: | Source: | Remove |
|---|---|---|
| Chemotherapy | Base Benchmark Commercial HMO | |

| Authorization: | Provider Qualifications: |
|---|---|
| Other | Medicaid State Plan |

| Amount Limit: | Duration Limit: |
|---|---|
| None | None |

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Includes coverage for inpatient services.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

| Benefit Provided: | Source: | Remove |
|---|---|---|
| Radiation Therapy | Base Benchmark Commercial HMO | |

| Authorization: | Provider Qualifications: |
|---|---|
| Other | Medicaid State Plan |

| Amount Limit: | Duration Limit: |
|---|---|
| None | None |

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Includes coverage for inpatient services.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as

TN: 23-0009
Supersedes
TN: 15-0024

**Add.185**

Approval Date: 3/1/2023

Effective Date: 10/1/2022



# Alternative Benefit Plan

general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Add

TN: 22-0009
Superseded
TN: 15-0024

(Page 189 of Total)

Approval Date: 3/18/23

Add. 186

Effective Date: 10/1/2022

Page 16 of 45

 **Alternative Benefit Plan**

---

☑ 4. Essential Health Benefit: Maternity and newborn care                    Collapse All ☐

Benefit Provided:                          Source:                                [ Remove ]
| Obstetric Care |                         | State Plan 1905(a) |

  Authorization:                          Provider Qualifications:
| Other |                                  | Medicaid State Plan |

  Amount Limit:                           Duration Limit:
| Limits equivalent to State Plan |        | None |

  Scope Limit:
| None |

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

| Coverage is provided from the State Plan under the physician benefit and includes various obstetrical services such as antepartum and postpartum visits, laboratory and x-ray (ultrasound) services and other services as medically necessary and appropriate. The benefit provides for antepartum services up to 14 visits for normal pregnancies. High-risk pregnancies may allow for additional visits. Postpartum services includes 2 visits within 60 days of delivery.<br><br>For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment. |

[ Add ]

 # Alternative Benefit Plan

■ 5. Essential Health Benefit: Mental health and substance use disorder services including behavioral health treatment

Collapse All ☐

☑ The state/territory assures that it does not apply any financial requirement or treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant financial requirement or treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification.

---

Benefit Provided:

Mnetal/Behavioral Health Inpatient

Source:

Base Benchmark Commercial HMO

[ Remove ]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

Benefit does not include hypnotherapy, behavioral modification, or milieu therapy when used to treat conditions that are not recognized as mental disorders; personal comfort items; and room and board when temporary leave available

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefits include evaluation and treatment in a psychiatric day facility and electroconvulsive therapy. Coverage may also include partial hospitalization depending on the type of services provided.
These services are not provided through institutions of mental disease (IMDs).

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

Benefit Provided:

Mental/Behavioral Health Outpatient

Source:

Base Benchmark Commercial HMO

[ Remove ]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

Coverage does not include self-help training or other related forms of non-medical self care; marriage counseling; hypnotherapy, behavioral modification, or milieu therapy when used to treat conditions that are not recognized as mental disorders.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Coverage applies to individual therapy and group therapy sessions. Benefit may also include partial hospitalization depending on the type of services provided.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as



# Alternative Benefit Plan

general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

**Benefit Provided:**

Substance Abuse Inpatient Treatment

**Source:**

Base Benchmark Commercial HMO

[Remove]

**Authorization:**

Other

**Provider Qualifications:**

Medicaid State Plan

**Amount Limit:**

up to 15 days in a calendar month

**Duration Limit:**

None

**Scope Limit:**

Members 21 through 64 years of age in facilities that qualify as institutions for mental disease. Members can be authorized for up to 15 days in a calendar month.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefit does not include services and supplies for the treatment of co-dependency or caffeine addiction; personal comfort items; and room and board when temporary leave permitted.

Benefit includes detoxification for alcohol or other drug addiction. Coverage may also include partial hospitalization depending on the type of services provided.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

**Benefit Provided:**

Substance Abuse Outpatient Treatment

**Source:**

Base Benchmark Commercial HMO

[Remove]

**Authorization:**

Other

**Provider Qualifications:**

Medicaid State Plan

**Amount Limit:**

None

**Duration Limit:**

None

**Scope Limit:**

Benefit does not include services and supplies unrelated to mental health for the treatment of codependency or caffeine addiction.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Coverage includes detoxification for alcohol or other drug addiction. Benefit may also include partial hospitalization depending on the type of services provided.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of

TN: 23-0009
Supersedes
TN: 15-0024

**Add.189**

Approval Date: 3/1/2023

Effective Date: 10/1/2022

Page 19 of 45



# Alternative Benefit Plan

treatment.

[ Add ]

TN: 22-0009
Supersedes
TN: 15-0024

Approval Date: __/__/2023     Effective Date: 10/1/2022

Add. 190

Page 20 of 45



# Alternative Benefit Plan

■ 6. Essential Health Benefit: Prescription drugs

☑ The state/territory assures that the ABP prescription drug benefit plan is the same as under the approved Medicaid State Plan for prescribed drugs.

Benefit Provided:

Coverage is at least the greater of one drug in each U.S. Pharmacopeia (USP) category and class or the same number of prescription drugs in each category and class as the base benchmark.

Prescription Drug Limits (Check all that apply.):

| Authorization: | Provider Qualifications: |
|---|---|
| Yes | State licensed |

☒ Limit on days supply
☒ Limit on number of prescriptions
☒ Limit on brand drugs
☒ Other coverage limits
☒ Preferred drug list

Coverage that exceeds the minimum requirements or other:

The prescription drug benefit will cover at least one drug in every category and class or the number of drugs covered in each category and class as the base benchmark, whichever is greater. The formulary must support the coverage and non-coverage requirements for legend drugs by Indiana Medicaid, found in 405 IAC 5-24-3. In addition, the exact drugs covered under the formulary may vary by the Managed Care Entities (MCEs). Prescription supply is limited to 90 days.

For authorization, Managed Care Entities may require prior authorization requirements, such as general member information, a justification of need for Rx related to the medical needs of the member and a planned course of treatment, if applicable, as related to the number Rx provided and duration of treatment. Prior authorization requirements for prescription drugs may vary by MCE, but will comply with Mental Health Parity requirements. MCEs will be required to have a process in place to allow drugs that are medically necessary, but not included on the formulary to be accessed by members.

TN: 22-0009
Supersedes
TN: 15-0024
(Page 194 of Total)                Approval Date: 3/1/2023                Effective Date: 10/1/2022
**Add.191**

Page 21 of 45



# Alternative Benefit Plan

■ **7. Essential Health Benefit: Rehabilitative and habilitative services and devices**                                        Collapse All ☐

☑ The state/territory assures that it is not imposing limits on habilitative services and devices that are more stringent than limits on rehabilitative services (45 CFR 156.115(a)(5)(ii)). Further, the state/territory understands that separate coverage limits must also be established for rehabilitative and habilitative services and devices. Combined rehabilitative and habilitative limits are allowed, if these limits can be exceeded based on medical necessity.

Benefit Provided:                                                        Source:                                        [ Remove ]

| Physical Therapy, Occupational Therapy, Speech The | | Secretary-Approved Other |

Authorization:                                                        Provider Qualifications:

| Other | | Medicaid State Plan |

Amount Limit:                                                        Duration Limit:

| 60 combined visits annually. | | None |

Scope Limit:

Rehabilitative and habilitative services are offered at parity and have distinct benefit limits. Coverage does not include nonsurgical treatment of TMJ.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Amount limit continued- As an outpatient benefit, coverage is limited to 60 combined visits annually for PT, OT, ST, cardiac and pulmonary rehabilitation.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment

Benefit Provided:                                                        Source:                                        [ Remove ]

| Durable Medical Equipment (DME) | | Secretary-Approved Other |

Authorization:                                                        Provider Qualifications:

| Other | | Medicaid State Plan |

Amount Limit:                                                        Duration Limit:

| 15 mo rental cap;1 every 5 yr per member- replac | | None |

Scope Limit:

DME does not include corrective shoes, arch supports, dental prostheses, deluxe equipment, common first aid supplies and non-durable supplies. Other non-covered services include but not limited to equipment not suitable for home use.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefit includes but not limited to wheel chairs, crutches, respirators, traction equipment, hospital beds, monitoring devices, oxygen-breathing apparatus and insulin pumps. Training for use of DME is also covered and applicable rental fees. Covered services are only for the basic type of DME necessary to provide for medical needs and does not include non-durable supplies that are not an integral part of the DME set-up.



# Alternative Benefit Plan

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

| Benefit Provided: | Source: | |
|---|---|---|
| Prosthetics | Base Benchmark Commercial HMO | Remove |

| Authorization: | Provider Qualifications: |
|---|---|
| Other | Medicaid State Plan |

| Amount Limit: | Duration Limit: |
|---|---|
| None | None |

Scope Limit:

Benefit does not include foot orthotics, devices solely for comfort or convenience and devices from a nonaccredited provider.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

A prosthetic device means an artificial arm or leg or any portion thereof. Orthotic devices are also covered under this benefit as custom fabricated braces or supports designed as a component of an artificial arm or leg. Covered services include the purchase, replacement or adjustment of artificial limbs when required due to a change in your physical condition or body size due to normal growth.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment

| Benefit Provided: | Source: | |
|---|---|---|
| Corrective Appliances | Base Benchmark Commercial HMO | Remove |

| Authorization: | Provider Qualifications: |
|---|---|
| Other | Medicaid State Plan |

| Amount Limit: | Duration Limit: |
|---|---|
| None | None |

Scope Limit:

Benefit does not include but not limited to artificial or prosthetic limbs, cochlear implants, dental appliances, dentures, foot orthotics, corrective shoes, arch supports for plantar fasciitis, flat feet, fallen arches and corns.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefit must be medically necessary and used to restore function or to replace body parts. Benefit includes but not limited to hemodialysis equipment, breast prostheses, back braces, artificial eyes, one pair eyeglasses due to cataract surgery, ostomy supplies and prosthetics (all prosthetics except prosthetic limbs). Coverage not intended for non-durable appliances.

TN: 22-0008
Supersedes
TN: 15-0024

**Add.193**

Approval Date: 3/1/2023

Effective Date: 10/1/2022

Page 23 of 45



# Alternative Benefit Plan

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

| Benefit Provided: | Source: | Remove |
|---|---|---|
| Cardiac Rehabilitation | Secretary-Approved Other | |

| Authorization: | Provider Qualifications: |
|---|---|
| Other | Medicaid State Plan |

| Amount Limit: | Duration Limit: |
|---|---|
| 60 combined visits annually. | None |

Scope Limit:

Rehabilitative services are offered at parity and share the same, comparable benefit limits.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Amount limit continued- As an outpatient benefit, coverage is limited to 60 combined visits annually for PT, OT, ST and pulmonary rehabilitation.

Benefit includes services for the improvement of cardiac disease or dysfunction.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

| Benefit Provided: | Source: | Remove |
|---|---|---|
| Medical Supplies | Base Benchmark Commercial HMO | |

| Authorization: | Provider Qualifications: |
|---|---|
| None | Medicaid State Plan |

| Amount Limit: | Duration Limit: |
|---|---|
| None | None |

Scope Limit:

Benefit does not include non-durable supplies and/or convenience items.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefit includes casts, dressings, splints and other devices used for reduction of fractures and dislocations

| Benefit Provided: | Source: | Remove |
|---|---|---|
| Pulmonary Rehabilitation | Secretary-Approved Other | |

TN: 22-0009
Supersedes
TN: 15-0024

**Add.194**

Approval Date: 3/1/2023

Effective Date: 10/1/2022



# Alternative Benefit Plan

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

60 combined visits annually

Duration Limit:

None

Scope Limit:

Benefit does not include formalized and pre-designed rehabilitation programs for pulmonary conditions. Rehabilitative services are offered at parity and share the same, comparable benefit limits.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Amount limit continued- As an outpatient benefit, coverage is limited to 60 combined visits annually for PT, OT, ST and cardiac rehabilitation.

Benefit consists of services that are for the improvement of pulmonary disease or dysfunction that has a poor response to treatment. Examples of poor response include but are not limited to patients with respiratory failure, frequent emergency room visits, progressive dyspnea, hypoxemia or hypercapnia. For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

Skilled Nursing Facility (SNF)

Source:

Base Benchmark Commercial HMO

[Remove]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

100 days per benefit period.

Duration Limit:

None

Scope Limit:

A SNF does not include any institution or portion of any institution that is primarily for rest, the aged, nonskilled care, or care of mental diseases or substance abuse. Room and board services are not covered when temporary leave permitted.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Covered services include semi-private room (private room provided when medically necessary), drugs, specialty pharmaceuticals, medical social services, short term physical, speech, occupational therapies (subject to limits) and other services generally provided.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

Autism Spectrum Disorder Services

Source:

Secretary-Approved Other

[Remove]

Supersedes
TN: 15-0024

**Add.195**

Approval Date: 3/1/2023

Effective Date: 10/1/2022



# Alternative Benefit Plan

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

60 combined visits annually.

Duration Limit:

None

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Amount limit continued- As an outpatient benefit, coverage is limited to 60 combined visits annually for PT, OT, ST, cardiac and pulmonary rehabilitation.

Benefit, formerly known as Pervasive Development Disorder (PDD), is a state mandate that must be covered as outlined in the Indiana insurance code.

Benefit provides coverage for Asperger's syndrome and autism. Coverage for services are provided as prescribed by the treating physician in accordance with the treatment plan.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

Benefit Provided:

Hearing Aids

Source:

State Plan 1905(a)

[ Remove ]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

1 per member every 5 years.

Duration Limit:

None

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Medically frail populations will receive State Plan benefits.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

Benefit Provided:

Home Health:Medical Supplies, Equipment and Applia

Source:

Base Benchmark Commercial HMO

[ Remove ]

---

TN: 22-0009
Supersedes
TN: 15-0024

(Page 199 of Total)

**Add.196**

Approval Date: 3/1/2023

Effective Date: 10/1/2022



# Alternative Benefit Plan

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

Benefit does not include non-durable supplies and/or convenience items.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefits include medical supplies in connection with home health care.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment

---

Benefit Provided:

Inpatient Cardiac Rehabilitation

Source:

Base Benchmark Commercial HMO

Remove

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

90 days annual maximum.

Duration Limit:

None

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefit includes services for the improvement of cardiac disease or dysfunction.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

Benefit Provided:

Inpatient Rehabilitation Therapy

Source:

Base Benchmark Commercial HMO

Remove

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

90 days annual maximum

Duration Limit:

None

TN: 22-0009
(Page 200 of Total)
TN: 15-0024

Add 197

Approval Date: 5/1/2023

Effective Date: 10/1/2022

Page 27 of 45



# Alternative Benefit Plan

Scope Limit:

Rehabilitative and habilitative services are offered at parity and share the same, comparable benefit limits.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Coverage includes physical, occupational, speech and pulmonary therapy of acute illness or injury to the extent that significant potential exists for progress toward a previous level of functioning.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Add



# Alternative Benefit Plan

☑ 8. Essential Health Benefit: Laboratory services                    Collapse All ☐

Benefit Provided:                          Source:                              [ Remove ]
| Lab Tests |                              | Base Benchmark Commercial HMO |

  Authorization:                          Provider Qualifications:
  | Other |                              | Medicaid State Plan |

  Amount Limit:                           Duration Limit:
  | None |                               | None |

  Scope Limit:
  | Coverage does not include lab expenses related to physical exams when provided for employment, school, sports' programs, travel, immigration, administrative purposes or insurance purposes. |

  Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

  | Benefit provided as outpatient services when medically necessary.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment. |

Benefit Provided:                          Source:                              [ Remove ]
| X-Rays |                                | Base Benchmark Commercial HMO |

  Authorization:                          Provider Qualifications:
  | Other |                              | Medicaid State Plan |

  Amount Limit:                           Duration Limit:
  | None |                               | None |

  Scope Limit:
  | Coverage does not include x-ray expenses related to physical exams when provided for employment, school, sports' programs, travel, immigration, administrative purposes or insurance purposes. |

  Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

  | Benefit provided as outpatient services when medically necessary.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment. |

Benefit Provided:                          Source:                              [ Remove ]
| Imaging- MRI, CT, and PET |             | Base Benchmark Commercial HMO |

  Authorization:                          Provider Qualifications:
  | Other |                              | Medicaid State Plan |

TN: 23-0009
Supersedes
TN: 15-0024

**Add.199**

Approval Date: 3/1/2023                              Effective Date: 10/1/2022
                                                     Page 29 of 45



# Alternative Benefit Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefit provided as outpatient services when medically necessary. Coverage also includes MRA and SPECT scan.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

Pathology

Source:

Base Benchmark Commercial HMO

[ Remove ]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefit provided as outpatient services when medically necessary.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

Radiology

Source:

Base Benchmark Commercial HMO

[ Remove ]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

TN: 23-0009
Supersedes
TN: 15-0024

**Add.200**
Approval Date: 3/1/2023

Effective Date: 10/1/2022

Page 30 of 45



# Alternative Benefit Plan

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefit provided as outpatient services when medically necessary.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

Benefit Provided:

EKG and EEG

Source:

Base Benchmark Commercial HMO

[Remove]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefit provided as outpatient services when medically necessary.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

[Add]



# Alternative Benefit Plan

☑ 9. Essential Health Benefit: Preventive and wellness services and chronic disease management          Collapse All ☐

The state/territory must provide, at a minimum, a broad range of preventive services including: "A" and "B" services recommended by the United States Preventive Services Task Force; Advisory Committee for Immunization Practices (ACIP) recommended vaccines; preventive care and screening for infants, children and adults recommended by HRSA's Bright Futures program/project; and additional preventive services for women recommended by the Institute of Medicine (IOM).

Benefit Provided:                                      Source:                                      [Remove]
Preventive Care Services                               Base Benchmark Commercial HMO

Authorization:                                         Provider Qualifications:
None                                                   Medicaid State Plan

Amount Limit:                                          Duration Limit:
None                                                   None

Scope Limit:
None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Physician services for wellness and preventive services include but are not limited to routine physical exam, routine total blood cholesterol screening, routine gynecological services and routine immunizations. Includes (1) all preventive items or services that have a rating of 'A' or 'B' by the United States Preventive Task Force (USPSTF); (2) Immunizations recommended for the individuals age and health status by the Advisory Committee on Immunization Practices of the Centers for Disease Control and Prevention (CDC); (3) for infants, children, adolescents and adults, preventive care and screenings included in the Health Resources and Services Administration's (HRSA) Bright Futures comprehensive guidelines; and (4) preventive screenings for women as recommended by the Institute of Medicine (IOM).

Benefit Provided:                                      Source:                                      [Remove]
Diabetes Self Management Training                      Base Benchmark Commercial HMO

Authorization:                                         Provider Qualifications:
Other                                                  Medicaid State Plan

Amount Limit:                                          Duration Limit:
None                                                   None

Scope Limit:
None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Covered services are limited to physician authorized visits after receiving a diagnosis of diabetes; after receiving a diagnosis that represents a significant change in symptoms or condition and there is a medically necessary change in self-management; and for re-education or refresher training.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

TN: 23-0009
Supersedes
TN: 15-0024                    Approval Date: 3/1/2023                    Effective Date: 10/1/2022

**Add.202**

 **Alternative Benefit Plan**

---

Benefit Provided:

| Health Education |

Source:

| Base Benchmark Commercial HMO |

[Remove]

Authorization:

| Other |

Provider Qualifications:

| Medicaid State Plan |

Amount Limit:

| 3 visits |

Duration Limit:

| None |

Scope Limit:

| Classes in nutrition or smoking cessation will be approved up to 3 visits when referred by your physician |

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

| Benefit provided by the PCP as part of preventive health care and other health education classes approved by the insurer.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment. |

---

Benefit Provided:

| Routine Prostate Specific Antigen (PSA) Test |

Source:

| Base Benchmark Commercial HMO |

[Remove]

Authorization:

| None |

Provider Qualifications:

| Medicaid State Plan |

Amount Limit:

| None |

Duration Limit:

| None |

Scope Limit:

| One test annually for an individual who is at least 50 years old or less than 50 if at high risk for prostate cancer. |

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

| None |

[Add]

TN: 22-0009

TN: 15-0024

**Add 203**

Approval Date: 3/7/2023

Effective Date: 10/1/2022

 **Alternative Benefit Plan**

■ 10. Essential Health Benefit: Pediatric services including oral and vision care          Collapse All ☐

Benefit Provided:
Medicaid State Plan EPSDT Benefits

Source:
State Plan 1905(a)

Remove

Authorization:
None

Provider Qualifications:
Medicaid State Plan

Amount Limit:
None

Duration Limit:
None

Scope Limit:
EPSDT is required in the ABP for 19 and 20 year olds.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Services provided under EPSDT may include preventive and diagnostic services that are medically necessary and may need continued treatment.

In accordance with CMS regulation, individuals covered under EPSDT are not subject to the IMD exclusion

Add

TN: 22-0009
Supersedes
TN: 15-0024
(Page 2 of Total)
Approval Date: 2/9/2023
**Add. 204**
Effective Date: 10/1/2022
Page 34 of 45



# Alternative Benefit Plan

| | |
|---|---|
| ☐ 11. Other Covered Benefits from Base Benchmark | Collapse All ☒ |

TN: 22-0009
Supersedes
TN: 18-0024

(Page 208 of Total)

Approval Date: 05/2023

**Add.205**

Effective Date: 10/1/2022

Page 35 of 45

 **Alternative Benefit Plan**

---

☒ 12. Base Benchmark Benefits Not Covered due to Substitution or Duplication            Collapse All ☐

Base Benchmark Benefit that was Substituted:          Source:                [ Remove ]

| Infertility Diagnoses: substitution |
| Base Benchmark |

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

Infertility Diagnoses benefit offered in the base benchmark was removed and replaced in EHB 1 by substitution with part of the actuarial value of Male Sterilization procedures which are not covered on the base benchmark. Coverage for voluntary Male Sterilization procedures comes from the coverage provided on the State Plan.

---

Base Benchmark Benefit that was Substituted:          Source:                [ Remove ]

| Routine Foot Care: substitution |
| Base Benchmark |

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

The benefit is covered. A more restrictive limit of 6 visits per year was added. In EHB 1, this has been substituted with the remaining actuarial value from the male sterilization benefit. There is no limit on Routine Foot Care in the base benchmark.

---

Base Benchmark Benefit that was Substituted:          Source:                [ Remove ]

| Home Health Services: substitution |
| Base Benchmark |

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

The benefit is covered. Within the benefit, training of family members to provide home health services is a non-covered benefit. In EHB 1, this sub-benefit was substituted with the actuarial value remaining from the male sterilization benefit.

---

Base Benchmark Benefit that was Substituted:          Source:                [ Remove ]

| Urgent Care-Walkins: substitution |
| Base Benchmark |

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

The benefit is covered. Within the benefit, physician home visits is a non-covered benefit. In EHB 1, this sub-benefit was substituted with the actuarial value remaining from the male sterilization benefit.

---

Base Benchmark Benefit that was Substituted:          Source:                [ Remove ]

| Maternity Services: duplication |
| Base Benchmark |

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

This benefit was duplicated with the Medicaid State Plan Obstetric benefit in EHB 4.

---

TN: 22-0009
Supersedes
TN: 15-0024
(Page 209 of Total)
**Add. 206**
Approval Date: 3/29/23
Effective Date: 10/1/2022
Page 36 of 45



# Alternative Benefit Plan

Base Benchmark Benefit that was Substituted:

Maternity - Delivery: duplication

Source:

Base Benchmark

Remove

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

This benefit was duplicated with the Medicaid State Plan Obstetric benefit in EHB 4.

---

Base Benchmark Benefit that was Substituted:

Durable Medical Equipment (DME): substitution

Source:

Base Benchmark

Remove

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

The benefit is covered. The limits for a 15 month rental cap and 5 year replacement for equipment were added. In EHB 7, this has been substituted with the actuarial value remaining from adding hearing aids as a benefit from the State Plan. There is no limit on Durable Medical Equipment in the base benchmark.

---

Base Benchmark Benefit that was Substituted:

PT, OT, ST: substitution

Source:

Base Benchmark

Remove

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

The benefit is covered. Within the benefit, the service limits are covered as an annual limit combined for therapies. In EHB 7, the service limits for limits per condition have been substituted with the actuarial value remaining from adding hearing aids as a benefit from the State Plan. The base benchmark allows for 60 combined visits per distinct condition or episode.

---

Base Benchmark Benefit that was Substituted:

Cardiac Rehabilitation: substitution

Source:

Base Benchmark

Remove

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

The benefit is covered. Within the benefit, the service limits are covered as an annual limit combined for therapies. In EHB 7, the service limits for limits per condition have been substituted with the actuarial value remaining from adding hearing aids as a benefit from the State Plan. The base benchmark allows for 60 combined visits per distinct condition or episode.

---

Base Benchmark Benefit that was Substituted:

Pulmonary Rehabilitation: substitution

Source:

Base Benchmark

Remove

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

The benefit is covered. Within the benefit, the service limits are covered as an annual limit combined for therapies. In EHB 7, the service limits for limits per condition have been substituted with hearing aids. In addition, formalized and pre-designed rehabilitation programs for pulmonary conditions have also been substituted with hearing aids. Both substitutions were completed with the actuarial value remaining from adding hearing aids as a benefit from the State Plan. The base benchmark allows for 60 combined visits per distinct condition or episode.



# Alternative Benefit Plan

Base Benchmark Benefit that was Substituted:

Autism Spectrum Disorder Services: substitution

Source:

Base Benchmark

Remove

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

The benefit is covered. Within the benefit, the service limits are covered as an annual limit combined for therapies. In EHB 7, the service limits for limits per condition have been substituted with the actuarial value remaining from adding hearing aids as a benefit from the State Plan. The base benchmark allows for 60 combined visits per distinct condition or episode.

Base Benchmark Benefit that was Substituted:

Applied Behavior Analysis: substitution

Source:

Base Benchmark

Remove

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

In EHB 7, ABA has been substituted with the actuarial value remaining from adding hearing aids as a benefit from the State Plan.

Base Benchmark Benefit that was Substituted:

Non-Surgical Treatment Option Morbid Obesity: dupl

Source:

Base Benchmark

Remove

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

In EHB 9, the benefit is covered under preventive and wellness services. The ACA preventive services provides coverage above the benefit limits.

Add

TN: 22-0009
Supersedes
(Page 171 of Total)
TN: 15-0024

Approval Date: 3/9/2023    Add: 208

Effective Date: 10/1/2022

Page 38 of 45



# Alternative Benefit Plan

---

☒  13. Other Base Benchmark Benefits Not Covered                                    Collapse All ☐

Base Benchmark Benefit not Included in the Alternative Benefit Plan:     Source:                    [ Remove ]

Adult Vision                                                            Base Benchmark

  Explain why the state/territory chose not to include this benefit:

  Adult vision is covered in the base benchmark plan, but it is an excepted benefit and therefore not an
  Essential Health Benefit.

Base Benchmark Benefit not Included in the Alternative Benefit Plan:     Source:                    [ Remove ]

Newborn Child Coverage                                                 Base Benchmark

  Explain why the state/territory chose not to include this benefit:

  Benefit is excluded since the ABP is for ages 19-64. Newborns born to members will be covered through
  Medicaid for children. The newborn coverage includes the initial newborn examinations.

Base Benchmark Benefit not Included in the Alternative Benefit Plan:     Source:                    [ Remove ]

Emergency Services Outside the U.S.                                    Base Benchmark

  Explain why the state/territory chose not to include this benefit:

  Emergency care provided outside the U.S. is covered in the base benchmark plan. Non-emergency services
  are not covered. To conform with Medicaid standards, the benefit will not be covered in the ABP.

Base Benchmark Benefit not Included in the Alternative Benefit Plan:     Source:                    [ Remove ]

Lodging and Transportation for Transplants (Donor)                     Base Benchmark

  Explain why the state/territory chose not to include this benefit:

  Transportation and lodging services for the donor are covered under the base benchmark plan subject to a
  dollar limit, these services are not considered an EHB and are considered a non-covered benefit for the
  ABP.

                                                                                         [ Add ]

---

TN: 22-0009
Supersedes
TN: 15-0024

(Page 39 of Total)

Add. 209
Approval Date: 2/3/2023

Effective Date: 10/1/2022

Page 39 of 45

 **Alternative Benefit Plan**

☒ 14. Other 1937 Covered Benefits that are not Essential Health Benefits          Collapse All ☐

Other 1937 Benefit Provided:                    Source:                                   [ Remove ]
| Chiropractic Care - Pregnancy Benefit | | Section 1937 Coverage Option Benchmark Benefit Package |

Authorization:                                  Provider Qualifications:
| Other | | Medicaid State Plan |

Amount Limit:                                   Duration Limit:
| Limits equivalent to State Plan | | None |

Scope Limit:
| None |

Other:
Benefit is only offered to women who become pregnant while enrolled in HIP and include State Plan equivalent benefits which are more generous than the benefits offered in the base benchmark plan. Coverage provided is subject to program restrictions.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Other 1937 Benefit Provided:                    Source:                                   [ Remove ]
| Non-emergency Transportation - Pregnancy Benefit | | Section 1937 Coverage Option Benchmark Benefit Package |

Authorization:                                  Provider Qualifications:
| Other | | Medicaid State Plan |

Amount Limit:                                   Duration Limit:
| None | | None |

Scope Limit:
| None |

Other:
Benefit is only offered to women who become pregnant while enrolled in HIP and include State Plan equivalent benefits which are more generous than the benefits offered in the base benchmark plan. Coverage provided is subject to program restrictions.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment

Other 1937 Benefit Provided:                    Source:                                   [ Remove ]
| Medicaid Rehabilitation Option (MRO)- Pregnancy Be | | Section 1937 Coverage Option Benchmark Benefit Package |

TN: 23-0008
Supersedes
TN: 15-0024

**Add.210**

Approval Date: 3/1/2023

Effective Date: 10/1/2022



# Alternative Benefit Plan

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other:

Benefit is only offered to women who become pregnant while enrolled in HIP and include State Plan equivalent benefits which are more generous than the benefits offered in the base benchmark plan. MRO services are designed to assist in the rehabilitation of the consumer's optimum functional ability in daily living activities.

Other 1937 Benefit Provided:

Dental Services - Pregnancy Benefit

Source:

Section 1937 Coverage Option Benchmark Benefit Package

[ Remove ]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

Limits equivalent to State Plan

Duration Limit:

None

Scope Limit:

None

Other:

Benefit is only offered to women who become pregnant while enrolled in HIP and include State Plan equivalent benefits which are more generous than the benefits offered in the base benchmark plan. The dental benefits include State Plan equivalent benefits.

For authorization, the dental insurer may require prior authorization requirements, such as general member information and a justification for the type of dental services rendered based on the medical needs of the member

Other 1937 Benefit Provided:

TMJ - Pregnancy Benefit

Source:

Section 1937 Coverage Option Benchmark Benefit Package

[ Remove ]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

TN: 23-0009
Supersedes
TN: 15-0024

**Add.211**

Approval Date: 3/1/2023

Effective Date: 10/1/2022

Page 41 of 45



# Alternative Benefit Plan

Other:

Benefit is only offered to women who become pregnant while enrolled in HIP and include State Plan equivalent benefits which are more generous than the benefits offered in the base benchmark plan. Coverage includes treatment of temporomandibular joint (TMJ) disorder.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, documentation of non-surgical treatment and duration prior to surgery and a justification of services rendered for the medical needs and circumstances of the member.

| Other 1937 Benefit Provided: | Source: | Remove |
|---|---|---|
| Adult Vision - Pregnancy Benefit | Section 1937 Coverage Option Benchmark Benefit Package | |

| Authorization: | Provider Qualifications: |
|---|---|
| Other | Medicaid State Plan |

| Amount Limit: | Duration Limit: |
|---|---|
| Limits equivalent to the State Plan | None |

Scope Limit:

None

Other:

Benefit is only offered to women who become pregnant while enrolled in HIP and include State Plan equivalent benefits which are more generous than the benefits offered in the base benchmark plan. The benefits include State Plan equivalent benefits.

For authorization, the vision insurer may require prior authorization requirements, such as general member information and a justification for the type of vision services rendered based on the medical needs of the member.

| Other 1937 Benefit Provided: | Source: | Remove |
|---|---|---|
| Health Education - Smoking Cess -Pregnancy Benefit | Section 1937 Coverage Option Benchmark Benefit Package | |

| Authorization: | Provider Qualifications: |
|---|---|
| Other | Medicaid State Plan |

| Amount Limit: | Duration Limit: |
|---|---|
| 12 week course | None |

Scope Limit:

None

Other:

Benefit is only offered to women who become pregnant while enrolled in HIP and include State Plan equivalent benefits which are more generous than the benefits offered in the base benchmark plan. The benefit includes up to 12 weeks in a smoking cessation course providing treatment and counseling.
For authorization, the Managed Care Entity (MCE) may require prior authorization requirements, such as general member information and a justification for the type of services rendered based on the medical needs of the member.

TN: 21-0009
Supersedes
TN: 15-0024

**Add.212**



# Alternative Benefit Plan

---

**Other 1937 Benefit Provided:**

Osteopathic Manipulative Treatment (OMT)

**Source:**

Section 1937 Coverage Option Benchmark Benefit Package

[Remove]

**Authorization:**

Other

**Provider Qualifications:**

Medicaid State Plan

**Amount Limit:**

None

**Duration Limit:**

None

**Scope Limit:**

None

**Other:**

State Plan benefit.
For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

**Other 1937 Benefit Provided:**

Residential Treatment

**Source:**

Section 1937 Coverage Option Benchmark Benefit Package

[Remove]

**Authorization:**

Other

**Provider Qualifications:**

Medicaid State Plan

**Amount Limit:**



**Duration Limit:**



**Scope Limit:**

Statewide average length of stay of 30 calendar days, based on medical necessity.

**Other:**

Services provided to individuals in IMDs with an SUD diagnosis when determined medically necessary by the MCO utilization review staff and in accordance with an individualized service plan.

Room and board costs are not considered allowable costs for residential treatment service providers unless they qualify as inpatient facilities under section 1905(a).

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

**Other 1937 Benefit Provided:**

Qualifying Clinical Trials

**Source:**

Section 1937 Coverage Option Benchmark Benefit Package

[Remove]

**Authorization:**

Other

**Provider Qualifications:**

Medicaid State Plan

**Add.213**

TN: 22-0009
Supersedes
TN: 15-0024                                   Approval Date: 3/1/2023                    Effective Date: 10/1/2022 Page 43 of 45



# Alternative Benefit Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other:

Confirming coverage of routine patient costs in qualifying clinical trials as required under Section 1905(a) (30) and 1905(gg) of the Social Security Act. Coverage is provided as defined in the State Plan  Attachment 3.1-A  under item 30.

Add



# Alternative Benefit Plan

☐ 15. Additional Covered Benefits (This category of benefits is not applicable to the adult group under section 1902(a)(10)(A)(i)(VIII) of the Act.)

Collapse All ☐

## PRA Disclosure Statement

Centers for Medicare & Medicaid Services (CMS) collects this mandatory information in accordance with (42 U.S.C. 1396a) for the purpose of standardizing data. The information will be used to monitor and analyze performance metrics related to the Medicaid and Children's Health Insurance Program in efforts to boost program integrity efforts, improve performance and accountability across the programs. Under the Privacy Act of 1974 any personally identifying information obtained will be kept private to the extent of the law. According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-1188. The time required to complete this information collection is estimated to average 5 hours per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection. If you have comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: CMS, 7500 Security Boulevard, Attn: PRA Reports Clearance Officer, Mail Stop C4-26-05, Baltimore, Maryland 21244-1850.

V.20190808

TN: 22-0009
Supersedes
(Page 8 of 8 Total)
TN: 15-0024

Add 215
Approval Date: 3/1/2023

Effective Date: 10/1/2022

Page 45 of 45

# CMS    **Alternative Benefit Plan**

| | | |
|---|---|---|
| State Name: Indiana | Attachment 3.1-L- | OMB Control Number: 0938-1148 |
| Transmittal Number: IN - 15 - 0024 | | OMB Expiration date: 10/31/2014 |

## Benefits Assurances                                                                                    ABP7

### EPSDT Assurances

If the target population includes persons under 21, please complete the following assurances regarding EPSDT. Otherwise, skip to the Prescription Drug Coverage Assurances below.

The alternative benefit plan includes beneficiaries under 21 years of age.    [Yes]

☑ The state/territory assures that the notice to an individual includes a description of the method for ensuring access to EPSDT services (42 CFR 440.345).

☑ The state/territory assures EPSDT services will be provided to individuals under 21 years of age who are covered under the state/territory plan under section 1902(a)(10)(A) of the Act.

Indicate whether EPSDT services will be provided only through an Alternative Benefit Plan or whether the state/territory will provide additional benefits to ensure EPSDT services:

⦿ Through an Alternative Benefit Plan.

○ Through an Alternative Benefit Plan with additional benefits to ensure EPSDT services as defined in 1905(r).

Other Information regarding how ESPDT benefits will be provided to participants under 21 years of age (optional):

### Prescription Drug Coverage Assurances

☑ The state/territory assures that it meets the minimum requirements for prescription drug coverage in section 1937 of the Act and implementing regulations at 42 CFR 440.347. Coverage is at least the greater of one drug in each United States Pharmacopeia (USP) category and class or the same number of prescription drugs in each category and class as the base benchmark.

☑ The state/territory assures that procedures are in place to allow a beneficiary to request and gain access to clinically appropriate prescription drugs when not covered.

☑ The state/territory assures that when it pays for outpatient prescription drugs covered under an Alternative Benefit Plan, it meets the requirements of section 1927 of the Act and implementing regulations at 42 CFR 440.345, except for those requirements that are directly contrary to amount, duration and scope of coverage permitted under section 1937 of the Act.

☑ The state/territory assures that when conducting prior authorization of prescription drugs under an Alternative Benefit Plan, it complies with prior authorization program requirements in section 1927(d)(5) of the Act.

### Other Benefit Assurances

☑ The state/territory assures that substituted benefits are actuarially equivalent to the benefits they replaced from the base benchmark plan, and that the state/territory has actuarial certification for substituted benefits available for CMS inspection if requested by CMS.

☑ The state/territory assures that individuals will have access to services in Rural Health Clinics (RHC) and Federally Qualified Health Centers (FQHC) as defined in subparagraphs (B) and (C) of section 1905(a)(2) of the Social Security Act.

| | | |
|---|---|---|
| TN#: 15-0024 | ABP 7 | Approval Date:10/29/15 |
| Indiana | | Effective Date: October 1, 2015 |
| | | Page 1 of 2 |

 **Alternative Benefit Plan**

☑ The state/territory assures that payment for RHC and FQHC services is made in accordance with the requirements of section 1902(bb) of the Social Security Act.

☑ The state/territory assures that it will comply with the requirement of section 1937(b)(5) of the Act by providing, effective January 1, 2014, to all Alternative Benefit Plan participants at least Essential Health Benefits as described in section 1302(b) of the Patient Protection and Affordable Care Act.

☑ The state/territory assures that it will comply with the mental health and substance use disorder parity requirements of section 1937(b)(6) of the Act by ensuring that the financial requirements and treatment limitations applicable to mental health or substance use disorder benefits comply with the requirements of section 2705(a) of the Public Health Service Act in the same manner as such requirements apply to a group health plan.

☑ The state/territory assures that it will comply with section 1937(b)(7) of the Act by ensuring that benefits provided to Alternative Benefit Plan participants include, for any individual described in section 1905(a)(4)(C), medical assistance for family planning services and supplies in accordance with such section.

☐ The state/territory assures transportation (emergency and non-emergency) for individuals enrolled in an Alternative Benefit Plan in accordance with 42 CFR 431.53.

☑ The state/territory assures, in accordance with 45 CFR 156.115(a)(4) and 45 CFR 147.130, that it will provide as Essential Health Benefits a broad range of preventive services including: "A" and "B" services recommended by the United States Preventive Services Task Force; Advisory Committee for Immunization Practices (ACIP) recommended vaccines; preventive care and screening for infants, children and adults recommended by HRSA's Bright Futures program/project; and additional preventive services for women recommended by the Institute of Medicine (IOM).

## PRA Disclosure Statement

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-1148. The time required to complete this information collection is estimated to average 5 hours per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection. If you have comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: CMS, 7500 Security Boulevard, Attn: PRA Reports Clearance Officer, Mail Stop C4-26-05, Baltimore, Maryland 21244-1850.

V.20140415



# Alternative Benefit Plan

State Name: Indiana      Attachment 3.1-L-☐   OMB Control Number: 0938-1148

Transmittal Number: IN - 15 - 0002          OMB Expiration date: 10/31/2014

| Service Delivery Systems | ABP8 |
|---|---|

Provide detail on the type of delivery system(s) the state/territory will use for the Alternative Benefit Plan's benchmark benefit package or benchmark-equivalent benefit package, including any variation by the participants' geographic area.

Type of service delivery system(s) the state/territory will use for this Alternative Benefit Plan(s).

Select one or more service delivery systems:

☒ Managed care.

 ☒ Managed Care Organizations (MCO).

 ☐ Prepaid Inpatient Health Plans (PIHP).

 ☐ Prepaid Ambulatory Health Plans (PAHP).

 ☐ Primary Care Case Management (PCCM).

☒ Fee-for-service.

☐ Other service delivery system.

## Managed Care Options

**Managed Care Assurance**

☑ The state/territory certifies that it will comply with all applicable Medicaid laws and regulations, including but not limited to sections 1903(m), 1905(t), and 1932 of the Act and 42 CFR Part 438, in providing managed care services through this Alternative Benefit Plan. This includes the requirement for CMS approval of contracts and rates pursuant to 42 CFR 438.6.

**Managed Care Implementation**

Please describe the implementation plan for the Alternative Benefit Plan under managed care including member, stakeholder, and provider outreach efforts.

> HIP 2.0 is being implemented as a replacement of the original HIP program. HIP has been offering benefits through a managed care delivery system since 2008, and HIP 2.0 will build upon the established HIP structure. During implementation, HIP 2.0 MCEs will be the same MCEs that currently offer HIP benefits. The state is engaging with these current HIP MCEs to assure that current HIP members are smoothly transitioned to HIP 2.0.

**MCO: Managed Care Organization**

The managed care delivery system is the same as an already approved managed care program.    | Yes |

 The managed care program is operating under (select one):

 ◯ Section 1915(a) voluntary managed care program.

 ◯ Section 1915(b) managed care waiver.

 ⦿ Section 1932(a) mandatory managed care state plan amendment.

 ◯ Section 1115 demonstration.

 ◯ Section 1937 Alternative (Benchmark) Benefit Plan state plan amendment.



# Alternative Benefit Plan

Identify the date the managed care program was approved by CMS: | Dec., 14, 2007 |

Describe program below:

The new HIP program was developed from expanding the existing HIP program to reach more individuals and provide better access to benefits including more coverage options. This program will replace traditional Medicaid for all non-disabled adults ages 19-64 with income below 133% of FPL as based on MAGI income standards. The key feature of the HIP program is the high-deductible design and the Personal Wellness and Responsibility (POWER) account where members make contributions based on their income and use the funds in the account to cover their deductible expenses. Under HIP 2.0, members who consistently make required contributions to their POWER account will maintain access to the HIP Plus plan that includes enhanced benefits, such as dental and vision coverage. Members up to and including 100% FPL who do not make monthly POWER account contributions will be placed in the HIP Basic plan, a more limited benefit plan, which will also require co-payments for all services in lieu of the monthly POWER account contributions. Those with income over this amount who do not make required contributions are disenrolled and subject to a six month lock-out period. Lock-out will not apply if you are medically frail, residing in a domestic violence shelter or in a state declared disaster area.

All HIP medical benefits are currently provided through four managed care entities ("MCE"), Anthem, CareSource, MDwise, and Managed Health Services. These same MCE's will provide HIP services. HIP members have access to enrollment brokers, who provide counseling on the available MCE choices. For HIP members, once an MCE has been selected and coverage has initiated, the member must remain in the MCE for 12 months, as applicable. Members who do not select an MCE will be auto-assigned to an MCE, but will have the opportunity to change the assigned MCE before the first POWER account contribution is made.

**Additional Information: MCO (Optional)**

Provide any additional details regarding this service delivery system (optional):

As selected above, the state's managed care program currently operates under Section 1932(a) mandatory managed care state plan amendment. This is concurrent with the 1115 authority in order to authorize the enrollment processes.

## Fee-For-Service Options

Indicate whether the state/territory offers traditional fee-for-service and/or services managed under an administrative services organization:

◉ Traditional state-managed fee-for-service

◯ Services managed under an administrative services organization (ASO) arrangement

Please describe this fee-for-service delivery system, including any bundled payment arrangements, pay for performance, fee-for-service care management models/non-risk, contractual incentives as well as the population served via this delivery system.

**Additional Information: Fee-For-Service (Optional)**

Provide any additional details regarding this service delivery system (optional):

Under HIP, all services are carved into the Managed Care System except for Medicaid Rehabilitation Option (MRO) services which will be provided to qualifying individuals receiving the ABP that is the State Plan. Individuals eligible for MRO under HIP would also be eligible for the State's 1915(i) Behavioral and Primary Health Care Coordination program. It is anticipated that there will be minimal use of MRO for individuals enrolled in HIP.

 **Alternative Benefit Plan**

State Name: Indiana

Attachment 3.1-L-

OMB Control Number: 0938-1148

Transmittal Number:  IN  - 15 - 0003

OMB Expiration date: 10/31/2014

| **Alternative Benefit Plan Populations** | **ABP1** |
|---|---|

Identify and define the population that will participate in the Alternative Benefit Plan.

Alternative Benefit Plan Population Name:  Healthy Indiana Plan (HIP) Plus

Identify eligibility groups that are included in the Alternative Benefit Plan's population, and which may contain individuals that meet any targeting criteria used to further define the population.

Eligibility Groups Included in the Alternative Benefit Plan Population:

| | Eligibility Group: | Enrollment is mandatory or voluntary? | |
|---|---|---|---|
| **+** | Adult Group | Mandatory | **X** |

Enrollment is available for all individuals in these eligibility group(s).    No

**Targeting Criteria** (select all that apply):

☒ Income Standard.

Income Standard:

○ Income standard is used to target households with income at or below the standard.

○ Income standard is used to target households with income above the standard.

The income standard is as follows:

◉ A percentage:

○ A specific amount

○ Federal Poverty Level.

○ SSI Federal Benefit Amount.

◉ Other.

Enter the Other percentage    133

Describe:

HIP Plus is the benefit option for all eligible individuals with income up to and including 133% of the federal poverty level (FPL) as based on MAGI income standards who make a contribution to their Personal Wellness and Responsibility (POWER) account.

Women who become pregnant while enrolled are eligible for State Plan Benefits detailed in ABP5.

☐ Disease/Condition/Diagnosis/Disorder.

☒ Other.



# Alternative Benefit Plan

Other Targeting Criteria (Describe):

New adult group members who are AI/AN and participate in the 1115 demonstration will be enrolled in the HIP Plus ABP with no POWER account contribution or cost-sharing requirements, regardless of FPL

**Geographic Area**

The Alternative Benefit Plan population will include individuals from the entire state/territory.

| Yes |

Any other information the state/territory wishes to provide about the population (optional)

Enrollment in the Alternative Benefit Plan (ABP) that is the HIP Plus Plan with Essential Health Benefits (EHBs) will include non-medically frail adults between the ages of 19 and 64 with income up to and including 133% of the Federal Poverty Level (FPL) as based on MAGI income standards.

Individuals with income at or below 100% FPL are eligible for HIP Plus. If they do not make the POWER account payment then they default to the HIP Basic Plan. Educational information about the differences in benefits and cost-sharing structure between HIP Basic and HIP Plus are provided in all member communications from both the state and the MCEs. This includes but is not limited to eligibility notices, welcome letters, invoices, and member handbooks. Members can also receive information about the difference in the Basic and Plus plans from all call center staff including the state call centers, the enrollment broker, and the MCE call centers. The state also makes educational information available to members online.

## PRA Disclosure Statement

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-1148. The time required to complete this information collection is estimated to average 5 hours per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection. If you have comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: CMS, 7500 Security Boulevard, Attn: PRA Reports Clearance Officer, Mail Stop C4-26-05, Baltimore, Maryland 21244-1850.

V.20140415



# Alternative Benefit Plan

State Name: Indiana

Transmittal Number: IN - 15 - 0025

Attachment 3.1-L-

OMB Control Number: 0938-1148

OMB Expiration date: 10/31/2014

## Selection of Benchmark Benefit Package or Benchmark-Equivalent Benefit Package ABP3

Select one of the following:

○ The state/territory is amending one existing benefit package for the population defined in Section 1.

◉ The state/territory is creating a single new benefit package for the population defined in Section 1.

Name of benefit package: HIP Plus Plan

**Selection of the Section 1937 Coverage Option**

The state/territory selects as its Section 1937 Coverage option the following type of Benchmark Benefit Package or Benchmark-Equivalent Benefit Package under this Alternative Benefit Plan (check one):

◉ Benchmark Benefit Package.

○ Benchmark-Equivalent Benefit Package.

The state/territory will provide the following Benchmark Benefit Package (check one that applies):

○ The Standard Blue Cross/Blue Shield Preferred Provider Option offered through the Federal Employee Health Benefit Program (FEHBP).

○ State employee coverage that is offered and generally available to state employees (State Employee Coverage):

○ A commercial HMO with the largest insured commercial, non-Medicaid enrollment in the state/territory (Commercial HMO):

◉ Secretary-Approved Coverage.

○ The state/territory offers benefits based on the approved state plan.

◉ The state/territory offers an array of benefits from the section 1937 coverage option and/or base benchmark plan benefit packages, or the approved state plan, or from a combination of these benefit packages.

Please briefly identify the benefits, the source of benefits and any limitations:

Indiana will use benefits from the largest commercial HMO by enrollment that was a plan option for the State's commercial EHB benchmark. The commercial HMO selected as the base benchmark plan for the HIP Plus ABP complies with the regulations set forth for alternative health benefit plans under §440.347 as related to the essential health benefits (EHBs). The state's methodology in selecting the plan design was to ensure the benefits of the ABP that is the State Plan are at least as generous as the HIP Basic and Plus benefits. The HIP Plus Plan provides comprehensive coverage that includes dental and vision services, TMJ and bariatric surgery. The prescription drug benefit will include all of the drugs in the HIP Basic formulary, which contains the coverage and non-coverage requirements for legend drugs by Indiana Medicaid, found in 405 IAC 5-24-3. The HIP Plus ABP offers additional benefits beyond the base benchmark for pregnant women. If a woman becomes pregnant, she will have the option to maintain her current HIP Plus Plan benefits with extended services for pregnant women.

**Selection of Base Benchmark Plan**

The state/territory must select a Base Benchmark Plan as the basis for providing Essential Health Benefits in its Benchmark or Benchmark-Equivalent Package.

TN#: 15-0025

ABP 3

**Add.222**

Approval Date:

Effective Date: October 1, 2015

Page 1 of 2

 # Alternative Benefit Plan

---

The Base Benchmark Plan is the same as the Section 1937 Coverage option. | No |

Indicate which Benchmark Plan described at 45 CFR 156.100(a) the state/territory will use as its Base Benchmark Plan:

&#9675; Largest plan by enrollment of the three largest small group insurance products in the state's small group market.

&#9675; Any of the largest three state employee health benefit plans by enrollment.

&#9675; Any of the largest three national FEHBP plan options open to Federal employees in all geographies by enrollment.

&#9673; Largest insured commercial non-Medicaid HMO.

Plan name: | Advantage 1001 |

Other Information Related to Selection of the Section 1937 Coverage Option and the Base Benchmark Plan (optional):

The state assures that all services in the base benchmark have been accounted for throughout the benefit chart in ABP5.  The state assures the accuracy of all information in ABP5 depicting amount, duration and scope parameters of services authorized in the current approved Medicaid state plan and covered on the selected base benchmark plan.

---

## PRA Disclosure Statement

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-1148. The time required to complete this information collection is estimated to average 5 hours per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection. If you have comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: CMS, 7500 Security Boulevard, Attn: PRA Reports Clearance Officer, Mail Stop C4-26-05, Baltimore, Maryland 21244-1850.

V.20140415



# Alternative Benefit Plan

State Name: Indiana

Attachment 3.1-L- [ ]

OMB Control Number: 0938-1148

Transmittal Number: IN - 15 - 0003

OMB Expiration date: 10/31/2014

| Alternative Benefit Plan Cost-Sharing | ABP4 |
|---|---|

[ ] Any cost sharing described in Attachment 4.18-A applies to the Alternative Benefit Plan.

Attachment 4.18-A may be revised to include cost sharing for ABP services that are not otherwise described in the state plan. Any such cost sharing must comply with Section 1916 of the Social Security Act.

The Alternative Benefit Plan for individuals with income over 100% FPL includes cost-sharing other than that described in Attachment 4.18-A.

Yes

[ ] The state/territory has completed and attached to this submission Attachment 4.18-F to indicate the Alternative Benefit Plan's cost-sharing provisions that are different from those otherwise approved in the state plan.

> **An attachment is submitted.**

Other Information Related to Cost Sharing Requirements (optional):

Authorization for the cost sharing provisions for the HIP Plus Plan are contained in Indiana's HIP 1115 Demonstration.

## PRA Disclosure Statement

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-1148. The time required to complete this information collection is estimated to average 5 hours per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection. If you have comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: CMS, 7500 Security Boulevard, Attn: PRA Reports Clearance Officer, Mail Stop C4-26-05, Baltimore, Maryland 21244-1850.

V.20140415



# Alternative Benefit Plan

State Name: Indiana

Attachment 3.1-L-

OMB Control Number: 0938-1148

Transmittal Number:  IN  - 22 - 0006

## Benefits Description                                                                    ABP5

The state/territory proposes a "Benchmark-Equivalent" benefit package.   No

**Benefits Included in Alternative Benefit Plan**

Enter the specific name of the base benchmark plan selected:

> Base Benchmark Commercial HMO
> Advantage HMO
> Plus Plan

Enter the specific name of the section 1937 coverage option selected, if other than Secretary-Approved.  Otherwise, enter "Secretary-Approved."

> Secretary-Approved

TN 22-0006
(Page 228 of Total)
Supersedes
TN 15-0025

**Add.225**

Approval Date: 2/24/2023

Effective Date: 10/1/2022

Page 1 of 46

 **Alternative Benefit Plan**

---

☑ 1. Essential Health Benefit: Ambulatory patient services                    Collapse All ☐

Benefit Provided:

Primary Care Physician (PCP) Services Office Visit

Source:

Base Benchmark Commercial HMO

[Remove]

   Authorization:

   Other

Provider Qualifications:

Medicaid State Plan

   Amount Limit:

   None

Duration Limit:

None

   Scope Limit:

   None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Office visit services include supplies for treatment of the illness or injury, medical consultations, procedures performed in the physician's office, second opinion consultations and specialist treatment services provided by a PCP.

For second opinion consultations, the Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

Specialty Physician Visits

Source:

Base Benchmark Commercial HMO

[Remove]

   Authorization:

   Other

Provider Qualifications:

Medicaid State Plan

   Amount Limit:

   None

Duration Limit:

None

   Scope Limit:

   None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Referral Physician Office Visit included.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

Home Health Services

Source:

Secretary-Approved Other

[Remove]

   Authorization:

   Other

Provider Qualifications:

Medicaid State Plan

TN 22-0006
Supersedes
TN 15-0025

**Add.226**

Approval Date: 2/24/2023 _____    Effective Date: 10/1/2022    Page 2 of 46



# Alternative Benefit Plan

Amount Limit:

> 100 visits per year

Duration Limit:

> None

Scope Limit:

> Services covered only if not considered custodial care and are prescribed in writing by a participating physician as medically necessary, in place of inpatient hospital care or convalescent nursing home and services provided under physician's care.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

> Services include skilled medical services; nursing care given or supervised by RN; nutritional counseling furnished or supervised by RD; home hospice services; home health aides; laboratory services, drugs, and medicines prescribed by a physician in connection with home health care; and medical social services. Home hospice services are considered a separate service.
>
> For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

> Outpatient Surgery

Source:

> Base Benchmark Commercial HMO

[Remove]

Authorization:

> Other

Provider Qualifications:

> Medicaid State Plan

Amount Limit:

> None

Duration Limit:

> None

Scope Limit:

> None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

> Outpatient medical and surgical hospital services are covered when medically necessary. Includes diagnostic invasive procedures that may or may not require anesthesia.
>
> For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

> Allergy Testing

Source:

> Base Benchmark Commercial HMO

[Remove]

Authorization:

> None

Provider Qualifications:

> Medicaid State Plan

Amount Limit:

> None

Duration Limit:

> None

TN 22-0006
Supersedes
TN 15-0025

**Add.227**

Approval Date: 2/24/2023          Effective Date: 10/1/2022



# Alternative Benefit Plan

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Includes allergy procedures-administration of serum.

---

Benefit Provided:

Chemotherapy-Outpatient

Source:

Base Benchmark Commercial HMO

Remove

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Includes outpatient therapeutic injections which are medically necessary and may not be self-administered.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

Benefit Provided:

IV Infusion Services

Source:

Base Benchmark Commercial HMO

Remove

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Includes coverage for outpatient infusion therapy.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

TN 22-0006
Supersedes
TN 15-0025

**Add.228**

Approval Date: 2/24/2023

Effective Date: 10/1/2022



# Alternative Benefit Plan

Benefit Provided:

Radiation Therapy- Outpatient

Source:

Base Benchmark Commercial HMO

[Remove]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Includes coverage for outpatient services.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

Dialysis

Source:

Base Benchmark Commercial HMO

[Remove]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Coverage provided for outpatient (including home) dialysis services provided by a participating provider.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

Outpatient Services

Source:

Base Benchmark Commercial HMO

[Remove]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

TN 22-0006
Supersedes
TN 15-0025

**Add.229**

Approval Date: 2/24/2023

Effective Date: 10/1/2022

Page 5 of 46



# Alternative Benefit Plan

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Includes colonoscopy and pacemaker. Benefits provided are PCP, specialty and referral for all physician services in an outpatient facility.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

| Benefit Provided: | Source: | |
|---|---|---|
| Dental- Limited Covered Services- Accident/Injury | Base Benchmark Commercial HMO | Remove |

| Authorization: | Provider Qualifications: |
|---|---|
| Other | Medicaid State Plan |

| Amount Limit: | Duration Limit: |
|---|---|
| Treatment complete within 1 year from initiation. | None |

Scope Limit:

Coverage not provided for orthodontia, dental procedures, repair of injury caused by an intrinsic force, such as the force of the upper and lower jaw in chewing, repair of artificial teeth, dentures or bridges.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Injury to sound and natural teeth including teeth that have been filled, capped or crowned.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, to report injury to insurer and receive follow-up care within specified timeframe, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

| Benefit Provided: | Source: | |
|---|---|---|
| Urgent Care- Walk-ins | Base Benchmark Commercial HMO | Remove |

| Authorization: | Provider Qualifications: |
|---|---|
| None | Medicaid State Plan |

| Amount Limit: | Duration Limit: |
|---|---|
| None | None |

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Coverage includes after hours care.

TN 22-0006
Supersedes
TN 15-0025

**Add.230**

Approval Date: 2/24/2023          Effective Date: 10/1/2022



# Alternative Benefit Plan

| | |
|---|---|

**Benefit Provided:**                **Source:**                       [Remove]

Routine Foot Care                    Secretary-Approved Other

   **Authorization:**                **Provider Qualifications:**

   Other                          Medicaid State Plan

   **Amount Limit:**                 **Duration Limit:**

   6 visits per year              None

   **Scope Limit:**

   Coverage not provided for supportive devices of the feet, including but not limited to foot orthotics, corrective shoes, arch supports for the treatment of plantar fasciitis, flat feet, fallen arches, weak feet, chronic foot strain, corns, bunions

   Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

   Scope limit continued- and calluses.

   Covered when medically necessary for the treatment of diabetes and lower extremity circulatory diseases. For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

**Benefit Provided:**                **Source:**                       [Remove]

Voluntary Sterilization for Males     State Plan 1905(a)

   **Authorization:**                **Provider Qualifications:**

   Other                          Medicaid State Plan

   **Amount Limit:**                 **Duration Limit:**

   None                           None

   **Scope Limit:**

   None

   Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

   For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

**Benefit Provided:**                **Source:**                       [Remove]

Clinical Trials for Cancer Treatment  Base Benchmark Commercial HMO

   **Authorization:**                **Provider Qualifications:**

   Other                          Medicaid State Plan

**Add.231**

TN 22-0006
Supersedes
TN 15-0025                Approval Date: 2/24/2023 _____        Effective Date: 10/1/2022        Page 7 of 46



# Alternative Benefit Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

Items and services that are not routine care costs or unrelated to the care method will not be covered.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

The clinical trial must be approved or funded by one of the following: National Institute of Health; cooperative group of research facilities that have an established peer review program that is approved by a National Institute of Health or center; FDA; United States Department of Veterans Affairs; United States Department of Defense; institutional review board of an institution located in Indiana that has a multiple project assurance contract approved by the National Institute of the Office for Human Research Protections; and research entity that meets eligibility criteria for a support grant from a National Institutes of Health center.

Coverage provided for routine care costs that are incurred in the course of a clinical trial.
For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, review of clinical trial to ensure qualified, review of routine costs related to clinical trial and a justification of services rendered for the medical needs of the member.

Add

(Page 235 of Total)

TN 15-0025
Supersedes
TN 15-0025

**Add.232**

Approval Date: 2/24/2023

Effective Date: 10/1/2022

Page 8 of 46



# Alternative Benefit Plan

---

■ 2. Essential Health Benefit: Emergency services      Collapse All ☐

**Benefit Provided:**
Emergency Department Services

**Source:**
Base Benchmark Commercial HMO

[Remove]

**Authorization:**
None

**Provider Qualifications:**
Medicaid State Plan

**Amount Limit:**
None

**Duration Limit:**
None

**Scope Limit:**
Medical care provided outside of the U.S. is not covered

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:
Emergency room included

---

**Benefit Provided:**
Emergency Transportation: Ambulance/Air Ambulance

**Source:**
Base Benchmark Commercial HMO

[Remove]

**Authorization:**
Other

**Provider Qualifications:**
Medicaid State Plan

**Amount Limit:**
None

**Duration Limit:**
None

**Scope Limit:**
None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Other medically necessary ambulance transport (ambulance, medi-van or similar medical ground, air or water transport to or from the hospital or both ways and transfer from a hospital to a lower level of care) is covered.

For other medically necessary transportation, authorization may be required in which the Managed Care Entities (MCEs) may require other details, such as general member information, to contact PCP for other types of transportation related services and a justification of services rendered for the medical needs of the member.

[Add]

---

TN 22-0006
Supersedes
TN 15-0025

**Add.233**
Approval Date: 2/24/2023

Effective Date: 10/1/2022

 **Alternative Benefit Plan**

---

☑ 3. Essential Health Benefit: Hospitalization      Collapse All ☐

Benefit Provided:      Source:      [Remove]

| General Inpatient Hospital Care | Base Benchmark Commercial HMO |

Authorization:      Provider Qualifications:

| Other | Medicaid State Plan |

Amount Limit:      Duration Limit:

| None | None |

Scope Limit:

Benefit does not include personal comfort items, including those services and supplies not directly related to care, such as guest meals, accommodations or personal hygiene products, and room and board when temporary leave permitted.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Services include semi-private room and board (private room provided when medically necessary); intensive care unit/coronary care unit; inpatient cardiac rehabilitation and rehabilitation therapy; general nursing care; use of operating room or delivery suite; surgical and anesthesia services and supplies; ordinary casts; splints and dressings; drugs and oxygen used in hospital; laboratory and x-ray examinations; electrocardiograms; special duty nursing (when requested by a physician and certified as medically necessary); and inpatient specialty pharmaceuticals.
For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, review of medical necessity, authorization by acting physician, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:      Source:      [Remove]

| Inpatient Physician Services | Base Benchmark Commercial HMO |

Authorization:      Provider Qualifications:

| Other | Medicaid State Plan |

Amount Limit:      Duration Limit:

| None | None |

Scope Limit:

| None |

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefit includes PCP, specialty and may require a referral for physician services in the hospital.
For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:      Source:      [Remove]

| Inpatient Surgical Services | Base Benchmark Commercial HMO |

TN 22-0006
Supersedes
TN 15-0025

**Add.234**

Approval Date: 2/24/2023      Effective Date: 10/1/2022     



# Alternative Benefit Plan

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

Benefit does not include bariatric surgery, surgical and nonsurgical treatment of TMJ, personal comfort items, including those services and supplies not directly related to care, such as guest meals, accommodations or personal hygiene products,

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Scope Limit continued- and room and board when temporary leave permitted.

Surgical hospital services are covered when medically necessary. Services include semi-private room and board (private room provided when medically necessary); intensive care unit/coronary care unit; general nursing care; use of operating room or delivery suite; surgical and anesthesia services and supplies; ordinary casts; splints and dressings; drugs and oxygen used in hospital; laboratory and x-ray examinations; electrocardiograms; special duty nursing (when requested by a physician and certified as medically necessary); and inpatient specialty pharmaceuticals.

Surgical operations may include replacement of diseased tissue removed while a member.
For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

Non-Cosmetic Reconstructive Surgery

Source:

Base Benchmark Commercial HMO

Remove

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

Services begin within 1 year of the accident.

Duration Limit:

None

Scope Limit:

Benefit does not include personal comfort items, including those services and supplies not directly related to care, such as guest meals, accommodations or personal hygiene products, and room and board when temporary leave permitted.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Surgical hospital services are covered when medically necessary and approved by physician.
Reconstructive procedures performed to restore or improve impaired physical function or defects resulting from an accident.
For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

**Add.235**

TN 22-0004
Supersedes
TN 15-0025

Approval Date: 2/24/2023    Effective Date: 10/1/2022



# Alternative Benefit Plan

---

Benefit Provided:

Mastectomy- Reconstructive Surgery

Source:

Base Benchmark Commercial HMO

[Remove]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

Benefit does not include personal comfort items, including those services and supplies not directly related to care, such as guest meals, accommodations or personal hygiene products, and room and board when temporary leave permitted.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Surgical hospital services are covered when medically necessary and approved by physician. Covered services include reconstruction of the breast upon which the mastectomy was performed; surgery and reconstruction of the other breast to produce a symmetrical appearance; and prostheses and physical complications at all stages of mastectomy, including lymphedemas.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

Benefit Provided:

Transplants

Source:

Base Benchmark Commercial HMO

[Remove]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Human organ and tissue transplant services for both the recipient and the donor, when the recipient is a member. No coverage is provided for the donor or the recipient when the recipient is not a member. Specialty Care Physician (SCP) provides pre-transplant evaluation. Non-experimental, non-investigational organ and other transplants are covered. Donor's medical expenses covered if the person receiving the transplant is a member, and donor's expenses are not covered by another issuer.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

TN 22-0006
Supersedes
TN 15-0025

**Add.236**

Approval Date: 2/24/2023

Effective Date: 10/1/2022



# Alternative Benefit Plan

**Benefit Provided:**

Congenital Abnormalities

**Source:**

Base Benchmark Commercial HMO

[Remove]

**Authorization:**

Other

**Provider Qualifications:**

Medicaid State Plan

**Amount Limit:**

None

**Duration Limit:**

None

**Scope Limit:**

Benefit does not include personal comfort items, including those services and supplies not directly related to care, such as guest meals, accommodations or personal hygiene products, and room and board when temporary leave permitted.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Surgical hospital services are covered when medically necessary and approved by physician.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

**Benefit Provided:**

Anesthesia

**Source:**

Base Benchmark Commercial HMO

[Remove]

**Authorization:**

Other

**Provider Qualifications:**

Medicaid State Plan

**Amount Limit:**

None

**Duration Limit:**

None

**Scope Limit:**

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Coverage includes anesthesia services and supplies.
For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

**Benefit Provided:**

Hospice Care

**Source:**

Base Benchmark Commercial HMO

[Remove]

**Authorization:**

Other

**Provider Qualifications:**

Medicaid State Plan

TN 22-0006
Supersedes
TN 15-0025

(Page 240 of Total)

**Add.237**

Approval Date: 2/24/2023        Effective Date: 10/1/2022

Page 13 of 46



# Alternative Benefit Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

Room and board services are not covered when temporary leave permitted.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

This benefit may be provided in hospitals, skilled nursing facilities, and freestanding hospice centers. Covered services include semi-private room (private room provided when medically necessary). Hospice care provided if terminal illness, in accordance with a treatment plan before admission to the program. Treatment plan must provide statement from physician that life expectancy is 6 months or less. Concurrent care is provided to children (19 & 20 year olds).

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

Benefit Provided:

Medical Social Services

Source:

Base Benchmark Commercial HMO

[Remove]

Authorization:

None

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Hospital services to assist member and family in understanding and coping with the emotional and social problems affecting health status.

---

Benefit Provided:

Dialysis

Source:

Base Benchmark Commercial HMO

[Remove]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

TN 22-0006
(Page 241 of Total)
Supersedes:
TN 15-0025

Add.238

Approval Date: 2/24/2023

Effective Date: 10/1/2022

Page 14 of 46



# Alternative Benefit Plan

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Inpatient dialysis services provided by a participating provider.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided: | Source: | Remove
--- | --- | ---

Chemotherapy

Base Benchmark Commercial HMO

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Includes coverage for inpatient services.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

Radiation Therapy

Source:

Base Benchmark Commercial HMO

Remove

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Includes coverage for inpatient services.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

**Add.239**

TN 22-0006
Supersedes
TN 15-0025

Approval Date: 2/24/2023

Effective Date: 10/1/2022

Page 15 of 46



# Alternative Benefit Plan

Add

TN 22-0006
Supersedes
TN 15-0025

(Page 243 of Total)

Approval Date: 2/2/2022    Add.240    Effective Date: 10/1/2022

Page 16 of 46



# Alternative Benefit Plan

☑ 4. Essential Health Benefit: Maternity and newborn care                    Collapse All ☐

Benefit Provided:                          Source:                         [ Remove ]
[ Obstetric Care ]                         [ State Plan 1905(a) ]

  Authorization:                 Provider Qualifications:
  [ None ]                        [ Medicaid State Plan ]

  Amount Limit:                   Duration Limit:
  [ Limits equivalent to State Plan ]   [ None ]

  Scope Limit:
  [ None ]

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Coverage is provided from the State Plan under the physician benefit and includes various obstetrical services such as antepartum and postpartum visits, laboratory and x-ray (ultrasound) services and other services as medically necessary and appropriate. The benefit provides for antepartum services up to 14 visits for normal pregnancies. High-risk pregnancies may allow for additional visits. Postpartum services includes 2 visits within 60 days of delivery.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

[ Add ]

TN 22-0006
Supersedes
TN 15-0025
(Page 241 of Total)
Approval Date: 2/24/2023    Add.241    Effective Date: 10/1/2022

Page 17 of 46



# Alternative Benefit Plan

5. Essential Health Benefit: Mental health and substance use disorder services including behavioral health treatment

☐ Collapse All

☑ The state/territory assures that it does not apply any financial requirement or treatment limitation to mental health or substance use disorder benefits in any classification that is more restrictive than the predominant financial requirement or treatment limitation of that type applied to substantially all medical/surgical benefits in the same classification.

Benefit Provided:
Mental/Behavioral Health Inpatient

Source:
Base Benchmark Commercial HMO

[Remove]

Authorization:
Other

Provider Qualifications:
Medicaid State Plan

Amount Limit:
None

Duration Limit:
None

Scope Limit:
Benefit does not include hypnotherapy, behavioral modification, or milieu therapy when used to treat conditions that are not recognized as mental disorders; personal comfort items; and room and board when temporary leave available.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefits include evaluation and treatment in a psychiatric day facility and electroconvulsive therapy. Coverage may also include partial hospitalization depending on the type of services provided.
These services are not provided through institutions of mental disease (IMDs).

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:
Mental/Behavioral Health Outpatient

Source:
Base Benchmark Commercial HMO

[Remove]

Authorization:
Other

Provider Qualifications:
Medicaid State Plan

Amount Limit:
None

Duration Limit:
None

Scope Limit:
Coverage does not include self-help training or other related forms of non-medical self care; marriage counseling; hypnotherapy, behavioral modification, or milieu therapy when used to treat conditions that are not recognized as mental disorders.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Coverage applies to individual therapy and group therapy sessions. Benefit may also include partial hospitalization depending on the type of services provided.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as

(Page 246 of Total)
TN 22-0006
Supersedes
TN 15-0025

**Add.242**

Approval Date: 2/24/2023        Effective Date: 10/1/2022

Page 18 of 46



# Alternative Benefit Plan

general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

**Benefit Provided:**

Substance Abuse Inpatient Treatment

**Source:**

Base Benchmark Commercial HMO

Remove

**Authorization:**

Other

**Provider Qualifications:**

Medicaid State Plan

**Amount Limit:**

up to 15 days in a calendar month

**Duration Limit:**

None

**Scope Limit:**

Members 21 through 64 years of age in facilities that qualify as institutions for mental disease. Members can be authorized for up to 15 days in a calendar month.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefit does not include services and supplies for the treatment of co-dependency or caffeine addiction; personal comfort items; and room and board when temporary leave permitted.

Benefit includes detoxification for alcohol or other drug addiction. Coverage may also include partial hospitalization depending on the type of services provided.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

**Benefit Provided:**

Substance Abuse Outpatient Treatment

**Source:**

Base Benchmark Commercial HMO

Remove

**Authorization:**

Other

**Provider Qualifications:**

Medicaid State Plan

**Amount Limit:**

None

**Duration Limit:**

None

**Scope Limit:**

Benefit does not include services and supplies unrelated to mental health for the treatment of codependency
or caffeine addiction.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Coverage includes detoxification for alcohol or other drug addiction. Benefit may also include partial hospitalization depending on the type of services provided.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a

TN 16-0006
Supersedes
TN 15-0025

**Add.243**

Approval Date: 2/24/2023

Effective Date: 10/1/2022

Page 19 of 46



# Alternative Benefit Plan

planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Add

TN 22-0006
Supersedes
TN 15-0025

(Page 21 of Total)

Approval Date: 2/24/2022    **Add.244**    Effective Date: 10/1/2022

Page 20 of 46



# Alternative Benefit Plan

☑ **6. Essential Health Benefit: Prescription drugs**

> ☑ The state/territory assures that the ABP prescription drug benefit plan is the same as under the approved Medicaid State Plan for prescribed drugs.

**Benefit Provided:**

Coverage is at least the greater of one drug in each U.S. Pharmacopeia (USP) category and class or the same number of prescription drugs in each category and class as the base benchmark.

| Prescription Drug Limits (Check all that apply.): | Authorization: | Provider Qualifications: |
|---|---|---|
| ☒ Limit on days supply | Yes | State licensed |
| ☒ Limit on number of prescriptions | | |
| ☒ Limit on brand drugs | | |
| ☒ Other coverage limits | | |
| ☒ Preferred drug list | | |

Coverage that exceeds the minimum requirements or other:

The prescription drug benefit will cover at least one drug in every category and class or the number of drugs covered in each category and class as the base benchmark, whichever is greater. The Plus Plan will have a formulary that will include coverage for all of the drugs in the HIP Basic formulary, which contains the coverage and non-coverage requirements for legend drugs by Indiana Medicaid, found in 405 IAC 5-24-3. The Plus Plan pharmacy benefit provides additional enhanced benefits that include the following:
• Access to many brand name drugs without prior authorization requirements;
• 90 day prescription supplies;
• Mail order pharmacy benefit;
• Medication Therapy Management (MTM) Services; and
• No copayment for any filled prescription.
These additional pharmacy services are only available to individuals enrolled in the HIP Plus Plan. In addition, the exact drugs covered under the formulary may vary by the Managed Care Entities (MCEs).

For authorization, Managed Care Entities may require prior authorization requirements, such as general member information, a justification of need for Rx related to the medical needs of the member and a planned course of treatment, if applicable, as related to the number Rx provided and duration of treatment. Prior authorization requirements for prescription drugs may vary by MCE, but will comply with Mental Health Parity requirements. MCEs will be required to have a process in place to allow drugs that are medically necessary, but not included on the formulary to be accessed by members.

TN 22-0006
Supersede
TN T5-0025
(Page 2 of Total)

Approval Date: 21-0002 Add. 245     Effective Date: 10/1/2022

Page 21 of 46



# Alternative Benefit Plan

☑ **7. Essential Health Benefit: Rehabilitative and habilitative services and devices** Collapse All ☐

☑ The state/territory assures that it is not imposing limits on habilitative services and devices that are more stringent than limits on rehabilitative services (45 CFR 156.115(a)(5)(ii)). Further, the state/territory understands that separate coverage limits must also be established for rehabilitative and habilitative services and devices. Combined rehabilitative and habilitative limits are allowed, if these limits can be exceeded based on medical necessity.

| Benefit Provided: | Source: | Remove |
|---|---|---|
| Physical Therapy, Occupational Therapy, Speech The | Secretary-Approved Other | |

| Authorization: | Provider Qualifications: |
|---|---|
| Other | Medicaid State Plan |

| Amount Limit: | Duration Limit: |
|---|---|
| 75 combined visits annually. | None |

Scope Limit:

Rehabilitative and habilitative services are offered at parity and have distinct benefit limits. Coverage does not include nonsurgical treatment of TMJ.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Amount limit continued- As an outpatient benefit, coverage is limited to 75 combined visits annually for PT, OT, ST, cardiac and pulmonary rehabilitation.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

| Benefit Provided: | Source: | Remove |
|---|---|---|
| Durable Medical Equipment (DME) | Secretary-Approved Other | |

| Authorization: | Provider Qualifications: |
|---|---|
| Other | Medicaid State Plan |

| Amount Limit: | Duration Limit: |
|---|---|
| 15 mo rental cap;1 every 5 yr per member- replace | None |

Scope Limit:

DME does not include corrective shoes, arch supports, dental prostheses, deluxe equipment, common first aid supplies and non-durable supplies.  Other non-covered services include but not limited to equipment not suitable for home use.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefit includes but not limited to wheel chairs, crutches, respirators, traction equipment, hospital beds, monitoring devices, oxygen-breathing apparatus and insulin pumps.  Training for use of DME is also covered and applicable rental fees.  Covered services are only for the basic type of DME necessary to provide for medical needs and does not include non-durable supplies that are not an integral part of the DME set-up.

TN 24-0006
Supersedes
TN 15-0025

**Add.246**

Approval Date: 2/24/2023

Effective Date: 10/1/2022



# Alternative Benefit Plan

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

Prosthetics

Source:

Base Benchmark Commercial HMO

[Remove]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

Benefit does not include foot orthotics, devices solely for comfort or convenience and devices from a non-accredited provider.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

A prosthetic device means an artificial arm or leg or any portion thereof. Orthotic devices are also covered under this benefit as custom fabricated braces or supports designed as a component of an artificial arm or leg. Covered services include the purchase, replacement or adjustment of artificial limbs when required due to a change in your physical condition or body size due to normal growth.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

Corrective Appliances

Source:

Base Benchmark Commercial HMO

[Remove]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

Benefit does not include but not limited to artificial or prosthetic limbs, cochlear implants, dental appliances, dentures, foot orthotics, corrective shoes, arch supports for plantar fasciitis, flat feet, fallen arches and corns.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefit must be medically necessary and used to restore function or to replace body parts. Benefit includes but not limited to hemodialysis equipment, breast prostheses, back braces, artificial eyes, one pair eyeglasses due to cataract surgery, ostomy supplies and prosthetics (all prosthetics except prosthetic limbs). Coverage not intended for non-durable appliances.

TN 22-0006
Supersedes
TN 15-0025
Approval Date: 2/24/2023
Effective Date: 10/1/2022

**Add.247**



# Alternative Benefit Plan

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

| Benefit Provided: | Source: | Remove |
|---|---|---|
| Cardiac Rehabilitation | Secretary-Approved Other | |

| Authorization: | Provider Qualifications: |
|---|---|
| Other | Medicaid State Plan |

| Amount Limit: | Duration Limit: |
|---|---|
| 75 combined visits annually. | None |

Scope Limit:

Rehabilitative services are offered at parity and share the same, comparable benefit limits.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Amount limit continued- As an outpatient benefit, coverage is limited to 75 combined visits annually for PT, OT, ST and pulmonary rehabilitation.

Benefit includes services for the improvement of cardiac disease or dysfunction.
For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

| Benefit Provided: | Source: | Remove |
|---|---|---|
| Medical Supplies | Base Benchmark Commercial HMO | |

| Authorization: | Provider Qualifications: |
|---|---|
| None | Medicaid State Plan |

| Amount Limit: | Duration Limit: |
|---|---|
| None | None |

Scope Limit:

Benefit does not include non-durable supplies and/or convenience items.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefit includes casts, dressings, splints and other devices used for reduction of fractures and dislocations.

| Benefit Provided: | Source: | Remove |
|---|---|---|
| Pulmonary Rehabilitation | Secretary-Approved Other | |



# Alternative Benefit Plan

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

75 combined visits annually.

Duration Limit:

None

Scope Limit:

Benefit does not include formalized and pre-designed rehabilitation programs for pulmonary conditions. Rehabilitative services are offered at parity and share the same, comparable benefit limits.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Amount limit continued- As an outpatient benefit, coverage is limited to 75 combined visits annually for PT, OT, ST and cardiac rehabilitation.

Benefit consists of services that are for the improvement of pulmonary disease or dysfunction that has a poor response to treatment. Examples of poor response include but are not limited to patients with respiratory failure, frequent emergency room visits, progressive dyspnea, hypoxemia or hypercapnia.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

Skilled Nursing Facility (SNF)

Source:

Base Benchmark Commercial HMO

Remove

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

100 days per benefit period.

Duration Limit:

None

Scope Limit:

A SNF does not include any institution or portion of any institution that is primarily for rest, the aged, nonskilled
care, or care of mental diseases or substance abuse. Room and board services are not covered when temporary leave permitted.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Covered services include semi-private room (private room provided when medically necessary), drugs, specialty pharmaceuticals, medical social services, short term physical, speech, occupational therapies (subject to limits) and other services generally provided.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

TN 22-0006
(Page 352 of Total)
TN 15-0025

**Add.249**

Approval Date: 2/24/2023    Effective Date: 10/1/2022

Page 25 of 46



# Alternative Benefit Plan

---

**Benefit Provided:**
Autism Spectrum Disorder Services

**Source:**
Secretary-Approved Other

[Remove]

**Authorization:**
Other

**Provider Qualifications:**
Medicaid State Plan

**Amount Limit:**
75 combined visits annually.

**Duration Limit:**
None

**Scope Limit:**
None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Amount limit continued- As an outpatient benefit, coverage is limited to 75 combined visits annually for PT, OT, ST, cardiac and pulmonary rehabilitation.

Benefit, formerly known as Pervasive Development Disorder (PDD), is a state mandate that must be covered as outlined in the Indiana insurance code.

Benefit provides coverage for Asperger's syndrome and autism. Coverage for services are provided as prescribed by the treating physician in accordance with the treatment plan.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

**Benefit Provided:**
Hearing Aids

**Source:**
State Plan 1905(a)

[Remove]

**Authorization:**
Other

**Provider Qualifications:**
Medicaid State Plan

**Amount Limit:**
1 per member every 5 years

**Duration Limit:**
None

**Scope Limit:**
None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Medically frail populations will receive State Plan benefits.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

TN 22-0006
Supersedes
(Page 253 of Total)
TN 15-0023
Approval Date: 2/24/2023    Add.250    Effective Date: 10/1/2022

Page 26 of 46



# Alternative Benefit Plan

---

**Benefit Provided:**

Home Health:Medical Supplies, Equipment and Applia

**Source:**

Base Benchmark Commercial HMO

[Remove]

**Authorization:**

Other

**Provider Qualifications:**

Medicaid State Plan

**Amount Limit:**

None

**Duration Limit:**

None

**Scope Limit:**

Benefit does not include non-durable supplies and/or convenience items.

**Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:**

Benefits include medical supplies in connection with home health care.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

**Benefit Provided:**

Inpatient Cardiac Rehabilitation

**Source:**

Base Benchmark Commercial HMO

[Remove]

**Authorization:**

Other

**Provider Qualifications:**

Medicaid State Plan

**Amount Limit:**

90 days annual maximum.

**Duration Limit:**

None

**Scope Limit:**

None

**Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:**

Benefit includes services for the improvement of cardiac disease or dysfunction.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

**Benefit Provided:**

Inpatient Rehabilitation Therapy

**Source:**

Base Benchmark Commercial HMO

[Remove]

**Authorization:**

Other

**Provider Qualifications:**

Medicaid State Plan

**Amount Limit:**

90 days annual maximum.

**Duration Limit:**

None

---

Supersedes
TN 15-0025

**Add.251**

Approval Date: 2/24/2023          Effective Date: 10/1/2022



# Alternative Benefit Plan

Scope Limit:

Rehabilitative and habilitative services are offered at parity and share the same, comparable benefit limits.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Coverage includes physical, occupational, speech and pulmonary therapy of acute illness or injury to the extent that significant potential exists for progress toward a previous level of functioning.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Add

TN 22-0006
Supersedes
TN 15-0025

(Page 255 of Total)

Approval Date: 2/24/2023

Effective Date: 10/1/2022

**Add.252**

Page 28 of 46

 **Alternative Benefit Plan**

---

■ 8. Essential Health Benefit: Laboratory services                    Collapse All ☐

Benefit Provided:                                    Source:                          [Remove]
Lab Tests                                            Base Benchmark Commercial HMO

  Authorization:                                     Provider Qualifications:
  Other                                              Medicaid State Plan

  Amount Limit:                                      Duration Limit:
  None                                               None

  Scope Limit:
  Coverage does not include lab expenses related to physical exams when provided for employment, school, sports' programs, travel, immigration, administrative purposes or insurance purposes.

  Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

  Benefit provided as outpatient services when medically necessary.

  For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:                                    Source:                          [Remove]
X-Rays                                               Base Benchmark Commercial HMO

  Authorization:                                     Provider Qualifications:
  Other                                              Medicaid State Plan

  Amount Limit:                                      Duration Limit:
  None                                               None

  Scope Limit:
  Coverage does not include x-ray expenses related to physical exams when provided for employment, school, sports' programs, travel, immigration, administrative purposes or insurance purposes.

  Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

  Benefit provided as outpatient services when medically necessary.

  For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:                                    Source:                          [Remove]
Imaging- MRI, CT, and PET                            Base Benchmark Commercial HMO

  Authorization:                                     Provider Qualifications:
  Other                                              Medicaid State Plan

TN 22-0006
Supersedes
TN 15-0025    Approval Date: 2/24/2023    Effective Date: 10/1/2022



# Alternative Benefit Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefit provided as outpatient services when medically necessary. Coverage also includes MRA and SPECT scan.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

Pathology

Source:

Base Benchmark Commercial HMO

Remove

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefit provided as outpatient services when medically necessary.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

Radiology

Source:

Base Benchmark Commercial HMO

Remove

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None



# Alternative Benefit Plan

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefit provided as outpatient services when medically necessary.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:
EKG and EEG

Source:
Base Benchmark Commercial HMO

[Remove]

Authorization:
Other

Provider Qualifications:
Medicaid State Plan

Amount Limit:
None

Duration Limit:
None

Scope Limit:
None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefit provided as outpatient services when medically necessary.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

[Add]

TN 22-0006
Supersedes
(Page 258 of Total)
TN 19-0025

Approval Date: Add 255

Effective Date: 10/1/2022

Page 31 of 46



# Alternative Benefit Plan

■ 9. Essential Health Benefit: Preventive and wellness services and chronic disease management    Collapse All ☐

The state/territory must provide, at a minimum, a broad range of preventive services including: "A" and "B" services recommended by the United States Preventive Services Task Force; Advisory Committee for Immunization Practices (ACIP) recommended vaccines; preventive care and screening for infants, children and adults recommended by HRSA's Bright Futures program/project; and additional preventive services for women recommended by the Institute of Medicine (IOM).

Benefit Provided:

Preventive Care Services

Source:

Base Benchmark Commercial HMO

[Remove]

Authorization:

None

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Physician services for wellness and preventive services include but are not limited to routine physical exam, routine total blood cholesterol screening, routine gynecological services and routine immunizations. Includes (1) all preventive items or services that have a rating of 'A' or 'B' by the United States Preventive Task Force (USPSTF); (2) Immunizations recommended for the individuals age and health status by the Advisory Committee on Immunization Practices of the Centers for Disease Control and Prevention (CDC); (3) for infants, children, adolescents and adults, preventive care and screenings included in the Health Resources and Services Administration's (HRSA) Bright Futures comprehensive guidelines; and (4) preventive screenings for women as as recommended by the Institute of Medicine (IOM).

Benefit Provided:

Routine Prostate Specific Antigen (PSA) Test

Source:

Base Benchmark Commercial HMO

[Remove]

Authorization:

None

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

One test annually for an individual who is at least 50 years old or less than 50 if at high risk for prostate cancer.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

None

Benefit Provided:

Diabetes Self Management Training

Source:

Base Benchmark Commercial HMO

[Remove]

Supersedes
TN 15-0025

**Add.256**

Approval Date: 2/24/2023

Effective Date: 10/1/2022

 **Alternative Benefit Plan**

Authorization:

| Other |

Provider Qualifications:

| Medicaid State Plan |

Amount Limit:

| None |

Duration Limit:

| None |

Scope Limit:

| None |

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Covered services are limited to physician authorized visits after receiving a diagnosis of diabetes; after receiving a diagnosis that represents a significant change in symptoms or condition and there is a medically necessary change in self-management; and for re-education or refresher training.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Benefit Provided:

| Health Education |

Source:

| Base Benchmark Commercial HMO |

| Remove |

Authorization:

| Other |

Provider Qualifications:

| Medicaid State Plan |

Amount Limit:

| 3 visits. |

Duration Limit:

| None |

Scope Limit:

| Classes in nutrition or smoking cessation will be approved up to 3 visits when referred by your physician. |

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Benefit provided by the PCP as part of preventive health care and other health education classes approved by the insurer.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

| Add |

TN 22-0006
Supersedes
TN 15-0025

**Add 257**

Approval Date: 2/24/2023

Effective Date: 10/1/2022



# Alternative Benefit Plan

☑ 10. Essential Health Benefit: Pediatric services including oral and vision care          Collapse All ☐

Benefit Provided:

Medicaid State Plan EPSDT Benefits

Source:

State Plan 1905(a)

Remove

Authorization:

None

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

EPSDT is required in the ABP for 19 and 20 year olds.

Other information regarding this benefit, including the specific name of the source plan if it is not the base benchmark plan:

Services provided under EPSDT may include preventive and diagnostic services that are medically necessary and may need continued treatment.
In accordance with CMS regulation, individuals covered under EPSDT are not subject to the IMD exclusion.

Add

TN 22-0006
Supersedes
TN 15-0025

Add 258

Approval Date: 2/24/2023          Effective Date: 10/1/2022

Page 34 of 46



# Alternative Benefit Plan

| | |
|---|---|
| ☐ 11. Other Covered Benefits from Base Benchmark | Collapse All ☐ |


(Page 262 of Total)

TN 22-0006
Supersedes
TN 19-0025

Approval Date: Add. 259    Effective Date: 10/1/2022

Page 35 of 46

 **Alternative Benefit Plan**

---

☒ 12. Base Benchmark Benefits Not Covered due to Substitution or Duplication          Collapse All ☐

Base Benchmark Benefit that was Substituted:          Source:          [ Remove ]

Infertility Diagnoses: substitution

Base Benchmark

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

Infertility Diagnoses benefit offered in the base benchmark was removed and replaced in EHB 1 by substitution with part of the actuarial value of Male Sterilization procedures which are not covered on the base benchmark. Coverage for Male Sterilization procedures comes from the coverage provided on the State Plan.

Base Benchmark Benefit that was Substituted:          Source:          [ Remove ]

Routine Foot Care: substitution

Base Benchmark

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

The benefit is covered. A more restrictive limit of 6 visits per year was added. In EHB 1, this has been substituted with the remaining actuarial value from the male sterilization benefit. There is no limit on Routine Foot Care in the base benchmark.

Base Benchmark Benefit that was Substituted:          Source:          [ Remove ]

Home Health Services: substitution

Base Benchmark

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

The benefit is covered. Within the benefit, training of family members to provide home health services is a non-covered benefit. In EHB 1, this sub-benefit was substituted with the actuarial value remaining from the male sterilization benefit.

Base Benchmark Benefit that was Substituted:          Source:          [ Remove ]

Urgent Care- Walk-ins: substitution

Base Benchmark

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

The benefit is covered. Within the benefit, physician home visits is a non-covered benefit. In EHB 1, this sub-benefit was substituted with the actuarial value remaining from the male sterilization benefit.

Base Benchmark Benefit that was Substituted:          Source:          [ Remove ]

Maternity Services: duplication

Base Benchmark

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

This benefit was duplicated with the Medicaid State Plan Obstetric benefit in EHB 4.

---


(Page 263 of Total)
TN 22-0006f
Supersedes
TN 15-0025

**Add.260**
Approval Date: 2/24/2023

Effective Date: 10/1/2022

Page 36 of 46



# Alternative Benefit Plan

Base Benchmark Benefit that was Substituted:

Maternity - Delivery: duplication

Source:

Base Benchmark

[Remove]

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

This benefit was duplicated with the Medicaid State Plan Obstetric benefit in EHB 4.

---

Base Benchmark Benefit that was Substituted:

Durable Medical Equipment (DME): substitution

Source:

Base Benchmark

[Remove]

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

The benefit is covered. The limits for a 15 month rental cap and 5 year replacement for equipment were added. In EHB 7, this has been substituted with the actuarial value remaining from adding hearing aids as a benefit from the State Plan. There is no limit on Durable Medical Equipment in the base benchmark.

---

Base Benchmark Benefit that was Substituted:

PT, OT, ST: substitution

Source:

Base Benchmark

[Remove]

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

The benefit is covered. Within the benefit, the service limits are covered as an annual limit combined for therapies. In EHB 7, service limits for limits per condition have been substituted with the actuarial value remaining from adding hearing aids as a benefit from the State Plan. The base benchmark allows for 75 combined visits per distinct condition or episode.

---

Base Benchmark Benefit that was Substituted:

Cardiac Rehabilitation: substitution

Source:

Base Benchmark

[Remove]

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

The benefit is covered. Within the benefit, the service limits are covered as an annual limit combined for therapies. In EHB 7, the service limits for limits per condition have been substituted with the actuarial value remaining from adding hearing aids as a benefit from the State Plan. The base benchmark allows for 75 combined visits per distinct condition or episode.

---

Base Benchmark Benefit that was Substituted:

Pulmonary Rehabilitation: substitution

Source:

Base Benchmark

[Remove]

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate section 1937 benchmark benefit(s) included above under Essential Health Benefits:

The benefit is covered. Within the benefit, the service limits are covered as an annual limit combined for therapies. In EHB 7, the service limits for limits per condition have been substituted with the actuarial value remaining from adding hearing aids as a benefit from the State Plan. In addition, formalized and pre-designed rehabilitation programs for pulmonary conditions have also been substituted with hearing aids. Both substitutions were completed with the actuarial value remaining from adding hearing aids as a benefit from the State Plan. The base benchmark allows for 75 combined visits per distinct condition or episode.

(Page 264 of Total)
TN 22-0006
Supersedes
TN 15-0025
Add.261
Approval Date: 2/24/2023          Effective Date: 10/1/2022
Page 37 of 46



# Alternative Benefit Plan

Base Benchmark Benefit that was Substituted:                    Source:                         [Remove]

Autism Spectrum Disorder Services: substitution            Base Benchmark

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate
section 1937 benchmark benefit(s) included above under Essential Health Benefits:

The benefit is covered. Within the benefit, the service limits are covered as an annual limit combined for
therapies. In EHB 7, the service limits for limits per condition have been substituted with the actuarial
value remaining from adding hearing aids as a benefit from the State Plan. The base benchmark allows for
75 combined visits per distinct condition or episode.

Base Benchmark Benefit that was Substituted:                    Source:                         [Remove]

Applied Behavior Analysis: substitution                   Base Benchmark

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate
section 1937 benchmark benefit(s) included above under Essential Health Benefits:

In EHB 7, ABA has been substituted with the actuarial value remaining from adding hearing aids as a
benefit from the State Plan.

Base Benchmark Benefit that was Substituted:                    Source:                         [Remove]

Non Surgical Treatment Option Morbid Obesity: dupl        Base Benchmark

Explain the substitution or duplication, including indicating the substituted benefit(s) or the duplicate
section 1937 benchmark benefit(s) included above under Essential Health Benefits:

In EHB 9, the benefit is covered under preventive and wellness services. The ACA preventive services
provides coverage beyond the benefit limits.

[Add]

TN 22-0006,
Supersedes
TN 15-0025

**Add.262**
Approval Date: 2/24/2023            Effective Date: 10/1/2022



# Alternative Benefit Plan

---

☒ 13. Other Base Benchmark Benefits Not Covered                                     Collapse All ☐

Base Benchmark Benefit not Included in the Alternative Benefit Plan:     Source:                    [ Remove ]

Adult Vision                                                            Base Benchmark

Explain why the state/territory chose not to include this benefit:

Adult vision is covered in the base benchmark plan, but it is an excepted benefit and therefore not an Essential Health Benefit.

---

Base Benchmark Benefit not Included in the Alternative Benefit Plan:     Source:                    [ Remove ]

Newborn Child Coverage                                                 Base Benchmark

Explain why the state/territory chose not to include this benefit:

Benefit is excluded since the ABP is for ages 19-64. Newborns born to members will be covered through Medicaid for children. The newborn coverage includes the initial newborn examinations.

---

Base Benchmark Benefit not Included in the Alternative Benefit Plan:     Source:                    [ Remove ]

Emergency Services Outside the U.S.                                     Base Benchmark

Explain why the state/territory chose not to include this benefit:

Emergency care provided outside the U.S. is covered in the base benchmark plan. Non-emergency services are not covered. To conform with Medicaid standards, the benefit will not be covered in the ABP.

---

Base Benchmark Benefit not Included in the Alternative Benefit Plan:     Source:                    [ Remove ]

Lodging and Transportation for Transplants (Donor)                     Base Benchmark

Explain why the state/territory chose not to include this benefit:

Transportation and lodging services for the donor are covered under the base benchmark plan subject to a dollar limit, these services are not considered an EHB and are considered a non-covered benefit for the ABP.

[ Add ]

---

Approval Date: **Add1263**     Effective Date: 10/1/2022



# Alternative Benefit Plan

☒ 14. Other 1937 Covered Benefits that are not Essential Health Benefits                    Collapse All ☐

**Other 1937 Benefit Provided:**

| Dental: Adult |

**Source:**

| Section 1937 Coverage Option Benchmark Benefit Package |

[ Remove ]

**Authorization:**

| Other |

**Provider Qualifications:**

| Medicaid State Plan |

**Amount Limit:**

| Services limits provided in other box. |

**Duration Limit:**

| None |

**Scope Limit:**

| Limited to basic commercial package. |

**Other:**

The dental benefits include evaluations and cleanings (2 per person per benefit year); bitewing x-rays (4 xrays per person per benefit year); comprehensive x-rays (1 complete set every 5 years); minor restorative orcorrective services, such as fillings or extractions (4 combined per person per benefit year); and major restorative services, such as crowns (1 per person per benefit year).

For authorization, the dental insurer may require prior authorization requirements, such as general member information and a justification for the type of dental services rendered based on the medical needs of the member.

**Other 1937 Benefit Provided:**

| Adult Vision |

**Source:**

| Section 1937 Coverage Option Benchmark Benefit Package |

[ Remove ]

**Authorization:**

| Other |

**Provider Qualifications:**

| Medicaid State Plan |

**Amount Limit:**

| Service limits provided in other box. |

**Duration Limit:**

| None |

**Scope Limit:**

| None |

**Other:**

The vision benefits include routine exam (1 every 2 years); eyeglasses, including frames and lenses (1 pair every 5 years if there is not a sufficient change in prescription (vision), loss, irreparable damage, or theft); frames include but not limited to plastic or metal; replacement eyeglasses (covered when medical necessity guidelines met or due to loss, theft or damage beyond repair); contact lenses (covered for medical necessity, such as facial deformity or allergy to frame prevents wearing eyeglasses); vision surgeries (covered for medical necessity); and vision training therapies (covered for medical necessity).

Not all frames and lenses are covered, unless medically necessary. Members may choose to upgrade frames and lenses and pay the difference.

For authorization, vision insurer may require prior authorization requirements, such as general member information and a justification for the type of vision services rendered based on the medical needs of the member or the dollar amount of the service.

TN 23-0006
Supersedes
TN 15-0025

**Add.264**

Approval Date: 2/24/2023          Effective Date: 10/1/2022

 **Alternative Benefit Plan**

---

Other 1937 Benefit Provided:

TMJ

Source:

Section 1937 Coverage Option Benchmark Benefit Package

[Remove]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other:

State Plan benefit. Coverage includes treatment of temporomandibular joint (TMJ) disorder.
For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, documentation of non-surgical treatment and duration prior to surgery and a justification of services rendered for the medical needs and circumstances of the member

---

Other 1937 Benefit Provided:

Bariatric Surgery

Source:

Section 1937 Coverage Option Benchmark Benefit Package

[Remove]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

Benefit does not include personal comfort items, including those services and supplies not directly related to care, such as guest meals, accommodations or personal hygiene products, and room and board when temporary leave permitted.

Other:

State Plan Benefit. To be eligible for this benefit the member must meet the following criteria:
1) Have morbid obesity that has persisted for at least five years duration, and physician-supervised nonsurgical
medical treatment has been unsuccessful for at least 6 consecutive months; or
2) Member has successfully achieved weight loss after participating in physician-supervised non-surgical medical treatment, but has been unsuccessful at maintaining weight loss for two years [ > 3 kg (6.6 lb.) weight gain].

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, physician documentation and documentation of attempt to follow nonsurgical treatment and duration prior to surgery, documentation of pre- and post-operative expectations, behavioral health evaluation, consultation reports from other specialists and a justification of services rendered for the medical needs and circumstances of the member.

---

Other 1937 Benefit Provided:

Chiropractic Care - Pregnancy Benefit

---

**Add.265**

TN 22-0009
Supersedes
TN 15-0025

 **Alternative Benefit Plan**

Source:

Section 1937 Coverage Option Benchmark Benefit Package

[Remove]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

Limits equivalent to State Plan.

Duration Limit:

None

Scope Limit:

None

Other:

Benefit is only offered to women who become pregnant while enrolled in HIP and include State Plan equivalent benefits which are more generous than the benefits offered in the base benchmark plan. Coverage provided is subject to program restrictions.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

Other 1937 Benefit Provided:

Non-emergency Transportation - Pregnancy Benefit

Source:

Section 1937 Coverage Option Benchmark Benefit Package

[Remove]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other:

Benefit is only offered to women who become pregnant while enrolled in HIP and include State Plan equivalent benefits which are more generous than the benefits offered in the base benchmark plan. Coverage provided is subject to program restrictions.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

---

Other 1937 Benefit Provided:

Medicaid Rehabilitation Option (MRO)- Pregnancy Be

Source:

Section 1937 Coverage Option Benchmark Benefit Package

[Remove]

---

TN 22-0006
Supersedes
TN 15-0025

**Add.266**

Approval Date: 2/24/2023

Effective Date: 10/1/2022

 **Alternative Benefit Plan**

---

Authorization:

| Other |

Provider Qualifications:

| Medicaid State Plan |

Amount Limit:

| None |

Duration Limit:

| None |

Scope Limit:

| None |

Other:

Benefit is only offered to women who become pregnant while enrolled in HIP and include State Plan equivalent benefits which are more generous than the benefits offered in the base benchmark plan. MRO services are designed to assist in the rehabilitation of the consumer's optimum functional ability in daily living activities.

---

Other 1937 Benefit Provided:

| Dental Services- Pregnancy Benefit |

Source:

| Section 1937 Coverage Option Benchmark Benefit Package |

[ Remove ]

Authorization:

| Other |

Provider Qualifications:

| Medicaid State Plan |

Amount Limit:

| Limits equivalent to State Plan |

Duration Limit:

| None |

Scope Limit:

| None |

Other:

Benefit is only offered to women who become pregnant while enrolled in HIP and include State Plan equivalent benefits which are more generous than the benefits offered in the base benchmark plan. The dental benefits include State Plan equivalent benefits.

For authorization, the dental insurer may require prior authorization requirements, such as general member information and a justification for the type of dental services rendered based on the medical needs of the member.

---

Other 1937 Benefit Provided:

| Health Education - Smoking Cess -Pregnancy Benefit |

Source:

| Section 1937 Coverage Option Benchmark Benefit Package |

[ Remove ]

Authorization:

| Other |

Provider Qualifications:

| Medicaid State Plan |

Amount Limit:

| 12 week course. |

Duration Limit:

| None |

Scope Limit:

| None |

---

TN 22-0006
Supersedes
TN 15-0025
(Page 270 of Total)
**Add. 267**
Approval Date: 2/24/2023          Effective Date: 10/1/2022
Page 43 of 46



# Alternative Benefit Plan

Other:

Benefit is only offered to women who become pregnant while enrolled in HIP and include State Plan equivalent benefits which are more generous than the benefits offered in the base benchmark plan. The benefit includes up to 12 weeks in a smoking cessation course providing treatment and counseling. For authorization, the Manged Care Entity (MCE) may require prior authorization requirements, such as general member information and a justification for the type of services rendered based on the medical needs of the member.

Other 1937 Benefit Provided:

Osteopathic Manipulative Treatment (OMT)

Source:

Section 1937 Coverage Option Benchmark Benefit Package

[Remove]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

None

Duration Limit:

None

Scope Limit:

None

Other:

State Plan benefit.

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

Other 1937 Benefit Provided:

Residential Treatment

Source:

Section 1937 Coverage Option Benchmark Benefit Package

[Remove]

Authorization:

Other

Provider Qualifications:

Medicaid State Plan

Amount Limit:

Duration Limit:

Scope Limit:

Statewide average length of stay of 30 calendar days, based on medical necessity.

Other:

Services provided to individuals in IMDs with an SUD diagnosis when determined medically necessary by the MCO utilization review staff and in accordance with an individualized service plan.
Room and board costs are not considered allowable costs for residential treatment service providers unless they qualify as inpatient facilities under section 1905(a).

For authorization, Managed Care Entities (MCEs) may require prior authorization requirements, such as general member information, a justification of services rendered for the medical needs of the member and a

TN 22-0005
Supersedes
TN 15-0025

Approval Date: 2/24/2023

Effective Date: 10/1/2022

**Add.268**



# Alternative Benefit Plan

planned course of treatment, if applicable, as related to the number of services provided and duration of treatment.

| Other 1937 Benefit Provided: | Source: | |
|---|---|---|
| Chiropractic Services | Section 1937 Coverage Option Benchmark Benefit Package | Remove |

| Authorization: | Provider Qualifications: |
|---|---|
| Other | Medicaid State Plan |

| Amount Limit: | Duration Limit: |
|---|---|
| 1 visit per day/6 visits per covered benefit year | |

Scope Limit:

Annual limit of six spinal manipulation visits per covered person per benefit year. One visit per day.

Other:

Benefit offered to HIP Plus and included in State Plan. Self-referral, a Provider referral is not required. No Prior Authorization is needed. Coverage available for covered services provided by a licensed chiropractor when rendered within the scope of the practice of chiropractic.

| Other 1937 Benefit Provided: | Source: | |
|---|---|---|
| Qualifying Clinical Trials | Section 1937 Coverage Option Benchmark Benefit Package | Remove |

| Authorization: | Provider Qualifications: |
|---|---|
| Other | Medicaid State Plan |

| Amount Limit: | Duration Limit: |
|---|---|
| None | None |

Scope Limit:

None

Other:

Confirming coverage of routine patient costs in qualifying clinical trials as required under Section 1905(a) (30) and 1905(gg) of the Social Security Act. Coverage is provided as defined in the State Plan  Attachment 3.1-A  under item 30.

Add

TN 22-0006
Supersedes
TN 15-0025

**Add.269**

Approval Date: 2/24/2023        Effective Date: 10/1/2022



# Alternative Benefit Plan

☐ | 15. Additional Covered Benefits (This category of benefits is not applicable to the adult group under section 1902(a)(10)(A)(i)(VIII) of the Act.) | Collapse All ☐

## PRA Disclosure Statement

Centers for Medicare & Medicaid Services (CMS) collects this mandatory information in accordance with (42 U.S.C. 1396a) for the purpose of standardizing data. The information will be used to monitor and analyze performance metrics related to the Medicaid and Children's Health Insurance Program in efforts to boost program integrity efforts, improve performance and accountability across the programs. Under the Privacy Act of 1974 any personally identifying information obtained will be kept private to the extent of the law. According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-1188. The time required to complete this information collection is estimated to average 5 hours per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection. If you have comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: CMS, 7500 Security Boulevard, Attn: PRA Reports Clearance Officer, Mail Stop C4-26-05, Baltimore, Maryland 21244-1850.

V.20190808

TN 22-0006
Supersedes
TN 15-0025

Approval Date: 2/24/2023                 Effective Date: 10/1/2022



# Alternative Benefit Plan

State Name: Indiana      Attachment 3.1-L- [ ]      OMB Control Number: 0938-1148

Transmittal Number: IN - 15 - 0025      OMB Expiration date: 10/31/2014

## Benefits Assurances      ABP7

### EPSDT Assurances

If the target population includes persons under 21, please complete the following assurances regarding EPSDT. Otherwise, skip to the Prescription Drug Coverage Assurances below.

The alternative benefit plan includes beneficiaries under 21 years of age.    Yes

☑ The state/territory assures that the notice to an individual includes a description of the method for ensuring access to EPSDT services (42 CFR 440.345).

☑ The state/territory assures EPSDT services will be provided to individuals under 21 years of age who are covered under the state/ territory plan under section 1902(a)(10)(A) of the Act.

Indicate whether EPSDT services will be provided only through an Alternative Benefit Plan or whether the state/territory will provide additional benefits to ensure EPSDT services:

◉ Through an Alternative Benefit Plan.

◯ Through an Alternative Benefit Plan with additional benefits to ensure EPSDT services as defined in 1905(r).

Other Information regarding how ESPDT benefits will be provided to participants under 21 years of age (optional):

### Prescription Drug Coverage Assurances

☑ The state/territory assures that it meets the minimum requirements for prescription drug coverage in section 1937 of the Act and implementing regulations at 42 CFR 440.347. Coverage is at least the greater of one drug in each United States Pharmacopeia (USP) category and class or the same number of prescription drugs in each category and class as the base benchmark.

☑ The state/territory assures that procedures are in place to allow a beneficiary to request and gain access to clinically appropriate prescription drugs when not covered.

☑ The state/territory assures that when it pays for outpatient prescription drugs covered under an Alternative Benefit Plan, it meets the requirements of section 1927 of the Act and implementing regulations at 42 CFR 440.345, except for those requirements that are directly contrary to amount, duration and scope of coverage permitted under section 1937 of the Act.

☑ The state/territory assures that when conducting prior authorization of prescription drugs under an Alternative Benefit Plan, it complies with prior authorization program requirements in section 1927(d)(5) of the Act.

### Other Benefit Assurances

☑ The state/territory assures that substituted benefits are actuarially equivalent to the benefits they replaced from the base benchmark plan, and that the state/territory has actuarial certification for substituted benefits available for CMS inspection if requested by CMS.

☑ The state/territory assures that individuals will have access to services in Rural Health Clinics (RHC) and Federally Qualified Health Centers (FQHC) as defined in subparagraphs (B) and (C) of section 1905(a)(2) of the Social Security Act.

TN#: 15-0025      ABP 7      Approval Date: 10/29/15

Effective Date: October 1, 2015

Page 1 of 2

 # Alternative Benefit Plan

☑ The state/territory assures that payment for RHC and FQHC services is made in accordance with the requirements of section 1902(bb) of the Social Security Act.

☑ The state/territory assures that it will comply with the requirement of section 1937(b)(5) of the Act by providing, effective January 1, 2014, to all Alternative Benefit Plan participants at least Essential Health Benefits as described in section 1302(b) of the Patient Protection and Affordable Care Act.

☑ The state/territory assures that it will comply with the mental health and substance use disorder parity requirements of section 1937(b)(6) of the Act by ensuring that the financial requirements and treatment limitations applicable to mental health or substance use disorder benefits comply with the requirements of section 2705(a) of the Public Health Service Act in the same manner as such requirements apply to a group health plan.

☑ The state/territory assures that it will comply with section 1937(b)(7) of the Act by ensuring that benefits provided to Alternative Benefit Plan participants include, for any individual described in section 1905(a)(4)(C), medical assistance for family planning services and supplies in accordance with such section.

☐ The state/territory assures transportation (emergency and non-emergency) for individuals enrolled in an Alternative Benefit Plan in accordance with 42 CFR 431.53.

☑ The state/territory assures, in accordance with 45 CFR 156.115(a)(4) and 45 CFR 147.130, that it will provide as Essential Health Benefits a broad range of preventive services including: "A" and "B" services recommended by the United States Preventive Services Task Force; Advisory Committee for Immunization Practices (ACIP) recommended vaccines; preventive care and screening for infants, children and adults recommended by HRSA's Bright Futures program/project; and additional preventive services for women recommended by the Institute of Medicine (IOM).

## PRA Disclosure Statement

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-1148. The time required to complete this information collection is estimated to average 5 hours per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection. If you have comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: CMS, 7500 Security Boulevard, Attn: PRA Reports Clearance Officer, Mail Stop C4-26-05, Baltimore, Maryland 21244-1850.

V.20140415



# Alternative Benefit Plan

State Name: Indiana               Attachment 3.1-L-          OMB Control Number: 0938-1148
Transmittal Number: IN - 15 - 0003                          OMB Expiration date: 10/31/2014

## Service Delivery Systems                                 ABP8

Provide detail on the type of delivery system(s) the state/territory will use for the Alternative Benefit Plan's benchmark benefit package or benchmark-equivalent benefit package, including any variation by the participants' geographic area.

Type of service delivery system(s) the state/territory will use for this Alternative Benefit Plan(s).

Select one or more service delivery systems:

☒ Managed care.

    ☒ Managed Care Organizations (MCO).

    ☐ Prepaid Inpatient Health Plans (PIHP).

    ☐ Prepaid Ambulatory Health Plans (PAHP).

    ☐ Primary Care Case Management (PCCM).

☒ Fee-for-service.

☐ Other service delivery system.

## Managed Care Options

### Managed Care Assurance

☑ The state/territory certifies that it will comply with all applicable Medicaid laws and regulations, including but not limited to sections 1903(m), 1905(t), and 1932 of the Act and 42 CFR Part 438, in providing managed care services through this Alternative Benefit Plan. This includes the requirement for CMS approval of contracts and rates pursuant to 42 CFR 438.6.

### Managed Care Implementation

Please describe the implementation plan for the Alternative Benefit Plan under managed care including member, stakeholder, and provider outreach efforts.

HIP 2.0 is being implemented as a replacement of the original HIP program. HIP has been offering benefits through a managed care delivery system since 2008, and HIP 2.0 will build upon the established HIP structure. During implementation, HIP 2.0 MCEs will be the same MCEs that currently offer HIP benefits. The state is engaging with these current HIP MCEs to assure that current HIP members are smoothly transitioned to HIP 2.0.

### MCO: Managed Care Organization

The managed care delivery system is the same as an already approved managed care program.          Yes

    The managed care program is operating under (select one):

    ○ Section 1915(a) voluntary managed care program.

    ○ Section 1915(b) managed care waiver.

    ● Section 1932(a) mandatory managed care state plan amendment.

    ○ Section 1115 demonstration.

    ○ Section 1937 Alternative (Benchmark) Benefit Plan state plan amendment.

**Add.273**



# Alternative Benefit Plan

Identify the date the managed care program was approved by CMS: | Dec., 14, 2007 |

Describe program below:

> The new HIP program was developed from expanding the existing HIP program to reach more individuals and provide better access to benefits including more coverage options. This program will replace traditional Medicaid for all non-disabled adults ages 19-64 with income below 133% of FPL as based on MAGI income standards. The key feature of the HIP program is the high-deductible design and the Personal Wellness and Responsibility (POWER) account where members make contributions based on their income and use the funds in the account to cover their deductible expenses. Under HIP, members who consistently make required contributions to their POWER account will maintain access to the HIP Plus plan that includes enhanced benefits, such as chiropractic, dental, and vision coverage. Members up to and including 100% FPL who do not make monthly POWER account contributions will be placed in the HIP Basic plan, a more limited benefit plan, which will also require co-payments for all services in lieu of the monthly POWER account contributions. Those with income over this amount who do not make required contributions are disenrolled and subject to a six month lock-out period. Lock-out will not apply if you are medically frail, residing in a domestic violence shelter or in a state declared disaster area.
>
> All HIP medical benefits are currently provided through four managed care entities ("MCE"), Anthem, CareSource, MDwise, and Managed Health Services. These same MCE's will provide HIP services. HIP members have access to enrollment brokers, who provide counseling on the available MCE choices. For HIP members, once an MCE has been selected and the member has paid their POWER account contribution, the member must remain in the MCE for 12 months, as applicable. Members who do not select an MCE will be auto-assigned to an MCE, but will have the opportunity to change the assigned MCE before the first POWER account contribution is made.

**Additional Information: MCO (Optional)**

Provide any additional details regarding this service delivery system (optional):

> As selected above, the state's managed care program currently operates under Section 1932(a) mandatory managed care state plan amendment. This is concurrent with the 1115 authority in order to authorize the enrollment processes.

## Fee-For-Service Options

Indicate whether the state/territory offers traditional fee-for-service and/or services managed under an administrative services organization:

◉ Traditional state-managed fee-for-service

◯ Services managed under an administrative services organization (ASO) arrangement

Please describe this fee-for-service delivery system, including any bundled payment arrangements, pay for performance, fee-for-service care management models/non-risk, contractual incentives as well as the population served via this delivery system.

> 

**Additional Information: Fee-For-Service (Optional)**

Provide any additional details regarding this service delivery system (optional):

> Under HIP, all services are carved into the Managed Care System except for Medicaid Rehabilitation Option (MRO) services which will be provided to qualifying individuals receiving the ABP that is the State Plan. Individuals eligible for MRO under HIP would also be eligible for the State's 1915(i) Behavioral and Primary Health Care Coordination program. It is anticipated that there will be minimal use of MRO for individuals enrolled in HIP.



# Alternative Benefit Plan

## PRA Disclosure Statement

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number.  The valid OMB control number for this information collection is 0938-1148.  The time required to complete this information collection is estimated to average 5 hours per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection.  If you have comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: CMS, 7500 Security Boulevard, Attn: PRA Reports Clearance Officer, Mail Stop C4-26-05, Baltimore, Maryland 21244-1850.

V.20140417

**Add.275**

 # Medicaid Premiums and Cost Sharing

State Name: Indiana ⌄

OMB Control Number: 0938-1148

Transmittal Number: IN - 15 - 0004

Expiration date: 10/31/2014

| Cost Sharing Requirements | G1 |
|---|---|

1916
1916A
42 CFR 447.50 through 447.57 (excluding 447.55)

The state charges cost sharing (deductibles, co-insurance or co-payments) to individuals covered under Medicaid. | Yes ⌄ |

☑ The state assures that it administers cost sharing in accordance with sections 1916 and 1916A of the Social Security Act and 42 CFR 447.50 through 447.57.

**General Provisions**

☑ The cost sharing amounts established by the state for services are always less than the amount the agency pays for the service.

☑ No provider may deny services to an eligible individual on account of the individual's inability to pay cost sharing, except as elected by the state in accordance with 42 CFR 447.52(e)(1).

☑ The process used by the state to inform providers whether cost sharing for a specific item or service may be imposed on a beneficiary and whether the provider may require the beneficiary to pay the cost sharing charge, as a condition for receiving the item or service, is (check all that apply):

☐ The state includes an indicator in the Medicaid Management Information System (MMIS)

☐ The state includes an indicator in the Eligibility and Enrollment System

☐ The state includes an indicator in the Eligibility Verification System

☐ The state includes an indicator on the Medicaid card, which the beneficiary presents to the provider

☒ Other process

Description:

Cost sharing amounts and policies for all populations are outlined in the Indiana Health Coverage Program (IHCP) Provider Manual. Provider reference materials, such as the medical policy manual and the modules, describing Medicaid policy is available on IndianaMedicaid.com. Providers are instructed to utilize the modules during IHCP provider workshops, at the IHCP annual seminar, within banners and bulletins, during provider association meetings, and when communicating with OMPP staff. Providers were informed of the cost-sharing policy via bulletin which was disseminated by email and is currently archived on IndianaMedicaid.com. The Indiana Office of Medicaid Policy and Planning has formed a communications team to efficiently distribute material and policy changes to providers. The team has a timeline for publications to describe the processes affected by CoreMMIS and any policy updates. Once CoreMMIS has been implemented, tentatively scheduled for January 2, 2017, providers will have the enhanced ability to view cost-sharing liability within the EVS.

☑ Contracts with managed care organizations (MCOs) provide that any cost-sharing charges the MCO imposes on Medicaid enrollees are in accordance with the cost sharing specified in the state plan and the requirements set forth in 42 CFR 447.50 through 447.57.

**Cost Sharing for Non-Emergency Services Provided in a Hospital Emergency Department**



# Medicaid Premiums and Cost Sharing

The state imposes cost sharing for non-emergency services provided in a hospital emergency department.    `Yes ▾`

☑ The state ensures that before providing non-emergency services and imposing cost sharing for such services, that the hospitals providing care:

    ◼ Conduct an appropriate medical screening under 42 CFR 489.24, subpart G to determine that the individual does not need emergency services;

    ◼ Inform the individual of the amount of his or her cost sharing obligation for non-emergency services provided in the emergency department;

    ◼ Provide the individual with the name and location of an available and accessible alternative non-emergency services provider;

    ◼ Determine that the alternative provider can provide services to the individual in a timely manner with the imposition of a lesser cost sharing amount or no cost sharing if the individual is otherwise exempt from cost sharing; and

    ◼ Provide a referral to coordinate scheduling for treatment by the alternative provider.

☑ The state assures that it has a process in place to identify hospital emergency department services as non-emergency for purposes of imposing cost sharing. This process does not limit a hospital's obligations for screening and stabilizing treatment of an emergency medical condition under section 1867 of the Act; or modify any obligations under either state or federal standards relating to the application of a prudent-layperson standard for payment or coverage of emergency medical services by any managed care organization.

The process for identifying emergency department services as non-emergency for purposes of imposing cost sharing is:

> Hospitals operationalize this process by performing the required EMTALA screening on the enrollee. The provider is reimbursed for the screening. If a non-emergency based on the prudent layperson standard is determined to exist, the hospital collects the co-payment. Cost sharing for non-emergency services provided in a hospital emergency department is only applicable to individuals in HIP 2.0 as authorized under the state's section 1115 demonstration waiver.

## Cost Sharing for Drugs

The state charges cost sharing for drugs.    `Yes ▾`

The state has established differential cost sharing for preferred and non-preferred drugs.    `No ▾`

    ◼ All drugs will be considered preferred drugs.

## Beneficiary and Public Notice Requirements

☑ Consistent with 42 CFR 447.57, the state makes available a public schedule describing current cost sharing requirements in a manner that ensures that affected applicants, beneficiaries and providers are likely to have access to the notice. Prior to submitting a SPA which establishes or substantially modifies existing cost sharing amounts or policies, the state provides the public with advance notice of the SPA, specifying the amount of cost sharing and who is subject to the charges, and provides reasonable opportunity for stakeholder comment. Documentation demonstrating that the notice requirements have been met are submitted with the SPA. The state also provides opportunity for additional public notice if cost sharing is substantially modified during the SPA approval process.

## Other Relevant Information

TN#: 15-0004
Indiana
(Page 280 of Total)

G1 (pg.2)
**Add.277**

Approval Date: 8/29/16
Effective Date: February 1, 2015





# Medicaid Premiums and Cost Sharing

### PRA Disclosure Statement

According to the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it displays a valid OMB control number. The valid OMB control number for this information collection is 0938-1148. The time required to complete this information collection is estimated to average 40 hours per response, including the time to review instructions, search existing data resources, gather the data needed, and complete and review the information collection. If you have comments concerning the accuracy of the time estimate(s) or suggestions for improving this form, please write to: CMS, 7500 Security Boulevard, Attn: PRA Reports Clearance Officer, Mail Stop C4-26-05, Baltimore, Maryland 21244-1850.

V.20140415



TN#: 15-OOO4
Indiana
(Page 281 of Total)

G1 (pg.3)
**Add.278**

Approval Date: 8/29/16
Effective Date: February 1, 2O15

## CERTIFICATE OF SERVICE

I certify that, on February 20, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit through the appellate CM/ECF system, and the document is being served on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

Dated: February 20, 2025

/s/ James A. Barta
JAMES A. BARTA